JULIAN HAMMOND (SBN 268489)
jhammond@hammondlawpc.com
ADRIAN BARNES (SBN 253131)
abarnes@hammondlawpc.com
POLINA BRANDLER (SBN 269086)
pblandler@hammondlawpc.com
ARI CHERNIAK (SBN 290071)
acherniak@hammondlawpc.com
HAMMONDLAW, P.C.
1201 Pacific Ave, 6th Floor
Tacoma, WA 98402
(310) 601-6766 (Office)
(310) 295-2385 (Fax)

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JONATHAN HOANG TO,** individually and on behalf of all others similarly situated**,**<br><br>Plaintiff,<br><br>v.<br><br>**DIRECTTOU, LLC,** a Delaware Limited Liability Company<br><br>Defendant. | Case No 3:24-CV-06447-WHO<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>**(1) Violation of the Video Privacy Protection Act (18 U.S.C. § 2710);**<br>**(2) Violation of Cal. Civ. Code § 1799.3; and**<br>**(3) Violation of Business & Professional Code §§ 17200 et seq. (UCL)**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jonathan Hoang To alleges the following based upon personal knowledge, or, where applicable, information, belief, and the investigation of counsel:

## NATURE OF THE ACTION

1.     This is a privacy class action lawsuit, pursuant to Federal Rule of Civil Procedure 23, against Defendant DirectToU, LLC ("Defendant" or "DeepDiscount") seeking statutory damages, civil penalties, restitution, disgorgement of profits, declaratory relief, public injunctive relief, and reasonable attorney's fees and costs pursuant to the Video Privacy Protection Act, 18 U.S.C. § 2710 (the "VPPA"), Cal. Civ. Code § 1799.3, and Cal. Business & Professions Code §§ 17200 ("UCL").

2.     DeepDiscount develops, owns and operates a website www.deepdiscount.com that sells DVD and Blu-ray videos to customers in the U.S. and internationally.[1] The website features over three hundred thousand (300,000) prerecorded DVD and Blu-ray videos.[2] As DeepDiscount states on its website, "DeepDiscount.com is dedicated to providing heavily discounted prices when shopping for DVDs, Blu-rays, CDs and Vinyl online."[3]

3.     Despite its clear legal obligations under the federal and California law, Defendant knowingly and intentionally discloses its customers' personally identifiable information— including a record of every DVD or Blu-ray video they purchased ("Personally Identifiable Information" or "PII")—to a third party, Meta Platforms Inc. (formerly known as Facebook) ("Meta" or "Facebook"), without its customers' consent or knowledge.

4.     Federal law recognizes, through the VPPA, that our video-viewing habits are intimately private. The law accordingly requires companies that sell, rent, or offer subscriptions to prerecorded videos to maintain their customers' privacy and prohibits, among other things, the knowing disclosure of customers' video choices to any third party without the customers' specific advance written consent.

---

[1] *See* https://www.deepdiscount.com (Last visited August 12, 2024)
[2] *See* https://www.deepdiscount.com/search (Last visited August 12, 2024).
[3] *See* https://www.deepdiscount.com/about-us (Last visited August 12, 2024.

5.      The California Constitution similarly recognizes that all people are by nature entitled to a right to privacy.[4] Cal. Civ. Code § 1799.3 accordingly prohibits video sellers or renters from disclosing "any personal information or the contents of any record, including sales or rental information, which is prepared or maintained by that person, to any person, other than the individual who is subject of the record, without the written consent of that individual."[5]

### PARTIES

6.      Plaintiff Huang To is, and has been at all relevant times, a resident of Los Angeles, California. In or about May 15, 2023, Plaintiff purchased three movies from www.deepdiscount.com. Throughout the time that Plaintiff purchased prerecorded DVDs and Blu-rays on Defendant's website, he has had a Facebook account.

7.      Defendant DirectToU, LLC is a Delaware Limited Liability Company, based in Plantation, Florida.

### JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over the claims that arise under the Video Privacy Protection Act, 18 U.S.C. § 2710.

9.      This Court also has jurisdiction under 28 U.S.C. § 1332(d) because this action is a class action in which the aggregate amount in controversy for the proposed Class and California Sub-class (defined below) exceeds $5,000,000, and at least one member of the Class is a citizen of a state different from that of Defendant.

10.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 as these claims are part of the same case or controversy as the federal statutory claim over which the Court has original jurisdiction.

11.     This Court has personal jurisdiction over the parties because Defendant has continuously and systematically conducted business in the State of California, and Defendant directs substantial business activity, including the shipping of DVD's and Blu-rays, into California.

---

[4] Ca. Const., art. I, § 1.
[5] *See* Cal. Civ. Code § 1799.3(a).

Likewise, Plaintiff is a California resident whose rights were violated in the State of California as a result of his contact with Defendant from and within California.

