1  JULIAN HAMMOND (SBN 268489)
   jhammond@hammondlawpc.com
2  ADRIAN BARNES (SBN 253131)
   abarnes@hammondlawpc.com
3  ARI CHERNIAK (SBN 290071)
   acherniak@hammondlawpc.com
4  POLINA BRANDLER (SBN 269086)
   pbrandler@hammondlawpc.com
5  HAMMONDLAW, P.C.
   1201 Pacific Ave, 6th Floor
6  Tacoma, WA 98402
   (310) 601-6766 (Tel.)
7  (310) 295-2385 (Fax)

8  *Attorneys for Plaintiff and the Putative Class*

9

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JONATHAN HOANG TO,** individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>**DIRECTTOU, LLC**, a Delaware Limited Liability Company,<br><br>    Defendant. | Case No. 3:24-CV-06447-WHO<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge:       Hon. William H. Orrick<br>Courtroom:  2<br>Hearing Date: December 18, 2024<br>Hearing Time: 2:00 p.m. |

# TABLE OF CONTENTS

NOTICE OF MOTION ................................................................................................................ i

STATEMENT OF THE ISSUES TO BE DECIDED ................................................................ I

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

I.      INTRODUCTION ......................................................................................................... 1

II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............................ 2

      A.      BRIEF SUMMARY OF THE LITIGATION ............................................................... 2

      B.      SUMMARY OF RESEARCH, INVESTIGATION, DISCOVERY AND THE PARTIES' SETTLEMENT EFFORTS ............................................................................................. 3

III.    SUMMARY OF THE PROPOSED SETTLEMENT .................................................... 4

      A.      THE SETTLEMENT PROVIDES SUBSTANTIAL RELIEF TO THE CLASS MEMBERS ...................... 4

      B.      THE ALLOCATION OF RELIEF AMONG SETTLEMENT CLASS MEMBERS ..................... 4

      C.      THE SETTLEMENT CLASS DEFINITION DIFFERS ONLY SLIGHTLY FROM THE CLASS AND SUBCLASS DEFINED IN THE OPERATIVE COMPLAINT ..................... 6

      D.      THE SETTLEMENT'S RELEASE ............................................................................. 7

      E.      THE SETTLEMENT AGREEMENT ALLOWS COUNSEL TO SEEK FEES AND COSTS AND THE SETTLEMENT CLASS REPRESENTATIVE TO SEEK AN INCENTIVE AWARD ..................... 7

IV.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASSES .................................... 8

      A.      THE SETTLEMENT CLASSES SATISFY THE RULE 23(A) PREREQUISITES ................... 8

            1.      Numerosity ........................................................................................... 9

            2.      Commonality ......................................................................................... 9

            3.      Typicality .............................................................................................. 9

            4.      Adequacy ............................................................................................ 10

      B.      THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED ..................... 11

            1.      Common issues of law and fact predominate ..................... 11

            2.      Class treatment of Plaintiff's claims is superior ..................... 12

V.      SETTLEMENT APPROVAL IS WARRANTED ..................... 13

      A.      THE STRENGTHS AND RISKS OF PLAINTIFF'S CASE ..................... 14

            1.      Defendant's Affirmative Defenses ..................... 14

            2.      Comparing the Strengths and Risks of Plaintiff's VPPA Claim ..................... 16

            3.      Comparing the Strengths and Risks of Plaintiff's Claim Under California Civil Code § 1799.3 ..................... 19

            4.      Comparing the Strengths and Risks of Plaintiff's UCL Claim ..................... 20

            5.      Summary of Plaintiff's Realistic Exposure Analysis ..................... 20

B.    FURTHER LITIGATION WOULD BE RISKY, EXPENSIVE, COMPLEX, AND LENGTHY ................ 20

C.    THE RISKS ASSOCIATED WITH CERTIFYING THE CLASS AND MAINTAINING THE CASE AS A CLASS ACTION THROUGH TRIAL ................................................... 21

D.    THE RELIEF OFFERED IN THE SETTLEMENT IS MORE THAN ADEQUATE ............................. 21

1.    The Relief is Fair, Adequate, and Reasonable ............................................. 21

2.    The Plan of Allocation is Reasonable ...................................................... 23

E.    THE SETTLEMENT IS INFORMED BY SUFFICIENT INFORMAL DISCOVERY TO PERMIT AN INFORMED DECISION ................................................................... 23

F.    COUNSEL BELIEVES THE SETTLEMENT IS AN OUTSTANDING RESULT .................................. 24

G.    GOVERNMENTAL PARTICIPATION IS NOT AT ISSUE HERE .............................................. 25

H.    THE SETTLEMENT ALSO SATISFIES THE BLUETOOTH FACTORS ........................................ 25

VI.    THE PROPOSED NOTICE PROGRAM, SETTLEMENT ADMINISTRATOR, AND PROCESS FOR CLAIMS, OPT-OUTS, AND OBJECTIONS SHOULD BE APPROVED ............... 26

A.    THE PROPOSED NOTICE PLAN .............................................................. 26

1.    Class Notice ......................................................................... 26

2.    CAFA Notice ......................................................................... 27

B.    THE SETTLEMENT ADMINISTRATOR ........................................................ 27

C.    OPT-OUTS AND OBJECTIONS: TIMELINE AND INSTRUCTIONS .............................. 27

D.    THE CLAIMS PROCESS ..................................................................... 28

1.    The Claim Form ..................................................................... 28

2.    The Estimated Claim Rate ........................................................ 28

VII.    OTHER CASES AFFECTED ................................................................ 29

VIII.    THE PROPOSED FINAL APPROVAL HEARING SCHEDULE .......................... 30

IX.    CONCLUSION ........................................................................... 31

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .......................................................... 9, 11, 12

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) ................................... 24

*Bertoia v. Randstad US, L.P.*, No. 15-cv-03646-EMC, 2017 WL 1278758 (N.D. Cal. Apr. 6, 2017) . 25

*Briseno v. Henderson*, 998 F.3d 1014 (9th Cir. 2021) ............................................................. 25

*Campbell v. Facebook, Inc.*, No. 13-cv-05996-PJH, 2017 WL 3581179 (N.D. Cal. Aug. 18, 2017), *aff'd*, 951 F. 3d 1106 (9th Cir. 2020) ....................................................................... 22

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ............................................. 14

Class Pls. v. City of Seattle, 955 F.2d 1268 (9th Cir. 1992)). ................................................. 5

*Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030 (N.D. Cal. 2016) .................................................... 2

*Eddings v. D.S. Services of America, Inc.*, No. 15-cv-02576-VC, 2016 WL 3390477 (N.D. Cal. May 20, 2016) ............................................................................................................... 2

*Edwards v. Nat'l Milk Producers Fed'n*, No. 11-CV-04766-JSW, 2017 WL 3623734 (N.D. Cal. June 26, 2017) ............................................................................................................... 26

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980), aff'd, 661 F.2d 939 (9th Cir. 1981) ............................................................................................................................. 24

*Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939 (N.D. Cal. 2013), *aff'd sub nom. Fraley v. Batman*, 638 F. App'x 594 (9th Cir. 2016) ............................................................................ 18, 22

*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982) ........................................................ 13

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................... 10, 12, 13

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) .................................................... 10

*Hunt v. VEP Healthcare, Inc.*, No. 16-cv-04790-VC, 2017 WL 3608297 (N.D. Cal. Aug. 22, 2017) ... 2

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F. 3d 935 (9th Cir. 2011) ............................. 8, 25, 26

*In re Facebook, Inc. Internet Tracking Litigation*, No. 22-16903, 2024 WL 700985 (9th Cir. Feb. 21, 2024) ............................................................................................................................. 18

*In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-MD-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ..................................................................................................... 22

*In re Google Plus Profile, Litig.*, No. 18-CV-06164-EJD-VKD, 2021 WL 242887 (N.D. Cal. Jan. 25, 2021) ....................................................................................................................... 18, 22

*In re Google Referrer Header Priv. Litig.*, No. 10-CV-04809-EJD, 2023 WL 6812545 (N.D. Cal. Oct. 16, 2023) ........................................................................................................... 22

*In re HighTech Emp. Antitrust Litig.*, 985 F.Supp.2d 1167 (N.D. Cal. 2013 ........................... 13

*In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539 (9th Cir. 2019) (en banc) ................... 21

*In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112 (E.D. La. 2013) ........................ 14

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................. 5, 23

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ............................... 14

*In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054 (N.D. Cal. June 18, 1994) ......... 5, 23

*In re Vizio, Inc., Consumer Privacy Litig.*, 16-ml-02693-JLS-KES, 2019 WL 12966639 (C.D. Cal. July 31, 2019)...................................................................................................................... 18

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, No. 15-md-02672-CRB, 2017 WL 2212783 (N.D. Cal. May 17, 2017).............................................................. 14

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020), *aff'd*, No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022) .......... 10

*Jabbari v. Farmer*, 965 F.3d 1001 (2020) ......................................................................................... 21

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir.1998)...................................................... 24

*Martin v. Sysco Corp.*, No. 1:16-cv-00990-DAD-SAB, 2019 WL 3253878 (E.D. Cal. July 19, 2019) 25

*McDonald, et al. v. Kiloo A/S, et al.*, No. 3:17-cv-04344-JD, ECF. No. 406 (N.D. Cal. Apr. 12, 2021) ........................................................................................................................................... 22

*McKenzie v. Fed. Exp. Corp.*, 275 F.R.D. 290 (C.D. Cal. 2011)...................................................... 13

*Newton v. AM. Debt. Servs.*, 854 F. Supp. 2d 712 (N.D. Cal. 2012)................................................. 15

*Ontiveros v. Zamora*, 303 F.R.D. 356 (E.D. Cal. 2014) ................................................................... 24

*Poertner v. The Gillette Co.*, No. 12-v-00803-GAP-DAB, Dkt. 168 (M.D. Fla. Aug. 21, 2014) ......... 22

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ........................................................... 14

*Slaven v. BP Am., Inc.*, 190 F.R.D. 649 (C.D. Cal. 2000) ................................................................... 9

