1    Frank S. Hedin (SBN 291289)
     Hedin LLP
2    535 Mission Street, 14th Floor
     San Francisco, CA 94105
3    Telephone:      (305) 357-2107
     Facsimile:      (305) 200-8801
4    E-Mail: fhedin@hedinllp.com

5    *Counsel for Proposed Intervenors*

6              UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF CALIFORNIA
7

8    JONATHAN HOANG TO, individually and          Case No. 24-cv-06447-WHO
     on behalf of all others similarly situated,

9                                                 **PROPOSED INTERVENORS'**
                         Plaintiff,               **OBJECTIONS TO PLAINTIFF'S**
10          v.                                    **MOTION FOR PRELIMINARY**
                                                  **APPROVAL OF CLASS ACTION**
11   DIRECTTOU, LLC,                              **SETTLEMENT**

12                       Defendant,               Date: December 4, 2024
                                                  Time: 2:00 PM
13          and,                                  Judge: Hon. William H. Orrick
                                                  Courtroom: 2
14   DOUGLAS FELLER; JEFFRY HEISE;
     JOSEPH MULL, individually and on behalf of
15   all others similarly situated,

16                       Proposed
                         Plaintiff-Intervenors.
17

18

19

20

21

22

23

24

## <u>TABLE OF CONTENTS</u>

*INTRODUCTION* ............................................................................................................. 1

*ARGUMENT* ..................................................................................................................... 3

**I.**    **The Proposed Settlement is the Product of Uninformed and Collusive Negotiations Conducted by an Inexperienced and Unskilled Plaintiff's Counsel, Handpicked by Defendant as Its Preferred Negotiating Partner.** ............................................................... 3

**II.**    **The Proposed Settlement is Obviously Deficient in Numerous Respects.** ............... 14

    A.    The Definitions of "Released Claims" and "Released Parties" in the Proposed Settlement are Grossly Overbroad ................................................................................... 14

    B.    The Proposed Settlement Requires that Every Settlement Class Member Take the Unnecessary Step of Submitting a Claim Form in Order to Receive Payment. .......................... 20

    C.    The Proposed Class Notice Provides Incorrect Information to Class Members Concerning the Estimated Range of Settlement Payments and Omits Important Information Concerning the Settlement Website. ................................................................................... 22

    D.    Plaintiff Hoang To's Counsel Failed to Procure Estimates from Multiple Potential Settlement Administrators, and Selected Angeion Without Negotiating a Not-to-Exceed Figure for Its Administration Costs and Fees. ............................................................................... 23

**III.**    **The Proposed Settlement Class Gives Preferential Treatment to California Residents Whose Claims are Time Barred, Diluting the Monetary Relief Available to Settlement Class Members Whose Claims are Timely.** .................................................... 24

**IV.**    **The Relief Provided by the Proposed Settlement is Plainly Inadequate.** ................. 27

*CONCLUSION* ................................................................................................................ 33

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## **TABLE OF AUTHORITIES**

**CASES**

*Acosta v. Trans Union, LLC*, 243 F.R.D. 377 (C.D. Cal. 2007). ..................................... 3, 11, 12

*Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015)................................................................... 13

*Bakhtiar v. Info. Res., Inc.*, No. 17-cv-04559-JST, 2020 WL 11421997 (N.D. Cal. Jan. 30, 2020)....... 14

*Becker v. LISI, LLC*, No. 21-CV-03295-JST, 2022 WL 19975411 (N.D. Cal. Sept. 1, 2022)............. 25

*Cashon v. Encompass Health Rehab. Hosp. of Modesto, LLC*, No. 19-CV-00671, 2022 WL 95274 (E.D. Cal. Jan. 10, 2022). ........................................................................................... 19

*Chavez v. PVH Corp.*, 13-CV-01797, 2015 WL 581382 (N.D. Cal. Feb. 11, 2015)............................ 15

*Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930 (N.D. Cal. 2016). ......................................... 12, 29

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017). ................................................. 9

*Feller et al. v. Alliance Entertainment, LLC, et al.*, No. 0:24-CV-61444-RAR (S.D. Fla.)................. passim

*Feller v. Transamerica Life Ins. Co.*, No. 2:16-cv-01378-CAS (AJWX), 2016 WL 6602561 (C.D. Cal. Nov. 8, 2016). .................................................................................................... 18

*Grady v. RCM Techs., Inc.*, 671 F. Supp. 3d 1065 (C.D. Cal. 2023).................................... 11, 12

*Hadley v. Kellogg Sales Co.*, 2020 WL 836673 (N.D. Cal. Feb. 20, 2020)............................. 15, 18

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir.1998)..................................................... 2

*Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010)....................................................... 15

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)............................ 2, 3, 13

*In re Conseco Life Ins. Co. Cost of Ins. Litig.*, 04-CV-1610, 2005 WL 5678842 (C.D. Cal. Apr. 26, 2005). ..................................................................................................................... 18

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995). ............. 3

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)............................................. 4

In re TD Ameritrade Account Holder Litig., No. C 07–2852 SBA, 2011 WL 4079226 (N.D. Cal. Sept. 13, 2011)...................................................................................................... 2

*In re TikTok, Inc., Consumer Priv. Litig.*, 20-CV-4699, 2024 WL 278987 (N.D. Ill. Jan. 25, 2024). ...... 18

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2018 WL 6198311 (N.D. Cal. Nov. 28, 2018).................................................... passim

*Kain v. The Economist Newspaper NA, Inc.*, No. 21-cv-11807 (E.D. Mich.).......................... 23, 32

*Kim v. Allison*, 8 F.4th 1170 (9th Cir. 2021).......................................................... 2, 3, 13

*Kim v. Allison*, 87 F.4th 994 (9th Cir. 2023)............................................................... 12

*Kleen Prods. LLC v. Int'l Paper*, 306 F.R.D. 585 (N.D. Ill. 2015)........................................... 18

*Klenn Prods. LLC v. Int'l Paper*, 831 F.3d 919 (7th Cir. 2016)............................................. 18

*Kokoszki v. Playboy Enters., Inc.*, No. 19-cv-10302 (E.D. Mich.)..................................... 23, 32

*Kouri v. Fed. Express Corp.*, No. 08-CV-066, 2023 WL 3431288 (C.D. Cal. Jan. 13, 2023). ......... 19, 20

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998)............................................ 11

*Louangamath v. Spectranetics Corp.*, 2021 WL 9274552 (N.D. Cal. May 19, 2021)........................... 11

*Lovig v. Sears, Roebuck & Co.*, 11-CV-00756, 2014 WL 8252583 (C.D. Cal. Dec. 9, 2014)................ 15

*Marshall v. Northrop Grumman Corp.*, 469 F. Supp. 3d 942 (C.D. Cal. 2020)........................... 16, 19

*McKeen-Chaplin v. Franklin American Mortg. Co.*, 2012 WL 6629608 (N.D. Cal. 2012). ..................... 20

*Moeller v. The Week Publications, Inc.*, No. 22-cv-10666 (E.D. Mich.)................................. 23, 32

*Obando v. SBC Food Serv., Inc.*, No. 18-CV-856, 2019 WL 1093446 (M.D. Fla. Feb. 5, 2019)............ 21

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000)............................................................. 1

*Pratt et al. v. KSE Sportsman Media, Inc.*, No. 21-cv-11404 (E.D. Mich.)................................... 32

*Rahman v. Gate Gourmet, Inc.*, No. 3:20-CV03047-WHO, 2021 WL 5973046 (N.D. Cal. Nov. 22, 2021)................................................................................................................................... 14

*Rivera v. W. Express Inc.*, No. 18-CV-1633, 2020 WL 5167715 (C.D. Cal. May 1, 2020). ................... 19

*Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035 (9th Cir. 2019). ............................................................ 2

*Schreiber et al. v. Mayo Foundation for Medical Education & Research*, No. 22-cv-00188 (W.D. Mich.).... 22, 32

*Schuchardt v. L. Off. of Rory W. Clark*, No. 15-CV-01329-JSC, 2016 WL 232435 (N.D. Cal. Jan. 20, 2016)................................................................................................................................... 13

*Smith v. Grundfos Pumps Mfg. Corp.*, No. 1:21-CV-00376, 2021 WL 5298863 (E.D. Cal. Nov. 15, 2021)................................................................................................................................... 12

*Stokes v. Interline Brands, Inc.*, No. 12-CV-05527-JD, 2014 WL 5826335 (N.D. Cal. Nov. 10, 2014). 20

*Strano v. Kiplinger Washington Editors, Inc.*, No. 21-cv-12987 (E.D. Mich.)........................................23, 32

*Tijero v. Aaron Bros., Inc.*, No. 10-CV-01089, 2013 WL 60464 (N.D. Cal. Jan. 2, 2013). ..................... 19

*Turner v. HJB Express Freight, Inc.*, No. 17-CV-655, 2018 WL 3151680 (M.D. Fla. Apr. 20, 2018).... 22

*Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157 (N.D. Cal. 2019)................................................. 11

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)................................................................................ 27

*Willner v. Manpower, Inc.*, 11-CV-02846, 2014 WL 4370694 (N.D. Cal. Sept. 3, 2014). ....................... 16

*Wilson v. J.B. Hunt Logistics, Inc.*, No. 2:18-CV-03487, 2020 WL 11626082 (C.D. Cal. Nov. 13, 2020). ................................................................................................................................... 12

*Zwicky v. Diamond Resorts Mgmt. Inc.*, 343 F.R.D. 101 (D. Ariz. 2022)..............................................4, 11

**STATUTES**

Cal. Civ. Code § 340.................................................................................................................................. 27

California Civil Code § 1799.3.............................................................................................................27, 28

Cal. Bus. & Prof. Code § 17200 .............................................................................................................. 28

Mich. Comp. Laws §§ 445.1711-445.1715 ............................................................................................. 30

Michigan's Preservation of Personal Privacy Act ("PPPA"), Mich. Comp. Laws § 445.771 *et. seq.*.31, 33

Video Privacy Protection Act, ........................................................................................................... passim

**OTHER AUTHORITIES**

Securities and Exchange Commission, Annual Report, Form 10-K, filed September 20, 2024, available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001823584/000149315224037185/form10-k.htm ....................................................................................................................................... 6

Securities and Exchange Commission, Quarterly Report, Form 10-Q, filed November 12, 2024, available at https://www.sec.gov/ix?doc=/Archives/edgar/data/1823584/000149315224044735/form10-q.htm ....................................................................................................................................... 6

**RULES**

Federal Rule of Civil Procedure 23............................................................................................... 1, 2, 14

Northern District of California Local Rule 3-13. ........................................................................................ 6

Northern District of California's Procedural Guidance for Class Action Settlements ................14, 25

**TREATISES**

2 McLaughlin on Class Actions § 6:10 (21st ed.)..........................................................................14

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Douglas Feller, Jeffry Heise, and Joseph Mull, the plaintiffs in the action titled *Feller et al. v. Alliance Entertainment, LLC, et al.*, No. 0:24-CV-61444-RAR (S.D. Fla., filed Aug. 8, 2024) and proposed intervenors in the instant action (collectively, the "Proposed Intervenors"), respectfully submit the following objections to the motion for preliminary approval of class action settlement filed by Plaintiff Jonathan Hoang To (ECF No. 26 (the "Motion" or "Mot.")).

