1  Frank S. Hedin (SBN 291289)
Hedin LLP
2  535 Mission Street, 14th Floor
San Francisco, CA 94105
3  Telephone:     (305) 357-2107
Facsimile:     (305) 200-8801
4  E-Mail: fhedin@hedinllp.com

5  *Counsel for Proposed Intervenors*

6  **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
7

8  JONATHAN HOANG TO, individually and
on behalf of all others similarly situated,

9              Plaintiff,
      v.
10

DIRECTTOU, LLC,
11

              Defendant,
12
      and,
13

DOUGLAS FELLER; JEFFRY HEISE;
14  JOSEPH MULL, individually and on behalf of
all others similarly situated,
15

              Proposed
16              Plaintiff-Intervenors.

Case No. 24-cv-06447-WHO

**PROPOSED INTERVENORS'
CORRECTED OBJECTIONS TO
PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT**

Date: December 4, 2024
Time: 2:00 PM
Judge: Hon. William H. Orrick
Courtroom: 2

17

18

19

20

21

22

23

24

# TABLE OF CONTENTS

INTRODUCTION……………………………………………………..………………………….1

ARGUMENT ........................................................................................................................................2

I.  The Proposed Settlement is the Product of Uninformed and Collusive Negotiations Conducted by an Inexperienced Plaintiff's Counsel Handpicked by Defendant as Its Preferred Negotiating Partner....................................................................................................................................2

II. The Proposed Settlement is Obviously Deficient in Numerous Respects……………………...11

    A. The Definitions of "Released Claims" and "Released Parties" in the Proposed Settlement are Grossly Overbroad........................................................................................................11

    B. The Proposed Settlement Requires that Every Settlement Class Member Take the Unnecessary Step of Submitting a Claim Form in Order to Receive Payment. ...........................16

    C. The Proposed Class Notice Provides Incorrect Information to Class Members Concerning the Estimated Range of Settlement Payments and Omits Important Information Concerning the Settlement Website. .......................................................................................................17

    D. Plaintiff Hoang To's Counsel Failed to Procure Estimates from Multiple Potential Settlement Administrators, and Selected Angeion Without Negotiating a Not-to-Exceed Figure for Its Administration Costs and Fees.................................................................19

III. The Proposed Settlement Class Gives Preferential Treatment to California Residents Whose Claims are Time Barred, Diluting the Monetary Relief Available to Settlement Class Members Whose Claims are Timely….……………………………………………………….…………………..20

IV. The Relief Provided by the Proposed Settlement is Plainly Inadequate…………….………....22

CONCLUSION .....................................................................................................................26

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**

3

*Acosta v. Trans Union, LLC,*
    243 F.R.D. 377 (C.D. Cal. 2007). ................................................................................. 3, 11, 12

4

*Allen v. Bedolla,*
    787 F.3d 1218 (9th Cir. 2015). ............................................................................................. 12

5

*Bakhtiar v. Info. Res., Inc.,*
    No. 17-cv-04559-JST, 2020 WL 11421997 (N.D. Cal. Jan. 30, 2020). .................................. 14

6

7

*Becker v. LISI, LLC,*
    No. 21-CV-03295-JST, 2022 WL 19975411 (N.D. Cal. Sept. 1, 2022). ................................. 24

8

*Cashon v. Encompass Health Rehab. Hosp. of Modesto, LLC,*
    No. 19-CV-00671, 2022 WL 95274 (E.D. Cal. Jan. 10, 2022). ............................................ 18

9

10

*Chavez v. PVH Corp.,*
    No.13-CV-01797, 2015 WL 581382 (N.D. Cal. Feb. 11, 2015). ............................................ 15

11

*Cotter v. Lyft, Inc.,*
    176 F. Supp. 3d 930 (N.D. Cal. 2016). ............................................................................. 11, 28

12

13

*Eichenberger v. ESPN, Inc.,*
    876 F.3d 979 (9th Cir. 2017). ................................................................................................. 9

14

*Feller et al. v. Alliance Entertainment, LLC, et al.,*
    No. 0:24-CV-61444-RAR (S.D. Fla.) ............................................................................ passim

15

16

*Feller v. Transamerica Life Ins. Co.,*
    No. 2:16-cv-01378-CAS (AJWX), 2016 WL 6602561 (C.D. Cal. Nov. 8, 2016). ................... 18

17

*Grady v. RCM Techs., Inc.,*
    671 F. Supp. 3d 1065 (C.D. Cal. 2023) ........................................................................... 11, 12

18

19

*Hadley v. Kellogg Sales Co.,*
    2020 WL 836673 (N.D. Cal. Feb. 20, 2020). ................................................................. 15, 18

20

Hanlon v. Chrysler Corp.,
    150 F.3d 1011 (9th Cir.1998). ................................................................................................ 2

21

22

*Hesse v. Sprint Corp.,*
    598 F.3d 581 (9th Cir. 2010). ............................................................................................... 15

23

24

*In re Bluetooth Headset Prod. Liab. Litig.,*

654 F.3d 935 (9th Cir. 2011). .................................................................. 2, 4, 12

*In re Conseco Life Ins. Co. Cost of Ins. Litig.*,
No. 04-CV-1610, 2005 WL 5678842 (C.D. Cal. Apr. 26, 2005) ................................. 17

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995). ........................................................................ 4

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000). .................................................................... 4

*In re TD Ameritrade Account Holder Litig.*,
No. C 07–2852 SBA, 2011 WL 4079226 (N.D. Cal. Sept. 13, 2011). ........................... 2

*In re TikTok, Inc., Consumer Priv. Litig.*,
No. 20-CV-4699, 2024 WL 278987 (N.D. Ill. Jan. 25, 2024). .................................. 18

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
No. MDL 2672 CRB (JSC), 2018 WL 6198311 (N.D. Cal. Nov. 28, 2018) .................. passim

*Kain v. The Economist Newspaper NA, Inc.*,
No. 21-cv-11807 (E.D. Mich.). ............................................................... 22, 30

*Kim v. Allison*,
8 F.4th 1170 (9th Cir. 2021). ................................................................. 3, 12

*Kim v. Allison*,
87 F.4th 994 (9th Cir. 2023). .................................................................. 12

*Kleen Prods. LLC v. Int'l Paper*,
306 F.R.D. 585 (N.D. Ill. 2015). ............................................................... 18

*Kleen Prods. LLC v. Int'l Paper*,
831 F.3d 919 (7th Cir. 2016). .................................................................. 18

*Kokoszki v. Playboy Enters., Inc.*,
No. 19-cv-10302 (E.D. Mich.). ............................................................. 22, 30

*Kouri v. Fed. Express Corp.*,
No. 08-CV-066, 2023 WL 3431288 (C.D. Cal. Jan. 13, 2023) ............................... 18, 19

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998). ................................................................ 11

*Louangamath v. Spectranetics Corp.*,
2021 WL 9274552 (N.D. Cal. May 19, 2021). .................................................. 11

*Lovig v. Sears, Roebuck & Co.*,

PROPOSED INTERVENORS' CORRECTED OBJECTIONS TO PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

No. 11-CV-00756, 2014 WL 8252583 (C.D. Cal. Dec. 9, 2014). ............................................. 15

*Marshall v. Northrop Grumman Corp.*,
    469 F. Supp. 3d 942 (C.D. Cal. 2020). ........................................................15, 18

*McKeen-Chaplin v. Franklin American Mortg. Co.*,
    2012 WL 6629608 (N.D. Cal. 2012). ....................................................................... 19

*Moeller v. The Week Publications, Inc.*,
    No. 22-cv-10666 (E.D. Mich.). ..........................................................................22, 30

*Obando v. SBC Food Serv., Inc.*,
    No. 18-CV-856, 2019 WL 1093446 (M.D. Fla. Feb. 5, 2019). ................................... 20

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000). ................................................................................. 1

*Pratt et al. v. KSE Sportsman Media, Inc.*,
    No. 21-cv-11404 (E.D. Mich.). .................................................................................... 30

*Rahman v. Gate Gourmet, Inc.*,
    No. 3:20-CV03047-WHO, 2021 WL 5973046 (N.D. Cal. Nov. 22, 2021) ................... 14

*Rivera v. W. Express Inc.*,
    No. 18-CV-1633, 2020 WL 5167715 (C.D. Cal. May 1, 2020). ................................... 18

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
    944 F.3d 1035 (9th Cir. 2019). .................................................................................... 2

*Schreiber et al. v. Mayo Foundation for Medical Education & Research*,
    No. 22-cv-00188 (W.D. Mich.). ..........................................................................21, 30

*Schuchardt v. L. Off. of Rory W. Clark*,
    No. 15-CV-01329-JSC, 2016 WL 232435 (N.D. Cal. Jan. 20, 2016). ....................... 12

