UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN HOANG TO,<br>　　　　Plaintiff,<br>　　v.<br>DIRECTTOU, LLC,<br>　　　　Defendant. | Case No. 24-cv-06447-WHO<br><br>**ORDER DENYING ALL MOTIONS**<br>Re: Dkt. Nos. 14, 26 |

Currently before me are: (1) proposed intervenors' (Douglas Feller, Jeffrey Heise, and Joseph Mull, collectively "*Feller*") motion to intervene and to dismiss or alternatively to transfer or stay this case pursuant to the first-to-file rule; and (2) plaintiff Hoang To's motion to preliminarily approve a class action settlement of this case. Both motions are DENIED.

*Feller's* motion to intervene is DENIED because their interests can be protected through objections to the approval of the settlement. And because the *Feller* case and this case were filed at essentially the same time, the *Feller* case is stayed, and this case has moved further along, the motion to dismiss or transfer under the first-to-file rule is DENIED.

Hoang To's motion for preliminary approval is DENIED without prejudice. For the settlement to be approved as fair, reasonable and adequate, counsel need to address the significant concerns raised by *Feller* regarding the valuation of the claims based not on defendant's use of the Meta pixel tool, but on defendant's sale or rent of consumer data to data brokers and other non-Meta third parties. Counsel must also address issues with respect to the scope of the release and proposed notice.

I encourage all counsel – for the parties and for *Feller* – to meet and confer to determine if a revised global settlement can be reached that appropriately accounts for the non-Meta pixel claims. Otherwise, I will expect a renewed motion for preliminary approval that provides a

reasoned valuation for the non-Meta pixel claims and additional support demonstrating that the existing settlement was reached after sufficient discovery, all showing why the settlement is fair, reasonable, and adequate.

## I.   MOTION TO INTERVENE AND DISMISS OR TRANSFER

*Feller* seeks to intervene to protect the interests of the class in the case he filed on August 8, 2024, in the Southern District of Florida. Dkt. No. 14. *Feller* argues that the case here, filed by Hoang To just four days later and removed to this court in September 2024, is a copycat case and the result of a reverse auction by defense counsel. Dkt. No. 14. *Feller* seeks intervention as of right or permissively under Rule 24(a) or (b) because the Hoang To settlement would extinguish his claims with an unfair and inadequate settlement.

In support, *Feller* alleges the following:

1.   Hoang To conducted no, or had inadequate, discovery to settle this case;

2.   Hoang To settled this case remarkably quickly, without the assistance of a mediator, just days after *Feller's* counsel and defendant attended a formal mediation with a retired judge and who believed, like *Feller*, that settlement negotiations were ongoing while defense counsel were instead negotiating with Hoang To;

3.   Defendant "obstructed" *Feller's* attempt in the Southern District of Florida to be appointed interim counsel, obstructed his efforts to intervene in this case and to have the Hoang To case dismissed under the first-to-file rule, and obstructed discovery in the Florida case;

4.   Hoang To settled this case based on a last-minute stipulated expansion of the claims in this case to encompass those in *Feller* without a commensurate expansion in the recovery for the class. That stipulated amendment extended the Hoang To action beyond VPPA[1] violations based on defendant's use of the Meta pixel (the only claims alleged in Hoang To's original and First Amended Complaint) to encompass the allegations at the heart of the *Feller* action--that defendant was also liable under the VPPA because defendant sold or rented consumer data to third-party data brokers *other* than Meta. See Dkt. No. 14-1, ¶ 85 (*Feller* action pleading

---

[1] Video Privacy Protection Act, 18 U.S.C. §2701 *et seq*. ("VPPA").

2

both a "Data Brokerage Class" and a separate "Meta Pixel Class").

All of these issues, according to *Feller*, raise the alarm of a collusive, reverse auction settlement that Feller seeks to challenge through intervention in this case.[2]

*Feller's* motion to intervene is DENIED. As *Feller's* persuasive arguments regarding Hoang To's motion for preliminary approval demonstrate, Feller is more than able to protect his interests by objecting to the proposed settlement of this case and, if necessary, opting out if and when a fair, reasonable, and adequate settlement is presented for my approval. *See, e.g., Perkins v. Ryder Integrated Logistics, Inc.*, No. 23-CV-00502-WHO, 2023 WL 8481817, at *1 (N.D. Cal. Dec. 7, 2023 (denying intervention in a similar context and noting that "cases from this District that have denied intervention, as a right or permissive, in similar circumstances" because objecting or opting out provide sufficient mechanisms to protect absent class members' rights).