12.     Venue is proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1391, 1441 and 1446.

## FACTUAL BACKGROUND

**I.   DeepDiscount Provides Video Tape Services to Plaintiff and Its Other Customers.**

13.     DeepDiscount operates a DVD and Blu-ray sales website (www.deepdiscount.com), on which consumers can purchase prerecorded videos on DVD and Blu-ray formats.[6]

14.     DeepDiscount's website offers hundreds of thousands of pre-recorded videos for sale.

15.     Once a customer purchases a DVD or Blu-ray video, Defendant ships the purchased DVD or Blu-ray to the customer.[7]

16.     Thus, Defendant is a "video tape service provider" within the meaning of 18 U.S.C. § 2710(a)(4) because it is engaged in the business of "rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials."

17.     And, Plaintiff and other customers are "consumers" within the meaning of 18 U.S.C. § 2710(a)(1) because they are "subscriber[s] of goods or services from a video tape service provider."

18.     Plaintiff and other customers are also "purchasers" of goods or services from a video tape service provider because they purchased videos from Defendant in the form of DVDs and Blu-ray videos.

19.     Defendant is also a "person providing video recording sales or rental services" within the meaning of Cal. Civ. Code § 1799.3(a), because it is engaged in the business of "providing video recording sales or rental services."

20.     And, Plaintiff and other customers are "person[s] who is the subject of the records" under Cal. Civ. Code § 1799.3(c).

---

[6] *See* https://www.deepdiscount.com/movies (last visited on August 12, 2024).
[7] *See* https://www.deepdiscount.com/checkout (last visited August 12, 2024).

## II.   DeepDiscount Maintains a Meta Pixel on Its Website

21.   On information and belief, Defendant first implemented the Meta Pixel on its website beginning in or about November 2016 and continues to maintain the Meta Pixel on its website at present.

22.   According to the FTC: "Pixel tracking can be monetized in several ways. One way to monetize pixel tracking is for companies to use the tracking data collected to improve the company's own marketing campaigns. The data can be used to target more specific audiences with ads and other marketing messages. Another is that companies can monetize the data collected by further optimizing their own ad targeting systems and charging other companies to use its advertising offerings."[8]

23.   Meta, which operates Facebook and was called Facebook, Inc. until changing its name in January 2022, is the world's largest social media company. Meta reported having 2.04 billion daily active users as of March 2023,[9] and reported $116.61 billion in revenue in fiscal year 2022.[10]

24.   Meta's current revenue, as well as its revenue when the company was called Facebook, Inc., has been derived almost entirely from selling targeted advertising to Facebook users, users of its family of apps including Instagram, and internet users on non-Facebook sites that integrate Meta marketing source code on their websites. Meta reported in Fiscal Year 2022 that its revenue from advertising was over $113 billion and Meta stated that it "generated substantially all of our revenue from selling advertising placements on our family of apps to marketers."[11] In its 10k filing

---

[8] *See* https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2023/03/lurking-beneath-surface-hidden-impacts-pixel-tracking (citing M. Eddy. "How Companies Turn Your Data Into Money." PC Mag. October 10, 2018. https://www.pcmag.com/news/how-companies-turn-your-data-into-money) (last visited June 13, 2023.)

[9] Meta Reports First Quarter 2023 Results, https://s21.q4cdn.com/399680738/files/doc_news/Meta-Reports-First-Quarter-2023-Results-2023.pdf

[10] Meta Reports Fourth Quarter and Full Year 2022 Results, 2/1/23, https://s21.q4cdn.com/399680738/files/doc_financials/2022/q4/Meta-12.31.2022-Exhibit-99.1-FINAL.pdf (last visited 6/6/2023).

[11] Meta, SEC 10k filing for the Fiscal Year Ending Dec. 31, 2022, https://www.sec.gov/Archives/edgar/data/1326801/000132680123000013/meta-20221231.htm (last visited June 19, 2022.)

covering the fiscal year 2018, Facebook similarly admitted that, "We generate substantially all of our revenue from selling advertising placements to marketers."[12]

25.    Facebook describes itself as a "real identity platform,"[13] meaning users are allowed only one account and must share "the name they go by in everyday life."[14]   Therefore, when users create an account, they must provide their first and last name, along with their birthday and gender.[15]

26.    Facebook sells advertising space by highlighting its ability to target users.[16] Facebook can target users so effectively because it surveils user activity both on and off its site.[17] This allows Facebook to make inferences about users beyond what they explicitly disclose, like their "interests," "behavior," and "Connections".[18] Facebook complies this information into a generalized dataset called "Core Audiences", which advertisers use to apply highly specific filters and parameters for their targeted advertisements.[19]

27.    Advertisers can also build "Custom Audiences."[20] Custom Audiences enable advertisers to reach "people who have already shown interest in [their] business, whether they're loyal customers or people who have visited [their] website."[21] Advertisers can use a Custom Audience to target existing customers directly, or they can use it to build a "Lookalike Audiences," which

---

[12] Facebook, SEC 10k filing for the Fiscal Year Ending Dec. 31, 2018. https://www.sec.gov/Archives/edgar/data/1326801/000132680119000009/fb-12312018x10k.htm.