*Smith v. Cardinal Logistics Mgmt. Corp.*, No. 07-cv-02104-SC, 2008 WL 4156364 (N.D. Cal. Sept. 5, 2008) ....................................................................................................................................... 13

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ................................................................................... 16

*St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63 (1919) ........................................................... 18

*Staton v. Boeing Co.*, 327 F.3d 938 (2003)....................................................................................... 10

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) .................................................................. 16

*Valliere v. Tesoro Refin. & Mktg. Co. LLC*, No. 17-cv-00123-JST, 2020 WL 13505042 (N.D. Cal. June 26, 2020) ............................................................................................................................ 10

*Wakefield v. ViSalus, Inc.*, 51 F. 4th 1109 (9th Cir. 2022) .............................................................. 18

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ....................................................................... 9

*Wolf v. Permanente Medical Group, Inc.*, No. 17-cv-05345-VC, 2018 WL 5619801 (N.D. Cal. Sept 14, 2018) ....................................................................................................................................... 8

## STATUTES

15 U.S.C. § 15(a) ............................................................................................................................. 14

18 U.S.C. § 2710 *et seq*.............................................................................................................. 1, 2

18 U.S.C. § 2710(a)(3)...................................................................................................................... 16

18 U.S.C. § 2710(a)(4)...................................................................................................................... 16

18 U.S.C. § 2710(b)(2)(B) ................................................................................................................ 16

18 U.S.C. § 2710(b)(2)(B)(i)-(iii) ........................................................................................... 17

18 U.S.C. § 2710(c)(2)(B) ...................................................................................................... 14

Cal. Business & Professions Code § 17200 *et seq* ................................................................... 5

Cal. Civ. Proc. § 1799.3(c) ..................................................................................................... 19

Cal. Civil Code § 1799.3 ................................................................................................. passim

Fed. R. Civ. P. 23(a) ...................................................................................................... passim

Fed. R. Civ. P. 23(a)(3) .......................................................................................................... 10

Fed. R. Civ. P. 23(b) ........................................................................................................ 11, 12

Fed. R. Civ. P. 23(b)(3) .................................................................................................... 11, 12

Fed. R. Civ. P. 23(e)(2) .......................................................................................................... 13

## TREATISES

7AA Charles Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure, § 1779 (3d ed. 2005) ......................................................................................................................... 12

Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97 (2009) ....................................................................................................................................... 9

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) ............................ 12

## OTHER AUTHORITIES

Federal Judicial Center, Judge's Class Action Notice and Claims Process Checklist and Plain Language Guide 2010 ................................................................................................... 26

## NOTICE OF MOTION

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on December 11, 2024, at 2:00 p.m., or as soon thereafter as this matter may be heard, before the Honorable William H. Orrick in Courtroom 2, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff Jonathan Hoang To ("Plaintiff"), on behalf of himself and the putative Class, by and through his Counsel, shall and hereby does, respectfully move the Court for entry of an Order, pursuant to Federal Rule of Civil Procedure 23(e), in the above-captioned action (the "Action"):

1.      Certifying the proposed Class for purposes of settlement;

2.      Provisionally appointing Plaintiff Jonathan Hoang To as Class Representative of the Settlement Class, and HammondLaw, P.C. as Class Counsel for purposes of settlement;

3.      Granting preliminary approval of the proposed class action settlement between Plaintiff and Defendant DirectToU, LLC ("Defendant" or "DirectToU") as fair, adequate, and reasonable, based upon the terms set forth in the Parties' Class Action Settlement Agreement ("Settlement Agreement"),[1] including payment by Defendant of a non-reversionary cash settlement of **$1,750,000** for the benefit of the Settlement Class;

4.      Approving the allocation of the Settlement Fund as contemplated in the Settlement Agreement;

5.      Approving the form and substance of the proposed email Notice of Proposed Settlement of Class Action ("E-Mail Class Notice"), Notice to be provider on the Settlement Website ("Website Notice"), and Claim Form ("Claim Form"); the manner and timing of disseminating notice to the Class (the "Notice Plan"); and the selection of Angeion Group as the Settlement Administrator;

---

[1] Capitalized terms shall have the same meaning as set forth in the Class Action Settlement Agreement dated October 23, 2024, attached as **Exhibit 1** to the Declaration of Julian Hammond in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Hammond Decl."). In addition, these terms have the following meaning as used herein: (1) "Hoang To Decl." means the Declaration of Plaintiff Jonathan Hoang To in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement; (2) "Weisbrot Decl." means the Declaration of Steven Weisbrot of Angeion Group Re: Proposed Notice Plan; and (3) "Walker Decl." means the Declaration of Jeffrey Walker, in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement.

6. Setting deadlines for Class Members to exercise their rights in connection with the proposed Settlement; and

7. Scheduling a hearing date for final approval of the Settlement and application for attorneys' fees and expenses, and service award.

This Motion is based on: the Memorandum of Points and Authorities below and the exhibits thereto; the Declaration of Julian Hammond and the exhibits thereto, including the Settlement Agreement and exhibits thereto; the Declaration of Steven Weisbrot of Angeion Group Re: Proposed Notice Plan; the Declaration of Jeffrey Walker; the Declaration of Plaintiff Jonathan Hoang To; the Court's record in this matter; and such oral and documentary evidence as may be presented at or before the hearing on this matter.

## STATEMENT OF THE ISSUES TO BE DECIDED

The issues to be decided on this Motion are:

1.    Whether the proposed Settlement on the terms and conditions set forth in the Settlement Agreement warrants preliminary approval;

2.    Whether to certify this Action as a class action for purposes of settlement;

3.    Whether the Court should approve the form and substance of the proposed E-Mail Class Notice, Website Notice, and Claim Form;

4.    Whether the Court should approve the deadlines proposed for Class Members to exercise their rights under the proposed Settlement; and

5.    Whether the Court should schedule a Final Approval Hearing to determine whether the Settlement, and the forthcoming application for attorneys' fees and expenses and service award for the Class Representative should be finally approved.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff's operative Complaint alleges, on behalf of a putative nationwide class, with a putative subclass of California consumers, that Defendant unlawfully disclosed to third parties, information which identifies its customers as having requested or obtained specific video materials or services, in violation of the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq*. (the "VPPA") and California laws.

Plaintiff has achieved a $1,750,000 non-reversionary cash settlement for the benefit of the Settlement Class. The proposed Settlement is an excellent result for Settlement Class Members. Plaintiff has achieved a gross per-Class Member monetary settlement of $6.01, which, as discussed in more detail below, sits comfortably toward the higher end of recent comparable VPPA settlements. *See infra* Part V.D; Hammond Decl. ¶¶ 4, 45. Assuming a claims rate of 5%, the gross share of the cash settlement fund available to each Settlement Class Member submitting a valid claim will be approximately $120.22, and their net share of the cash settlement fund (after the payment of court-approved attorneys' fees and costs, Class Representative Service Award, and Settlement Administration Costs) will be $80.21. Hammond Decl. ¶ 45. In addition, as described in more detail below, the Settlement Agreement requires Defendant, within 45 days of preliminary approval, to modify the Facebook Pixel settings on its website such that specific product information is not shared with Facebook, to remove all other third-party tracking tools, and will prospectively prohibit DirectToU from engaging in the conduct that underlies Plaintiff's claims in the instant case. Settlement Agreement, ¶ 2.2.  Plaintiff is pleased to report that Defendant has removed the Facebook Pixel and the Facebook like button (another tracking tool Plaintiff's expert located on Defendant's website) several days after entering into the Settlement Agreement. Hammond Decl. ¶ 46. Plaintiff has also confirmed that Defendant has removed its customers' information from any list available on Next Mark and that information is no longer available to any data brokers. *Id.*

The amount of the recovery is particularly impressive given the material risk that Defendant would have been able to successfully move to compel individual arbitration of each of Plaintiff's claims on the basis of arbitration provisions in the Terms of Use associated with Defendant's service. Plaintiff

disputes the enforceability of the arbitration provisions but acknowledges the substantial risk of being compelled to individual arbitration. *Id*. ¶¶ 25-26. In addition, Defendant would have challenged Plaintiff's standing and would have argued that Plaintiff's and other Settlement Class Members' respective recoveries are contractually limited to the total amounts they spent purchasing goods and services from Defendant. These risks are in addition to Defendant's likely merits-based arguments, including that its users consented to the practices at issue, that customers' personal information was not actually disclosed, and that the putative class suffered no actual damages.

In reviewing the proposed Settlement, the Court must determine "whether the settlement is 'fair, reasonable, and adequate,' under Rule 23(e), based on any information the district court receives from the parties or can obtain through its own research." *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016); *see also Hunt v. VEP Healthcare, Inc.*, No. 16-cv-04790-VC, 2017 WL 3608297 (N.D. Cal. Aug. 22, 2017); *Eddings v. D.S. Services of America, Inc.*, No. 15-cv-02576-VC, 2016 WL 3390477 (N.D. Cal. May 20, 2016). Balancing the risks against the substantial attendant benefits, the Court should find that the Settlement Agreement more than meets the applicable standard. Accordingly, Plaintiff hereby moves the Court for preliminary approval.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.    Brief Summary of the Litigation

On August 12, 2024, Plaintiff Hoang To filed this putative class action lawsuit in the Superior Court for the State of California, County of Alameda, alleging, on behalf of Plaintiff and a putative class of California consumers, that Defendant unlawfully disclosed to third parties, information which identifies its customers as having requested or obtained specific video materials or services, allegedly without permission in violation of the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq*. (the "VPPA") and California laws. Initial Complaint, Dkt. 1, ¶¶ 1-15. Defendant removed this case on September 12, 2024. Dkt. 1. On September 18, 2024, the Court granted Defendant's Motion for Extension of Time to Answer. Dkt. 9. On October 1, 2024, Plaintiff filed his First Amended Complaint which retained Plaintiff's allegations but which proposed a nationwide class with a California subclass. Dkt. 10. On October 16, 2024, the Parties filed a stipulation seeking to extend the Defendant's deadline to file a responsive pleading. Dkt. 12.