## **INTRODUCTION**

The circumstances giving rise to the class action settlement agreement (ECF No. 26-2 (the "Proposed Settlement")) presently before the Court for preliminary approval bear all the hallmarks of a collusive reverse auction. And that is exactly what happened. Defendant DirectToU, LLC sold the Proposed Settlement to the weakest negotiating partner it could find (Plaintiff Hoang To's counsel), at the lowest price he would accept, and without him having the benefit of any of the most important information needed to adequately assess the strength of the claims he was settling. And unsurprisingly, the terms of (including the relief provided by) the Proposed Settlement are so obviously deficient, in so many respects, that preliminary approval would be unwarranted even if it had been negotiated at arm's-length by competent, experienced counsel.

Accordingly, after granting intervention[1], the Court should sustain Proposed Intervenors' objections (for the reasons outlined below), deny the Motion seeking preliminary approval of the Proposed Settlement, and dismiss this second-filed action pursuant to the first-to-file rule to make

---

[1]    The Ninth Circuit has yet to address the issue of whether a nonparty can object to the fairness of a settlement without being granted intervenor status. The closest case to address the issue was *Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000), holding that Rule 23 permits a nonparty to challenge a proposed settlement's attorneys' fees provision but not the fairness of the settlement because "[o]nce a settlement has been approved, the notice and opt-out provisions no longer protect a dissenting class member. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). Accordingly, this Court should grant Proposed Intervenor's motion to intervene for the reasons argued therein, (*see* ECF No. 14.), and properly consider the following objections.

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1 way for Proposed Intervenors' (and their experienced counsel's) continued prosecution of the first-

2 filed *Feller* Action on behalf of class members.

## APPLICABLE LEGAL STANDARD

4      Federal Rule of Civil Procedure 23 states that "[t]he claims, issues, or defenses of a certified

5 class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R.

6 Civ. P. 23(e). The district court's role in evaluating a proposed settlement is "limited to the extent

7 necessary to reach a reasoned judgment that the agreement is not the product of fraud or

8 overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

9 whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027

10 (9th Cir.1998); *see also In re TD Ameritrade Account Holder Litig.,* No. C 07–2852 SBA, 2011 WL

11 4079226, at *4 (N.D. Cal. Sept. 13, 2011). A settlement "must stand or fall in its entirety." *Hanlon,*

12 150 F.3d at 1026.

13      However, where, as here, "the parties negotiate a settlement agreement before the class has

14 been certified, 'settlement approval "requires a higher standard of fairness" and "a more probing

15 inquiry[.]"'" *Roes, 1-2 v. SFBSC Mgmt., LLC,* 944 F.3d 1035, 1048 (9th Cir. 2019) (recognizing the

16 Rule 23(e) factors were abrogated by Congress' 2018 codification of a new test). Indeed, pre-

17 certification settlements are not entitled to an initial broad presumption of fairness, but instead "must

18 withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than

19 is ordinarily required under Rule 23(e) before securing the court's approval as fair." *See id.* (quoting

20 *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). In such cases, the district

21 "court is required to search for 'subtle signs' that plaintiff's counsel has subordinated class relief to

22 self-interest." *Kim v. Allison*, 8 F.4th 1170, 1179 (9th Cir. 2021) [hereinafter "*Kim I*"].

23

24

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## **ARGUMENT**

In determining whether to grant preliminary approval to the Proposed Settlement, which the plaintiff entered into before certifying a class, this Court must "consider whether the settlement (1) appears to be the product of serious, informed, and noncollusive negotiations, (2) has any obvious deficiencies, (3) improperly grants preferential treatment to class representatives or segments of the class, and (4) provides class members with an award that falls within the range of possible approval." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2018 WL 6198311, at *4 (N.D. Cal. Nov. 28, 2018).

In this case, the "signs that plaintiff's counsel has subordinated class relief to self-interest" are not so "subtle," *see Kim I*, 8 F.4th at 1179, as each of the four factors articulated in *In re Volkswagen* weighs against granting preliminary approval to the Proposed Settlement.

**I.    The Proposed Settlement is the Product of Uninformed and Collusive Negotiations Conducted by an Inexperienced and Unskilled Plaintiff's Counsel, Handpicked by Defendant as Its Preferred Negotiating Partner.**

First, the Proposed Settlement is the product of a reverse auction rather than "serious, informed, and noncollusive negotiations[.]" *In re Volkswagen*, 2018 WL 6198311, at *4.

"Federal courts are inherently skeptical of pre-certification settlements, precisely because such settlements tend to be reached quickly before the plaintiffs' counsel has had the benefit of the discovery necessary to make an informed evaluation of the case and, accordingly, to strike a fair and adequate settlement." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 397 (C.D. Cal. 2007). "[T]he parties must ... have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement." *See id.* at 396 (collecting cases). In pre-certification settlements, a district court is not merely free to accept the parties' self-serving remarks as to the good faith negotiations alleged to have transpired. *See Bluetooth*, 654 F.3d at 948 (citing with approval *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 804 (3d Cir. 1995), rejecting the

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

self-serving remarks); *see e.g. Zwicky v. Diamond Resorts Mgmt. Inc.*, 343 F.R.D. 101, 121 (D. Ariz. 2022) (denying preliminary approval of a settlement because the parties claimed discovery occurred but attached no evidence of those efforts and discussed exchanging settlement offers but offered no evidence of what the initial and counter offers and term sheet entailed); *cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

In this case, the Proposed Settlement is the product of a brazenly executed reverse auction in which Defendant sold a settlement of the class's claims at the lowest price to the weakest plaintiff's counsel – Plaintiff Hoang To's counsel in the instant action – to avoid continued litigation against and negotiation of potential settlements with Proposed Intervenors' more experienced, knowledgeable, and skilled counsel in the *Feller* Action. This is confirmed by both the circumstances leading to the Proposed Settlement and the conduct of the parties to the Proposed Settlement after its execution, none of which are reasonably in dispute.

Beginning in August 2019, Proposed Intervenors' counsel commenced an investigation into Alliance Entertainment, LLC's and DirectToU, LLC's practices of renting, selling, exchanging, and otherwise disclosing all of its customers' personally identifiable information to data brokers, data appenders, aggressive marketing companies, and other third parties, as evidenced on the "data cards" published by Alliance and DirectToU in which the companies advertised the availability of their customers' data on the open market, including on the websites of Nextmark, SRDS, and Data Axle. This investigation continued for several years, and over that period Proposed Intervenors' counsel routinely reviewed and saved copies of these data cards to track the nature of the customer information that Alliance and DirectToU were systematically disclosing and to identify the categories of third parties to whom this information was being disclosed. In 2022, Proposed Intervenors' counsel also began researching and investigating online tracking technologies, including the Meta Pixel technology, installed on consumer-facing websites across the Internet, including Defendant's

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

websites, and counsel retained and consulted with an expert to assist in this work.  In July 2024, Proposed Intervenors retained undersigned counsel to pursue claims against Alliance and Defendant arising from the unauthorized disclosure of their personally identifying video-purchase information and, on August 8, 2024, filed suit in the Southern District of Florida, commencing the action titled *Feller, et. al. v. Alliance Entertainment, LLC, et. al.*, No. 0:24-cv-61444-RAR (S.D. Fla., filed Aug. 8, 2024) (the "*Feller* Action").  The Complaint in the *Feller* Action, brought on behalf of two classes of consumers (a "Data Brokerage Class" and "Meta Pixel Class" (*see* ECF No. 14-1, ¶ 85)), alleges claims for violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, against Alliance and DirectToU, based on two theories of liability: (1) as the primary basis for liability, by renting, selling, exchanging, or otherwise disclosing customer lists and purchase records containing this same type of personally identifying video-purchase information, pertaining to all of the purchases made by their customers on all of their websites, to data aggregators, data miners, data brokers, data appenders, aggressive marketing companies, and others; and (2) as a secondary basis for liability, by using the Meta Pixel technology, a snippet of programming code embedded on each of Defendants' direct-to-consumer websites, to systematically send their customers' personally identifiable information and information revealing the prerecorded video materials they purchased to Meta. (*See* ECF No. 14-1, ¶¶ 3–4, 67, 74–80.)