*Stokes v. Interline Brands, Inc.*,
    No. 12-CV-05527-JD, 2014 WL 5826335 (N.D. Cal. Nov. 10, 2014). ....................... 19

*Strano v. Kiplinger Washington Editors, Inc.*,
    No. 21-cv-12987 (E.D. Mich.). ..........................................................................22, 30

*Tijero v. Aaron Bros., Inc.*,
    No. 10-CV-01089, 2013 WL 60464 (N.D. Cal. Jan. 2, 2013). ................................... 18

*Turner v. HJB Express Freight, Inc.*,
    No. 17-CV-655, 2018 WL 3151680 (M.D. Fla. Apr. 20, 2018). ................................ 21

*Uschold v. NSMG Shared Servs., LLC*,

PROPOSED INTERVENORS' CORRECTED OBJECTIONS TO PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

333 F.R.D. 157 (N.D. Cal. 2019) ............................................................................... 11

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011). ............................................................................................ 26

*Willner v. Manpower, Inc.,*
    No. 11-CV-02846, 2014 WL 4370694 (N.D. Cal. Sept. 3, 2014). ......................... 15

*Wilson v. J.B. Hunt Logistics, Inc.,*
    No. 2:18-CV-03487, 2020 WL 11626082 (C.D. Cal. Nov. 13, 2020). ..................... 11

*Zwicky v. Diamond Resorts Mgmt. Inc.,*
    343 F.R.D. 101 (D. Ariz. 2022). ......................................................................... 4, 11

**STATUTES**

Cal. Bus. & Prof. Code § 17200 ...................................................................................... 27

Cal. Civ. Code § 340 ....................................................................................................... 26

California Civil Code § 1799.3 .................................................................................... 26, 27

Michigan's Preservation of Personal Privacy Act ("PPPA"),
    Mich. Comp. Laws § 445.771 *et. seq.* ......................................................... 29, 30, 31

Video Privacy Protection Act,
    18 U.S.C. § 2710 ............................................................................................ passim

**RULES**

Federal Rule of Civil Procedure 23 ......................................................................... 1, 2, 13

Northern District of California Local Rule 3-13. ............................................................... 6

Northern District of California's Procedural Guidance for Class Action Settlements ............... 14, 24

**TREATISES**

2 McLaughlin on Class Actions § 6:10 (21st ed.) ............................................................ 13

PROPOSED INTERVENORS' CORRECTED OBJECTIONS TO PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Proposed Intervenors[1] submit the following objections to the motion for preliminary approval of class settlement filed by Plaintiff Jonathan Hoang To (ECF No. 26 (the "Motion" or "Mot.")).[2]

## **INTRODUCTION**

The circumstances giving rise to the class action settlement agreement (ECF No. 26-2 (the "Proposed Settlement")) presently before the Court for preliminary approval bear all the hallmarks of a collusive reverse auction. And that is exactly what transpired. Defendant sold the Proposed Settlement to the weakest negotiating partner it could find (Plaintiff Hoang To's counsel), at a price Proposed Intervenors' counsel would not accept, and without Plaintiff Hoang To's counsel possessing any of the most important information he needed to adequately assess the strength and the value of the claims he was settling. The Proposed Settlement is obviously deficient, both procedurally and substantively, and preliminary approval is unwarranted.

Accordingly, the Court should deny the Motion and dismiss this case, so as to make way for Proposed Intervenors' continued prosecution of the first-filed *Feller* Action on the classes' behalf.

## **APPLICABLE LEGAL STANDARD**

Where, as here, "the parties negotiate a settlement agreement before the class has been certified, settlement approval requires a higher standard of fairness and a more probing inquiry." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (citations and quotations omitted).

---

[1] "Proposed Intervenors" are Douglas Feller, Jeffry Heise, and Joseph Mull, the plaintiffs in *Feller et al. v. Alliance Entertainment, LLC, et al.*, No. 0:24-CV-61444-RAR (S.D. Fla., filed Aug. 8, 2024) (the "*Feller* Action") and proposed intervenors in the instant action.

[2] Undersigned counsel regrettably filed the incorrect, non-final versions of Proposed Intervenors' objections and supporting declarations yesterday evening, which was just brought to his attention, and thus now files corrected version of Proposed Intervenors' objections and corrected versions of the supporting declarations. Proposed Intervenors respectfully request that the Court consider these corrected versions in lieu of the previously filed versions of these filings, and sincerely apologies for this oversight. Proposed Intervenors would, of course, have no opposition to providing Plaintiff additional time to file any reply in support of the Motion in light of this issue.

PROPOSED INTERVENORS' CORRECTED OBJECTIONS TO PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1  Indeed, pre-certification settlements "must withstand an even higher level of scrutiny for evidence

2  of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing

3  the court's approval as fair." *See id.* (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946

4  (9th Cir. 2011)). In such cases, the district "court is required to search for 'subtle signs' that plaintiff's

5  counsel has subordinated class relief to self-interest." *Kim v. Allison*, 8 F.4th 1170, 1179 (9th Cir. 2021)

6  [hereinafter "*Kim I*"].

7  **OBJECTIONS**

8      In determining whether to preliminarily approve the Proposed Settlement, entered into prior

9  to class certification, the Court must "consider whether the settlement (1) appears to be the product

10  of serious, informed, and noncollusive negotiations, (2) has any obvious deficiencies, (3) improperly

11  grants preferential treatment to class representatives or segments of the class, and (4) provides class

12  members with an award that falls within the range of possible approval." *In re Volkswagen "Clean*

13  *Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2018 WL 6198311, at *4 (N.D. Cal. 2018).

14      In this case, the "signs that plaintiff's counsel has subordinated class relief to self-interest"

15  are not so "subtle," *see Kim I*, 8 F.4th at 1179, and each of the four factors articulated in *In re*

16  *Volkswagen* weighs heavily against approving the Proposed Settlement.

17  **I.    The Proposed Settlement is the Product of Uninformed and Collusive**
    **Negotiations Conducted by an Inexperienced Plaintiff's Counsel Handpicked by**
18  **Defendant as Its Preferred Negotiating Partner.**

19      First, the Proposed Settlement is the product of a reverse auction rather than "serious,

20  informed, and noncollusive negotiations[.]" *In re Volkswagen*, 2018 WL 6198311, at *4.

21      "Federal courts are inherently skeptical of pre-certification settlements, precisely because

22  such settlements tend to be reached quickly before the plaintiffs' counsel has had the benefit of the

23  discovery necessary to make an informed evaluation of the case and, accordingly, to strike a fair and

24  adequate settlement." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 397 (C.D. Cal. 2007). "[T]he parties

PROPOSED INTERVENORS' CORRECTED OBJECTIONS TO PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

must ... have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement." *See id.* at 396 (collecting cases). In pre-certification settlements, a district court is not merely free to accept the parties' self-serving remarks as to the good faith negotiations alleged to have transpired. *See Bluetooth*, 654 F.3d at 948 (citation omitted); *see, e.g., Zwicky v. Diamond Resorts Mgmt. Inc.*, 343 F.R.D. 101, 121 (D. Ariz. 2022).

In this case, the Proposed Settlement is the product of a reverse auction in which Defendant sold a settlement of the class's claims at the lowest price to the weakest plaintiff's counsel – Plaintiff Hoang To's counsel in the instant action – to avoid continued litigation against (and negotiation of potential settlements with) Proposed Intervenors' counsel in the *Feller* Action.  This is confirmed by both the circumstances leading to the Proposed Settlement and the conduct of the parties to the Proposed Settlement after its execution, none of which is reasonably in dispute.

Beginning in August 2019, Proposed Intervenors' counsel commenced an investigation into Alliance Entertainment, LLC's and DirectToU, LLC's practices of renting, selling, exchanging, and otherwise disclosing all of its customers' personally identifiable information to data brokers, data appenders, data cooperatives, and other third parties, as evidenced by the "data cards" published by Alliance and DirectToU in which the companies advertised the availability of their customers' data on the open market, including on the websites of Nextmark, SRDS, and Data Axle. This investigation continued for several years, and over that period Proposed Intervenors' counsel routinely reviewed and saved copies of these data cards to track the nature of the customer information that the companies were disclosing and to identify the categories of third parties to whom they were disclosing it.  In 2022, Proposed Intervenors' counsel also began researching and investigating online tracking technologies, including the Meta Pixel technology, installed on consumer-facing websites across the Internet, including Defendant's websites, and counsel retained and consulted with an expert to assist in this work.  In July 2024, Proposed Intervenors retained undersigned counsel to

PROPOSED INTERVENORS' CORRECTED OBJECTIONS TO PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

pursue claims against Alliance and Defendant arising from the unauthorized disclosure of their customers' personally identifying video-purchase information and, on August 8, 2024, filed suit in the Southern District of Florida, commencing the *Feller* Action. The *Feller* Action was brought on behalf of two classes of consumers (a "Data Brokerage Class" and "Meta Pixel Class" (*see* ECF No. 14-1, ¶ 85)), and alleges claims on their behalf against Alliance and DirectToU for violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, based on two theories of liability: (1) first and foremost, by renting, selling, exchanging, or otherwise disclosing all of their customers' personally identifying video-purchase information to data aggregators, data appenders, data cooperatives, aggressive marketing companies, and other third-party renters and exchangers of this data; and (2) secondarily, by using the Meta Pixel technology, a snippet of programming code embedded on each of Defendants' direct-to-consumer websites, to systematically send their customers' personally identifiable information and information revealing the prerecorded video materials they purchased to Meta. (*See* ECF No. 14-1, ¶¶ 3–4, 67, 74–80.)