*Feller's* alternative request to dismiss or transfer this case under the first-to-file rule is also DENIED.[3] The cases were filed within a few days of each other. The action was expanded, with my permission, to encompass the claims asserted in *Feller*. The *Feller* action has been administratively stayed by the court in Florida, with the purpose that I review and decide the motions to intervene and for preliminary approval. At this point, there is no risk of inconsistent rulings or wasted judicial resources. Judicial economy weighs in favor of denying the motion to

---

[2] *Feller* relies on my decision in *Rahman v. Gate Gourmet, Inc.*, No. 3:20-CV-03047-WHO, 2021 WL 5973046, at *4 (N.D. Cal. Nov. 22, 2021), as support for his motion to intervene and assertion that the Hoang To settlement is the product of a collusive reverse-auction. *Rahman* was different; the troubling procedural machinations in *Rahman* are not present. Here, the cases were filed within days of each other, notice of the *Feller* case was given within a matter of weeks, and most importantly, the representations of defense counsel are that while defendant was negotiating settlement with both parties, defendant did not inform Hoang To of the settlement discussions in *Feller*, Hoang To's counsel did not know about the settlement discussions in *Feller*, and Hoang To made the opening settlement offer to defendant.

[3] "The first-to-file rule is a "generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district.' *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982). The rule is meant to 'avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments,' and 'should not be disregarded lightly.'" *Molander v. Google LLC*, 473 F. Supp. 3d 1013, 1017 (N.D. Cal. 2020). Courts consider three factors in determining whether the first-to-file rule applies: (1) the chronology of the actions; (2) the similarity of the parties; and (3) the similarity of the issues. *See Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015).

dismiss or transfer.  *Feller's* motion is DENIED.

## II. MOTION FOR PRELIMINARY APPROVAL

As indicated above, the *Feller* objections to preliminary approval are serious.  Considering those objections and other issues – most significantly Hoang To's failure to show that the non-Meta pixel claims were appropriately considered and weighed by plaintiff and defendant in the settlement process and plaintiff's counsel's failure to separately value the non-pixel claims in the motion for preliminary approval – preliminary approval is DENIED.

Considerations for whether to approve a class action settlement include: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.2004)).  In the context of a pre-certification settlement, like here, a district court must be more vigilant and apply a higher level of scrutiny to ensure a settlement is free from collusion and is fair, reasonable and adequate to the class.  *See id*. at 946.  Although not articulated as a separate factor in Rule 23(e), "[t]he relief that the settlement is expected to provide to class members is a central concern."  Fed. R. Civ. P. 23(e)(2)(C)–(D) advisory committee's note to 2018 amendment.

In addition to these requirements, in my court it is mandatory that counsel seeking approval of class action settlements comply with the Northern District of California's Class Action Settlement Guidance.  *See* https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/; *see also* https://cand.uscourts.gov/judges/orrick-william-h-who/  Standing Order for Civil Cases, ¶ 8 (making Guidance mandatory).  The Guidance requires counsel to comply with certain standards and address particular issues when they move for preliminary and final approval.

Applying the necessary heightened scrutiny, I consider each of the objections raised by *Feller* and other issues apparent from the settlement process and motion for preliminary approval.

4

1. <u>Insufficient Valuation of Data Brokerage Claims as a Basis for Liability</u>. First and foremost, moving counsel have not shown that the non-Meta pixel data claims arising under the VPPA or California Civil Code § 1799.3 were appropriately considered and weighed in the parties' negotiations. The claims were only folded into this case (to cover the allegations in *Feller*) after the parties' settlement was reached. My concern is heightened by the failure of plaintiff's counsel to separately value the non-Meta pixel claims; they were barely addressed in the moving papers and during oral argument plaintiff's counsel kept returning to the value of the Meta pixel claims (*e.g.,* repeatedly making comparisons to the value of recently settled Meta pixel cases) as a proxy.[4] The settlement amount of $1,750,000 for 291,128 class members appears adequate for the Meta pixel claims, but perhaps not for wider data brokerage-based claims. The failures to address head on the data broker basis for the VPPA and California claims and to provide a separate valuation of those claims are the overarching reasons why I cannot preliminarily approve the settlement as fair, reasonable or adequate.