[13] Sam Schechner and Jeff Horwitz, *How Many Users Does Facebook Have? The Company Struggles to Figure It Out*, WALL. ST. J. (Oct. 21, 2021).

[14] FACEBOOK, COMMUNITY STANDARDS, PART IV INTEGRITY AND AUTHENTICITY, https://www.facebook.com/communitystandards/integrity_authenticity.

[15] FACEBOOK, SIGN-UP, http://www.facebook.com/

[16] FACEBOOK, WHY ADVERTISE ON FACEBOOK, https://www.facebook.com/business/help/205029060038706.

[17] FACEBOOK, ABOUT FACEBOOK PIXEL, https://www.facebook.com/business/help/742478679120153?id=1205376682832142.

[18] FACEBOOK, AD TARGETING: HELP YOUR ADS FIND THE PEOPLE WHO WILL LOVE YOUR BUSINESS, https://www.facebook.com/business/ads/ad-targeting.

[19] FACEBOOK, EASIER, MORE EFFECTIVE WAYS TO REACH THE RIGHT PEOPLE ON FACEBOOK, https://www.facebook.com/business/news/Core-Audiences.

[20] FACEBOOK, ABOUT CUSTOM AUDIENCES, https://www.facebook.com/business/help/744354708981227?id=2469097953376494

[21] FACEBOOK, ABOUT EVENTS CUSTOM AUDIENCE, https://www.facebook.com/business/help/366151833804507?id=300360584271273.

"leverages information such as demographics, interests, and behavior from your source audience to find new people who share similar qualities."[22] Unlike Core Audiences, Custom Audiences require an advertiser to supply the underlying data to Facebook. They can do so through two mechanisms: by manually uploading contact information for customers, or by utilizing Facebook's "Business Tools," which collect and transmit the data automatically.[23] One such Business Tool is the Meta Tracking Pixel.

28.     The Meta Tracking Pixel is a piece of code that advertisers, like Defendant, can integrate into their website. Once activated, the Meta Tracking Pixel "tracks the people and type of actions they take."[24] When the Meta Pixel captures an action, it sends a record to Facebook. Once this record is received, Facebook processes it, analyzes it, and assimilates it into datasets like the Core Audiences and Custom Audiences.

29.     Advertisers control what actions—or, as Facebook calls it, "events"—the Meta Tracking Pixel will collect along with what pages a visitor views and what buttons a visitor clicks.[25] Advertisers can also configure the Meta Tracking Pixel to track other events. Meta offers a menu of "standard events" from which advertisers can choose, including what content a visitor views or purchases.[26]

30.     An advertiser can also create their own tracking parameters by building a "custom event."[27]

---

[22] FACEBOOK, ABOUT LOOKALIKE AUDIENCES, https://www.facebook.com/business/help/164749007013531?id=401668390442328.
[23] FACEBOOK, CREATE A CUSTOMER LIST CUSTOM AUDIENCE, https://www.facebook.com/business/help/170456843145568?id=2469097953376494.
[24] FACEBOOK, RETARGETING, https://www.facebook.com/business/goals/retargeting.
[25] See FACEBOOK, FACEBOOK PIXEL, ACCURATE EVENT TRACKING, ADVANCED, https://developers.facebook.com/docs/facebook-pixel/advanced/; see also FACEBOOK, BEST PRACTICES FOR FACEBOOK PIXEL SETUP, https://www.facebook.com/business/help/218844828315224?id=1205376682832142.
[26] FACEBOOK, SPECIFICATIONS FOR FACEBOOK PIXEL STANDARD EVENTS, https://www.facebook.com/business/help/402791146561655?id=1205376682832142.
[27] FACEBOOK, ABOUT STANDARD AND CUSTOM WEBSITE EVENTS, https://www.facebook.com/business/help/964258670337005?id=1205376682832142.

31.     Advertisers control how the Meta Tracking Pixel identifies visitors. The Meta Tracking Pixel is configured to automatically collect "HTTP Headers" and "Pixel-specific Data."[28] Http Headers collect "IP Addresses, information about web browser, page location, document, [referrer] and persons using the website."[29] Pixel-specific Data includes "the Pixel ID and cookie."[30]

32.     FTC Commissioner Rohit Chopra addressed the harms that can be caused by sharing information with Facebook when he stated in 2019, "Because behavioral advertising allows advertisers to use mass surveillance as a means to their undisclosed and potentially nefarious ends, Facebook users are exposed to propaganda, manipulation, discrimination, and other harms.  . . . Facebook's massive, private, and generally unsupervised network of advertisers has virtually free rein to microtarget its ads based on every aspect of a user's profile and activity. The company's detailed dossiers of private information includes things like a user's location and personal connections, but it also includes the history of everything a user has ever done wherever Facebook is embedded in the digital world."[31]

### III.     DeepDiscount Knowingly and Intentionally Sends Plaintiff's and Other Customers' Personally Identifiable Information (PII) to Meta

33.     As stated above, beginning in or about November 2016 and continuing to the present, Defendant has maintained the Meta Pixel on its website—www.deepdiscount.com—and transmitted Plaintiff's and other customers' personal information or the contents of any record, including [their] sales or rental information," including "information which identifies a person as having requested or obtained specific video materials or services", including their personal identifiers, without their consent, to Meta in accordance with the Meta Pixel's configuration.