On October 23, 2024, the Parties executed the Class Action Settlement Agreement.  On October 28, 2024, Counsel for Plaintiffs in *Feller, et al. v. Alliance Entertainment, LLC, et al.*, No. 24-cv-61444-RAR (S.D. Fla.), filed a Motion to Intervene in the instant case. On that same day, the Parties in the instant case notified the Court that they had reached a settlement. Dkt. 16.

On October 29, 2024, the Parties filed a Joint Stipulation to Remand. Dkt. 18.  On November 1, 2024, in light of the fact that the Court had not granted the Parties' Stipulation to Remand, Plaintiff filed the Second Amended Complaint (Dkt. 23), pursuant to the parties' stipulation (Dkt. 22) in order to conform to the settlement.

**B.    Summary of Research, Investigation, Discovery and the Parties' Settlement Efforts**

The Settlement is a product of informed, arm's-length negotiations. Hammond Decl. ¶ 7. As set out in detail in Hammond Declaration, Plaintiff's counsel conducted extensive research and investigation prior to and after the filing of the Complaint, including analyzing the presence of tracking tools on Defendant's websites, and retaining an expert to confirm their findings. *Id.* ¶¶ 15, 17.  Plaintiff's counsel also analyzed the sign up and purchase process and Defendant's Terms of Use and the Privacy Policy. *Id.* ¶¶ 14-17.  In addition, Plaintiff analyzed changes to the sign up and purchases process and to the Terms of Use and the Privacy Policy through information by accessing historic screenshots of website available on the Wayback Machine.  *Id.* ¶ 15. Plaintiff's Counsel also analyzed dozens of orders on motions to dismiss and summary judgment motions in other VPPA cases to assess the strengths and weaknesses of Plaintiff's claims.  *Id.*

Shortly after Defendant removed the case to this Court, the parties began to engage in settlement discussion and Defendant provided data and documents as part of informal discovery, including an estimate of the Class size (and the size of the California Subclass).  *Id.* ¶ 21.  Over the next several days, the Parties exchanged a number of offers and counteroffers and continued to negotiate over the details of a potential settlement, including a potential monetary payment by Defendant. *Id.* On October 19, 2024, the Parties reached an agreement in principle and thereafter continued to engage in discussions to resolve numerous important details associated with finalizing the details of the Settlement, including the Notice Plan, the appropriate allocation of the Settlement Fund among Class Members, the claims process, and the distribution plan. *Id.* Ultimately, on October 23, 2024, the Parties executed the Class

Action Settlement Agreement ("Settlement Agreement"), which is now presented to the Court for approval. *Id.* ¶ 22.

## III.    SUMMARY OF THE PROPOSED SETTLEMENT

### A.    The Settlement Provides Substantial Relief to the Class Members

The Settlement Agreement creates a non-reversionary Settlement Fund for the benefit of the Settlement Class in the amount of **$1,750,000**. Settlement Agreement ¶ 1.31(a). The Settlement Fund, less a court-approved Attorneys' Fees and Expenses Award, court-approved Incentive Award to the Class Representative, and Notice and Administration Expenses, will be allocated among Settlement Class Members who submit a valid claim form in accordance with the plan of allocation set out in the Settlement Agreement, and discussed immediately below in Part III.B. *Id.* ¶ 2.1(b). The gross per-Class Member share of the Settlement Fund will be approximately $6.01. Hammond Decl. ¶¶ 4, 45. The net per-Class Member share will be approximately $4.01. *Id.* Assuming a claims rate of 5%, Plaintiff estimates that the average Authorized Claimant's gross share of the Settlement Fund will be $120.22, and the average Authorized Claimant's net share of the Settlement Fund will be $ 80.21. *Id.* This represents significant monetary relief for Settlement Class Members; well above the average recovered in comparable cases. *See infra* Part V.D; Hammond Decl. ¶¶ 4, 45.

In addition to the cash payment to be made by Defendant, the Settlement Agreement requires Defendant to modify the Meta Pixel settings on its website so that specific product information is not shared with Facebook. Settlement Agreement ¶ 2.2. Additionally, Defendant will not knowingly share information which identifies a person as having requested or obtained specific video materials or services with third parties, except as permitted by the VPPA. *Id.*

### B.    The Allocation of Relief Among Settlement Class Members

The Settlement Fund, less a court-approved Attorneys' Fees and Expenses Award, court-approved Incentive Award to the Class Representative, and Notice and Administration Expenses, will be allocated according to the plan of allocation set out in the Settlement Agreement among those Settlement Class Members who complete and submit a simple claim form. Hammond Decl. ¶¶ 4, 45; Settlement Agreement, ¶ 2.1. Under the Settlement Agreement, Settlement Class Members who submit Approved Claims will be entitled to a *pro rata* share of the Settlement Fund. *Id.* ¶ 2.1(b).

1    "Approval of a plan of allocation of settlement proceeds in a class action ... is governed by the

2    same standards of review applicable to approval of the settlement as a whole: the plan must be fair,

3    reasonable and adequate." *In re Oracle Sec. Litig.,* No. C-90-0931-VRW, 1994 WL 502054, at *1-2

4    (N.D. Cal. June 18, 1994) (citing *Class Pls. v. City of Seattle,* 955 F.2d 1268, 1284-85 (9th Cir. 1992)).

5    Here, Plaintiff's proposed Plan of Allocation is fair, reasonable, and adequate because it attempts to

6    "allocate the settlement funds to class members based on . . . the strength of their claims on the merits."

7    *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) (citing *In re Oracle Sec.*

8    *Litig.,* 1994 WL 502054, *1-2 (other internal citation omitted)).

9        Given the strengths of the VPPA claim in the instant case, Plaintiff believes it appropriate and

10   fair to allocate an equal *pro rata* share of the portion of the Settlement Fund available for distribution to

11   Settlement Class Members to each Class Member submitting an Approved Claim. Settlement

12   Agreement, ¶ 2.1(b). Plaintiff has brought one claim on behalf of a nationwide class, with two further

13   claims on behalf of a California sub-class. Given the strength of the nationwide claim, which covers

14   identical conduct to both the California Civil Code § 1799.3 claim and the derivative California Business

15   & Professions Code § 17200 *et seq.* ("UCL") claim, Plaintiff does not believe it would be appropriate

16   for members of the California subclass to receive more than other members of the nationwide Settlement

17   Class.

18       Should there be any checks that are not cashed within 180 days of issuance of payment, or there

19   remain residual funds from failed electronic payments, the Settlement Agreement provides that such

20   residual funds shall be redistributed on a *pro rata* basis to Settlement Class Members who cashed their

21   initial checks or received their initial electronic payment. Settlement Agreement, ¶ 2.1(d). If the amount

22   to be received by each Settlement Class Member in the secondary distribution is less than $10.00, or the

23   secondary distribution is otherwise infeasible, residual funds shall, subject to Court approval, revert to

24   a cy pres. *Id.* The Parties have selected the Electronic Privacy Information Center as the intended

25   recipient of any *cy pres* award and respectfully request that the Court approve that selection. Hammond

26   Decl. ¶¶ 70-73; Walker Decl. ¶ 2.

27   ///

28   ///

### C.    The Settlement Class Definition Differs Only Slightly from the Class and Subclass Defined in the Operative Complaint

Plaintiff's operative Second Amended Complaint contains a putative nationwide class with a putative California subclass. The putative nationwide class is defined as:

> All natural persons residing in the United States who purchased a video or videogame from Defendant or signed up to receive notices about videos or videogames from Defendant, and about whom information which identified such persons as having requested or obtained specific video materials or services from Defendant may have been disclosed to a third party, including, but not limited to, Meta.

The putative California subclass is defined as:

> All natural persons residing in California who purchased a video or videogame from Defendant or signed up to receive notices about videos or videogames from Defendant, and about whom information which identified such persons as having requested or obtained specific video materials or services from Defendant may have been disclosed to a third party, including, but not limited to, Meta.

The Settlement Agreement defines a single Settlement Class as follows:

> "Settlement Class" means all persons who reside in the United States, purchased a video or videogame from Defendant or signed up to receive notices about videos or videogames from Defendant, and about whom information which identified such persons as having requested or obtained specific video materials or services from Defendant may have been disclosed to a third party between August 8, 2022 and the date of Preliminary Approval. Also included in the "Settlement Class" are all persons who reside in California, purchased a video or videogame from Defendant or signed up to receive notices about videos or videogames from Defendant, and about whom information which identified such persons as having requested or obtained specific video materials or services from Defendant may have been disclosed to a third party between August 8, 2020 and the date of Preliminary Approval.

Settlement Agreement, ¶ 1.30.

The differences between the definition of the Settlement Class and the definitions of the Class and Subclass proposed in the Second Amended Complaint are minimal. Aside from the fact that the Settlement Class combines the definitions of the Class and Subclass in the Second Amended Complaint, the material difference is that the Settlement Class is limited to persons residing in California about whom information "may have been disclosed to a third party between August 8, 2020 and the date of Preliminary Approval," and persons residing elsewhere in the United States about whom information "may have been disclosed to a third party between August 8, 2022 and the date of Preliminary

Approval." In the Second Amended Complaint, Plaintiff alleges that the relevant statutes of limitation should be tolled. Comp. ¶¶ 59-68. In reaching the Settlement Agreement, the Parties agreed to limit the relevant time period to the beginning August 8, 2022, for non-California Class Members. The Settlement Class definition extends back a further two years for California Class Members because of the UCL's four-year statute of limitations.

### D.    The Settlement's Release

In exchange for the benefits to be provided to the Settlement Class, the Settlement Agreement proposes to release specific parties, including DirectToU and its current, former and/or future parents, subsidiaries, divisions, and/or affiliates, from all claims "arising out of any facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures relating to or arising out of the collection of information and/or the sharing of information with third parties which identifies a person as having requested or obtained specific video materials or services, including all claims that were alleged or brought or could have been alleged or brought in the Action." Settlement Agreement, ¶¶ 1.25-1.26. Thus, the claims released by the Settlement Agreement are those based on the same conduct regarding the alleged sharing of personally identifiable information relating to video materials or services that underlies the claims pled in the Second Amended Complaint, although not limited to the claims actually pled. Plaintiff believes this difference is appropriate given the Parties desire to resolve all issues relating to Defendant's alleged disclosure of personally identifiable information within the meaning of the VPPA.