Four days after the filing of the *Feller* Action, Jonathan Hoang To initiated the instant matter against DirectToU by filing a complaint in California Superior Court, Alameda County, alleging a VPPA claim and two related California state-law claims on behalf of two proposed classes comprised entirely of California residents. (ECF No. 1 at 9.) DirectToU removed the complaint to this Court pursuant to the Class Action Fairness Act on September 12, 2024, without disclosing the existence of the earlier-filed *Feller* Action.  (*See id.* at 1-7 (notice of removal).)  Following removal, neither party filed a Notice of Pendency of Other Action or Proceeding to apprise the Court of the existence of

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

the first-filed *Feller* Action, as Northern District of California Local Rule 3-13 required. And although the parties filed two civil cover sheets in this action following removal, they did not disclose the existence of the first-filed *Feller* Action in either of them. *See* ECF Nos. 2 & 6 (failing to check "Related Case" checkbox or identify *Feller* Action. It was not until September 18, 2024 that DirectToU's counsel informed the Court, in a sentence buried in a stipulation extending the time for DirectToU to respond to the complaint, (ECF No. 8), of the existence of the *Feller* Action.

The subsequent history of both actions is recited in Proposed Intervenors' motion to intervene and to dismiss, stay, or transfer pursuant to the first-to-file rule and related exhibits, which Proposed Intervenors incorporate by reference herein. *See* ECF No. 14. As a brief summary, the *Feller* Action has been zealously litigated to the point of informal and formal discovery exchanges between the parties (including the Defendants' production of important information in response to Proposed Intervenors' interrogatories) and comprehensive requests for discovery propounded on third parties (including five third-party subpoenas served by Proposed Intervenors). *See id.* at 3-7.[2] The parties to the *Feller* Action have also participated in extensive arm's-length settlement negotiations. On October 10, 2024, the parties negotiated over the course of a full day during a formal mediation overseen by the Hon. James F. Holderman, an experienced mediator with JAMS and formerly a U.S. District Judge for the Northern District of Illinois.[3] Although Defendants

---

[2]    Defendants and several of the subpoenaed third parties have already indicated that they are prepared to produce responsive materials as soon as the litigation resumes in the *Feller* Action, which is presently stayed pending this Court's resolution of the instant motion for preliminary approval and Proposed Intervenors' motion to intervene and to dismiss.

[3]    Proposed Intervenors' counsel did not invite the plaintiff's counsel in this matter to participate in the mediation, for several reasons. For one thing, Proposed Intervenors' counsel had investigated the facts giving rise to the *Feller* Action over the course of five years, and Proposed Intervenors filed the *Feller* Action before the instant matter. Moreover, at the time the October 10, 2024 mediation was scheduled in early September 2024, the complaint in this matter alleged claims for violation of the VPPA (and two unnecessary California state-law claims) on behalf of proposed classes comprised of only California residents, and did not allege any facts concerning disclosures to

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

provided Proposed Intervenors' counsel certain information, including class-size information and a copy of an applicable insurance policy, in advance of the mediation, Proposed Intervenors' counsel nonetheless conditioned all of their demands on the Defendants producing additional discovery to confirm the accuracy of the information provided prior to the mediation. Although a settlement was not reached at the mediation, the parties continued to explore resolution following the mediation, including most recently on October 16, 2024 (when Defendants' made a settlement offer to Proposed Intervenors) and on October 18, 2024 (when Proposed Intervenors made a settlement demand to Defendants).

Immediately after the October 10, 2024 mediation, Proposed Intervenors' counsel initiated efforts to meet and confer in good faith with Defendants' counsel on a motion for interim

---

data appenders, data cooperatives, or other third-party renters or exchangers of Defendants' customer purchased-related data (the primary theory of liability in the *Feller* Action). It was not until October 1, 2024 (just over a week before the mediation was held on October 10, 2024) that the plaintiff in this action filed a First Amended Complaint that expanded the scope of his proposed VPPA class to include residents of all 50 states, and Proposed Intervenors' counsel was not aware of that amendment at the time of the parties' October 10, 2024 mediation. Thus, at the time the mediation was scheduled (and at the time Proposed Intervenors' counsel declined to invite the plaintiff's counsel in this action to participate in the mediation), the nationwide classes proposed by Proposed Intervenors in their first-filed *Feller* Action were 50 times the size of the California-only classes proposed by the plaintiff in this second-filed action, and the complaint in this second-filed action omitted the primary theory of liability plead in the first-filed *Feller* Action. Additionally, it made no sense to Proposed Intervenors' counsel that the plaintiff in this action would allege a federal VPPA claim on behalf of a California-only class – and the fact that the plaintiff in this case did so was indicative, at least in Proposed Intervenors' counsel's eyes, of a lack of knowledge, experience, and skill on the part of his counsel (which was confirmed by Proposed Intervenors' counsel's review of the plaintiff's counsel's limited experience prosecuting data-privacy class actions). In sum, Proposed Intervenors' counsel reasonably declined to invite the plaintiff's counsel in this action to participate in the October 10, 2024 mediation for four reasons: (1) Proposed Intervenors' *Feller* Action was the product of years of investigatory work and was filed before the instant action; (2) at the time the mediation was scheduled, the scope of the California-only classes proposed in this case was totally subsumed by the nationwide classes proposed in Proposed Intervenors' Complaint; (3) at the time the mediation was scheduled, the complaint in this action failed to allege any facts concerning the primary theory of liability pled in the *Feller* Action; and (4) Proposed Intervenor's assessment that, in light of the foregoing circumstances, the plaintiff's counsel in this action was unlikely to possess the knowledge, experience, or skill necessary for his participation to add any value to the settlement negotiations on behalf of the proposed classes.

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

appointment of class counsel they intended to file in the *Feller* Action, on a motion to intervene and to dismiss they intended to file in the instant action, and on dates for the depositions (noticed by Proposed Intervenors) of Defendants' corporate representatives, only to be totally ignored. Indeed, for over two weeks Defendants strung Proposed Intervenors' counsel along with claims that they were conferring with their clients as a basis for refusing to meet and confer telephonically with Proposed Intervenors' counsel regarding these motions and on deposition scheduling. Additionally, over a five-day period spanning from October 19 to October 24, 2024, Judge Holderman repeatedly attempted to reach Defendants' counsel to continue facilitating the ongoing post-mediation settlement negotiations between the parties, only to be completely ignored as well.

As it turned out, Defendants' counsel had contacted the plaintiff's counsel in this second-filed matter on October 11, 2024 – the day after the unsuccessful mediation between Proposed Intervenors and Defendants in the *Feller* Action – to begin the process of selling the classes' claims to the plaintiff's counsel in this action at a price that Proposed Intervenors and their counsel had previously rejected (and for good reason). According to DirectToU's counsel and the plaintiff's counsel in this matter, an agreement on the "principle" terms of the proposed settlement presently before the Court for preliminary approval was reached on October 19, 2024 – one day after Proposed Intervenors' counsel had rejected Defendants' most recent settlement offer and countered with a new settlement demand of their own, both relayed by Judge Holderman. And the terms of the proposed settlement principally agreed to on October 19, 2024 – $1.75 million and some prospective relief – are the exact same terms that had been previously offered by Defendants on October 16, 2024, and rejected by Proposed Intervenors on October 18, 2024.[4]

---

[4]      In an effort to escape the first-to-file rule and the close scrutiny given to class action settlements by courts of this judicial district, the parties to this action stipulated to a remand of this action back to state court. (*See* ECF No. 18) The stipulation to remand cites "issues related to standing that may impact this Court's Article III jurisdiction over the settlement" as the basis for sending the

8

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Prior to agreeing to the Proposed Settlement, Plaintiff Hoang To's counsel in this second-filed action conducted no discovery and engaged in no meaningful litigation, leaving Plaintiff Hoang To's counsel was completely unaware of the primary and strongest basis for Defendants' liability in this action – their practices of systematically disclosing customers' purchase-related data to data appenders, data cooperatives, and other third party renters and exchangers of this data, as reflected by the data card attached to Proposed Intervenors' complaint in the *Feller* Action – and completely unaware of the existence of a $2.5 million policy of insurance (with a $500,000 retention) providing coverage in this action.

Indeed, the operative complaint at the time the Proposed Settlement was executed – the First Amended Complaint – contained no allegations concerning this theory of liability.[5]  *Compare* ECF No. 26-2, ¶ 1.21 ("'Operative Complaint' means the First Amended Complaint filed on October 1, 2024." *with* ECF No. 10 filed October 1, 2024 *and* ECF No. 26-1, ¶ 21 ("On October 19, 2024, the Parties reached a settlement in principle and then continued to negotiate and resolve numerous details associated with finalizing the Settlement, including the Notice Plan, the appropriate allocation of the Settlement Fund among Class Members, the claims process, and the distribution plan.").

---

case back to state court. (*See id.*, ¶ 4) But a lack of Article III standing was not and is not a legitimate threat to this Court's exercise of subject-matter jurisdiction given that the Ninth Circuit has already held, in a published, controlling opinion, that disclosures of a person's video-purchase information in alleged violation of the VPPA necessarily manifest an intangible concrete harm (namely, an invasion of privacy) sufficient to satisfy the injury-in-fact prong of Article III's standing requirement. *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984 (9th Cir. 2017) ("We therefore join the two other circuits that, after *Spokeo I*, have found Article III standing in similar cases arising under the VPPA.").  The justification for seeking to remand the case back to state court proffered by the parties was thus obviously a pretextual attempt to escape this Court's jurisdiction – a gambit that provides further confirmation that the proposed settlement is the product of a collusive reverse auction. And tellingly, after it had become clear that this Court would not rubber stamp the stipulation – which was transparently aimed at avoiding the first-to-file rule and evading this Court's scrutiny of the proposed settlement – the parties withdrew their stipulation to remand. (*See* ECF No. 32)

[5]    That theory of liability is, however, the front and center in the *Feller* Action.  *See* ECF No. 14-1, ¶¶ 3, 17, 26, 35, 52-53, 56-57, 59, 67, 70-71, 97.