Four days after the filing of the *Feller* Action, Jonathan Hoang To initiated the instant matter against DirectToU by filing a complaint in California Superior Court, Alameda County, alleging a VPPA claim and two related California state-law claims on behalf of two proposed classes comprised entirely of California residents. (ECF No. 1 at 9.) DirectToU removed the complaint to this Court pursuant to the Class Action Fairness Act on September 12, 2024, without disclosing the existence of the earlier-filed *Feller* Action. (*See id.* at 1-7 (notice of removal).) Following removal, neither party to this action filed a Notice of Pendency of Other Action or Proceeding to apprise the Court of the existence of the first-filed *Feller* Action, as Northern District of California Local Rule 3-13 required. And although the parties filed two civil cover sheets in this action following removal, they did not disclose the existence of the first-filed *Feller* Action in either of them. (*See* ECF Nos. 2 & 6 (failing to check "Related Case" checkbox or identify *Feller* Action).) It was not until September 18, 2024 that

PROPOSED INTERVENORS' CORRECTED OBJECTIONS TO PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

DirectToU's counsel informed the Court, in a sentence buried in a stipulation extending the time for DirectToU to respond to the complaint (ECF No. 8), of the existence of the *Feller* Action.

The subsequent history of both actions is recited in Proposed Intervenors' motion to intervene and to dismiss, stay, or transfer on first-to-file grounds (and the supporting exhibits), which Proposed Intervenors incorporate by reference herein. (*See* ECF No. 14.) As a brief summary, the *Feller* Action has been zealously litigated to the point of informal and formal exchanges of discovery between the parties (including the Defendants' production of important information in response to Proposed Intervenors' interrogatories) and comprehensive requests for discovery propounded on third parties (including five third-party subpoenas served by Proposed Intervenors). (*See id*. at 3-7.)[5]

The parties to the *Feller* Action have also participated in extensive arm's-length settlement negotiations. On October 10, 2024, the parties negotiated over the course of a full day during a formal mediation overseen by the Hon. James F. Holderman, an experienced mediator with JAMS and formerly a U.S. District Judge for the Northern District of Illinois.[6] Although Defendants

---

[5] Defendants and several of the third parties subpoenaed by Proposed Intervenors have already indicated that they are prepared to produce responsive materials as soon as the litigation resumes in the *Feller* Action, which is presently stayed pending this Court's resolution of the instant Motion and Proposed Intervenors' pending motion to intervene and to dismiss.

[6] Proposed Intervenors' counsel did not invite the plaintiff in this matter to participate in the mediation for several reasons. For one thing, Proposed Intervenors' counsel had investigated the facts giving rise to the *Feller* Action over the course of five years, and Proposed Intervenors filed the *Feller* Action first. Moreover, at the time the mediation was scheduled, in early September 2024, Plaintiff Hoang To's complaint in this matter alleged claims for violation of the VPPA (and two unnecessary California state-law claims) on behalf of proposed classes comprised only of California residents, and did not allege any facts concerning disclosures to data appenders, data cooperatives, or other third-party renters or exchangers of Defendants' customer purchased-related data (the primary theory of liability in the *Feller* Action). Thus, at the time the mediation was scheduled, the nationwide classes proposed by Proposed Intervenors in the first-filed *Feller* Action overlapped, by fifty fold, the California-only classes proposed by Plaintiff Hoang To in this case, and the complaint in this case omitted the primary theory of liability pled in the first-filed *Feller* Action. Moreover, it made no sense to Proposed Intervenors' counsel that the plaintiff in this action would allege a federal VPPA claim on behalf of a California-only class – and the fact that he did so was indicative, at least in undersigned counsel's eyes, of a lack of knowledge and experience on the part of his counsel. In any event, it was not until October 1, 2024 (just over a week before the mediation was held on October 10, 2024) that Plaintiff Hoang To filed a First Amended Complaint to expand the scope of his proposed classes to include residents of all 50 states, and Proposed Intervenors' counsel was not made aware of that amendment until after the parties' October 10, 2024 mediation. For these reasons,

PROPOSED INTERVENORS' CORRECTED OBJECTIONS TO PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

provided Proposed Intervenors' counsel certain information in advance of the mediation, including class-size information and a copy of an applicable insurance policy, Proposed Intervenors' counsel nonetheless conditioned all of their settlement demands on Defendants' production of additional discovery to confirm the accuracy of the information provided prior to the mediation (and certain representations made at the mediation). Although a settlement was not reached at the mediation, the parties continued to explore resolution following the mediation, including most recently on October 16, 2024 (when Defendants made a settlement offer to Proposed Intervenors) and on October 18, 2024 (when Proposed Intervenors made a counter settlement demand to Defendants).

Immediately after the October 10, 2024 mediation, Proposed Intervenors' counsel also initiated efforts to meet and confer in good faith with Defendants' counsel on a motion for interim appointment of class counsel they intended to file in the *Feller* Action, on a motion to intervene and to dismiss they intended to file in the instant action, and on dates for the depositions (noticed by Proposed Intervenors) of Defendants' corporate representatives, only to be totally ignored. Indeed, for over two weeks Defendants strung Proposed Intervenors' counsel along with claims that they were conferring with their clients as a basis for refusing to meet and confer telephonically with Proposed Intervenors' counsel regarding these matters. Additionally, from October 19 to October 24, 2024, Judge Holderman repeatedly attempted to reach Defendants' counsel to continue the parties' ongoing post-mediation settlement negotiations, only to be completely ignored as well.

As it turned out, Defendants' counsel had contacted the plaintiff's counsel in this second-filed matter on October 11, 2024 – the day after the unsuccessful mediation between Proposed Intervenors and Defendants in the *Feller* Action – to begin the process of selling the classes' claims

---

Proposed Intervenors' counsel reasonably concluded that Plaintiff Hoang To's counsel's participation at the mediation was unlikely to meaningfully benefit class members in the negotiations, and thus declined to extend an invitation.

PROPOSED INTERVENORS' CORRECTED OBJECTIONS TO PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

to the plaintiff's counsel in this action at a price that Proposed Intervenors and their counsel had previously rejected (and for good reason). According to DirectToU's counsel and the plaintiff's counsel in this matter, an agreement on the "principal" terms of the proposed settlement presently before the Court for preliminary approval was reached on October 19, 2024 – one day after Proposed Intervenors' counsel had rejected Defendants' most recent settlement offer and countered with a new settlement demand of their own, both relayed by Judge Holderman. And the terms of the proposed settlement principally agreed to on October 19, 2024 – $1.75 million and some prospective relief – are the exact same terms that had been previously offered by Defendants on October 16, 2024 and rejected by Proposed Intervenors on October 18, 2024.[7] Against this backdrop, it is hard to imagine anything that could have been left for Plaintiff Hoang To's counsel to "negotiate" before he and his client agreed to the Proposed Settlement presently before the Court for approval.

What is clear, however, is that prior to agreeing to the Proposed Settlement, Plaintiff Hoang To's counsel in this second-filed action performed no independent investigation into the data-sharing practices giving rise to the claims alleged in the *Feller* Action, did not exchange initial disclosures with Defendant, conducted no formal discovery, and engaged in no meaningful litigation in this action – leaving him and his client completely unaware of the primary and strongest basis for Defendant's

---

[7] In an effort to escape the first-to-file rule and the close scrutiny given to class action settlements by courts of this judicial district, the parties to this action stipulated to a remand of this action back to state court. (*See* ECF No. 18.) That stipulation cites "issues related to standing that may impact this Court's Article III jurisdiction over the settlement" as the basis for sending the case back to state court. (*See id.*, ¶ 4.) But a lack of Article III standing is not and never has been a legitimate threat to this Court's exercise of subject-matter jurisdiction, because controlling Ninth Circuit authority holds that allegations of a defendant's disclosure of a person's video-purchase information in violation of the VPPA necessarily manifest an intangible concrete harm (namely, an invasion of privacy) sufficient to satisfy the injury-in-fact prong of Article III's standing requirement. *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984 (9th Cir. 2017). The justification for seeking to remand the case back to state court proffered by the parties was thus obviously pretext for what was really an attempt to escape this Court's jurisdiction to avoid having the Court scrutinize this reverse auction-produced Proposed Settlement. Tellingly, after it became clear that this Court would not simply rubber stamp the stipulation, the parties' concerns about Article III standing magically disappeared and they withdrew the stipulation. (*See* ECF No. 32.)