2. <u>Adequacy of Discovery</u>. *Feller* also contends that Hoang To did not have sufficient discovery to reach an informed settlement. In response, defense counsel proffered that the amount of discovery (pre-negotiation and confirmatory) to which Hoang To had access was similar to the discovery *Feller* had during *Feller's* negotiations with defendant. As shown during the hearing on these motions, however, the parties dispute what consumer information was provided to or made available by DirectToU to non-Meta data brokers and whether those third parties secured or had access to the type of information that could violate the VPPA or Section 1799.3. An informed settlement negotiation should be based on more than supposition. It is not clear to me that Hoang To had sufficient (or any) discovery regarding defendant's potential liability for disclosures to data brokers or that defendant provided sufficient informal discovery to Hoang To or *Feller* regarding its disclosures to data brokers. I understand that *Feller* was in the process of securing some of that discovery from third parties (*i.e.*, to show whether the data

---

[4] *Feller* argues that the appropriate valuation for the data brokerage VPPA claims are six cases arising under the Michigan VPPA analog. *See* Dkt. No. at 43 at 24. I do not find that those cases to be necessarily relevant for valuation either, as the Michigan statute provides for statutory damages in amounts that that far exceed damages available under the VPPA.

brokers received the type of information from defendant that could make defendant liable under the VPPA) when that case was stayed. On this record, I do not have confidence that adequate discovery was secured to properly value the claims. These concerns over the sufficiency of discovery weigh against preliminary approval.

3. Standing/Fairness. *Feller* argues that the settlement should be rejected because Hoang To lacks standing to represent the class (given the date when he last made a transaction with defendant) and because the settlement he proposes "unfairly" benefits California consumers bringing claims under California Civil Code § 1799.3 and California's Unfair Competition Law ("UCL," Cal. Bus. & Prof. Code § 17200 *et seq*.). Under the proposed settlement, California class members may file claims up to four years back, as opposed to the nationwide VPPA class which is limited to two years.

The differential treatment of the VPPA and California classes does not appear to be unfair, given that the UCL claim that can expand recovery of restitutionary relief beyond a related statute of limitations. That said, Hoang To did not adequately address this issue or the challenges to his standing in his reply in support of preliminary approval or in his opposition to the motion to intervene. If Hoang To submits a revised motion to preliminarily approve this or a renegotiated settlement, Hoang To shall address the standing issue and whether it impacts his typicality or adequacy as a class representative, and provide a more complete explanation of why the California class should be able to submit claims going back four years.

4. Adequacy of Counsel. *Feller* also attacks the adequacy of Hoang To's counsel, arguing they are inexperienced and were likely "handpicked" by defendant in a collusive agreement. I find no merit to these arguments. Hoang To's counsel have been actively litigating Meta pixel cases, although apparently not data brokerage cases under the VPPA. In addition, as made clear in the parties' declarations, Hoang To independently filed this case before it had any negotiations with defendant and defendant did not disclose the fact that it had a mediation or ongoing settlement discussions with *Feller* prior to Hoang To and defendant's agreement to a settlement. The alleged inadequacy of Hoang To's counsel is not a reason for denying preliminary

6

approval.[5]

5. <u>Use of a Claims Process.</u>  *Feller* also argues that the settlement is insufficient because it requires class members to submit a claim to recover under the settlement.  *Feller* points to recently settled VPPA cases where relief was provided to all class members by mailed paper checks, without the need to submit claims.  *See* Dkt. No. 43 at 16-17.  *Feller* argues that required use of a claims process it unnecessary to identify class members.  He asserts that it also depresses the number of class members who will receive relief from a class settlement, noting that Hoang To's proposed settlement administrator (Angeion) estimates that only 5% of the proposed class will submit claims if the settlement were approved.  Hoang To's counsel responds that using a claims process and allowing class members to select electronic forms of payment increases efficiencies, increases the likelihood that class members will receive the funds, and decreases the administrative costs allowing more money to flow to the class members who submit claims. Dkt. 26 at 28.