34.     When Plaintiff visited www.deepdiscount.com, the Meta Pixel automatically caused the Plaintiff's or other customers' personal identifiers, including IP addresses and the c_user, _fr,

---

[28] FACEBOOK, FACEBOOK PIXEL, https://developers.facebook.com/docs/facebook-pixel/.
[29] See id.
[30] See id.
[31] See Dissenting Statement of FTC Commissioner Rohit Chopra, In re Facebook, Inc., Commission File No, 1823109, July 24, 2019.
https://www.ftc.gov/system/files/documents/public_statements/1536911/chopra_dissenting_statement on facebook_7-24-19.pdf.

_and datr cookies, to be transmitted to Meta, attached to the fact that the Plaintiff/customer had visited the website and the titles of the webpages the Plaintiff/other customer viewed.

35. The cookies that were transmitted as a result of the Meta Pixels that Defendant installed on its website conveyed Plaintiff's and customers' Facebook IDs (through the c_user cookie), which can be used by Facebook and any ordinary person to find the user's real name, the specific and unique web browser from which the customer is sending the communication, and an encrypted combination of the information contained in those two cookies (fr cookie).

36. DeepDiscount's hosted Meta Tracking Pixel transmits information associated with the Purchase event to Facebook, which is shown in Figure #1 below:[32]

**Figure #1**



---

[32] This data derives from a tool created and offered by Facebook.

37.    The information associated with the Purchase event transmitted to Facebook, permits an ordinary person to identify a specific individual's video purchasing behavior.

38.    When a customer purchases a pre-recorded DVD or Blu-ray video, the Purchase event transmits the Uniform Resource Locator ("URL") accessed, which contains the title ID ("Title ID") of the purchased DVD or Blu-ray, which is shown in Figure #2 below:

**Figure #2**



39.     The Title ID of the purchased DVD and/or Blu-ray video can be used to identify the movie by an ordinary person as follows.  The Title ID can be entered into DeepDiscount.com's search bar, and the title of the purchased video is then identified, as shown in Figure #3 below:

**Figure #3**



40.     A visitor who has not logged out of Facebook while purchasing a video on DeepDiscount will transmit the c_user cookie to Facebook. The c_user cookie contains that visitor's unencrypted Facebook ID. When accessing the above video, for example, the Meta Pixel on DeepDiscount's website compels the visitor's browser to send multiple cookies, in addition to the c_user cookie, as shown in Figure #4 below:

**Figure #4**

| Name | Value |
| --- | --- |
| c_user | 10000 ◼◼◼◼◼◼ |
| datr | saFWZXu696kRJfnBDt3cUDkn |
| fr | 12ku163EnBwCtjWps.AWX0k1uyp6JGlDbA... |
| presence | EDvF3EtimeF1717420984EuserFA21B0311... |
| ps_n | 1 |
| sb | saFWZTYcT89vhNpJu_mc48fL |
| usida | eyJ2ZXIiOjEsImlkIjoiQXNIaWFFpZTNtb2F3Y... |
| xs | 9%3AdXxBtLEXwuwdrA%3A2%3A1716322... |

41.     A Facebook ID, along with the title of the prerecorded video purchased, is PII. Anyone can identify a Facebook profile-and all personal information publicly listed on that profile,

including a person's first and last name—by appending the Facebook ID to the end of Facebook.com. For example, Meta CEO Mark Zuckerberg's Facebook ID is four and the URL "www.facebook.com/4" will take you to Mark Zuckerberg's Facebook page.

42.     By compelling a visitor's browser to disclose the c_user cookie alongside event data for videos, DeepDiscount knowingly and intentionally discloses information sufficient for an ordinary person to identify a specific individual's video viewing and purchasing behavior.

43.     When a visitor's browser has recently logged out of Facebook, DeepDiscount compels the browser to send a smaller set of cookies, which are shown in Figure #5 below:

**Figure #5**

| datr | saFWZXu696kRJfnBDt3cUDkn |
| --- | --- |
| fr | 1i1olLNOUTlVrEu8l.AWVb7joBQBKPDnwLnRKM6E94... |

44.     The fr cookie contains, at least, an encrypted Facebook ID and browser identifier.[33] The datr cookies also identifies a browser.[34] Facebook, at a minimum, uses the fr cookies to identify users.[35]

45.     Without a corresponding Facebook ID, the fr cookie contains, at least, an abbreviated and encrypted value that identifies the browser. Upon information and belief, Facebook uses the cookie for targeted advertising.