### E.    The Settlement Agreement Allows Counsel to Seek Fees and Costs and the Settlement Class Representative to Seek an Incentive Award

Plaintiff will seek fees for his Counsel in an amount not exceeding a total of 25% of the Settlement Fund; the total fees Counsel may request is $437,500. Settlement Agreement, ¶ 8.1. Should the Court award less than the amount sought by Class Counsel, the difference between the amount sought and the amount ultimately awarded by the Court shall remain in the Settlement Fund for distribution to eligible Settlement Class Members. *Id*.

Plaintiff's Counsel engaged in substantial work investigating Plaintiff's claims prior to filing this case and has continued to spend significant time investigating and pursuing the instant action, including

drafting two amended Complaints, including the operative Second Amended Complaint, since filing Plaintiff's initial complaint in state court. In total, Plaintiff's Counsel has spent over 200 hours thus far, resulting in a lodestar of more than $140,000, and will expand additional time before final approval is granted. Hammond Decl. ¶ 61. This is well within the range of multipliers commonly awarded. *See Wolf v. Permanente Medical Group, Inc.*, No. 17-cv-05345-VC, 2018 WL 5619801, at *2 (N.D. Cal. Sept 14, 2018) (approving multiplier of 2.75-3.0 and citing cases). Moreover, 25% of the settlement amount is the benchmark percentage for a reasonable fee in this Circuit. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F. 3d 935, 942 (9th Cir. 2011). Thus, the fee request is eminently reasonable under either a "percentage of the common fund method," or the "lodestar method." *Wolf*, 2018 WL 5619801, at *2. The enforceability and effectiveness of the Settlement Agreement is not contingent upon approval of Plaintiffs' fee request. *Id.* ¶¶ 6.4, 8.1.

The Settlement Agreement also provides that Settlement Class Counsel may apply to the Court for up to $20,000 for reimbursement of litigation costs and expenses. Settlement Agreement, ¶ 8.1. Currently, proposed Settlement Class Counsel have incurred a total of $9,275.95 in litigation costs and expenses to date, including filing and service fees, fees charged by consulting experts, and research costs. Hammond Decl. ¶ 63.

Finally, as set forth in the Settlement Agreement, Plaintiff will ask for appointment as Settlement Class Representative and seek approval of a service award of up to $5,000. Settlement Agreement, ¶ 8.3. As with Plaintiff's fee request, the enforceability and effectiveness of the Settlement Agreement does not depend upon the amount of the Service/Incentive Award paid to Plaintiff. Settlement Agreement, ¶¶ 6.4, 8.3.

## IV.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASSES

### A.    The Settlement Classes Satisfy the Rule 23(a) Prerequisites

Although the Parties have settled, the Court must nevertheless certify that the proposed Settlement Class satisfies Rule 23. Rule 23(a) requires: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). In addition, the Class must satisfy one of the three subsections of Rule 23(b). However, when "[c]onfronted with a request for a settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable

management problems . . . for the proposal is that there [will] be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

### 1. Numerosity

Here, numerosity is met. The Class consists of an estimated 291,128 individuals dispersed throughout the United States. Settlement Agreement, ¶ 1.31(a). This includes a California Subclass that consists of approximately 35,247 individuals. Hammond Decl. ¶ 6. Numerosity is generally satisfied when a class exceeds forty members. *See, e.g., Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000).

### 2. Commonality

Here, commonality is met. The commonality requirement is satisfied where a plaintiff asserts claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 389-90 (2011).

In the instant case, the class claims derive from Plaintiff's allegations that Defendant disclosed his and other Class Members' Personally Identifiable Information (i.e., personal identifiers and details of the video and videogame purchasing activities) to third parties, without consent. Comp., ¶¶ 1-3, 22-58. This common conduct raises common questions, resolution of which will generate common answers "apt to drive the resolution of the litigation" for the Class as a whole. *Wal-Mart Stores, Inc.,* 564 U.S. at 350 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

### 3. Typicality

Typicality is also met. Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted).

In the instant case, the experiences of the Plaintiff – the proposed Settlement Class Representative - matches the experiences of the other Settlement Class Members that he seeks to

represent. The proposed Settlement Class Representative has suffered the same alleged privacy violations, and allegedly had his personal identifiers and video-viewing habits and information shared in the same manner as Members of the Settlement Class and the California Subclass.

Because the Settlement Class Representative's allegations involve the "same course of conduct," which is "not unique to the named plaintiffs," typicality is satisfied here. *Valliere v. Tesoro Refin. & Mktg. Co. LLC*, No. 17-cv-00123-JST, 2020 WL 13505042, at *5 (N.D. Cal. June 26, 2020) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d at 508). Moreover, Plaintiff and the putative Settlement Class Members he seeks to represent all seek the same remedies. Accordingly, the typicality requirement of Rule 23(a) is satisfied.

### 4. Adequacy

Finally, adequacy too, is met. The fourth and final Rule 23(a) requirement is "adequacy of representation," Fed. R. Civ. P. 23(a)(4), which has two components: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (2003) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

The proposed Class Representative's interests in this case are aligned with, and not antagonistic to, the Class he seeks to represent. *See, e.g., In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *4-5 (N.D. Cal. July 22, 2020), *aff'd*, No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022); Hammond Decl. ¶ 68; Hoang To Decl. ¶ 6. Moreover, the proposed Class Representative and Settlement Class Members, share the same interest in seeking relief based on Defendant's alleged sharing and disclosure of information regarding their private video-viewing activities and in protecting their privacy.

The proposed Class Representative also fully understands his duties as class representative, will protect the interests of absent Settlement Class Members, and has actively participated in this Action and the Parties' efforts in reaching this Settlement. Hoang To Decl. ¶¶ 3-9. He has provided his counsel with necessary factual information, has reviewed and approved the Settlement Agreement, and has communicated with counsel regarding various issues pertaining to this case, and is committed to

continuing to do so until this case closes. Hammond Decl. ¶¶ 67-68; Hoang To Decl. ¶¶ 3-12.

With respect to Class Counsel, Plaintiff is represented by qualified and competent counsel who are highly experienced in class actions generally and in consumer privacy litigation, in particular. Proposed Class Counsel have successfully investigated, commenced, and prosecuted many complex class actions, including the instant action. *See* Hammond Decl. ¶¶ 49-59 and Ex. 4 thereto. Proposed Class Counsel is also currently pursuing several VPPA cases and is intimately familiar with both the issues involved in prosecuting VPPA claims and the range and nature of settlements reached in such cases. *Id.* ¶¶ 20, 50. Despite a significant risk of no recovery, they have devoted substantial time and resources to this case. See *Id.* ¶¶ 61, 63. And their capable representation has been critical in driving this litigation towards settlement.

Accordingly, the adequacy of representation requirement of Rule 23(a) is satisfied.

## B.    The requirements of Rule 23(b)(3) are satisfied

Plaintiff seeks certification of the Settlement Class under Rule 23(b)(3) . Accordingly, he must also show: (1) that common questions of law or fact predominate over questions affecting only individual class members; and (2) that a class action is superior to other methods of resolving the controversy. Fed. R. Civ. P. 23(b)(3). Both requirements are easily satisfied by the proposed Class.

### 1.    *Common issues of law and fact predominate*

The predominance requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. at 623. This requirement is satisfied in the instant case because the numerous common questions "present a significant aspect of the case and . . . can be resolved for all members of the class in a single adjudication," and, thus, "there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F. 3d at 1022 (citations and quotations omitted).

Here, common issues unquestionably predominate. Because each claim alleged comes from a core set of factual allegations that do not differ between Class Members, the most important issues in this case can all be resolved on a classwide basis. In addition, the Court need not concern itself with questions of the manageability of a trial because the settlement disposes of the need for a trial. The Supreme Court has explained that the "predominance" inquiry is relaxed in the settlement context:

1    "Confronted with a request for settlement-only class certification, a district court need not inquire

2    whether the case, if tried, would present intractable management problems . . . for the proposal is that

3    there be no trial." *Amchem Prods., Inc.*, 521 U.S. at 620 (discussing manageability, which is a subpart

4    of Rule 23(b)(3) predominance).

5                         **2.   Class treatment of Plaintiff's claims is superior**

6           "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives

7    of the particular class action procedure will be achieved in the particular case." *Hanlon,* 150 F.3d at

8    1023. Rule 23(b)(3) provides four factors that a court must consider in determining whether a class

9    action is superior to other methods of adjudication. These factors are:

10          (A) the class members' interests in individually controlling the prosecution or defense of
            separate actions;

11          (B) the extent and nature of any litigation concerning the controversy already begun by or
12          against class members;

13          (C) the desirability or undesirability of concentrating the litigation of the claims in the
            particular forum; and

14          (D) the likely difficulties in managing a class action.

15    Fed. R. Civ. P. 23(b)(3). "'[T]he purpose of the superiority requirement is to assure that the class is the

16    most efficient and effective means of resolving the controversy.'" *Wolin v. Jaguar Land Rover N. Am.,*

17    *LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting 7AA Charles Wright, Arthur Miller & Mary Kay

18    Kane, Federal Practice and Procedure, § 1779 at p. 174 (3d ed. 2005)).

19          In the instant case, there is no question that class treatment is superior to the litigation of close

20    to three hundred thousand individual claims. First, "[f]rom either a judicial or litigant viewpoint, there

21    is no advantage in individual members controlling the prosecution of separate actions. There would be

22    less litigation or settlement leverage, significantly reduced resources and no greater prospect for

23    recovery." *Hanlon,* 150 F.3d at 1023. The damages sought by each Settlement Class Member, when

24    weighed against their risks, are not so large as to counsel against certification. *See Smith v. Cardinal*

25    *Logistics Mgmt. Corp.,* No. 07-cv-02104-SC, 2008 WL 4156364, at *11 (N.D. Cal. Sept. 5, 2008).

26          Second, as described below in Part VII, there is only one other pending action against Defendant

27    related to the claims at issue in the instant case; *Feller, et al. v. Alliance Entertainment, LLC, et al.*, No.

28    24-cv-61444-RAR (S.D. Fla.). The existence of that case does not mean that treatment of the instant

case as a class action is not superior to individual adjudication of all Class Members' claims.