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Despite not having this critical information prior to principally agreeing to the terms of the Proposed Settlement, Plaintiff Hoang To's counsel nevertheless failed to condition his and his client's execution of the formal settlement agreement on Defendant's production of any confirmatory discovery to verify the sizes of the proposed Settlement Classes or show how those figures were computed. *See* ECF No. 26-1, ¶¶ 18 and 21 (Plaintiff Hoang To making no mention of conditioning agreement in principle to Proposed Settlement on Defendant's provision of any confirmatory discovery to confirm Defendant's assertions on class size); ECF No. 34-1, ¶ 8 (Defendant's counsel stating that Defendant provided Plaintiff Hoang To "the same information about settlement class size" as was previously provided to Intervenors in the *Feller* Action, without mentioning any production of confirmatory discovery for Plaintiff Hoang To to confirm its assertions concerning class size).

Moreover, prior to agreeing to the Proposed Settlement, Plaintiff Hoang To's counsel had not requested much less obtained a copy of the insurance policy that provides Defendants coverage for these claims – a $2.5 million policy with a $500,000 retention. Given that Defendant's realistic exposure is many times greater than the policy limit, the Proposed Settlement's recovery of far less than the available insurance coverage is plainly inadequate (as discussed further below). *See generally* ECF No. 26-1, ¶ 21 (Plaintiff Hoang To making no mention of receiving applicable policy of insurance prior to entering into Proposed Settlement); ECF No. 34-1 (Defendant's counsel making no mention of producing the relevant policy of insurance to Plaintiff Hoang or his counsel).

Nor did Plaintiff Hoang To's counsel participate in a formal mediation before a neutral third party (or otherwise engage in any other arm's-length settlement negotiations with Defendant) prior to entering into the Proposed Settlement. *See Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 170 (N.D. Cal. 2019) ("The use of an experienced private mediator and presence of discovery supports the conclusion that Plaintiffs were 'armed with sufficient information about the case' to

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

broker a fair settlement."); *see also, e.g., Zwicky v.* 343 F.R.D. at 121 (denying preliminary approval where there is no evidence to corroborate the substance of settlement negotiations).

Although "formal discovery is not a necessary ticket to the bargaining table" if the parties <u>have sufficient information</u> to make an <u>informed decision</u> about settlement, *see Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (emphasis added), before entering into a class settlement, counsel "must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value." *Acosta*, 243 F.R.D. at 396. And where counsel "have taken few investigative steps that could reliably develop the extent of [the defendant's] liability[,]" denial of preliminary approval is appropriate. *See Grady v. RCM Techs., Inc.*, 671 F. Supp. 3d 1065, 1074 (C.D. Cal. 2023); *see also, e.g., Louangamath v. Spectranetics Corp.*, 2021 WL 9274552, at *2 (N.D. Cal. May 19, 2021) (denying a second motion for preliminary approval partly because of significant "information gaps" in the damages analysis, which provided "equations to explain the calculation behind the asserted values for each claim" but failed to "explain the source of many of the figures or, if they are based on assumptions, why those assumptions are reasonable"); *Cotter v. Lyft, Inc.,* 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (denying preliminary approval and finding that "it may be reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong claim for the same amount."); *Wilson v. J.B. Hunt Logistics, Inc.*, No. 2:18-CV-03487, 2020 WL 11626082, at *4 (C.D. Cal. Nov. 13, 2020).

In this case, as explained above, Defendant's counsel contacted Plaintiff Hoang To's counsel to discuss settling the class's claims the day after the mediation in the first-filed *Feller* Action, the parties to this second-filed action agreed in principle to the terms of the Proposed Settlement eight days later, and the Proposed Settlement was formally executed by Plaintiff Hoang To and his counsel four days after that – all before Plaintiff Hoang To's counsel had taken any meaningful investigative steps to reliably develop the extent of Defendant's liability, had taken any confirmatory discovery

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

concerning the class size, had obtained the relevant policy of insurance, or had engaged in any arm's-length negotiations before an experienced mediator. Any one of these failures would, by itself, be a strong indication that Plaintiff Hoang To's counsel lacked sufficient information (as well as the necessary experience and judgment) to intelligently negotiate a fair settlement on behalf of the classes, and further indication that the Proposed Settlement was the product of a reverse auction. *See, e.g., Kim v. Allison*, 87 F.4th 994, 1002 (9th Cir. 2023) [hereinafter "*Kim II*"] (reversing district court's grant of approval of a class action settlement where there was little to no discovery in the matter); *Acosta*, 243 F.R.D. at 397; *see also, e.g., Grady,* 671 F. Supp. 3d at 1075; *Ayoub v. Harry Winston, Inc.*, No. 21-CV-01599-JST, 2022 WL 20243404, at *2 (N.D. Cal. Apr. 25, 2022); *Zwicky v.* 343 F.R.D. at 121 (denying preliminary approval where there is no evidence to corroborate the substance of settlement negotiations). Viewed collectively, there can be no doubt.[6]

Finally, following the filing of the Motion, Plaintiff Hoang To's counsel contacted Proposed Intervenors' counsel in an improper attempt to prevent the Proposed Settlement from being appropriately scrutinized. Just hours before the Court's November 13, 2024 status conference held in this matter, during which the Court addressed the schedule for it to hear the instant Motion and Proposed Intervenors' motion to intervene and dismiss, Plaintiff Hoang To's counsel sent an e-mail to Proposed Intervenor's counsel, asking to speak with Proposed Intervenor's counsel by telephone. Declaration of Frank S. Hedin ("Hedin Decl.") ¶ 33. Proposed Intervenor's counsel, together with a colleague at his firm, called Plaintiff Hoang To's counsel. *Id.*; Declaration of Tyler Somes ("Somes Decl.") ¶ 12. On this call, Plaintiff Hoang To's counsel stated that, if Proposed Intervenors withdrew

---

[6]     It is also worth noting that the Proposed Settlement contains a clear sailing provision in Paragraph 8.1, which states that "Defendant agrees that Class Counsel shall be entitled to an award of reasonable attorneys' fees of up to 25% of the Settlement Fund, and costs of up to $20,000, subject to Court approval." (ECF No. 26-2.) This too is suggestive of collusion. *See Kim I*, 8 F.4th at 1180 ("Signs of collusion can include," *inter alia*, "a 'clear sailing' provision under which defendant agrees not to object to the attorneys' fees sought[.]").

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

their pending motion to intervene and to dismiss, stay, or transfer and instead supported the Proposed Settlement, he would give Proposed Intervenors' counsel 10% of any fee he receives if the Proposed Settlement is ultimately approved. Hedin Decl. ¶ 37; Somes Decl. ¶ 14. Proposed Intervenors' counsel found this offer patently inappropriate, and later that day, after conferring about it with Proposed Intervenors, sent an e-mail to Plaintiff Hoang To's counsel advising him that his proposal was rejected. Hedin Decl. ¶ 39; Somes Decl. ¶ 16. Counsel's attempt to buy off Proposed Intervenors' counsel in this way – at a time when Proposed Intervenors' had previously signaled their intent to object to the Proposed Settlement (*see, e.g.,* ECF No. 33 at 10 n.10 ("Proposed Intervenors believe the proposed settlement is objectionable in numerous respects (such that the dissemination of notice to the proposed classes is unwarranted), and they intend to file written objections to the proposed settlement prior to a decision on the motion for preliminary approval if they are granted intervention.")) – was intended to insulate the Proposed Settlement from judicial scrutiny through an attempted end-run-around Rule 23(e)'s requirement that "no payment or other consideration may be provided in connection with . . . forgoing or withdrawing an objection" unless "approved by the court after a hearing[.]" Fed. R. Civ. P. 23(e)(5)(B); § 6:10. This sort of conduct by Plaintiff's counsel is further evidence that the Proposed Settlement was not negotiated by experienced, competent counsel looking out for the best interests of the classes, but rather was haphazardly and collusively entered into with Defendant by unknowledgeable and inexperienced counsel looking for a quick pay day. *See e.g., Rahman v. Gate Gourmet, Inc.*, No. 3:20-CV03047-WHO, 2021 WL 5973046, at *5 (N.D. Cal. Nov. 22, 2021).

Accordingly, the first *In re Volkswagen* factor – whether the Proposed Settlement is the product of "serious, informed, and noncollusive negotiations," *In re Volkswagen*, 2018 WL 6198311, at *4 – weighs heavily against granting preliminary approval to the Proposed Settlement.

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

II.    **The Proposed Settlement is Obviously Deficient in Numerous Respects.**

Second, the Proposed Settlement has several "obvious deficiencies," *In re Volkswagen*, 2018 WL 6198311, at *4, many of which violate terms of the Northern District of California's Procedural Guidance for Class Action Settlements[7], including by including overbroad release provisions; providing for inadequate notice to class members; selecting a proposed settlement administrator without having procured estimates from multiple potential administration companies; and not including an agreed-upon not-to-exceed figure from Angeion, the selected settlement administration company, for the costs and fees it will charge to administer the settlement.

A.    **The Definitions of "Released Claims" and "Released Parties" in the Proposed Settlement are Grossly Overbroad**

In exchange for agreeing to settle the case for pennies on the dollar (discussed further below in Part IV.), Plaintiff Hoang To's counsel agreed to include in the Proposed Settlement provisions that would provide obviously overbroad releases to Defendants and numerous categories of unidentified third parties (unrelated to Defendant DirectToU, LLC) on behalf of all class members, including releases of class members' claims arising from facts and circumstances not alleged (or even plausibly suggested) in the operative pleading.

In the Ninth Circuit, it is well established that, in the class action context, "[a] settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but <u>only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action</u>." *Hesse v. Sprint Corp.,* 598 F.3d 581, 590 (9th Cir. 2010) (citations and internal quotation marks omitted) (emphasis added); *see also Hadley v. Kellogg Sales Co.*, 2020 WL 836673, at *2 (N.D. Cal.