PROPOSED INTERVENORS' CORRECTED OBJECTIONS TO PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1  liability under the VPPA, as set forth in the *Feller* Action, and completely unaware of the existence of

2  a $2.5 million policy of insurance (with a $500,000 retention) available to Defendant in this action.

3  Notably, the operative complaint at the time the Proposed Settlement agreed to in principal

4  on October 19, 2024 (*see* ECF No. 26-1, ¶ 21) and when it was formally executed on October 23,

5  2024 (*see* ECF No. 26-2) – the First Amended Complaint (ECF No. 10 (filed October 1, 2024)) –

6  contained no allegations concerning Defendants' practices of disclosing all of their customers'

7  purchase-related information to third parties in the data-brokerage industry (the strongest theory for

8  Defendants' liability under the VPPA and thus the primary basis for Proposed Intervenors' claims

9  against Defendants in the *Feller* Action) – and the formal settlement agreement itself makes clear that,

10 at the time of its execution, Plaintiff Hoang To and his counsel thought that the claims being settled

11 were those arising from the factual allegations of the then-"operative" First Amended Complaint

12 (which, again, only contained allegations concerning Meta Pixel disclosures). (*See* ECF No. 26-2, ¶

13 1.21 (Settlement Agreement, defining "Operative Complaint" as the "First Amended Complaint filed

14 on October 1, 2024")).  Indeed, it was not until November 1, 2024, three days before the filing of

15 the Motion, that Plaintiff Hoang To filed a Second Amended Complaint alleging facts concerning

16 Defendant's data brokerage-related disclosures (which parroted the allegations of Proposed

17 Intervenors' initial complaint in the first-filed *Feller* Action). (*See* ECF No. 23.)

18 Notwithstanding the obvious informational disadvantage that Plaintiff Hoang To and his

19 counsel faced at the time they agreed to the terms of the Proposed Settlement, Plaintiff Hoang To's

20 counsel nevertheless failed to condition his and his client's execution of the formal settlement

21 agreement on Defendant's production of confirmatory discovery sufficient to verify the sizes of the

22 proposed Settlement Classes or show how those figures were computed.  *See* ECF No. 26-1, ¶¶ 18

23 and 21 (Plaintiff Hoang To's counsel making no mention of conditioning agreement to Proposed

24 Settlement on Defendant's provision of any confirmatory discovery to confirm prior representations

PROPOSED INTERVENORS' CORRECTED OBJECTIONS TO PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

on class size); ECF No. 34-1, ¶ 8 (Defendant's counsel making no mention of producing any confirmatory discovery to Plaintiff Hoang To's counsel to confirm class size representations).

Moreover, prior to agreeing to the Proposed Settlement, Plaintiff Hoang To's counsel did not request much less obtain a copy of the insurance policy that provides Defendants coverage for these claims – a $2.5 million policy with a $500,000 retention.  Given that Defendant's realistic exposure is many times greater than the policy limit, the Proposed Settlement's recovery of far less than the available insurance coverage is plainly inadequate (as discussed further below).  *See generally* ECF No. 26-1, ¶ 21 (Plaintiff Hoang To making no mention of receiving applicable policy of insurance prior to entering into Proposed Settlement); ECF No. 34-1 (Defendant's counsel making no mention of producing the relevant policy of insurance to Plaintiff Hoang or his counsel).

Nor did Plaintiff Hoang To's counsel participate in a formal mediation before a neutral third party (or otherwise engage in any other arm's-length settlement negotiations with Defendant) prior to entering into the Proposed Settlement.  *See Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 170 (N.D. Cal. 2019) ("The use of an experienced private mediator and presence of discovery supports the conclusion that Plaintiffs were 'armed with sufficient information about the case' to broker a fair settlement."); *see also, e.g., Zwicky v.* 343 F.R.D. at 121.

Before entering into a class settlement, especially one produced without the benefit of any arm's-length negotiations overseen by a neutral third party, counsel "must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value." *Acosta*, 243 F.R.D. at 396. As explained above, Defendant's counsel contacted Plaintiff Hoang To's counsel to discuss settling the class's claims the day after the mediation in the first-filed *Feller* Action, the parties to this second-filed action agreed in principle to the terms of the Proposed Settlement eight days later, and the Proposed Settlement was formally executed by Plaintiff Hoang To and his counsel four days after that – all before Plaintiff Hoang To's counsel had taken any meaningful

PROPOSED INTERVENORS' CORRECTED OBJECTIONS TO PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

investigative steps to reliably develop the extent of Defendant's liability, had taken any confirmatory

discovery concerning the class size, had obtained the relevant policy of insurance, or had participated

in any arm's-length negotiations before a third-party mediator.  Because Plaintiff Hoang To and his

counsel entered into the Proposed Settlement after "ha[ving] taken few investigative steps that could

reliably develop the extent of [the defendant's] liability[,]" the Court should deny preliminary

approval. *See Grady v. RCM Techs., Inc.*, 671 F. Supp. 3d 1065, 1074 (C.D. Cal. 2023); *see also,

e.g., Louangamath v. Spectranetics Corp.*, 2021 WL 9274552, at *2 (N.D. Cal. May 19, 2021); *Kim v. Allison*,

87 F.4th 994, 1002 (9th Cir. 2023) [hereinafter "*Kim II*"]; *Ayoub v. Harry Winston, Inc.*, No. 21-CV-

01599-JST, 2022 WL 20243404, at *2 (N.D. Cal. Apr. 25, 2022); *Zwicky v.* 343 F.R.D. at 121; *Acosta*,

243 F.R.D. at 397; *Grady,* 671 F. Supp. 3d at 1075; *Cotter v. Lyft, Inc.,* 176 F. Supp. 3d 930, 935 (N.D.

Cal. 2016); *Wilson v. J.B. Hunt Logistics, Inc.*, 2020 WL 11626082, at *4 (C.D. Cal. Nov. 13, 2020).

Finally, it is worth mentioning that, following the filing of the Motion, Plaintiff Hoang To's

counsel contacted Proposed Intervenors' counsel in an improper attempt to prevent the Proposed

Settlement from being appropriately scrutinized. Just hours before the Court's November 13, 2024

status conference in this matter, Plaintiff Hoang To's counsel sent an e-mail to Proposed Intervenors'

counsel asking to speak by telephone.  (Declaration of Frank S. Hedin ("Hedin Decl.") ¶ 33.)

Proposed Intervenors' counsel, together with a colleague at his firm, called Plaintiff Hoang To's

counsel. (*Id.*; Declaration of Tyler Somes ("Somes Decl.") ¶ 12.) On this call, Plaintiff Hoang To's

counsel stated that, if Proposed Intervenors withdrew their pending motion to intervene and to

dismiss, stay, or transfer and instead supported the Proposed Settlement, he would give Proposed

Intervenors' counsel 10% of any fee he receives if the Proposed Settlement is ultimately approved.

(Hedin Decl. ¶ 37; Somes Decl. ¶ 14.) Proposed Intervenors' counsel found the proposal patently

inappropriate, and later that day, after conferring about it with Proposed Intervenors, sent an e-mail

to Plaintiff Hoang To's counsel advising him that his proposal was rejected. (Hedin Decl. ¶ 39; Somes

Decl. ¶ 16.) Mr. Hammond's bid to buy off Proposed Intervenors' counsel in this way – at a time when Proposed Intervenors' had previously signaled their intent to object to the Proposed Settlement (*see, e.g.,* ECF No. 33 at 10 n.10 – was an attempted end-run-around Rule 23(e)'s requirement that "no payment or other consideration may be provided in connection with . . . forgoing or withdrawing an objection" unless "approved by the court after a hearing," Fed. R. Civ. P. 23(e)(5)(B), with the improper aim of insulating the Proposed Settlement from the scrutiny it deserves.  This sort of conduct further confirms that the Proposed Settlement was not negotiated by experienced, competent counsel looking out for the interests of class members, but rather by counsel interested in simply getting the deal approved as quickly as possible. *See e.g., Rahman v. Gate Gourmet, Inc.*, No. 3:20-CV03047-WHO, 2021 WL 5973046, at *5 (N.D. Cal. Nov. 22, 2021).