The use of a claims process (where claims can be submitted by mail or through the class action settlement website) does not weigh against approval.  Requiring claim submissions, assuming a robust notice plan, and allowing claims to be submitted electronically and for claimants to receive funds electronically, can result in efficiencies.  That may be especially true in consumer settlements where class member payments are under $10.

6. <u>Scope of Release.</u>  *Feller* makes a number of significant points regarding the breadth of the proposed release in the settlement agreement, as well as the scope of the entities covered by that release.  I agree with *Feller* that releasing "potential" and "unaccrued" claims as well as all claims "relating to or arising out of" are unnecessarily broad and problematic terms.

---

[5] *Feller* also asserts that Hoang To's counsel is not adequate because Hoang To's counsel offered *Feller's* counsel a 10% cut of the fees if *Feller* dropped his attempt to intervene and object. According to Hoang To the offer was merely for *Feller* to come into the Hoang To case so global peace could be secured.  *Compare* Declaration of Frank Hedin (Dkt. No. 39) ¶¶ 35-37 *with* Declaration of Julian Hammond (Dkt. No. 53-1) ¶¶ 3-5.  I do not weigh the parties' competing versions of that communication against the adequacy of Hoang To's counsel.  But I remind all concerned that any agreement between counsel not named as class counsel concerning how fees will be divided if and when fees are awarded is a "side agreement" that must be disclosed under Rule 23(e)(3).  In addition, if a payment or fee split is proposed to forego or withdraw an objection, that must be disclosed and be approved by the court under Rule 23(e)(5)(B).

7

*See* Settlement Agreement § 1.25. Limiting the release to claims "based on" the collection or sharing of information by "defendant DirectToU" with third parties would address those concerns. Similarly, the list of entities released through the settlement is incredibly broad, extending beyond entities identified in the settlement agreement itself or even DirectToU's certificate of interested parties. *See id*. § 1.26. The broad scope of released parties would not be as problematic if, as suggested, the release itself limited the released claims to those based on the conduct of DirectToU. At the hearing on the motions, the parties' counsel indicated willingness to tighten up the scope of the release and provide more specific identification of released entities. That must be done to secure approval.

       7.      <u>Compliance with the Northern District's Guidance</u>. Finally, *Feller* argues that Hoang To's motion for preliminary approval fails a number of the requirements of the Guidance. *Feller's* main argument is that because the settlement's release extends to all claims (including data broker claims), it violated Guidance rule 1.b. in that that release is broader than the claims in Hoang To's FAC. Although the FAC was the operative complaint at the time Hoang To agreed to the settlement with defendant, the *broader* SAC is now the operative complaint. It is the claims in the SAC that must be compared to the proposed scope of release in the settlement. That the SAC was filed after the settlement was reached does not support a negative inference; settlements are often dependent on the court's agreement to the filing of an expanded or narrowed complaint to match the scope of the settlement and release.

*Feller* points to other discrete failures to comply with the Guidance. One was the failure of counsel to disclose their history of prior retentions of proposed claims administrator Angeion. That was cured by Hoang To in the reply in support of preliminary approval.

*Feller* noted that the settlement agreement provided for only 30 days after notice for class members to opt-out or object; not the minimum 35 days required by the Guidance. Guidance, Preliminary Approval ¶ 9. But the proposed Notice submitted by the parties provides for 60 days to opt-out after notice. That is sufficient.

Finally, *Feller* states: (1) the proposed Long-Form notice mentions "vouchers" when no vouchers are contemplated; (2) the range of recoveries included in that Notice are too low; and (3)

8

1 the URL of the proposed settlement website and content of website have not been disclosed.  The
2 omission of "vouchers" in easily correctible, as is the correction of the range of potential
3 recoveries.  The URL for the website will be provided when the Notice is printed and posted
4 according to the Notice Plan.

## CONCLUSION

In sum, serious concerns regarding the valuation of the data broker-related claims under the VPPA and § 1799.3, as well as whether Hoang To had sufficient discovery to properly negotiate and value those claims, lead to denial of preliminary approval.  Other noted deficiencies should be corrected before a motion for preliminary approval is resubmitted.

**IT IS SO ORDERED.**

Dated: December 16, 2024



William H. Orrick
United States District Judge