46.     Facebook, at a minimum, uses the fr and c_user cookies to link Facebook IDs and corresponding Facebook profile.

**IV.     Plaintiff's Experience with DeepDiscount**

47.     In or about 2010, Plaintiff created a Facebook account.

---

[33] DATA PROTECTION COMMISSIONER, FACEBOOK IRELAND LTD, REPORT OF RE-AUDIT (Sept. 21, 2012), http://www.europe-v-facebook.org/ODPC_Review.pdf.
[34] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/.
[35] *Id.*

48.     In 2023 and 2024, Plaintiff purchased prerecorded Blu-ray videos on www.deepdiscount.com.

49.     Plaintiff frequently visits www.deepdiscount.com to, among other things, purchase prerecorded DVD and Blu-ray videos.

50.     Plaintiff's default browser is Google Chrome, and he uses Google Chrome to access www.deepdiscount.com.

51.     When Plaintiff purchases videos on www.deepdiscount.com, on information and belief, Defendant discloses to Facebook his Facebook ID, browser identifiers, and other identifying information.

52.     When Plaintiff purchases videos on www.deepdiscount.com, on information and belief, Defendant discloses his Purchase data, which includes the purchases that he makes. This Purchase data, which DeepDiscount transmits through first-party cookies, contains the ID's of prerecorded videos that Plaintiff purchases.

53.     Plaintiff discovered that DeepDiscount surreptitiously collected and transmitted his Personally Identifiable Information in or about April 2024.

### TOLLING OF THE STATUES OF LIMITATIONS

54.     Each unauthorized transmission of Plaintiff's and customers' Personally Identifiable Information by Defendant is a separate unlawful act that triggers anew the relevant statute of limitations.

55.     Additionally, any applicable statutes of limitation have been tolled by: (1) the fraudulent concealment doctrine based on Defendant's knowing and active concealment and denial of the facts alleged herein including but not limited to its incorporation of the tracking pixels and devices; and (2) the delayed discovery doctrine, as Plaintiff and customers did not and could not reasonably have discovered Defendant's conduct alleged herein until shortly before the filing of this Complaint. Plaintiff and customers did not discover and could not reasonably have discovered that Defendant was disclosing and releasing their Personally Identifiable Information in the ways set forth in this Complaint until shortly before this lawsuit was filed in consultation with counsel.

56.     The Meta Pixel, and other tracking tools on DeepDiscount's website, were and remain entirely invisible to a website visitor.

57.     Through no fault of their own or lack of diligence, Plaintiff and other customers were deceived and could not reasonably discover Defendant's unlawful conduct. Defendant's Privacy Policy does not inform Defendant's customers that their Personally Identifiable Information will be disclosed to unauthorized third parties such as Meta as described in this Complaint.

58.     Plaintiff was therefore ignorant of the information essential to pursue his claims, without any fault or lack of diligence on his part.

59.     Defendant has exclusive knowledge that DeepDiscount's website incorporates the Meta Pixel, and other tracking tools, and the information those pixels and tools are configured to collect and disclose, and yet Defendant failed and continues to fail to disclose to its website visitors, including Plaintiff and other customers, that by interacting with DeepDiscount's website their PII would be disclosed to, released to, or intercepted by Meta and other unauthorized third parties.

60.     Under the VPPA and California law, Defendant was and continues to be under a duty to disclose the nature, significance, and consequences of its collection and treatment of website visitors' and customers' PII. However, to date, Defendant has not conceded, acknowledged, or otherwise indicated to DeepDiscount's customers and other website visitors that DeepDiscount discloses or releases their PII to unauthorized third parties. Accordingly, Defendant is estopped from relying on any statute of limitations.

61.     Moreover, all applicable statutes of limitation have also been tolled pursuant to the discovery rule.

## CLASS ACTION ALLEGATIONS

62.     Plaintiff brings this action, on behalf of himself and all others similarly situated, under Federal Rules of Civil Procedure, Rule 23, on behalf of the following class (the "Class" or "Class Members"):

> All natural persons residing in the United States who while having a Facebook account, ordered Blu-ray or DVD videos on www.deepdiscount.com during the time the Meta Pixel was active on www.deepdiscount.com.

63.     Pursuant to Rule 23, Plaintiff also seeks to represent the following sub-Class ("California sub-Class") consisting of:

> All natural persons residing in California who while having a Facebook account, ordered Blu-ray or DVD videos on www.deepdiscount.com during the time the Meta Pixel was active on www.deepdiscount.com.

64.     Excluded from the Class and California sub-Class are Defendant, its employees, agents and assigns, and any members of the judiciary to whom this case is assigned, their respective court staff, the members of their immediate families, and Plaintiff's counsel.

65.     Plaintiff reserves the right to revise or amend the above Class or California sub-Class definition based on the discovery of new information.