Third, concentrating litigation in this district is desirable because two of the three claims are brought under California law on behalf of a subclass composed of California residents. *See McKenzie v. Fed. Exp. Corp.*, 275 F.R.D. 290, 302 (C.D. Cal. 2011) ("Here, there is no reason to believe that concentrating this action in this Court is undesirable, especially considering that the challenge is under California law, and the proposed class is composed of only hourly employees in California.").

Finally, the fourth factor, which concerns the difficulty of managing a class action, depends largely on whether Plaintiff's case "rises and falls [on] common evidence." *In re HighTech Emp. Antitrust Litig.*, 985 F.Supp.2d 1167, 1228 (N.D. Cal. 2013). This factor overlaps with the requirements of commonality, typicality, and predominance, discussed above. Because Plaintiff easily satisfies those three requirements, the fourth superiority factor weighs in favor of certification.

The resolution of all claims of all Settlement Class Members in a single proceeding also promotes judicial efficiency and avoids inconsistent decisions. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (noting "the class-action device saves the resources of both the courts and the parties be permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23."). Accordingly, the superiority requirement is satisfied, and the Court should provisionally certify the Settlement Class for purposes of settlement.

## V.    SETTLEMENT APPROVAL IS WARRANTED

Rule 23 requires the Court to determine whether the Settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To assess the fairness of a class settlement, Ninth Circuit courts consider factors including:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of future litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.[2]

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). As explained below, these factors strongly favor

---

[2] This final factor cannot be addressed now because Class Members have not yet had the chance to react.

preliminary approval.

## A.     The Strengths and Risks of Plaintiff's Case

Plaintiff believes his claims are meritorious and he intended to pursue them aggressively through litigation and, if necessary, trial. Nevertheless, Plaintiff acknowledges that he faces a number of procedural and merits-based risks which threaten his ability to recover. Below, Plaintiff provides an analysis of the substantive strengths and risks of his claims, provides an estimate of potential realistic exposure on each claim, and explains the discounts he has applied to that exposure for settlement purposes.[3]

### 1.   *Defendant's Affirmative Defenses*

Defendant has raised with Plaintiff, and, were litigation to continue, would almost certainly raise, a number of affirmative defenses which, if successful, could preclude Plaintiff from bringing his claims in Court, could limit Plaintiff's ability to recover more than the amounts actually paid by Plaintiff and Class Members to Defendant, and could preclude Plaintiff from bringing his claims on a class basis. Success on even one of these defenses would dramatically reduce Plaintiff's potential recovery.

a.   Risk that Plaintiff is Compelled to Arbitrate His Claims on an Individual Basis

The most significant risk faced by Plaintiff and the Settlement Class Members in this litigation is that Defendant would successfully move to compel individual arbitration of Plaintiff's claims. Customers whether signing up for an account with Defendant or purchasing videos or videogames from Defendant as a guest, execute what Defendant will argue is a "click-wrap" agreement which purports to signify agreement by the customer with the Terms of Use of the respective website used by each

---

[3] Plaintiff does not analyze punitive damages here, even though some of the claims allow their recovery. *See, e.g.,* 18 U.S.C. § 2710(c)(2)(B). Plaintiff would seek such damages, where available, at trial. However, even in an antitrust class action, where treble damages are automatic, see 15 U.S.C. § 15(a), "courts generally determine fairness . . . based on how it compensates the class for past injuries, without giving much, if any, consideration to treble damages." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964 (9th Cir. 2009). Unlike treble antitrust damages, punitive damages are inherently unpredictable and discretionary. For that reason, they typically play a limited role in determining the fairness of a settlement. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, No. 15-md-02672-CRB, 2017 WL 2212783, at *24 (N.D. Cal. May 17, 2017) (explaining that, because "any award of punitive damages is inherently speculative and discretionary, courts regularly approve settlements that offer no or little compensation representing the risk of a punitive damages award" (quoting *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 155 (E.D. La. 2013)).

customer. The Terms of Use for each of Defendant's websites contain an arbitration provision which purports to require individual arbitration of any claim Plaintiff might bring against Defendant. Hammond Decl. ¶ 25. To be clear, the arbitration provisions in each Terms of Use contain a class action waiver which would preclude even a class arbitration. *Id*. Were Defendant to prevail on a motion to compel arbitration, it would eviscerate Plaintiff's classwide claims.

Plaintiff considers it a substantial, concrete, and material risk that Defendant would be able to compel individual arbitration of Plaintiff's claims. Accordingly, Plaintiff believes that a substantial discount is required for all claims based on Defendant's arbitration defense. Hammond Decl. ¶ 26.

### b. Risk that Damages Are Limited to the Amounts Paid by Class Members

An additional litigation risk is that the Court may enforce the damages limitation clause contained in the Terms of Use applicable to each of Defendant's websites. This clause purports to limit Plaintiff's and Class Members' recovery from Defendant to the purchase price of goods purchased by each respective Class Member from Defendant. Hammond Decl. ¶ 27.

Plaintiff believes that the Court or Arbitrator (if a claim was to be arbitrated) would find such a limitation substantively unconscionable and, thus, liable to be severed or otherwise unenforceable as part of an unconscionable contract, because it deprives Plaintiff and Class Members of the relief to which they are entitled. *See Newton v. AM. Debt. Servs.,* 854 F. Supp. 2d 712, 725 (N.D. Cal. 2012) (finding substantively unconscionable a provision limiting plaintiff to amount of fees paid for the service under the agreement because a customer, like plaintiff, was entitled to greater recovery under relevant statutes). Hammond Decl. ¶ 28. Nevertheless, Plaintiff acknowledges that there is a litigation risk that the Court might find that Plaintiff's and Class Members' recovery is limited as Defendant could argue. Were Defendant to prevail on this argument, it would, most importantly, preclude recovery of statutory damages, and would, thus, dramatically reduce Defendant's potential exposure. Plaintiff, therefore, has applied a discount based on this risk. *Id.*

### c. Risk that Defendant May Be Able to Defeat Class Certification

Plaintiff notes that the Court has not certified the class proposed in Plaintiff's Second Amended Complaint. Plaintiff believes that the Class, and the California Subclass, should be certified, nevertheless, as discussed in detail below, there are litigation risks associated with certifying this Class

1  and Subclass for litigation purposes. *See infra* Part V.C.

2          d.  Risk that the Court Finds Plaintiff Does Not Have Article III Standing

3          Were litigation to continue, Defendant would also argue that Plaintiff lacks Article III standing.

4  In *TransUnion LLC v. Ramirez*, the Supreme Court held that, "[o]nly those plaintiffs who have been

5  *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation

6  in federal court." 594 U.S. 413, 427 (2021) (emphasis in original). Thus, "under Article III, an injury in

7  law is not an injury in fact." *Id.* On this basis, Defendant would challenge Plaintiff's standing; arguing

8  that Plaintiff suffered only a "statutory" harm rather than an injury-in fact. *Spokeo, Inc. v. Robins*, 578

9  U.S. 330, 339-40 (2016) (A plaintiff establishes injury in fact when he has suffered an invasion of a

10  legally protected interest that is "concrete and particularized," meaning the injury must "actually exist"

11  and "must affect the plaintiff in a personal and individual way."). Plaintiff disagrees strongly with the

12  suggestion that he cannot establish standing, but acknowledges that this poses another risk to recovery

13  should litigation continue.  Hammond Decl. ¶¶ 30-31.

14          ***2.  Comparing the Strengths and Risks of Plaintiff's VPPA Claim***

15          a.  Strength and Weaknesses

16          Because it is, "engaged in the business . . . of rental, sale, or delivery of prerecorded video

17  cassette tapes or similar audio visual materials," 18 U.S.C. § 2710(a)(4), Defendant is prohibited from

18  disclosing "information which identifies a person as having requested or obtained specific video

19  materials or services from [it]," § 2710(a)(3), without informed, written consent of the consumer, §

20  2710(b)(2)(B). Plaintiff believes that the evidence would show that Defendant made impermissible

21  disclosures without the written consent of Class Members and without any potential authorization under

22  state or federal law.

23          Defendant could argue that Class Members consented to the disclosure of their Personally

24  Identifiable Information - i.e., their personal identifiers and records of their video-viewing activity –

25  when they, purportedly, consented to Defendant's Privacy Policy applicable to each of Defendant's

26  websites. Hammond Decl. ¶ 33. Plaintiff believes this argument would fail; he sees no prospect that any

27  written consent given by Class Members could meet the various requirements for written consent under

28  the VPPA including that: (1) the written consent must be "in a form distinct and separate from any form

setting forth other legal or financial obligations of the consumer;" (2) "at the election of the consumer" the consent must be either "given at the time the disclosure is sought" or "given in advance for a set period of time, not to exceed 2 years or until consent is withdrawn by the consumer, whichever is sooner;" and (3) the video tape service provider must provide "an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." 18 U.S.C. § 2710(b)(2)(B)(i)-(iii). Hammond Decl. ¶ 33.

Plaintiff believes that Defendant's primary defenses would center on the potential difficulties Plaintiff would encounter in establishing whether any specific Class Member's Personally Identifiable Information was disclosed via tracking tools, including the Meta Pixel, or was sold or otherwise disclosed to data brokers and other third parties. Counsel for Plaintiff has experience with the challenges of obtaining discovery from Meta and other third parties that use tracking tools and is mindful of the similar challenges faced when seeking to obtain information data brokers. Although, Plaintiff believes he could overcome these challenges, he recognizes them as posing substantive risk to recovery on this claim.  Hamond Decl. ¶ 34.

### b.  Realistic Exposure and Discounts Applied

Pursuant to 18 U.S.C. § 2710(c), Plaintiff, on behalf of the putative nationwide Class, seeks actual damages but not less than liquidated damages in an amount of $2,500 per Class Member.