---

[7]    *See Bakhtiar v. Info. Res., Inc.*, No. 17-cv-04559-JST, 2020 WL 11421997, at *8 (N.D. Cal. Jan. 30, 2020) ("A movant's failure to address the issues discussed in the Guidelines is a proper ground for denying a motion for preliminary or final approval of a class action settlement.").

Feb. 20, 2020); *Chavez v. PVH Corp.*, 13-CV-01797, 2015 WL 581382, at *5 (N.D. Cal. Feb. 11, 2015) ("District courts in this Circuit have declined to approve settlement agreements where such agreements would release claims that are 'factually related' to the claims in the instant litigation."). Put another way, "a release of claims that 'go beyond the scope of the allegations in the operative complaint' is impermissible." *Lovig v. Sears, Roebuck & Co.*, 11-CV-00756, 2014 WL 8252583, at *2 (C.D. Cal. Dec. 9, 2014); *see also, e.g., Marshall v. Northrop Grumman Corp.*, 469 F. Supp. 3d 942, 949 (C.D. Cal. 2020) ("Because the scope of the proposed settlement agreement's release of liability could extend to any cause of action that has a logical or causal connection to the Released Claims, and is not limited to claims based on an identical factual predicate, the proposed release of liability is impermissible.").

At the time the Proposed Settlement was executed on October 23, 2024, the operative pleading was the First Amended Class Action Complaint. *See* ECF No. 10 (FAC, filed October 1, 2024); ECF No. 26-2 (executed agreement memorializing Proposed Settlement, defining "Operative Complaint" as the "First Amended Class Action Complaint"). In the First Amended Class Action Complaint, Plaintiff Hoang To alleges that Defendant violated the VPPA and two California state statutes by transmitting to Meta the PII of its customers through the use of the Meta Pixel on its website deepdiscount.com. ECF No. 10, ¶¶ 2, 13, 33-34, 39, 62-63. That is the only "factual predicate" on which the Plaintiffs' claims in the First Amended Class Action Complaint arise.

Because the First Amended Class Action Complaint was the operative pleading at the time the Proposed Settlement was executed, the release provisions of the Proposed Settlement must be limited to "limited to claims based on an identical factual predicate" as the claims alleged in the First Amended Class Action Complaint – which, again, is Defendant's practice of transmitting to Meta the PII of its customers through the use of the Meta Pixel on only one website deepdiscount.com. However, the definition of "Released Claims" in the Proposed Settlement encompasses claims based

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

on factual predicates far different than the factual predicate giving rise to the claims alleged in the FAC, as it includes:

> any and all actual, potential, filed, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extra contractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees, and/or obligations, whether in law or in equity, **accrued or un-accrued**, direct, individual or representative, **of every nature and description whatsoever**, **arising out of any facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures relating to or arising out of the collection of information** and/or the sharing of information with third parties which identifies a person as having requested or obtained specific video materials or services, including all claims that were alleged or brought or could have been alleged or brought in the Action. Nothing herein is intended to release any claims any governmental agency or governmental actor has against Defendant.

ECF No. 26-2, ¶ 1.25 (emphasis added).

For one thing, the terms "arising out of", "of every nature and description whatsoever", and "related to" render the release fatally overly broad. With those terms, the released claims are not limited to the claims and facts pled in the FAC concerning disclosures of video purchase-related information to Meta. Instead, the Proposed Settlement purports to release any claim "**arising out of** any facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures **relating to or arising out of the collection of information** and/or the sharing of information with third parties" – any third parties, not just Meta – "which identifies a person as having requested or obtained specific video materials or services[.]" *See id.* (emphasis added). Plaintiff Hoang To's FAC in this matter did not allege any claims based on anyone's disclosure of information to any third party other than Meta, nor did it allege any claims arising from the "collection of information" by Defendant or any other party – and yet the Proposed Settlement would release any and all claims arising out of any facts, acts, omissions, etcetera, "relating to or arising out of the collection of information and/or the sharing of information with third parties which identifies a person as having requested or obtained specific video materials or services[.]" *See id.*

Moreover, the Class Notice proposed by Plaintiff Hoang To states, in pertinent part, that if a class member files a claim or does nothing, his or her "claims against Defendant and the Released Parties **relating to the alleged collection and/or disclosure of your information by . . . third parties will be released**." ECF No. 26-2 at 41 (emphasis added).  The parties' own interpretation of the release provisions of the Proposed Settlement, as articulated in the class notice, confirm Proposed Intervenors' concerns about the scope of the release.  The Court simply cannot approve a settlement that purports to release class members claims "relating to the alleged collection and/or disclosure of [their] information by . . . third parties," even if the information in question originated initially from Defendant.

Further, the Proposed Settlement's definition of "Released Claims" purports to release claims that, as of the Effective Date, remain "un-accrued." In other words, it purports to release claims against Defendant arising from **future** conduct. Not only is the release of claims arising from future conduct well beyond the scope of the claims and facts alleged in the complaint, but such claims cannot be released as a matter of law.  *See In re Conseco Life Ins. Co. Cost of Ins. Litig.*, 04-CV-1610, 2005 WL 5678842, at *7 (C.D. Cal. Apr. 26, 2005) (finding settlement could not release claims based on actions defendant took years after settlement); *In re TikTok, Inc., Consumer Priv. Litig.*, 20-CV-4699, 2024 WL 278987, at *10 (N.D. Ill. Jan. 25, 2024) ("Most courts applying [the identical factual predicate doctrine] agree, for instance, that a class settlement cannot release claims arising from a defendant's future conduct; actions that have not yet occurred cannot form part of the same 'factual predicate.'") (emphasis in original); *Feller v. Transamerica Life Ins. Co.*, No. 2:16-cv-01378-CAS (AJWX), 2016 WL 6602561, at *6 (C.D. Cal. Nov. 8, 2016) (describing consensus among courts that settlement cannot release claims arising from defendant's future conduct); *Kleen Prods. LLC v. Int'l Paper*, 306 F.R.D. 585, 606 (N.D. Ill. 2015) (finding no identical factual predicate where events in new action took place "nearly a decade later" than the prior class settlement), *aff'd*, 831 F.3d 919 (7th Cir. 2016).

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

As such, the definition of "Released Claims" is impermissibly overbroad.  *See e.g.*, *Hadley*, 2020 WL 836673, at *2 (denying motion for preliminary approval where released "any and all claims . . . and causes of action *of every nature and description whatsoever* . . . that any Class member has or may have against the Released Kellogg Persons arising out of or *related in any way* to the transactions, occurrences, events, behaviors, conduct, practices, and policies alleged in the Actions . . . which have been, or which could have been asserted in the Actions . . . ."); *Tijero v. Aaron Bros., Inc.,* No. 10-CV-01089, 2013 WL 60464, at *9 (N.D. Cal. Jan. 2, 2013) (release overbroad where it did not "appropriately track the extent and breadth of Plaintiffs' allegations in the FAC and release[d] unrelated claims"); *Rivera v. W. Express Inc.*, No. 18-CV-1633, 2020 WL 5167715, at *8 (C.D. Cal. May 1, 2020) (finding release was overbroad where covered all claims "related to" claims pled in complaint); *Marshall*, 469 F. Supp. at 949–50 (finding settlement release overly broad where released all claims "connected with" or "arising out of" claims made in the complaint); *Kouri v. Fed. Express Corp.*, No. 08-CV-066, 2023 WL 3431288, at *6 (C.D. Cal. Jan. 13, 2023) (release overbroad where used the phrases "relating to the subject matter of the Lawsuit" and "including, but not limited to"); *Cashon v. Encompass Health Rehab. Hosp. of Modesto, LLC*, No. 19-CV-00671, 2022 WL 95274, at *9 (E.D. Cal. Jan. 10, 2022) (denying preliminary approval where agreement prohibited class members from bringing claims "regarding claims released by the settlement", as claims "regarding" the released claims was broader than released claims themselves).

Accordingly, "because the parties' proposed settlement agreement includes a release of liability that may extend beyond claims based on an identical factual predicate as the claims at issue in the operative [FAC], the Court must deny approval of the proposed settlement." *Kouri*, 2023 WL 3431288, at *7; *see also* <u>*Stokes v. Interline Brands, Inc.*</u>, No. 12-CV-05527-JD, 2014 WL 5826335, at *1 (N.D. Cal. Nov. 10, 2014)(denying preliminary approval where release was "overbroad and [gave] defendant a windfall beyond the scope of the claims in the complaint"); *McKeen-Chaplin v. Franklin*

*American Mortg. Co.*, 2012 WL 6629608, *5 (N.D. Cal. 2012) (finding release overbroad where there was "no showing that Plaintiffs ha[d] been independently compensated for the broad release of claims unrelated to [the] dispute").

But even if the Second Amended Class Action Complaint were considered the operative pleading for purposes of assessing the propriety of the Proposed Settlement's release provisions, the Proposed Settlement nonetheless purports to release claims far beyond "claims based on an identical factual predicate" as the claims alleged in even the Second Amended Class Action Complaint. Plaintiffs filed a Second Amended Complaint on November 1, 2024, eight days after the Proposed Settlement was executed and three days before the filing of the instant Motion for preliminary approval, in which Plaintiff Hoang To alleges that Defendant violated the VPPA and two California state statutes by (1) transmitting to Meta the PII of its customers through the use of the Meta Pixel on its websites deepdiscount.com, ccvideo.com, and moviesunlimited.com, as well as by (2) disclosing its customers' PII to data aggregators and brokers, including to nextmark.com. *See* ECF No. 23, ¶¶ 3, 48-60, 62, 66, 74-75, 84, 86, 93, 103 (SAC, filed November 1, 2024). Those are the only "factual predicates" on which Plaintiff Hoang To's claims in the Second Amended Class Action Complaint arise. And yet the Proposed Settlement's release provisions purport to cover claims that arise from altogether different factual predicates, including, as discussed above, claims arising from or relating to the "collection" of information, a factual predicate from which none of the claims alleged by Plaintiff Hoang To in the SAC arose.