Accordingly, the first *In re Volkswagen* factor weighs heavily against granting preliminary approval to the Proposed Settlement.

## II.     The Proposed Settlement is Obviously Deficient in Numerous Respects.

Second, the Proposed Settlement has several "obvious deficiencies," *In re Volkswagen*, 2018 WL 6198311, at *4, many of which violate terms of the Northern District of California's Procedural Guidance for Class Action Settlements.

### A. The Definitions of "Released Claims" and "Released Parties" in the Proposed Settlement are Grossly Overbroad

In exchange for accepting pennies on the dollar for the class's claims (discussed below in Part IV.), Plaintiff Hoang To's counsel agreed to obviously overbroad release provisions that would provide Defendant and numerous groups of unrelated and unidentified third parties releases from liability for class members' claims arising from facts not even alleged in the operative pleading.

In the Ninth Circuit, it is well established that, in the class action context, "[a] settlement agreement may preclude a party from bringing a related claim in the future even though the claim

PROPOSED INTERVENORS' CORRECTED OBJECTIONS TO PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    was not presented and might not have been presentable in the class action, but <u>only where the</u>

2    <u>released claim is based on the identical factual predicate as that underlying the claims in the settled</u>

3    <u>class action</u>." *Hesse v. Sprint Corp.,* 598 F.3d 581, 590 (9th Cir. 2010) (emphasis added); *see also Hadley*

4    *v. Kellogg Sales Co.*, 2020 WL 836673, at *2 (N.D. Cal. Feb. 20, 2020); *Chavez v. PVH Corp.*, 13-CV-

5    01797, 2015 WL 581382, at *5 (N.D. Cal. Feb. 11, 2015). Put another way, "a release of claims that

6    'go beyond the scope of the allegations in the operative complaint' is impermissible." *Lovig v. Sears,*

7    *Roebuck & Co.*, 11-CV-00756, 2014 WL 8252583, at *2 (C.D. Cal. Dec. 9, 2014) (citation omitted); *see*

8    *also, e.g., Marshall v. Northrop Grumman Corp.*, 469 F. Supp. 3d 942, 949 (C.D. Cal. 2020).

9        At the time the Proposed Settlement was executed on October 23, 2024, the operative

10    pleading was the First Amended Class Action Complaint.  (*See* ECF No. 10 (FAC, filed October 1,

11    2024); ECF No. 26-2 (executed agreement memorializing Proposed Settlement, defining "Operative

12    Complaint" as the "First Amended Class Action Complaint").) In the First Amended Class Action

13    Complaint, Plaintiff Hoang To alleges that Defendant violated the VPPA and two California state

14    statutes by transmitting the PII of its customers to Meta through the Meta Pixel technology installed

15    on its website deepdiscount.com. (ECF No. 10, ¶¶ 2, 13, 33-34, 39, 62-63.) That is the only "factual

16    predicate" on which the Plaintiff's claims in the First Amended Class Action Complaint arise.

17        Because the First Amended Class Action Complaint was the operative pleading at the time

18    the Proposed Settlement was executed, the release provisions of the Proposed Settlement must be

19    "limited to claims based on an identical factual predicate" as the claims alleged in the First Amended

20    Class Action Complaint – again, Defendant's practice of transmitting to Meta the PII of its customers

21    through the use of the Meta Pixel technology installed on the website deepdiscount.com. However,

22    the definition of "Released Claims" in the Proposed Settlement encompasses claims based on factual

23    predicates far broader than the factual predicate from which the claims alleged in the FAC arise:

24

PROPOSED INTERVENORS' CORRECTED OBJECTIONS TO PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

any and all actual, potential, filed, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extra contractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees, and/or obligations, whether in law or in equity, **accrued or un-accrued**, direct, individual or representative, **of every nature and description whatsoever**, **arising out of any facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures relating to or arising out of the collection of information** and/or the sharing of information with third parties which identifies a person as having requested or obtained specific video materials or services, including all claims that were alleged or brought or could have been alleged or brought in the Action. Nothing herein is intended to release any claims any governmental agency or governmental actor has against Defendant.

(ECF No. 26-2, ¶ 1.25 (emphasis added).)

For one thing, the terms "arising out of", "of every nature and description whatsoever", and "related to" render the release fatally overly broad. With those terms, the released claims are not limited to the claims and facts pled in the FAC concerning disclosures of video purchase-related information to Meta, via the Meta Pixel technology installed on deepdiscount.com. Instead, the Proposed Settlement purports to release any claim "**arising out of** any facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures **relating to or arising out of the collection of information** and/or the sharing of information with third parties" – any third parties, not just Meta – "which identifies a person as having requested or obtained specific video materials or services" from any of Defendant's websites. (*See id.* (emphasis added).) The FAC in this matter did not allege any claims based on anyone's disclosure of information to any third party other than Meta, nor did it allege any claims arising from the "collection of information" by Defendant or any other party – and yet the Proposed Settlement would release any and all claims arising out of any facts, acts, omissions, etcetera "relating to or arising out of the collection of information and/or the sharing of information with third parties which identifies a person as having requested or obtained specific video materials or services[.]" (*See id.*)

Notably, the Class Notice proposed by Plaintiff Hoang To states, in pertinent part, that if a class member files a claim or does nothing, his or her "claims against Defendant and the Released

PROPOSED INTERVENORS' CORRECTED OBJECTIONS TO PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Parties **relating to the alleged collection and/or disclosure of your information by . . . third parties will be released**." (ECF No. 26-2 at 41 (emphasis added).)  The parties' own interpretation of the release provisions of the Proposed Settlement, as articulated in the class notice, confirms Proposed Intervenors' concerns about the scope of the release provisions.  The Court simply cannot approve a settlement that purports to release class members' claims "relating to the alleged collection and/or disclosure of [their] information by . . . third parties." (*See id.*)

Further, the Proposed Settlement's definition of "Released Claims" purports to release claims that, as of the Effective Date, remain "un-accrued." In other words, it purports to release claims against Defendant arising from **future** conduct. Not only is the release of claims arising from future conduct well beyond the scope of the claims and facts alleged in the FAC, but it is well established that such claims cannot be released as a matter of law.  *See Feller v. Transamerica Life Ins. Co.*, No. 2:16-cv-01378-CAS (AJWX), 2016 WL 6602561, at *6 (C.D. Cal. Nov. 8, 2016); *see also, e.g., In re Conseco Life Ins. Co. Cost of Ins. Litig.*, 04-CV-1610, 2005 WL 5678842, at *7 (C.D. Cal. Apr. 26, 2005); *In re TikTok, Inc., Consumer Priv. Litig.*, 20-CV-4699, 2024 WL 278987, at *10 (N.D. Ill. Jan. 25, 2024);  *Kleen Prods. LLC v. Int'l Paper*, 306 F.R.D. 585, 606 (N.D. Ill. 2015).

For these reasons, the definition of "Released Claims" is grossly overbroad. *See e.g., Tijero v. Aaron Bros., Inc.,* No. 10-CV-01089, 2013 WL 60464, at *9 (N.D. Cal. Jan. 2, 2013) (release overbroad where it did not "appropriately track the extent and breadth of Plaintiffs' allegations in the FAC and release[d] unrelated claims"); *Rivera v. W. Express Inc.*, No. 18-CV-1633, 2020 WL 5167715, at *8 (C.D. Cal. May 1, 2020) (finding release was overbroad where covered all claims "related to" claims pled in complaint); *Marshall*, 469 F. Supp. at 949–50 (release overly broad where released all claims "arising out of" claims in the complaint); *Hadley*, 2020 WL 836673, at *2; *Kouri v. Fed. Express Corp.*, No. 08-CV-066, 2023 WL 3431288, at *6 (C.D. Cal. Jan. 13, 2023); *Cashon v. Encompass Health Rehab. Hosp. of Modesto, LLC*, No. 19-CV-00671, 2022 WL 95274, at *9 (E.D. Cal. Jan. 10, 2022).  The

PROPOSED INTERVENORS' CORRECTED OBJECTIONS TO PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    Motion should be denied on this basis alone.  *See, e.g, Kouri*, 2023 WL 3431288, at *7; *Stokes v. Interline*

2    *Brands, Inc.*, No. 12-CV-05527-JD, 2014 WL 5826335, at *1 (N.D. Cal. Nov. 10, 2014) (same); *McKeen-*

3    *Chaplin v. Franklin American Mortg. Co.*, 2012 WL 6629608, *5 (N.D. Cal. 2012) (same).