66.     **Numerosity (Rule 23(a)(1)):** The potential members of the proposed Class and California sub-Class as defined and identified herein, are, on information and belief, more than one hundred, and so numerous that joinder of all members of the Class is impracticable.

67.     **Typicality (Rule 23(a)(3)):** Plaintiff 's claims are typical of the claims of the Class and California sub-Class. Plaintiff has been a customer to DeepDiscount since 2023, he used DeepDiscount's website to purchase DVD's and Blu-ray videos and, as a result, his PII was disclosed to Meta without his written consent.

68.     **Commonality (Rule 23(a)(2)):** Common questions of fact and law exist as to all Class Members and California sub-Class Members and predominate over the questions affecting only individual members of the Class. With respect to the Class Members and California sub-Class Members these common questions include but are not limited to:

(a)     Whether Defendant had Meta Pixels embedded on its website that disclosed Class Members' and California sub-Class Members' PII to Meta and/or any other unauthorized third party;

(b)     Whether Defendant is engaged in the business of "rental, sale, or delivery of prerecorded video cassette tapes or similar audio-visual materials" and, thus, is a "video tape service provider" within the meaning of 18 U.S.C. § 2710(a)(4);

///

(c)     Whether Class Members and California sub-Class Members are "subscriber[s] of goods or services from a video tape service provider" and, thus, are "consumers" within the meaning of 18 U.S.C. § 2710(a)(1);

(d)     Whether Class Members and California sub-Class Members are "purchaser[s] . . . of goods or services from a video tape service provider" and, thus, are "consumers" within the meaning of 18 U.S.C. § 2710(a)(1);

(e)     Whether Class Members' and California sub-Class Members' information collected, disclosed, and shared by Defendant with unauthorized third parties, including Meta, constitutes PII within the meaning of the Video Privacy Protection Act, 18 U.S.C. §§ 2710 *et seq.*;

(f)     Whether Defendant obtained "informed, written consent" from Class Members and California sub-Class Members within the meaning of 18 U.S.C. § 2710(b)(2)(b);

(g)     Whether DeepDiscount's acts and practices violated the Video Privacy Protection Act, 18 U.S.C. §§ 2710 et seq.;

(h)     Whether the Class and California sub-Class are entitled to liquidated penalties under 18 U.S.C. § 2710(c)(2)(A), as a result of DeepDiscount's conduct;

(i)     Whether the information DeepDiscount disclosed to Meta concerning Class Members' and California sub-Class Members' video views and downloads constitutes "personal information or the contents of any record, including sales or rental information, which is prepared or maintain" by DeepDiscount within the meaning of Cal. Civ. Code § 1799.3(a);

(j)     Whether Defendant knowingly and intentionally disclosed Plaintiff, Class Members', and California sub-Class Members' "personal information or the contents of any record, including sales or rental information" to Meta within the meaning of Cal. Civ. Code § 1799.3(a);

(k)     Whether Class Members and California sub-Class Members provided written consent to DeepDiscount's disclosure of their personal information or record contents to Meta within the meaning of Cal. Civ. Code § 1799.3(a);

(l)     Whether DeepDiscount's acts and practices violated Cal. Civ. Code § 1799.3;

(m)     Whether the Class and California sub-Class are entitled to civil penalties under Cal. Civ. Code § 1799.3(c), as a result of DeepDiscount's conduct;

(n)      Whether Defendant's acts and practices violated Business and Professions Code §§ 17200, et seq;

(o)      Whether Defendant's acts and practices harmed Plaintiff, Class Members and California sub-Class Members;

(p)      Whether Plaintiff, Class Members, and California sub-Class Members are entitled to an injunction and equitable relief, including but not limited to, restitution and disgorgement of profits; and

(q)      Whether Plaintiff, Class Members, and California sub-Class Members are entitled to damages and other monetary relief, and if so, what is the appropriate amount of damages or other monetary relief; and

(r)      Whether Plaintiff, Class Members, and California sub-Class Members are entitled to reasonable attorneys' fees and costs.

69.      **Adequacy of Representation (Rule 23(a)(4))**: Plaintiff will fairly and adequately protect the interests of the Class and California sub-Class. Plaintiff's interests do not conflict with those of the Class, he is not subject to any unique defenses, and has retained competent and experienced counsel that has experience in complex consumer protection class action and cases, as well as sufficient financial and legal resources to prosecute this case on behalf of the Class.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and California sub-Class. Plaintiff and counsel anticipate no difficulty in managing the litigation of this case as a class action.