Based on the approximately 291,128 Settlement Class Members, the total maximum exposure on this claim is close to $727,820,000. Hammond Decl. ¶ 35. Plaintiff expects that such a figure would be subject to a due process challenge. *Id.* ¶ 36. The Ninth Circuit recently held in *Wakefield v. ViSalus, Inc.* that "aggregated statutory damages . . . are subject to constitutional limitation in extreme situations – that is, when they are 'wholly disproportioned' and 'obviously unreasonable' in relation to the goals of the statute and the conduct the statute prohibits." 51 F. 4th 1109, 1123 (9th Cir. 2022) (quoting *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919)); *see also In re Facebook, Inc. Internet Tracking Litigation*, No. 22-16903, 2024 WL 700985, *1 (9th Cir. Feb. 21, 2024) ("With 124 million potentially affected Facebook users in the United States, the district court properly rejected the $1.24 trillion in statutory damages proposed by Objectors as an unreasonable baseline that would violate due process. *See Wakefield v. ViSalus, Inc.*, 51 F.4th at 1121–22. As a court in this district concluded in

another class settlement involving statutory damages, "[g]iven the class size, it is not plausible that class members could recover the full amount of the statutory penalties in any event." *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 944 (N.D. Cal. 2013), *aff'd sub nom. Fraley v. Batman*, 638 F. App'x 594 (9th Cir. 2016).

In addition, Defendant could also argue that damages under the VPPA are discretionary. *See* 18 U.S.C. § 2710(c)(2)(A) (A "court *may* award actual damages but not less than liquidated damages in an amount of $2,500." (emphasis added)).  Hammond Decl. ¶ 36.

For settlement purposes only, Plaintiff suggests that a fair estimate of the damages recoverable by each Class Member can be derived from the value of the data allegedly disclosed. In *In re Vizio, Inc., Consumer Privacy Litig.*, the court cited to expert opinion valuating personally identifiable video viewing data as worth approximately $4.76 per individual. 8:16-ml-02693-JLS-KES, 2019 WL 12966639, at *9 (C.D. Cal. July 31, 2019). This figure is consistent with other estimates for the value of personally identifiable confidential information in other cases. *See, e.g., In re Google Plus Profile, Litig.,* No. 18-CV-06164-EJD-VKD, 2021 WL 242887, at *5 (N.D. Cal. Jan. 25, 2021) (citing to expert opinion valuing exposed personal information of Google+ users, including users' profile information, including users' names, genders, and email addresses, as well as additional profile fields, such as occupation and places lived, at between $0.20 to $29.60, depending on the information type disclosed, with an average of $2.50 per individual). Similarly, in a paper presented to PrivacyCon 2020, hosted by the Federal Trade Commission, the authors reported that U.S. consumers they surveyed would require, on average, $5 per month in order for a financial institution to have the right to share information on their respective account balances with any company or individual willing to pay for it. Hammond Decl. ¶ 37 and Exhibit 2.

Even if one assumes a value of $20 per Class Member as the appropriate measure of damages, then Defendant's exposure is $5,822,560. Hammond Decl. ¶ 37. Plaintiff suggests this is a far more reasonable figure for Defendant's exposure than $727 million. *Id.* ¶ 38. This figure would then be subject to appropriate discounts for the risks of being compelled to arbitration, the risk of recovery being limited to amounts paid by Class Members, the risk of no class being certified on this claim, and further discounts based on the merits-risks discussed immediately above. *Id.* Assigning a 50% discount on the

basis of these risks, combined, Plaintiff estimates Defendant's realistic exposure on this claim at $2,911,280. *Id.*

### 3. Comparing the Strengths and Risks of Plaintiff's Claim Under California Civil Code § 1799.3

#### a. Strengths and Weaknesses

The analysis of the strengths and weaknesses of Plaintiff's § 1799.3 claim is similar to that of the VPPA, except that Defendant's liability under § 1799.3 is for "willful violation[s]" of the section, whereas the VPPA prohibits a video tape service provider from "knowingly disclos[ing]" personally identifiable information. Compare § 1799.3(c) with 18 U.S.C. § 2710(b). Accordingly, Defendant has an additional potential defense against Plaintiff's § 1799.3 claim, in addition to those discussed above with respect to Plaintiff's VPPA claim.

#### b. Realistic Exposure and Discounts Applied

Similarly to Plaintiff's claim under the VPPA, the potentially recoverable amount, prior to any discounts, and without considering due process, is massive. Pursuant to Cal. Civ. Code § 1799.3(c), for each willful violation, a Class Member can recover a civil penalty of $500. Even assuming that each Class Member can recover only $500 (rather than $500 for each purchase from Defendant or for each time his or her PII was disclosed), Defendant's theoretical exposure is $17,623,500. Hammond Decl. ¶ 40.[4] Defendant would likely argue that this figure too raises significant due process concerns. Thus, Plaintiff, again, suggests that a reasonable estimate can be generated by applying the figure of $20 for each California sub-class Member. This results in an estimated maximum recovery of $704,940. *Id.*

And, the potentially recoverable amount on this claim is subject to discounts for the risk of being compelled to arbitration, the risk of recovery being limited to the amounts paid by Class Members, the risk of no class being certified on this claim, and further discounts based on the merits-risks discussed immediately above. Assigning a 50% discount on the basis of these risks, combined, Plaintiff estimates Defendant's realistic exposure on this claim at $352,470. Hammond Decl. ¶ 41. In addition, a discount is warranted because the Court might not permit a substantial recovery under both the VPPA and § 1799.3. *Id.* ¶ 42.

---

[4] $500 x. 35,247 Californian Class Members.

### 4.  *Comparing the Strengths and Risks of Plaintiff's UCL Claim*

Plaintiff's UCL claim is derivative of his other claims. Moreover, given the strengths of the VPPA claim, and the § 1799.3 claim for members of the California Subclass, Plaintiff thinks that his UCL claim would likely only entitle him to the same or similar monetary relief that he would obtain pursuant to those claims. Accordingly, Plaintiff ascribes *de minimus* value to this claim. Hammond Decl. ¶ 42, fn. 2. Plaintiff notes, however, that, while the Settlement Class extends back to include non-Californian Class Members whose PII may have been disclosed on or after August 8, 2022, on the basis of the VPPA's two-year statute of limitations, the Settlement Class extends back to include Californian Class Members whose PII may have been disclosed on or after August 8, 2020, on the basis of the UCL's four-year statute of limitations. *Id.*

### 5.  *Summary of Plaintiff's Realistic Exposure Analysis*

Plaintiff brings one claim on behalf of a nationwide class under the VPPA. Plaintiff estimates Defendant's realistic exposure under this claim to be $2,911,280. Hammond Decl. ¶ 38. Plaintiff brings a further two claims on behalf of Members of the California Subclass. For his Civil Code § 1799.3 claim, Plaintiff estimates Defendant's realistic exposure to be $352,470. *Id.* ¶ 41. Plaintiff assigns *de minimus* value to his UCL claim. *Id.* ¶ 43, fn. 1. However, because of the strength of the VPPA claim, and because the other two claims seek to recover on the basis of the same underlying conduct as the VPPA, and because the § 1799.3 claim seeks a civil penalty akin to the liquidated damages available under the VPPA, Plaintiff considers Defendant's realistic aggregate exposure on all three claims to be similar to, and dependent on, Defendant's exposure to Plaintiff's VPPA claim. *Id.* ¶ 42.

### B.  **Further Litigation Would be Risky, Expensive, Complex, and Lengthy**

As detailed above, there are a number of risks which, combined, mean that there is no certainty that Plaintiff and Settlement Class Members would recover anything from this case should it proceed in litigation. Moreover, even were Plaintiff and a certified class to prevail at trial, Defendant would likely appeal. Thus, absent this Settlement, this Action could have taken many years to be finally resolved. Hammond Decl. ¶¶ 43-44.

///

///

C. **The Risks Associated with Certifying the Class and Maintaining the Case as a Class Action Through Trial**

In assessing the likelihood that the Class and Subclass proposed in Plaintiffs' Second Amended Complaint would be certified by this Court and then upheld on appeal, Plaintiff understands that Defendant is prepared to present arguments that individualized inquiries abound. For example, some customers may have used browsers and other tools which prohibited or limited the disclosure of their PII to Meta and other third parties. While Plaintiff believes that he would have been able to certify the Settlement Class, such issues, which could vary from Class Member to Class Member, would have resulted in a contested motion for class certification. Hammond Decl. ¶ 29.

Notably, however, while these individualized issues may have weighed against certifying the proposed Class and/or some of Plaintiff's claims for litigation purposes, they do not weigh against certification of the Class and claims for settlement purposes. "A class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable." *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 558 (9th Cir. 2019) (en banc); *see also Jabbari v. Farmer*, 965 F.3d 1001, 1005–06 (2020).

D. **The Relief Offered in the Settlement is More Than Adequate**

1. *The Relief is Fair, Adequate, and Reasonable*

The Settlement Agreement creates a cash settlement of $1,750,000. The monetary relief offered to Settlement Class Members is more than fair, adequate, and reasonable. The gross per-Class Member share of the Settlement Fund will be approximately $6.01. Hammond Decl. ¶¶ 4, 45. The net per-Class Member share will be approximately $4.01. *Id*. Assuming a claims rate of 5%, Plaintiff estimates that the average Authorized Claimant's gross share of the Settlement Fund will be $120.22, and the average Authorized Claimant's net share of the Settlement Fund will be $ 80.21. *Id*.

These figures compare very favorably to the total relief available to claimants in consumer class actions, in general.[5] *See, e.g., In re Google Referrer Header Priv. Litig.*, No. 5:10-CV-04809-EJD, 2023

---

[5] Plaintiffs further note that privacy damages are particularly uncertain and numerous privacy class actions have been settled for non-monetary relief only. *See, e.g., Campbell v. Facebook, Inc.*, No. 13-cv-05996-PJH, 2017 WL 3581179, at *8 (N.D. Cal. Aug. 18, 2017) (granting final approval of declaratory and injunctive relief settlement in litigation alleging Facebook engaged in user privacy violations), *aff'd*, 951 F. 3d 1106 (9th Cir. 2020); *In re Google LLC St. View Elec. Commc'ns Litig.*, No.