Additionally, the Proposed Settlement's definition of "Release Parties" is also grossly overbroad in that it releases non-parties that are not identified by name in the Proposed Settlement agreement and were not named in Defendant's Certificate of Interested Persons and Corporate Disclosure Statement filed in this action (ECF No. 3), potentially including third parties totally unaffiliated with Defendant and third parties that played no role in the facts giving rise to the claims

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

alleged in Plaintiff Hoang To's complaints. The Proposed Settlement defines "Released Parties" as follows:

> Defendant DirectToU, LLC as well as any and all of each of their respective present or past heirs, executors, estates, administrators, predecessors, successors, <u>assigns</u>, direct or indirect parent companies, subsidiaries, <u>licensors</u>, <u>licensees</u>, <u>associates</u>, <u>affiliates</u>, employers, employees, <u>agents</u>, <u>consultants</u>, <u>independent contractors</u>, insurers, directors, managers, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, underwriters, owners, shareholders, lenders, auditors, investment advisors, legal representatives, <u>successors in interest</u>, <u>assigns and companies</u>, <u>firms</u>, trusts, and <u>corporations</u>, and each of their respective aforementioned persons <u>and entities</u>.

ECF No. 26-2, ¶ 1.26 (emphasis added). The only persons or entities identified by Defendant by name in the Motion and Proposed Settlement are its insurance carrier (CNA), the sole member of DirectToU, LLC (Project Panther Acquisition Corp), and Alliance Entertainment Holding Corporation, the parent company of Project Panther. (*See* ECF No. 3 at 1.) No other persons or entities in this list have been identified by name by Defendant, and it is impossible for Proposed Intervenors or class members to determine which third parties the terms purports to encompass and provide releases to. Consequently, the definition of "Release Parties" is fatally overbroad. *See, e.g., Obando v. SBC Food Serv., Inc.*, No. 18-CV-856, 2019 WL 1093446, at *2 (M.D. Fla. Feb. 5, 2019), *report and recommendation adopted*, No. 18-CV-856, 2019 WL 1643247 (M.D. Fla. Apr. 16, 2019); *Turner v. HJB Express Freight, Inc.*, No. 17-CV-655, 2018 WL 3151680, at *4 (M.D. Fla. Apr. 20, 2018).

Accordingly, the Court should deny the Motion in light of the Proposed Settlement's grossly overbroad release provisions.

### B. The Proposed Settlement Requires that Every Settlement Class Member Take the Unnecessary Step of Submitting a Claim Form in Order to Receive Payment.

The Settlement Agreement also needlessly requires that class members file a claim form to receive a settlement payment. *See e.g.,* ECF No. 26-2, ¶¶ 1.2-14, ¶ 2.1(b).

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    In the Motion, Plaintiff Hoang To offers no justification for why a class member must file a

2    claim to receive a settlement share.  Defendant knows exactly who the class members are and where

3    they reside (and the declarations in support of the Motion demonstrate that Defendant also possesses

4    email addresses for most of them as well) – after all, the Second Amended Complaint's central

5    allegation is that Defendants sold class members' personally identifying information pertaining to the

6    video products that they purchased from its websites, and its records reflect that fact.

7    Under the circumstances, there is simply no need to require class members to submit claim

8    forms to receive payments from the Proposed Settlement.  Because Defendant knows exactly who

9    all of the Settlement Class Members are, and where they all reside, the Proposed Settlement should

10    instead provide for automatic payments to all class members who do not submit requests for

11    exclusion.   Indeed, this is exactly how Proposed Intervenors' counsel has structured each of their

12    last six settlements in similar data-privacy class actions alleging improper disclosures of class

13    members' purchase-related information.  *See e.g., Schreiber et al. v. Mayo Foundation for Medical Education*

14    *& Research*, No. 22-cv-00188 (W.D. Mich.) (automatic pro rata payments sent to all class members

15    who did not submit requests for exclusion); *Pratt et al. v. KSE Sportsman Media, Inc.*, No. 21-cv-11404

16    (E.D. Mich.) (same)*; Kain v. The Economist Newspaper NA, Inc.*, No. 21-cv-11807 (E.D. Mich.) (same);

17    *Strano v. Kiplinger Washington Editors, Inc.*, No. 21-cv-12987 (E.D. Mich.) (same); *Moeller v. The Week*

18    *Publications, Inc.*, No. 22-cv-10666 (E.D. Mich.) (same); *Kokoszki v. Playboy Enters., Inc.*, No. 19-cv-

19    10302 (E.D. Mich.) (same).

20    The Proposed Settlement's claims made structure is unnecessarily burdensome, serves only

21    to reduce the number of class members who receive payment (Plaintiff Hoang To projects that only

22    5% of class members will submit claims, leaving 95% without any recovery), and will deplete the total

23    sum of money ultimately paid to class members (due to the expenses associated with claims

24

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    processing). By requiring the submission of claims to receive payment, the Proposed Settlement is

2    unfair to class members and the Court should deny preliminary approval on this basis.

3    **C.  The Proposed Class Notice Provides Incorrect Information to Class Members Concerning the Estimated Range of Settlement Payments and Omits Important Information Concerning the Settlement Website.**

4

5    The proposed Class Notices are deficient in that they provide a range for the estimated per-

6    claimant recovery that conflicts with the range of the estimated per-claimant recovery provided in

7    the Motion.  Dividing the net Settlement Fund of $1,162,500 (the $1,750,000 Settlement Fund minus

8    payments of attorneys' fees of $437,500, administration costs of $125,000, costs of $20,000, and a

9    service award of $5,000) by 14,556.4 (5% of the class size estimated in the Motion) results in a per-

10   claimant payment of $79.86, slightly different than the sum of $80.21 estimated in the Motion. (ECF

11   No. 26 at 10.) However, the Long-Form Class Notice (Ex. C, Settlement Agreement) advises class

12   members that each claimant is estimated to receive between "$35 to $65." ECF No. 26-2 at 45.[8]

13   Moreover, the Short Form Class Notice (*see* Exhibit B to Settlement Agreement) fails to provide any

14   estimated range of payments to claiming class members at all. *See* ECF No. 26-2 at 39-41.  The Court

15   should decline to preliminarily approve the Proposed Settlement given that it proposes the

16   dissemination of a class notice that, in one version, fails to provide an estimated per-claimant recovery

17   and, in another version, provides the incorrect estimate for the per-claimant recovery.

18   Moreover, nowhere in the Proposed Settlement or the accompanying proposed Class Notices

19   is the URL of the Settlement Website or the form or content of the Settlement Website provided.

20   However, on the last page of Exhibit B to the Proposed Settlement (ECF No. 26-5 at 41), there is a

21   placeholder field that states "[WEB ADDRESS]"; when that placeholder field is clicked in the PDF

22

23   ───────────────

[8]    The Long-Form Class Notice also references "Vouchers" being paid to claiming class
     members, even though there is no "voucher" component to the relief provided by the Proposed
24   Settlement. (*See* ECF No. 26-2 at 45 (heading that states "When will I get my Cash Payment and
     Voucher?").)

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

document, the document directs to the URL www.shoutfactoryvppasettlement.com.  The Court

should inquire if this URL will be used for the Settlement Website, and if so, why it will be used.[9]

The Court should also require the parties to produce the proposed content and form of Settlement

Website to ensure its content is readable and understandable by class members.

### D. Plaintiff Hoang To's Counsel Failed to Procure Estimates from Multiple Potential Settlement Administrators, and Selected Angeion Without Negotiating a Not-to-Exceed Figure for Its Administration Costs and Fees.

Additionally, Plaintiff Hoang To's counsel failed to conduct a competitive bidding process

(involving multiple reputable companies) prior to selecting Angeion to administer the settlement,

and failed to negotiate a not-to-exceed figure for the administrative costs and fees.

The Northern District of California's Procedural Guidance for Class Action Settlements

requires the parties to identify the "settlement administrator selection process, how many settlement

administrators submitted proposals, what methods of notice and claims payment were proposed, and

the lead class counsel's firms' history of engagements with the settlement administrator over the last

two years." *See* N.D. Cal. Proc. Guidance for Class Action Settlements, Preliminary Approval (2)(a).

Although the Motion states that the "parties obtained competing bids from two prospective

settlement administrators" and "agreed to choose Angeion," the Motion fails to explain why only

two proposals for the administration work were obtained, identify the other company besides

---

[9]     Notably, Proposed Intervenors' counsel has another VPPA class action against a company called Shout Factory!, LLC, and the same counsel representing the Defendant in this case represents Should Factory!, LLC in that unrelated matter.  Proposed Intervenors' counsel are concerned that, given how broadly the release provisions are drafted in the Proposed Settlement (as previously discussed), Defendant could attempt to argue that the release provisions of the Proposed Settlement, if approved, somehow cover the claims alleged by the plaintiffs in this unrelated matter.  Proposed Intervenors' counsel are particularly concerned of this scenario given the reverse auction that occurred in the instant matter – and all the more so given that, just weeks ago, another action was filed against Shout Factory!, LLC for violation of the VPPA and, when Proposed Intervenors' counsel asked Defendant's counsel to confirm she was not planning to sell the settlement of the class's claims in that case to the attorney in the newly filed case in a reverse auction, Proposed Intervenors' counsel received no response. Hedin Decl. ¶ 40.

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Angeion that submitted a proposal, what assumptions in terms of notice and claims filing and processing were provided to each company to prepare estimates, or describe Plaintiff Hoang To's counsel's "history of engagements" with Angeion "over the last two years."  ECF No. 26 at 36. Consequently, the Motion does not comply with section (2)(a) of the Guidance.  *See Becker v. LISI, LLC*, No. 21-CV-03295-JST, 2022 WL 19975411, at *5 (N.D. Cal. Sept. 1, 2022).