4          Moreover, even if the Second Amended Complaint were considered the operative pleading

5    for purposes of assessing the propriety of the Proposed Settlement's release provisions (and it should

6    not be), the Proposed Settlement nonetheless purports to release claims far beyond those "based on

7    an identical factual predicate" as the claims alleged in the Second Amended Complaint. The Second

8    Amended Complaint, filed on November 1, 2024 (after execution of the settlement agreement

9    memorializing the Proposed Settlement), alleges that Defendant violated the VPPA and two

10   California state statutes by (1) transmitting to Meta the PII of its customers through the use of the

11   Meta Pixel on its websites deepdiscount.com, ccvideo.com, and moviesunlimited.com, as well as by

12   (2) disclosing its customers' PII to data aggregators and brokers, including to nextmark.com. *See* ECF

13   No. 23, ¶¶ 3, 48-60, 62, 66, 74-75, 84, 86, 93, 103 (SAC, filed November 1, 2024).  Those are the only

14   "factual predicates" on which the claims alleged in the Second Amended Complaint arise. And yet

15   the Proposed Settlement's release provisions purport to cover claims arising from altogether different

16   facts, including, as discussed above, claims arising from or relating to the "collection" of information.

17         But it gets worse.  The Proposed Settlement's definition of "Released Parties" is also grossly

18   overbroad in that it releases non-parties not identified by name in the Proposed Settlement agreement

19   (or in Defendant's Certificate of Interested Persons and Corporate Disclosure Statement filed in this

20   action (ECF No. 3)), including potentially third parties totally unaffiliated with Defendant and those

21   having played no role in the facts giving rise to the claims alleged in either the FAC or the SAC. The

22   Proposed Settlement defines "Released Parties" as follows:

23         Defendant DirectToU, LLC as well as any and all of each of their respective present
             or past heirs, executors, estates, administrators, predecessors, successors, <u>assigns</u>,
24           direct or indirect parent companies, subsidiaries, <u>licensors</u>, <u>licensees</u>, <u>associates</u>,
             <u>affiliates</u>, employers, employees, <u>agents</u>, <u>consultants</u>, independent contractors,

PROPOSED INTERVENORS' CORRECTED OBJECTIONS TO PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

insurers, directors, managers, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, underwriters, owners, shareholders, lenders, auditors, investment advisors, legal representatives, <u>successors in interest</u>, <u>assigns and companies</u>, <u>firms</u>, trusts, and <u>corporations</u>, and each of their respective aforementioned persons <u>and entities</u>.

ECF No. 26-2, ¶ 1.26 (emphasis added). Because none of the parties falling within any of these extremely vague categories of parties described above are identified by name, it is impossible for Proposed Intervenors or class members to determine which third parties the terms purports to encompass and provide releases to. Consequently, the definition of "Release Parties" is fatally overbroad, warranting denial of preliminary approval. *See, e.g., Turner v. HJB Express Freight, Inc.,* No. 17-CV-655, 2018 WL 3151680, at *4 (M.D. Fla. Apr. 20, 2018) (finding settlement agreement overbroad where purported to "release non-parties who have not been adequately identified").

Accordingly, the Court should deny the Motion in light of the Proposed Settlement's overbroad release provisions.

**B. The Proposed Settlement Requires that Every Settlement Class Member Take the Unnecessary Step of Submitting a Claim Form in Order to Receive Payment.**

The Settlement Agreement also needlessly requires class members to file claim forms to receive settlement payments. *See e.g.,* ECF No. 26-2, ¶¶ 1.2-14, ¶ 2.1(b).

In the Motion, Plaintiff Hoang To offers no justification for why a class member must file a claim form to receive a payment from the settlement. Defendant knows who all of the settlement class members are and where they reside (and possesses email addresses for most of them as well) – after all, the crux of this case is Defendant's practices of disclosing these persons' personally identifying information (concerning their video purchases) to third parties. Requiring claim forms would simply suppress the number of class members who receive payment (Plaintiff projects that only 5% of class members will submit claims, leaving 95% without any recovery) and deplete the total sum of money ultimately paid to class members (due to the expenses with claims processing).

PROPOSED INTERVENORS' CORRECTED OBJECTIONS TO PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Instead of requiring class members to submit claim forms to receive payments, all class members (except for those who submit requests for exclusion) should be paid automatically. Indeed, that is exactly how Proposed Intervenors' counsel structured each of their last six settlements in similar data-privacy class actions alleging improper disclosure of class members' purchase-related information. *See e.g., Schreiber et al. v. Mayo Foundation for Medical Education & Research*, No. 22-cv-00188 (W.D. Mich.) (automatic pro rata payments sent to all class members who did not submit requests for exclusion); *Pratt et al. v. KSE Sportsman Media, Inc.*, No. 21-cv-11404 (E.D. Mich.) (same); *Kain v. The Economist Newspaper NA, Inc.*, No. 21-cv-11807 (E.D. Mich.) (same); *Strano v. Kiplinger Washington Editors, Inc.*, No. 21-cv-12987 (E.D. Mich.) (same); *Moeller v. The Week Publications, Inc.*, No. 22-cv-10666 (E.D. Mich.) (same); *Kokoszki v. Playboy Enters., Inc.*, No. 19-cv-10302 (E.D. Mich.) (same).

By requiring class members to submit claim forms to receive settlement payments, the Proposed Settlement imposes unfair and unreasonable hurdles on class members and the Court should deny preliminary approval on this basis.

### C. The Proposed Class Notice Provides Incorrect Information to Class Members Concerning the Estimated Range of Settlement Payments and Omits Important Information Concerning the Settlement Website.

The Class Notices contemplated by the Proposed Settlement are deficient in that they either fail to estimate an amount for each claimant's settlement payment, or they estimate a range for the amount of each claimant's settlement payment that conflicts with the range of the estimated per-claimant settlement payment provided in the Motion.

First, the Class Notices fail to adequately advise class members of the amount of money they stand to receive from the Proposed Settlement if they submit a claim. Dividing the net Settlement Fund of $1,162,500 (calculated by deducting from the $1,750,000 Settlement Fund payments for attorneys' fees of $437,500, administration costs of $125,000, litigation expenses of $20,000, and a service award of $5,000) by 14,556.4 (5% of the class size estimated in the Motion) results in a per-

PROPOSED INTERVENORS' CORRECTED OBJECTIONS TO PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

claimant payment of $79.86, slightly different than the sum of $80.21 estimated in the Motion. (ECF No. 26 at 10.) However, the Long-Form Class Notice (Ex. C, Settlement Agreement) advises class members that each claimant is estimated to receive between "$35 to $65." (ECF No. 26-2 at 45.)[13] Moreover, the Short Form Class Notice (Ex. B, Settlement Agreement) fails to provide any estimated range for per-claimant payments to claiming class members at all. (*See* ECF No. 26-2 at 39-41.) The Court should decline to preliminarily approve the Proposed Settlement given that it proposes the dissemination of Class Notices that, in one version, fail to provide any estimated per-claimant recovery and, in another version, provide an incorrect estimate for the per-claimant recovery.

Second, nowhere in the Proposed Settlement or the accompanying proposed Class Notices is the URL of the Settlement Website or the form or content of the Settlement Website provided. However, on the last page of Exhibit B to the Proposed Settlement (ECF No. 26-5 at 41), there is a placeholder field that states "[WEB ADDRESS]"; when that placeholder field is clicked in the PDF document, the document directs to the URL www.shoutfactoryvppasettlement.com. The Court should inquire if this URL will be used for the Settlement Website, and if so, why it will be used.[14] The Court should also require the parties to produce the proposed content and form of Settlement

---

[13] The Long-Form Class Notice also references "Vouchers" being paid to claiming class members, even though there is no "voucher" component to the relief provided by the Proposed Settlement. (*See* ECF No. 26-2 at 45 (heading that states "When will I get my Cash Payment and Voucher?").)

[14] Notably, Proposed Intervenors' counsel is litigating another VPPA class action against a company called Shout Factory!, LLC, and the same counsel representing the Defendant in this case represents Should Factory!, LLC in that case. Proposed Intervenors' counsel are concerned that, given how broadly the release provisions are drafted in the Proposed Settlement (as previously discussed), Defendant could attempt to argue that the release provisions of the Proposed Settlement, if approved, somehow cover the claims alleged by the plaintiffs in this unrelated matter. Proposed Intervenors' counsel are particularly concerned of this scenario in light of the reverse auction that occurred in the instant matter – and all the more so given that, just weeks ago, another action was filed against Shout Factory!, LLC for violation of the VPPA and, when Proposed Intervenors' counsel asked Defendant's counsel to confirm she was not planning to sell the settlement of the class's claims in that case to the attorney in the newly filed case in a reverse auction, Proposed Intervenors' counsel received no response. Hedin Decl. ¶ 40. For these reasons, the apparent use of the URL www.shoutfactoryvppasettlement.com for the proposed Settlement Website is deeply concerning to Proposed Intervenors and the Court should inquire into this issue further.