70.      **Predominance and Superiority (Rule 23(b)(3)):** In addition to satisfying the prerequisites of Rule 23(a), Plaintiff satisfies the requirements for maintaining a class action under Rule 23(b)(3). Common questions of law and fact predominate over any questions affecting only individual members of the Class and California sub-Class, and a class action is superior to individual litigation and all other available methods for the fair and efficient adjudication of this controversy. Here, common issues predominate because liability can be determined on a class-wide basis even if some individualized damages determination may be required. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense presented

by complex legal and factual issues of the case to all parties and the court system. Furthermore, the expense and burden of individual litigation make it impossible for Class Members and California sub-Class member to individually redress the wrongs done to them and individual Class Members and California sub-Class Members do not have a significant interest in controlling the prosecution of separate actions. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court. If this action is not certified as a class action, it will be impossible as a practical matter for many or most Class Members and California sub-Class Members to bring individual actions to recover money from Defendant, due to the relatively small amounts of such individual recoveries relative to the costs and burdens of litigation. Plaintiff anticipates no difficulty in the management of this action which would preclude its maintenance as a class action.

71.     Plaintiff reserves the right to add representatives for the Class or and California sub-Class, provided Defendant is afforded an opportunity to conduct discovery as to those representatives.

### FIRST CAUSE OF ACTION

***Violation of the Video Privacy Protection Act, 18 U.S.C. § 2710, et seq.***

**[On Behalf of Plaintiff, Class Members and California sub-Class Members]**

72.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

73.     The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally identifying information" concerning any "consumer" to a third party without the "informed, written consent . . . of the consumer" and the opportunity to opt out of disclosures. See generally 18 U.S.C. § 2710.

74.     DeepDiscount is a "video tape service provider" because it is "engaged in the business, in or affecting interstate commerce, of . . . delivery of prerecorded . . . audiovisual materials." 18 U.S.C. § 2710(a)(4).

75.     Plaintiff, Class Members, and California sub-Class Members are "consumers" because they are "subscribers" to DeepDiscount's services, each having purchased a video(s) from DeepDiscount's library of pre-recorded videos. 18 U.S.C. § 2710(a)(1).

76.     Plaintiff, Class Members, and California sub-Class Members are "consumers" because they are "purchasers" of goods and services, in the form of DVDs and Blue-ray videos, from DeepDiscount's library of pre-recorded videos. 18 U.S.C. § 2710(a)(1).

77.     DeepDiscount discloses "personally identifiable information" of Plaintiff, Class Members, and California sub-Class Members to Meta, and, on information and belief, other unauthorized third parties, because DeepDiscount sends "information which identifies a person as having requested or obtained specific video materials" from DeepDiscount, 18 U.S.C. § 2710(a)(3), specifically the title and/or identity of every video purchased alongside information that would permit an ordinary person to identify the user.

78.     DeepDiscount does not seek, let alone receive, "informed, written consent" from Plaintiff, Class Members, and California sub-Class Members, pursuant to 18 U.S.C. § 2710(b)(2)(B), and it consequently never provides them the opportunity to withdraw any such consent, 18 U.S.C. § 2710(b)(2)(iii).

79.     DeepDiscount provides Plaintiff, Class Members, and California sub-Class Members' PII to Meta, and, on information and belief, other unauthorized third parties, knowingly. In particular, DeepDiscount installed, embedded, and/or otherwise permitted the presence of the Meta Pixel, on its website and knew that this pixel and tracking tool would gather and disclose the titles and/or identities of prerecorded videos purchased by Plaintiff, Class Members, and California sub-Class Members.

80.     By knowingly disclosing Plaintiff, Class Members', and California sub-Class Members' personal viewing habits, DeepDiscount violates Plaintiff's and Class Members' statutorily protected right to privacy in their video-viewing habits and activities. See 18 U.S.C. § 2710(c).

81.     As a result of the above-described violations, DeepDiscount is liable to Plaintiff and each Class Member and California sub-Class Members for actual damages in an amount to be determined at trial or, alternatively, for "liquidated damages in an amount of $2,500." 18 U.S.C. § 2710(c)(2)(A). Under the Act, DeepDiscount is also liable for reasonable attorneys' fees, other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined

by a jury and sufficient to prevent and deter the same or similar conduct by DeepDiscount in the future.

82.     Plaintiff, on behalf of himself and the Class and California sub-Class, seeks relief as further described below.

### SECOND CAUSE OF ACTION

*Violation of Cal. Civ. Code § 1799.3*

**[On Behalf of Plaintiff and California sub-Class Members]**

83.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

84.     Cal. Civ. Code § 1799.3(a) prohibits video sellers from disclosing "any personal information or the contents of any record, including sales or rental information, which is prepared or maintained by that person, to any person, other than the individual who is subject of the record, without the written consent of that individual".

85.     DeepDiscount is a "person providing video recording sales or rental services" under Cal. Civ. Code § 1799.3(a) because it is in the business of selling prerecorded videos.

86.     DeepDiscount knowingly and intentionally disclosed information that identified Plaintiff's and California sub-Class Members' video DVD and Blu-ray purchase history to Meta, including their Facebook ID's and the title of the videos that Plaintiff and California sub-Class Members purchased.

87.     Plaintiffs and California sub-Class Members did not consent, in writing or otherwise, to DeepDiscount's disclosure of their video purchases to Meta. DeepDiscount's disclosure of this information to Meta therefore violated Cal. Civ. Code § 1799.3(a).