WL 6812545, at *2 (N.D. Cal. Oct. 16, 2023) (Showing estimated "average recovery of approximately $7.16," actual amount of payment made to each settlement class member was $7.70); *In re Google Plus Profile Litig.*, No. 5:18-cv06164-EJD (VKD), Dkt. 96 at 5-6 (N.D. Cal. Oct. 15, 2020) ($12 or $6 payments per class member); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d at 943, *aff'd sub nom*; *Fraley v. Batman*, 638 F. App'x 594 ($15 payment per class member); *Poertner v. The Gillette Co.*, No. 6:12-v-00803-GAP-DAB, Dkt. 168 at 3 (M.D. Fla. Aug. 21, 2014) ($6-$12 payments per class member); *In re: Vizio, Inc., Consumer Privacy Litig.*, No. 8:16-ml02693-JLS-KES, 2019 WL 12966638, at *4 (C.D. Cal. July 31, 2019) (approving settlement in VPPA case that provided each claimant with an estimated $16.50 at a claims rate of 4.1%).

With respect to VPPA cases in particular, the monetary relief offered places this Settlement towards the high end of the range of court-approved settlements in similar cases. *See* Hammond Decl. ¶ 45. A table of comparable VPPA cases is attached as <u>Exhibit 3</u> to the Hammond Declaration. The per Class Member monetary settlement value in the eight cases included in Counsel for Plaintiff's table ranges from $0.82 to $8.40, with an average of $4.08. Even excluding the *Sony Pictures* settlement (which has the largest class size and the lowest per Class Member value), the average is $4.63. The Parties' Settlement Agreement, in the instant case, provides for an average of $6.01 per Class Member, placing it towards the high end of the range. *Id*. ¶¶ 4, 45.

In addition to monetary relief, the Settlement requires Defendant to comply with the VPPA and § 1799.3 moving forward. Specifically, the Settlement Agreement requires Defendant to "modify the Facebook Pixel settings on Defendant's Website so that specific product information is not shared with Facebook. Additionally, Defendant will not knowingly share information which identifies a person as having requested or obtained specific video materials or services with third parties, except as permitted by the VPPA." Settlement Agreement, ¶ 2.2. Under the Settlement, Defendant must implement these business-practice changes within 45 days of the entry of the Preliminary Approval Order. *Id*. Notably,

---

10-MD-02184-CRB, 2020 WL 1288377, at *16 (N.D. Cal. Mar. 18, 2020) (granting final approval of settlement providing class with injunctive relief and creating a non-distributable *cy pres* settlement fund in litigation alleging Google violated privacy by illegally gathering Wi-Fi network data); *McDonald, et al. v. Kiloo A/S, et al.,* No. 3:17-cv-04344-JD, ECF No. 406 (N.D. Cal. Apr. 12, 2021)  (granting final approval of 16 injunctive relief-only settlements in related privacy class actions accusing defendants of violating child privacy protection laws by collecting and selling PII of children).

Defendant has already completely removed the Facebook Pixel from its website, as well as the Facebook like button. And, Defendant has also ensured that its customers' information is no longer available for purchase on Next Mark's website and that data is no longer available to data brokers or data aggregators. Hammond Decl. ¶¶ 5, 47. This is similar to the non-monetary relief achieved in other VPPA settlements. *See* Hammond Decl. ¶ 5 and Ex. 3.

### 2.  The Plan of Allocation is Reasonable

The proposed Plan of Allocation, set out in the Settlement Agreement, as described above in Part III.B, provides for each Settlement Class Member who submits an Approved Claim to receive a "*pro rata* portion of the Settlement Fund . . . after deducting the Settlement Administration Expenses, any Fee Award and any Incentive Award." Settlement Agreement, ¶ 2.1.

The Plan of Allocation is fair, reasonable, and adequate because it attempts to achieve the appropriate ratio of distribution between members of the Settlement Class and members of the California Subclass. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1045 (Plan of Allocation fair, reasonable, and adequate where it attempted to "allocate the settlement funds to class members based on . . . the strength of their claims on the merits." (citing *In re Oracle Sec. Litig.,* 1994 WL 502054, *1-2 (other citation omitted)).

As described above, *see supra* Part III.B, given the strength of the VPPA claim brought on behalf of the entire Settlement Class, and the fact that this claim covers identical conduct to both the § 1799.3 claim and the derivative California UCL claim, Plaintiff does not believe it would be appropriate for members of the California subclass to receive more than other members of the nationwide Settlement Class. Plaintiff also considered the fact that Settlement Class Members from several states other than California may have been able to pursue state law causes of action analogous or similar to the § 1799.3 and UCL claims; another reason it would not be fair to offer greater relief to California Subclass members.

### E.    The Settlement is Informed by Sufficient Informal Discovery to Permit an Informed Decision

"In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, 'formal discovery is not a necessary ticket to the bargaining table.'" *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) (quoting *Linney v.*

*Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir.1998)). "Rather, the court's focus is on whether 'the parties carefully investigated the claims before reaching a resolution.'" *Id.* (quoting *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) (citation omitted)).

In the instant case, as described in detail in the Hammond Declaration, Settlement Class Counsel engaged in extensive factual and legal research, investigation, and analysis of the Settlement Class' claims before filing Plaintiff's initial complaint. After initiating the instant case, Settlement Class Counsel continued to investigate in order to form a complete picture of the merits of the Settlement Class' claims, and has obtained informal discovery from Defendant including information about the size of the Settlement Class, information about the nature of Defendant's disclosure of customers' information to data brokers and other unauthorized third parties, and information about the configuration of the Meta Pixel on Defendant's websites during the relevant period. Hammond Decl. ¶¶ 14-19. In sum, the information obtained by Plaintiff was more than sufficient for Plaintiff to make an informed decision about the adequacy and desirability of the Settlement.

Additionally, Plaintiff engaged in confirmatory discovery, including directing his expert to test Defendant's websites to ensure that the tracking tools had been removed, and confirming that customers' information was no longer available on Next Mark. Hammond Decl. ¶¶ 5, 19.

### F.    Counsel Believes the Settlement is an Outstanding Result

Courts recognize that the opinion of experienced counsel supporting settlement after arm's length negotiations is entitled to considerable weight. *Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18 (N.D. Cal. 1980), aff'd, 661 F.2d 939 (9th Cir. 1981) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.").

Here, as described above, Counsel for Plaintiff conducted an extensive investigation into the Settlement Class' claims prior to filing the instant case. Since initiating the case, Counsel for Plaintiff has amended Plaintiff's complaint twice, has continued to investigate in order to form a complete picture of the merits of the Settlement Class' claims, and has obtained informal discovery from Defendant. Counsel for Plaintiff consider the Settlement to be an outstanding result. It is particularly so, considering that no Class has been certified, Defendant has a number of class-wide defenses, and a number of Plaintiff's claims rest on novel theories or unsettled areas of law.  Hammond Decl. ¶ 48.

1

### G.    Governmental Participation is Not at Issue Here

This factor is not at issue because there is no government participation in this case. *Bertoia v. Randstad US, L.P.*, No. 15-cv-03646-EMC, 2017 WL 1278758, at *9 (N.D. Cal. Apr. 6, 2017); *see also Martin v. Sysco Corp.*, No. 1:16-cv-00990-DAD-SAB, 2019 WL 3253878, at *6 (E.D. Cal. July 19, 2019).

### H.    The Settlement Also Satisfies the *Bluetooth* Factors

Prior to class certification, class settlements must withstand a "higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth,* 654 F.3d at 946. The Court must be satisfied that "the settlement is not the product of collusion among the negotiating parties." *Id.* at 946-47. The Ninth Circuit has identified three "signs" of possible collusion:

> (1) "when counsel receive[s] a disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing arrangement,'" under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class.

*Briseno v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (quoting *In re Bluetooth*, 654 F.3d at 947). Evaluation of the *Bluetooth* factors assists the Court in determining whether Plaintiffs' Counsel have "allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth*, 654 F. 3d at 947. Here, this evaluation militates strongly in favor of granting preliminary approval.

First, the settlement does not provide that Plaintiffs' Counsel should "receive a disproportionate distribution of the settlement." *Bluetooth*, 654 F. 3d at 947. Rather, as set forth in the Settlement Agreement, proposed Class Counsel may request no more than 25% of the Settlement Fund. Settlement Agreement, ¶ 8.1. Second, the Agreement merely provides that: "Defendant agrees that Class Counsel shall be entitled to an award of reasonable attorneys' fees of up to 25% of the Settlement Fund, and costs of up to $20,000, subject to Court approval." Settlement Agreement, ¶ 8.1. Thus, Defendant has agreed that Plaintiff is entitled to *some* attorneys' fees, but has not agreed not to challenge any amount of attorneys' fees sought by Plaintiff. *Id.* Moreover, the actual attorneys' fees award will be determined by the Court. *Id.* And, third, there is no reversion of any amount of unawarded fees to the Defendant. *See*

*Bluetooth*, 654 F. 3d at 947. The Settlement Agreement establishes that the Settlement Fund is a non-reversionary settlement fund whereby none of that amount, including any attorneys' fees and costs sought by Settlement Class Counsel but not awarded by the Court, will revert to Defendant. Settlement Agreement, ¶¶ 1.31(a), 8.1.

## VI.    THE PROPOSED NOTICE PROGRAM, SETTLEMENT ADMINISTRATOR, AND PROCESS FOR CLAIMS, OPT-OUTS, AND OBJECTIONS SHOULD BE APPROVED

### A.    The Proposed Notice Plan

#### 1.    *Class Notice*

The proposed notice plan is described in extensive detail by the Weisbrot Declaration at paragraphs 18-33. It will include direct email notice (followed, where necessary, by mail notice), a settlement website, and a toll-free telephone number. *Id.* The Settlement Administrator estimates that the email and mail notice program ("direct notice") will likely reach in excess of 70% of the Settlement Class. *Id.* ¶ 41. This is consistent with other court-approved, best-practicable notice programs and far exceeds the reach characterized as the "norm" and a "high percentage" by the Federal Judicial Center Guidelines. *See Edwards v. Nat'l Milk Producers Fed'n,* No. 11-CV-04766-JSW, 2017 WL 3623734, at *4 (N.D. Cal. June 26, 2017) (citing Federal Judicial Center, *Judge's Class Action Notice and Claims Process Checklist and Plain Language Guide* 2010 ("The lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70–95%.").