Additionally, the Motion and the declaration submitted by Angeion state that it will cost approximately $125,000 for Angeion to administer the Proposed Settlement, but the Angeion declaration leaves open the possibility that this figure could balloon in amount if the assumptions underlying Angeion's proposal turn out to be inaccurate. *See* ECF No. 26-8, n.3 (Angeion Declaration stating that "Deviations from these underlying specifications may result in additional costs, as the costs of administration are based on the underlying assumptions. Out-of-scope services not included in Angeion's pricing proposal are subject to additional costs").  And neither the Proposed Settlement nor the terms of Angeion's engagement contains a cap on how high those fees and costs could ultimately go.  As a result, Plaintiff Hoang To's counsel has failed to protect the class from cost overruns on the front end and by so doing, has all but invited them.  At a minimum, the Court should impose a cap on Angeion's costs and fees, because without one, the net Settlement Fund available for payments to the class is at risk of significant depletion from administration fees and costs.

Accordingly, the second *In re Volkswagen* factor – whether the Proposed Settlement "has any obvious deficiencies," *In re Volkswagen*, 2018 WL 6198311, at *4 – weighs heavily against granting preliminary approval to the Proposed Settlement.

### III.    The Proposed Settlement Class Gives Preferential Treatment to California Residents Whose Claims are Time Barred, Diluting the Monetary Relief Available to Settlement Class Members Whose Claims are Timely.

Third, the Proposed Settlement "improperly grants preferential treatment to class representatives or segments of the class [.]" *In re Volkswagen*, 2018 WL 6198311, at *4.

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to the Proposed Settlement, the Motion seeks to certify and provide the same sum of pro rata monetary relief to each person who falls within either of the following two definitions of the term "Settlement Class" and submits a claim form:

1) All persons who reside in the United States, purchased a video or videogame from Defendant or signed up to receive notices about videos or videogames from Defendant, and about whom information which identified such persons as having requested or obtained specific video materials or services from Defendant may have been disclosed to a third party between **August 8, 2022** and the date of Preliminary Approval; and

2) All persons who reside in California, purchased a video or videogame from Defendant or signed up to receive notices about videos or videogames from Defendant, and about whom information which identified such persons as having requested or obtained specific video materials or services from Defendant may have been disclosed to a third party between **August 8, 2020** and the date of Preliminary Approval.

ECF No. 26-2, ¶ 1.30 (emphasis added).

The Settlement Class is overinclusive because it includes Californians whose claims for monetary relief accrued (i.e., Californians whose purchases of pre-recorded video products from one of Defendant's websites were made and their information disclosed) more than two years (the longest limitation period applicable to any of these persons' claims) before the action was filed. Indeed, both the First Amended Complaint and the Second Amended Complaint filed by Plaintiff Hoang To seek to recover monetary relief for Californians to redress Defendant's alleged disclosure of their video purchase-related information in violation of the federal VPPA and California Civil Code § 1799.3.[10]

---

[10]     Incidentally, it also appears that Plaintiff Hoang To lacks standing to bring a claim for damages under California Civil Code § 1799.3 (and/or cannot establish that he satisfies Rule 23's typicality requirement with respect to the class members on whose behalf he seeks to prosecute a § 1799.3 claim) because each of the complaints filed in the *Hoang To* action alleges that Plaintiff Hoang To purchased three videos from deepdiscount.com "in or about May 15, 2023" (*see, e.g.,* ECF No. 23 at ¶ 6), more than one year before he filed suit in August 2024. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011) (holding a class representative must be part of the class and possess the same interest and suffer the same injury as class members).

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1   The limitation period applicable to a VPPA claim is two years, and the limitation period applicable

2   to a claim for violation of California Civil Code § 1799.3 is one year. *See* Cal. Civ. Code § 340(a)

3   (specifying one-year limitation period for "[a]n <u>action upon a statute for a penalty</u> or forfeiture, <u>if the</u>

4   <u>action is given to an individual</u>, or to an individual and the state, except if the statute imposing it

5   prescribes a different limitation.") (emphasis added); *id.* § 1799.3(c) ("Any willful violation of this

6   section shall be subject to <u>a civil penalty</u> not to exceed five hundred dollars ($500) for each violation,

7   which may be recovered in a civil action <u>brought by the person</u> who is the subject of the records.")

8   (emphasis added).  Accordingly, there is no basis for the "Settlement Class" to include Californians

9   who purchased video materials from Defendant's websites, and whose video purchase-related

10  information was disclosed by Defendant to a third party, more than two but not more than four years

11  prior to the filing of this case. By nonetheless defining the Settlement Class in this overinclusive way,

12  Plaintiff Hoang To's counsel has negotiated a Proposed Settlement that will pay money to claimants

13  with time-barred claims out of the same Settlement Fund from which claimants with timely claims

14  will be paid, diluting the amount of the settlement payments to the latter and unjustly enriching the

15  former.

16      And while Plaintiff Hoang To additionally alleges a claim for violation of California's UCL

17  on behalf of Californians, the limitation period applicable to the UCL claim, which is predicated on

18  violations of the VPPA and California Civil Code § 1799.3, is of the same duration as the longest

19  limitation period applicable to the underlying predicate claim, which in this case is the two-year

20  limitation period applicable to the California Civil Code § 1799.3 claim. *See Guzman v. Polaris Industries*

21  *Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022) But even if a longer limitation period governed a UCL claim,

22  the UCL only provides for injunctive relief, not monetary damages, so the UCL claim cannot under

23  any scenario justify payments to claimants in California whose claims accrued more than two years

24  prior to the commencement of this case. *Compare id.* ("[T]he UCL provides only for equitable

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    remedies") with ECF No. 23, Prayer for Relief ("An injunction forbidding Defendant from disclosing

2    information about users' video and videogame viewing choices to third parties pursuant to 18 U.S.C.

3    § 2710(c)(2)(D) and pursuant to Cal. Bus. & Prof. Code § 17200 et seq.").

4            Accordingly, the third *In re Volkswagen* factor – whether the Proposed Settlement "improperly

5    grants preferential treatment to class representatives or segments of the class," *In re Volkswagen*, 2018

6    WL 6198311, at *4 – weighs heavily against granting preliminary approval to the Proposed

7    Settlement.

8    **IV.    The Relief Provided by the Proposed Settlement is Plainly Inadequate.**

9            Finally, the Proposed Settlement does not "provide[] class members with an award that falls

10   within the range of possible approval[.]" *In re Volkswagen*, 2018 WL 6198311, at *4.

11           The VPPA provides liquidated damages of $2,500 per class member, 18 U.S.C. § 2710

12   (c)(2)(A).  The "soaking-wet" damages in this case (assuming 291,128 members of the settlement

13   classes) is thus $727,820,000.  Plaintiff Hoang To's counsel says that $1.75 million – approximately

14   two-tenths of 1 percent of the maximum damages recoverable – is an "excellent result" for class

15   members.  It is not.  The $1.75 million obtained through the Proposed Settlement equates to a gross

16   recovery of $6.01 per class member (or a net per-class member recovery of $4.01 after all settlement-

17   related fees and expenses are paid) – sums that, in either case, are wholly inadequate in view of the

18   strength of the classes' claims.  *See Cotter*, 176 F. Supp. 3d at 935 (internal citations omitted) ("In

19   determining whether the proposed settlement falls within the range of reasonableness, perhaps

20   the most important factor to consider is "plaintiffs' expected recovery balanced against the value of

21   the settlement offer.").

22            Plaintiff Hoang To says that the amount recovered by the Proposed Settlement is at the

23   higher end of recent VPPA settlements.  *See* ECF No. 26 at 10.  But this conclusion is based upon a

24   comparison of the Proposed Settlement against six settlements in VPPA actions that solely involved

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

disclosures made by defendants to Meta via the Meta Pixel technology.[11] *See* ECF No. 26-1. What Plaintiff Hoang To's counsel has failed to recognize is that, as alleged in the *Feller* Action, Defendants also systematically transmitted all of their customers' video-purchase data to data appenders, data cooperatives, and numerous other third party renters and exchangers of this data (as evidenced by the data card accompanying Proposed Intervenors' complaint in the *Feller* Action) – data transmissions that readily accessible party and third party discovery will cleanly reflect, and which are sufficient, by themselves, to establish that Defendant, during the two-year statutory period, disclosed the video-purchase information of all persons who purchased video products from Defendant at any point during the three-year period preceding the filing of the case, in clear violation of the VPPA. Simply put: because the classes' claims do not depend upon Meta Pixel disclosures, their claims should not have been settled as if they did.[12]

---

[11]     Proposed Intervenors acknowledge the low per-class member market rate for VPPA cases involving Meta Pixel disclosures – a market rate attributable to several factors, including the difficulty in obtaining the discovery needed to certify a class and to prove a defendant's liability in such cases from Meta, as well as poor deal-making in such cases by many in the plaintiffs' bar.

[12]     But even is this case were limited to disclosures that arose solely from the Meta Pixel technology (and it does not), Plaintiff Hoang To's counsel still performed an inadequate investigation prior to entering into the Proposed Settlement. Plaintiff Hoang To's counsel claims to have reviewed other VPPA settlements to conclude that the Proposed Settlement is fair, reasonable and adequate, but nowhere in the Motion or supporting declaration does Plaintiff Hoang To or his counsel explain how the technology at issue and the theories of liability underpinning the classes' claims compare to the technologies and theories of liability in the supposedly supportive VPPA settlements cited in the Motion. Had any research or analysis been done on these issues, Plaintiff Hoang To's counsel would have realized that Defendant's disclosures of its customers' video purchase-related data to data appenders, data cooperatives, and renters and exchangers of this data, as evidenced by Defendant's data cards, are clean and strong on the merits, because each of its customers' data was necessarily disclosed to data appenders in order for their personal and demographic information to be available for rental and exchange by any member of the public interested in acquiring it, as the data cards demonstrate was the case.   And had Plaintiff Hoang To's counsel researched settlements of other class actions involving the same exact type of disclosures, under statutes analogous to the VPPA (such as Michigan's VRPA), counsel would have realized that these claims are numerous times more valuable at settlement than the $6 a head the Proposed Settlement recovers for class members.