PROPOSED INTERVENORS' CORRECTED OBJECTIONS TO PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1  Website to ensure its content is readable and understandable by class members, and that its

2  functionality (including its claims filing form) is easy to use.

3      **D. Plaintiff Hoang To's Counsel Failed to Procure Estimates from Multiple Potential Settlement Administrators, and Selected Angeion Without Negotiating a Not-to-Exceed Figure for Its Administration Costs and Fees.**

4

5      Additionally, Plaintiff Hoang To's counsel failed to conduct a competitive bidding process

6  (involving multiple reputable companies) prior to selecting Angeion to administer the settlement,

7  and failed to negotiate a not-to-exceed figure for the administrative costs and fees it will charge.

8      The Northern District of California's Procedural Guidance for Class Action Settlements

9  requires the parties to identify the "settlement administrator selection process, how many settlement

10 administrators submitted proposals, what methods of notice and claims payment were proposed, and

11 the lead class counsel's firms' history of engagements with the settlement administrator over the last

12 two years." (*See* N.D. Cal. Proc. Guidance for Class Action Settlements, Preliminary Approval (2)(a).)

13 Although the Motion states that the "parties obtained competing bids from two prospective

14 settlement administrators" and "agreed to choose Angeion," the Motion fails to explain why only

15 two proposals for the administration work were obtained, fails to identify the other company besides

16 Angeion that submitted a proposal, fails to provide the assumptions used by each company to prepare

17 estimates, and fails to describe Plaintiff Hoang To's counsel's "history of engagements" with Angeion

18 "over the last two years." ECF No. 26 at 36.  Consequently, the Motion does not comply with section

19 (2)(a) of the Guidance. *See Becker v. LISI, LLC*, No. 21-CV-03295-JST, 2022 WL 19975411, at *5

20 (N.D. Cal. Sept. 1, 2022).

21     And although the Motion and the declaration submitted by Angeion state that administration

22 of the Proposed Settlement will cost approximately $125,000, both the Motion and the Angeion

23 declaration leave open the possibility that this figure could balloon in amount if the assumptions

24 underlying Angeion's proposal turn out to be inaccurate. (*See* ECF No. 26-8, n.3 (Angeion

PROPOSED INTERVENORS' CORRECTED OBJECTIONS TO PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Declaration stating that "Deviations from these underlying specifications may result in additional costs, as the costs of administration are based on the underlying assumptions. Out-of-scope services not included in Angeion's pricing proposal are subject to additional costs").  And neither the Proposed Settlement nor the terms of Angeion's engagement contains a cap on how high those fees and costs could ultimately go.  As a result, Plaintiff Hoang To's counsel has failed to protect the class from cost overruns on the front end and, as a result, has all but invited them.  At minimum, the Court should put a cap on Angeion's costs and fees, because without one, the net Settlement Fund available for payments to the class is at risk of significant depletion from administration fees and costs.

Accordingly, the second *In re Volkswagen* factor weighs heavily against granting preliminary approval to the Proposed Settlement.

### III.    The Proposed Settlement Class Gives Preferential Treatment to California Residents Whose Claims are Time Barred, Diluting the Monetary Relief Available to Settlement Class Members Whose Claims are Timely.

Third, the Proposed Settlement "improperly grants preferential treatment to class representatives or segments of the class [.]" *In re Volkswagen*, 2018 WL 6198311, at *4.

Pursuant to the Proposed Settlement, the Motion seeks to certify and provide the same sum of pro rata monetary relief to each person who falls within either of the following two definitions of the term "Settlement Class" and submits a claim form:

> All persons who reside in the United States, purchased a video or videogame from Defendant or signed up to receive notices about videos or videogames from Defendant, and about whom information which identified such persons as having requested or obtained specific video materials or services from Defendant may have been disclosed to a third party between **August 8, 2022 and the date of Preliminary Approval**; and

> All persons who reside in California, purchased a video or videogame from Defendant or signed up to receive notices about videos or videogames from Defendant, and about whom information which identified such persons as having requested or obtained specific video materials or services from Defendant may have been disclosed to a third party between **August 8, 2020 and the date of Preliminary Approval**.

(ECF No. 26-2, ¶ 1.30 (emphasis added).)

20

PROPOSED INTERVENORS' CORRECTED OBJECTIONS TO PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

The above-defined Settlement Class is overinclusive because it includes Californians whose claims for monetary relief accrued (i.e., Californians whose purchases of pre-recorded video products from one of Defendant's websites were made and their information disclosed) more than two years (the longest limitation period applicable to any of these persons' claims) before the action was filed. Indeed, both the First Amended Complaint and the Second Amended Complaint filed by Plaintiff Hoang To seek to recover monetary relief for Californians to redress Defendant's alleged disclosure of their video purchase-related information in violation of the federal VPPA and California Civil Code § 1799.3.[15]   The limitation period applicable to a VPPA claim is two years, and the limitation period applicable to a claim for violation of California Civil Code § 1799.3 is one year. *See* Cal. Civ. Code § 340(a) (specifying one-year limitation period for "[a]n <u>action upon a statute for a penalty</u> or forfeiture, <u>if the action is given to an individual</u>") (emphasis added); *id.* § 1799.3(c) ("Any willful violation of this section shall be subject to <u>a civil penalty</u> not to exceed five hundred dollars ($500) for each violation, which may be recovered in a civil action <u>brought by the person</u> who is the subject of the records.") (emphasis added).   Accordingly, there is no basis for the "Settlement Class" to include Californians who purchased video materials from Defendant's websites, and whose video purchase-related information was disclosed by Defendant to a third party, more than two but not more than four years prior to the filing of this case. By nonetheless defining the Settlement Class in this overinclusive way, Plaintiff Hoang To's counsel negotiated a settlement that pays money to

---

[15]   Incidentally, it also appears that Plaintiff Hoang To lacks standing to bring a claim for damages under California Civil Code § 1799.3 (and/or cannot establish that he satisfies Rule 23's typicality requirement with respect to the class members on whose behalf he seeks to prosecute a § 1799.3 claim), because each of the complaints filed in the *Hoang To* action alleges that Plaintiff Hoang To purchased three videos from deepdiscount.com "in or about May 15, 2023" (*see, e.g.,* ECF No. 23 at ¶ 6), more than one year before he filed suit in August 2024. *See Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 348–49 (2011) (holding a class representative must be part of the class and possess the same interest and suffer the same injury as class members).

PROPOSED INTERVENORS' CORRECTED OBJECTIONS TO PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

claimants with time-barred claims out of the same Settlement Fund from which claimants with timely claims are paid, diluting the payments to the latter and unjustly enriching the former.

And while Plaintiff Hoang To additionally alleges a claim for violation of California's UCL on behalf of Californians, the limitation period applicable to the UCL claim, which is predicated on violations of the VPPA and California Civil Code § 1799.3, is of the same duration as the longest limitation period applicable to the underlying predicate claim, which in this case is the two-year limitation period applicable to the VPPA claim. *See Guzman v. Polaris Industries Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022) But even if a longer limitation period governed a UCL claim, the UCL only provides for injunctive relief, so the UCL claim cannot under any scenario justify payments to claimants in California whose claims accrued more than two years prior to the commencement of this case. *See id.*; *see also* ECF No. 23 ("Prayer for Relief" seeking injunctive relief for this claim).

Accordingly, the third *In re Volkswagen* factor weighs heavily against granting preliminary approval to the Proposed Settlement.

## IV.    The Relief Provided by the Proposed Settlement is Plainly Inadequate.

Finally, the Proposed Settlement does not "provide[] class members with an award that falls within the range of possible approval[.]" *In re Volkswagen*, 2018 WL 6198311, at *4.

Because the VPPA provides for liquidated damages of $2,500 to a prevailing plaintiff, *see* 18 U.S.C. § 2710(c)(2)(A), the "soaking-wet" damages in this case (assuming 291,128 members of the settlement classes) is $727,820,000. Plaintiff Hoang To says that $1.75 million – approximately two-tenths of 1 percent of the maximum damages recoverable – is an "excellent result" for class members. It is not. The $1.75 million obtained through the Proposed Settlement equates to a gross recovery of $6.01 per class member (or a net per-class member recovery of $4.01 after all settlement-related fees and expenses are paid) – an amount that, in either case, is wholly inadequate in view of the strength of each class member's claim. *See Cotter*, 176 F. Supp. 3d at 935.