88.     Plaintiff, on behalf of himself and the California sub-Class, seeks relief as further described below.

///

**THIRD CAUSE OF ACTION**

*Violation of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200* **[On Behalf of Plaintiff and California sub-Class Members]**

89.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

90.    The UCL prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business act or practice.  California Business & Professions Code § 17204 allows "any person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL.

91.    Defendant's acts, omissions, practices, and non-disclosures as alleged herein constituted unlawful, unfair, and fraudulent business acts and practices within the meaning of Cal. Bus. & Prof. Code § 17200, et seq.

92.    The UCL draws upon various sources of law to establish regulations and standards for business practices within California. Defendant has engaged and continues to engage in business acts and practices that are unlawful because they violate Cal. Civ. Code. § 1799.3 and the VPPA, as set forth in this complaint.

93.    Defendant's acts and practices are also "unfair" in that they are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers. Defendant secretly disclosed, released, and otherwise misused Plaintiff's and California sub-Class Members' video viewing information, with no corresponding benefit to its affected customers and other website visitors. And, because customers were unaware of Defendant's incorporation of tracking tools into its website and/or that Defendant would disclose and release their video viewing information to unauthorized third parties, they could not have avoided the harm.

94.    Defendant should be required to cease its unfair and/or illegal disclosure of user data. Defendant has reaped and continues to reap unjust profits and revenues in violation of the UCL.

95.    "Actions for relief" under the UCL may be brought by various government officials and "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Bus. & Prof. Code § 17204.

96.     Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's acts and practices because he would not have paid for Defendant's services had he known that Defendant was disclosing his and other customers' personal identifiers and video viewing information to unauthorized third parties in violation of its legal obligations, social norms, own statements on its website, and reasonable consumer expectations.

97.     To protect consumers from Defendant's unfair and/or unlawful practices, Plaintiff seeks an order from this Court enjoining Defendant from unlawfully disclosing California sub-Class Members' private information about their personal video-viewing habits and activities to unauthorized third parties without their customers informed and written consent.

98.     Plaintiff lacks an adequate remedy at law because the ongoing harms from Defendant's collection and disclosure of its customers' information must be addressed by public injunctive relief and, due to the ongoing and nature of the harm, the harm cannot be adequately addressed by monetary damages alone.

99.     This action, if successful, will enforce an important right affecting the public interest and would confer a significant benefit on the general public.  Private enforcement is necessary and places a disproportionate financial burden on Plaintiff in relation to Plaintiff's stake in the matter. Because this case is brought for the purposes of enforcing important rights affecting the public interest, Plaintiff also seeks the recovery of attorneys' fees and costs in prosecuting this action against Defendant under Code of Civil Procedure § 1021.5 and other applicable law.

100.    Plaintiff seeks relief as further described below.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for relief and judgement as follows:

101.    An order appointing Plaintiff as the Class Representative;

102.    An order certifying the Class and California sub-class as requested and appointing the undersigned attorneys as Class Counsel;

103.    An order declaring that Defendant's conduct violates the statutes referenced herein;

104.    An order awarding Plaintiff, Class Members, and California sub-class Members actual damages but not less than liquidated damages in an amount of $2,500 per Class Member per violation of the Video Privacy Protection Act, 18 U.S.C. § 2710, et seq;

105.    An order awarding Plaintiff and California sub-Class Members a civil penalty of $500 per violation pursuant to Cal. Civ. Code § 1799.3(c);

106.    An order restoring to Plaintiff and other Class Members any money and property acquired by Defendant through its wrongful conduct;

107.    An injunction forbidding Defendant from disclosing information about users' video viewing choices to third parties pursuant to 18 U.S.C. § 2710(c)(2)(D) and pursuant to Cal. Bus. & Prof. Code § 17200 et seq.;

108.    An award of reasonable attorneys' fees and costs of suit, including costs of investigation pursuant to 28 U.S.C § 2710(c)(2)(C), Cal. Civ. Proc. § 1021.5 and any other applicable law;

109.    An award of pre- and post-judgment interest as provided by law; and

110.    An award of such other and further relief, at law and in equity, as the nature of this case may require or as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and all other members of the Class and California sub-class, hereby demands a jury trial on all issues so triable.

Dated: October 1, 2024                                      Respectfully submitted,

   *s/ Julian Hammond*
JULIAN HAMMOND (SBN 268489)
jhammond@hammondlawpc.com
ADRIAN BARNES (SBN 253131)
abarnes@hammondlawpc.com
POLINA BRANDLER (SBN 269086)
pbrandler@hammondlawpc.com
ARI CHERNIAK (SBN 290071)
acherniak@hammondlawpc.com
HAMMONDLAW, P.C.
1201 Pacific Ave, 6th Floor
Tacoma, WA 98402
(310) 807-1666
*Attorneys for Plaintiff and the Putative Class*