As this District's guidance recommends, the draft notices include contact information for class counsel; the address for the settlement website (which will contain a summary of the Settlement; enable online Claim Form filing; allow Settlement Class Members to contact the Settlement Administrator with any questions or changes of address; provide notice of important dates (such as the Final Approval Hearing, Claims Submission Deadline, Objection Deadline, Opt-Out Deadline); provide Settlement Class Members who file Claim Forms an online the opportunity to select an electronic payment method (including Venmo, Zelle, PayPal, e-Mastercard), or payment by check; and, contain relevant case documents including the Operative Complaint, the Settlement Agreement, the Long-Form Notice, Plaintiffs' motion for preliminary approval, and the Preliminary Approval Order); the date and time of

the final approval hearing, clearly stating that the date may change without further notices to the Classes; and a note to Class Members to check the settlement website or the court docket to confirm the date. Settlement Agreement, Ex. B (Email Notice), Ex. C (Notice Posted on Settlement Website).

### 2. CAFA Notice

The Settlement Administrator will provide notice pursuant to the Class Action Fairness Act within ten days of the filing of the Settlement Agreement. Weisbrot Decl. ¶ 34.

### B.    The Settlement Administrator

The parties propose Angeion Group ("Angeion") as the settlement administrator. Hammond Decl. ¶ 64; Proposed Order (filed concurrently herewith). The parties obtained competing bids from two prospective settlement administrators. Hammond Decl. ¶ 64. They each concerned generally similar notice and claims processes to the one the parties ultimately selected. *Id.* Counsel for both parties independently evaluated each proposal and conferred with each other regarding the selection of the settlement administrator. *Id.* ¶ 65. Then parties then agreed to choose Angeion. *Id.*

Angeion has experience as an appointed settlement administrator in large class-action settlements, including those involving privacy concerns. Weisbrot Decl. ¶ 12. Angeion's proposal also highlighted its robust data security standards, which comply with industry-recognized standards and include redundancies to ensure data integrity and business continuity, and procedures for handling claimant data, which are of critical importance to the Parties. Weisbrot Decl. ¶¶ 13-17. Angeion also maintains a comprehensive insurance program, including sufficient Errors & Omissions coverage. Weisbrot Decl. ¶ 17. The Parties would not have selected Angeion if they were not comfortable with its data handling practices.

Angeion has estimated the costs of issuing notice and administering the Settlement as less than the $125,000 provided for under the Settlement Agreement. Weisbrot Decl. ¶ 39. These costs will be paid out of the Settlement Fund. Settlement Agreement ¶ 1.28. The estimated costs of notice and administration are reasonable when compared to the value of the Settlement and in light of the size of the Settlement Classes. The estimated costs are less than 7.14% of the Settlement Fund.

### C.    Opt-outs and Objections: Timeline and Instructions

Settlement Class Members have 60 days from the date the Notice is mailed to opt out of or object to the Settlement. Plaintiff's Counsel will also file the motion for fees and costs at least 14 days prior to the deadline to objection. Settlement Agreement, ¶¶ 1.19-1.20; Proposed Order, filed concurrently herewith. Instructions for opting-out and objecting are in plain language and clearly prompt those who wish to opt-out or to object to provide the specific information each action requires. Settlement Agreement, Exs. B & C. The notice clearly informs class members of the opt-out deadline and how to opt out, and requires that they supply only the information needed to opt out of the settlement. *Id.* Exs. B & C. Similarly, the notice informs class members of the objection deadline and instructs them to send their written objections to the Court, and clearly identifies the objection deadline. *Id.*

### D.    The Claims Process

#### 1. *The Claim Form*

It is necessary to require submission of a claim form in order for a Settlement Class Member to receive a monetary payment for several reasons. First, by allowing Settlement Class Members to choose a payment option, rather than simply mailing checks, the use of a claim form makes it more likely that a greater proportion of the settlement funds distributed will actually be received and redeemed by Class Members. Hammond Decl. ¶ 4, fn. 1. Second, and relatedly, the use of a claims form, and the corresponding expected use of electronic means of receiving payment by the majority of Authorized Claimants will help reduce the likelihood of fraud in the receipt of settlement funds. *Id.* Third, the use of a claim form allows monetary payments to be provided by means that are significantly less expensive than writing and mailing checks. *Id.*

#### 2. *The Estimated Claim Rate*

The Settlement Administrator estimates that the claims rate will be approximately 5%. Weisbrot Decl. ¶¶ 37-38. As Angeion explains, this is "around the 5% average Angeion has seen in past privacy settlements it has administered. *Id.* Plaintiff's Counsel also considers this to be a reasonable estimate. One broad analysis of 149 consumer class actions conducted by the Federal Trade Commission concluded that "[a]cross all cases in our sample requiring a claims process, the median calculated claims rate was 9%, and the weighted mean (i.e., cases weighted by the number of notice recipients) was 4%." *See* Fed. Trade Comm'n, Consumers & Class Actions: A Retrospective & Analysis of Settlement

Campaigns, p. 11 (Sept. 2019) ("FTC Report").[6] And, in the instant case, the Settlement Administrator will send a reminder notice 30 days prior to the Claims Deadline and a second reminder notice 7 days prior to the Claims Deadline, to all Settlement Class Members for whom a valid email address is available in the Class List. Settlement Agreement, ¶ 4.1(c). Because Defendant has email addresses for the substantial majority of Settlement Class Members, these reminder notices will be sent to the substantial majority of Settlement Class Members.  *See* Hammond Decl. ¶ 64.

## VII.   OTHER CASES AFFECTED

Plaintiff is aware of one other pending case that would be affected by the proposed Settlement: *Feller, et al. v. Alliance Entertainment, LLC, et al.*, No. 24-cv-61444-RAR (S.D. Fla.). Plaintiff's understanding is that all of the claims in *Feller* will be released if the proposed Settlement in the instant case is approved. The classes proposed in *Feller* are a "Data Brokerage Class" defined as:

> All persons in the United States who, during the two years preceding the filing of this action, purchased prerecorded video material from Defendants and had their Private Viewing Information disclosed to a third-party by Defendant.

And, a "Meta Pixel Class" defined as:

> All persons in the United States who, during the two years preceding the filing of this action purchased prerecorded video material from Defendants' website while maintaining an account with Meta Platforms, Inc. f/k/a Facebook, Inc.

However, no class has been certified in that case, thus it is only individual claims that would be released.

On October 28, 2024, the plaintiffs in *Feller* filed a motion to intervene in the instant case. Dkt. 14. In that motion they leveled a number of unfounded and highly-offensive accusations at Defendant and Counsel for Plaintiff in the instant case: that the settlement in the instant case was the result of a "reverse auction"; that Plaintiffs, in the instant case, brought a duplicative, copy-cat case; and that Plaintiff, in the instant case, has "conducted no discovery, engaged in no meaningful litigation, and does not appeal to have participated in . . . any other arm's-length settlement negotiations with the Defendants." Dkt. 14, 1:7-2:15. These inflammatory accusations are completed inaccurate and do no justice to the considerable time and effort, described in this Motion, that Counsel for Plaintiff has

---

[6] This report is available at https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf (last accessed October 29, 2024).

invested in investigating Defendant's conduct before filing the instant case, pursuing the instant action, and reaching what is an outstanding settlement for the Settlement Class. To be clear, the Parties agreed to the Settlement Agreement now proposed to the Court without ever discussing any settlement negotiations between Defendant and any other party. Hammond Decl. ¶ 23. Counsel for Plaintiff began investigating Defendant's conduct several months before Plaintiff's initial complaint was filed (on August 12, 2024), and Plaintiff's initial complaint was only filed two court days later than the complaint in *Feller* (August 8, 2024). Plaintiff's case is, then, no copy-cat. It represents the culmination of a serious, independent, investigation by Counsel for Plaintiff. The excellent settlement achieved is a result of the high-quality hard work of Counsel for Plaintiff, assisted by Plaintiff, himself, and owes nothing to plaintiffs' counsel in the *Feller* action.

To state the obvious, plaintiffs' counsel in *Feller* did not participate in the settlement negotiations in the instant case, and there is no ongoing communication between Counsel for Plaintiffs in the instant case and plaintiffs' counsel in *Feller*, nor is there any arrangement or agreement between those two sets of attorneys. Hammond Decl. ¶ 23.

Plaintiff understands that, in *Feller*, on or about October 27, 2024, counsel for plaintiffs filed a motion for appointment as interim class counsel after on October 24, 2024, defendants filed a motion to stay based on the Settlement in the instant case. On November 1, 2024, defendant also filed a motion to dismiss.

## VIII.   THE PROPOSED FINAL APPROVAL HEARING SCHEDULE

Plaintiff's [Proposed] Order Granting Preliminary Approval of Class Action Settlement filed herewith, includes the following proposed schedule for the approval process:

///

///

///

| EVENT | PROPOSED DEADLINE |
|---|---|
| **Preliminary Approval Order** | TBD |
| **Class List due to Administrator** | 14 days after entry of the Preliminary Approval Order |
| **Notice Date** | Not later than 60 days after entry of the Preliminary Approval Order |
| **Motion for Attorneys' Fees** | 14 days before the Objection/Opt Out Deadline |
| **Opposition to Motion for Attorneys' Fees** | No more than 30 days after the Motion for Attorneys' Fees |
| **Objection Deadline** | 60 days after Notice Date |
| **Reply in Support of Motion for Attorneys' Fees** | 14 days after Opposition due date |
| **Opt-Out Deadline** | 60 days after Notice Date |
| **Claim Deadline** | 60 days after Notice Date |
| **Motion for Final Approval** | 90 days after Notice Date |
| **Reply in Support of Final Approval Motion and Update Regarding Notice Administration** | 14 days after Motion for Final Approval due date |
| **Final Approval Hearing** | TBD |

## IX.    CONCLUSION

For these reasons, Plaintiff respectfully requests that his motion for preliminary approval of the Parties' class action Settlement be granted.


DATED:   November 4, 2024                               Respectfully submitted,


                                                        /s/ Julian Hammond
                                                        Julian Hammond
                                                        *Attorneys for Plaintiff and Proposed Class Counsel*