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Proposed Intervenors put their data brokerage-disclosure allegations front and center in the complaint in the *Feller* Action for good reason. Had Defendants' disclosures to data appenders, data cooperatives, and other third-party renters and exchangers of their customers' video-purchase data driven the valuation of this case by Plaintiff Hoang To's counsel – rather than been merely alleged by Plaintiff Hoang To's counsel in the Second Amended Complaint as an afterthought, after his belated review of the complaint in the first-filed *Feller* Action and Proposed Intervenors' motion to intervene and to dismiss filed in this action (*see* ECF No. 23, ¶¶ 48-52; ECF No. 14-1, ¶¶ 49-74), and following his execution of the Proposed Settlement itself – this case could and should have settled for hundreds of dollars per class member, not the $4 per class member that the Proposed Settlement recovers.

Indeed, Proposed Intervenors' counsel caught Defendants selling their customers' information on the consumer data markets in 2019. *See* ECF No. 14-1, ¶ 68. Intervenors' counsel has significant experience prosecuting actions involving the exact same type of disclosures at issue here: those made to data appenders, data cooperatives, and other third-party renters and exchangers of this data, as evidenced by publicly accessible data cards available on the websites of SRDS, Data Axle, Nextmark and other data-brokerage companies. Specifically, Proposed Intervenors' counsel has litigated and successfully resolved numerous data-privacy class actions arising from precisely these kind of disclosures in alleged violation of Michigan's Preservation of Personal Privacy Act ("PPPA"), Mich. Comp. Laws § 445.771 *et. seq.*, a statute analogous to the VPPA in that it prohibits the non-consensual dissemination of information reflecting persons' purchases of reading materials and other forms of media (and provides for liquidated damages in the amount of $5,000 per violation).[13]

---

[13]    In fact, as the Michigan PPPA was amended to, *inter alia*, remove a prevailing plaintiff's entitlement to statutory damages of $5,000, effective July 2016, the cases litigated by Proposed

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

In six Michigan PPPA actions recently resolved on a class-wide basis by Proposed Intervenors' counsel, each class member automatically received (i.e., without the need to file a claim form) a check in the mail that ranged in amount from $110 to $550 (with an average of $475.50), and the gross per-class member recovery in each of those cases ranged in amount from $173 to $836 (with an average of $306.83), as shown in the table below:

| Case | Class Size | Settlement Fund | Gross Recovery/ Class Member | Net Recovery/ Class Member |
|---|---|---|---|---|
| *Schreiber et al. v. Mayo Foundation for Medical Education & Research*, No. 22-cv-00188 (W.D. Mich.) | 62,746 | $52,500,000 | $836 | $550 automatically to each class member |
| *Pratt et al. v. KSE Sportsman Media, Inc.*, No. 21-cv-11404 (E.D. Mich.) | 14,503 | $9,500,000 | $655 | $420 automatically to each class member |
| *Kain v. The Economist Newspaper NA, Inc.*, No. 21-cv-11807 (E.D. Mich.) | 22,987 | $9,500,000 | $413 | $261 automatically to each class member |
| *Strano v. Kiplinger Washington Editors, Inc.*, No. 21-cv-12987 (E.D. Mich.) | 17,413 | $6,800,000 | $393 | $250 automatically to each class member |
| *Moeller v. The Week Publications, Inc.*, No. 22-cv-10666 (E.D. Mich.) | 13,025 | $5,000,000 | $383 | $250 automatically to each class member |
| *Kokoszki v. Playboy Enters., Inc.*, No. 19-cv-10302 (E.D. Mich.) | 21,900 | $3,800,000 | $173 | $110 automatically to each class member |
| **AVERAGE GROSS & NET RECOVERY:** | | | $475.50 | $306.83 |

And again, it is important to note that the disclosures at issue in this case, as alleged in Proposed Intervenors' Complaint in the *Feller* Action, are exactly like the disclosures at issue in each of the cases reflected in the table above, and can be proven by obtaining the same sort of discovery, from the same third-party sources, as the used in the cases cited above. Plaintiff Hoang To's counsel simply has no experience at all litigating privacy class actions involving these kinds of disclosures, and it shows. *See* ECF No. 26-5.

---

Intervenors' counsel under that statute presented far greater litigation risks than any of the risks posed to class members in this case.

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

The VPPA provides for statutory damages of $2,500, half of the $5,000 in statutory damages provided by Michigan's PPPA. Accordingly, a fair, reasonable, and adequate settlement here should realistically have recovered somewhere in the range of half of what was recovered in the Michigan PPPA actions listed above, or roughly $55 to $275 (net) (or $86 to $418 (gross)) per class member, and should have provided for those amounts to be paid automatically (without the need to submit a claim form) to every class member who does not exclude himself or herself from the settlement. The $6.01 (gross) recovered per class member by the collusive Proposed Settlement in this case is woefully deficient and, as explained above, is the direct result of Plaintiff Hoang To's counsel incorrectly framing this a Meta Pixel case, when it is data brokerage case essentially identical to the PPPA cases cited above. Tellingly, after Proposed Intervenors explained this to the Defendant in the course of their settlement negotiations, Defendant chose to pursue a settlement with Plaintiff Hoang To's counsel, who had no experience litigating cases predicated on disclosures of this nature and who instead improperly anchored his settlement demands to the market rate for VPPA settlements in cases purely of the Meta Pixel variety.

Indeed, the Motion itself demonstrates how the inexperience of Plaintiff Hoang To's counsel misinformed the risk assessment that he purportedly performed. As the Motion states, Plaintiff Hoang To's counsel put a lot of stock in Defendant's technical defenses concerning the Meta Pixel: "Plaintiff believes that Defendant's primary defenses would center on the potential difficulties Plaintiff would encounter in establishing whether any specific Class Member's Personally Identifiable Information was disclosed via tracking tools[.]" ECF No. 26 at 26. However, the proposed data brokerage class in the *Feller* Action encompasses every individual who purchased any of Defendants' video products from their websites during the three years preceding the filing of the case, because the data card itself shows that every single one of those customers necessarily had their video purchase-related information systematically disclosed to one or more data appenders, in addition to

31

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

data cooperatives and other downstream renters and exchangers of this data. Defendants' responses to Plaintiffs' interrogatories confirm this, as their responses identify Epsilon (notorious data appender), Wiland (notorious data cooperative), Data Axle (notorious list manager), and Path2Response (prolific data broker) as recipients of Defendants' customer information.[14] Hedin Decl. ¶ 41. Thus, whatever technical defenses Defendant may have to disclosures of customer information transmitted via the Meta Pixel technology, those defenses have no applicability at all to the more salient data brokerage side of the case, the primary theory in the *Feller* Action (to which the secondary Meta Pixel disclosure theory was mere icing on the cake).

Simply put: by performing a valuation of this case that rested on the assumption that the class members' claims arise solely from Defendant's disclosures of video-purchase information via the Meta Pixel technology, Plaintiff Hoang To's counsel grossly undervalued class members' claims and, as a result, entered into a Proposed Settlement that would settle their claims at a fraction of what they are actually worth at settlement (even in a settlement at this early stage of the proceedings in light of the strength of these claims).[15]

---

[14] Proposed Intervenors' counsel has issued subpoenas in the *Feller* Action to each of these third parties for the materials necessary to certify the class and prevail on the merits. And if the *Feller* Action proceeds, as it certainly should, Proposed Intervenors' counsel believe that certification of the proposed data brokerage class is a foregone conclusion.

[15] Finally, in terms of the prospective relief provided by the Proposed Settlement, Plaintiff Hoang To's counsel states under penalty of perjury that "[f]ollowing settlement, Plaintiff obtained agreement from Defendant to remove **all tracking tools** . . . from its websites . . . ", ECF No. 26-1 at ¶ 19, and that "Plaintiff is pleased with the fact that he already got Defendant to remove tracking tools . . . from its websites." ECF No. 26-1 at ¶ 47. That is incorrect. As of today, Defendant is still running tracking cookies on its website in violation of the VPPA. Hedin Decl. ¶ 43. Additionally, it is unclear when Defendant took its data cards down from Nextmark.com. Defendant's use of Nextmark did not figure into the Hoang To action until the Second Amended Complaint, which was filed on November 1, 2024, *after* the parties signed a settlement agreement on October 23, 2024. *See* ECF No 23; ECF No. 26-2. Further, the Proposed Settlement was still not the cause of Defendant's removal of the Meta Pixel technology from its websites; indeed, Plaintiff Hoang To's counsel states that any agreement by Defendant on this front was provided "following settlement."

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Accordingly, the fourth and final *In re Volkswagen* factor – whether the Proposed Settlement ""provides class members with an award that falls within the range of possible approval," *In re Volkswagen*, 2018 WL 6198311, at *4 – weighs heavily against granting preliminary approval to the Proposed Settlement.

## **CONCLUSION**

For the foregoing reasons, Proposed Intervenors' objections should be sustained, preliminary approval should be denied, and this case should be dismissed pursuant to the first-to-file rule.

Dated:  November 19, 2024            Respectfully submitted,

**HEDIN LLP**

By:    */s/ Frank S. Hedin*

**HEDIN LLP**
Frank S. Hedin (SBN 291289)
1395 Brickell Ave, Suite 610
Miami, Florida 33131
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
Email: fhedin@hedinllp.com

*Counsel for Proposed Intervenors*

PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on November 19, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT is being served this day on all counsel of record identified on the attached Service List, via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Frank S. Hedin*

**HEDIN LLP**
Frank S. Hedin (SBN 291289)
1395 Brickell Ave, Suite 610
Miami, Florida 33131
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
Email: fhedin@hedinllp.com

*Counsel for Proposed Intervenors*