1    Plaintiff Hoang To says that the amount recovered by the Proposed Settlement is at the

2    higher end of recent VPPA settlements.  (*See* ECF No. 26 at 10.)  And he says so based upon his

3    comparison of the Proposed Settlement against six settlements in VPPA actions that solely involved

4    disclosures made to Meta via the Meta Pixel technology.[16] (*See* ECF No. 26-1.) But what Plaintiff

5    Hoang To and his counsel have failed to recognize is that, as alleged in the *Feller* Action, Defendants

6    also systematically transmitted all of their customers' video-purchase data to data appenders, data

7    cooperatives, and numerous other third party renters and exchangers of this data (as evidenced by

8    the data card accompanying Proposed Intervenors' complaint in the *Feller* Action) – data

9    transmissions that readily accessible party and third party discovery will cleanly reflect, and which are

10   sufficient, by themselves, to establish that Defendant, during the two-year statutory period, disclosed

11   the video-purchase information of all of its customers to numerous third parties, in clear violation of

12   the VPPA. Simply put: because the classes' claims do not depend upon Meta Pixel disclosures, their

13   claims should not have been settled as if they did.[17]

14   Proposed Intervenors put their data brokerage-related disclosure allegations front and center

15   in the complaint in the *Feller* Action, and for good reason. Proposed Intervenors' counsel caught

16   Defendants selling their customers' information on the consumer data markets in 2019, and has

17   significant experience prosecuting actions involving the exact same type of disclosures to data

18   appenders, data cooperatives, and other third-party renters and exchangers that are at issue in this

19   case. Specifically, Proposed Intervenors' counsel has litigated and successfully resolved numerous

20   data-privacy class actions arising from precisely these kind of disclosures in alleged violation of

21

22   _____

[16] Proposed Intervenors acknowledge the low per-class member market rate for VPPA settlements
     in purely Meta Pixel disclosure cases, attributable to difficulties in obtaining discovery from Meta.

23   [18] In fact, because the Michigan PPPA was amended to, *inter alia*, remove a prevailing plaintiff's
     entitlement to statutory damages of $5,000, effective July 2016, the cases litigated by Proposed

24   Intervenors' counsel under that statute presented far greater litigation risks than any of the risks posed
     to class members in this case.

PROPOSED INTERVENORS' CORRECTED OBJECTIONS TO PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1   Michigan's Preservation of Personal Privacy Act ("PPPA"), Mich. Comp. Laws § 445.771 *et. seq.*, a

2   statute analogous to the VPPA in that it prohibits the non-consensual dissemination of information

3   reflecting persons' purchases of reading materials and other forms of media (and provides for

4   liquidated damages in the amount of $5,000 per violation).[18]  In fact, in six Michigan PPPA actions

5   recently resolved on a class-wide basis by Proposed Intervenors' counsel, each class member

6   automatically received (i.e., without the need to file a claim form) a check in the mail that ranged in

7   amount from $110 to $550 (with an average of $475.50), as shown in the table below:

8

| Case | Class Size | Settlement Fund | Gross $ / Class Member | Net $ / Class Member |
|---|---|---|---|---|
| *Schreiber et al. v. Mayo Foundation for Medical Education & Research*, No. 22-cv-00188 (W.D. Mich.) | 62,746 | $52,500,000 | $836 | $550 |
| *Pratt et al. v. KSE Sportsman Media, Inc.*, No. 21-cv-11404 (E.D. Mich.) | 14,503 | $9,500,000 | $655 | $420 |
| *Kain v. The Economist Newspaper NA, Inc.*, No. 21-cv-11807 (E.D. Mich.) | 22,987 | $9,500,000 | $413 | $261 |
| *Strano v. Kiplinger Washington Editors, Inc.*, No. 21-cv-12987 (E.D. Mich.) | 17,413 | $6,800,000 | $393 | $250 |
| *Moeller v. The Week Publications, Inc.*, No. 22-cv-10666 (E.D. Mich.) | 13,025 | $5,000,000 | $383 | $250 |
| *Kokoszki v. Playboy Enters., Inc.*, No. 19-cv-10302 (E.D. Mich.) | 21,900 | $3,800,000 | $173 | $110 |
| **AVERAGE GROSS & NET RECOVERY:** | | | $475.50 | $306.83 |

15      The VPPA provides for statutory damages of $2,500, half of the $5,000 in statutory damages

16  provided by Michigan's PPPA.  Thus, had Plaintiff Hoang To's valuation of this case been driven by

17  Defendants' disclosures to data appenders, data cooperatives, and other third-party renters and

18  exchangers – the same exact kind of disclosures at issue in each of the cases identified in the table

19  above – Plaintiff Hoang To should have aimed at recovering somewhere around half of what was

20  recovered for each class member in the PPPA actions cited above – i.e., roughly $55 to $275 (net)

21  (or $86 to $418 (gross)) paid to every class member automatically. Instead, this critically important

22

23  ─────────────────────

    [18] In fact, because the Michigan PPPA was amended to, *inter alia*, remove a prevailing plaintiff's

24  entitlement to statutory damages of $5,000, effective July 2016, the cases litigated by Proposed
    Intervenors' counsel under that statute presented far greater litigation risks than any of the risks posed
    to class members in this case.

PROPOSED INTERVENORS' CORRECTED OBJECTIONS TO PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

factual predicate to the class's claims (as alleged in the *Feller* Action) was merely an afterthought to Hoang To's counsel, first put on his radar by Proposed Intervenors' motion to intervene and dismiss this action, and only alleged by Plaintiff Hoang To after he agreed to the Proposed Settlement.

Indeed, as the Motion states, Plaintiff Hoang To's counsel put a lot of stock in Defendant's technical defenses concerning the Meta Pixel: "Plaintiff believes that Defendant's primary defenses would center on the potential difficulties Plaintiff would encounter in establishing whether any specific Class Member's Personally Identifiable Information was disclosed via tracking tools[.]" (ECF No. 26 at 26.)  However, the proposed data brokerage class in the *Feller* Action encompasses every individual who purchased video products from any of Defendants' websites, and the data card attached to the *Feller* complaint shows that all of these persons' purchase-related information was disclosed to data appenders, as well as to data cooperatives and renters and exchangers of this data.[19] Thus, regardless of any technical defenses Defendant may have to Plaintiff Hoang To's claims arising from disclosures to Meta via the Meta Pixel technology, those defenses have no applicability to Defendants' disclosures to data appenders, data cooperatives, and other third-party renters and exchangers of this data – the primary factual predicate for the claims alleged in the *Feller* Action.

By assuming that class members' claims arise solely from Defendant's disclosures of video-purchase information to Meta via the Meta Pixel technology, Plaintiff Hoang To's counsel grossly undervalued their claims and, consequently, agreed to a Proposed Settlement that recovers a woefully inadequate amount for each of them ($6 gross, $4 net). Accordingly, the fourth and final *In re Volkswagen* factor weighs heavily against granting preliminary approval to the Proposed Settlement.

---

[19]    Defendants' responses to Plaintiffs' interrogatories confirm this, as their responses identify Epsilon (data appender), Wiland (data cooperative), Data Axle (list manager), and Path2Response (data broker) as recipients of Defendants' customer information.  Before the *Feller* Action was stayed, Proposed Intervenors' counsel issued subpoenas to each of these third parties for the materials necessary to certify the class and prevail on the merits.

PROPOSED INTERVENORS' CORRECTED OBJECTIONS TO PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## **CONCLUSION**

For the foregoing reasons, Proposed Intervenors' objections should be sustained, the Motion should be denied, and this case should be dismissed on first-to-file grounds to make way for Proposed Intervenors' continued prosecution of the first-filed *Feller* Action.

Dated:  November 19, 2024                    Respectfully submitted,

                                        **HEDIN LLP**

                                        By:    */s/ Frank S. Hedin*

                                        Frank S. Hedin (SBN 291289)
                                        1395 Brickell Ave, Suite 610
                                        Miami, Florida 33131
                                        Telephone:    (305) 357-2107
                                        Facsimile:      (305) 200-8801
                                        E-Mail: fhedin@hedinllp.com

                                        *Counsel for Proposed Intervenors*

PROPOSED INTERVENORS' CORRECTED OBJECTIONS TO PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on November 19, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing CORRECTED PROPOSED INTERVENORS' OBJECTIONS TO PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT is being served this day on all counsel of record identified on the attached Service List, via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Frank S. Hedin*

**HEDIN LLP**
Frank S. Hedin (SBN 291289)
1395 Brickell Ave, Suite 610
Miami, Florida 33131
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
Email: fhedin@hedinllp.com

*Counsel for Proposed Intervenors*

PROPOSED INTERVENORS' CORRECTED OBJECTIONS TO PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT