Teresa C. Chow (State Bar No. 237694)
**BAKER & HOSTETLER LLP**
1900 Avenue of the Stars
Suite 2700
Los Angeles, CA  90067-4301
Telephone:    310.820.8800
Facsimile:    310.820.8859
Email:    tchow@bakerlaw.com

Bonnie Keane DelGobbo (*pro hac vice*)
Joel C. Griswold (*pro hac vice*)
**BAKER & HOSTETLER LLP**
One North Wacker Drive
Suite 3700
Chicago, IL  60606
Telephone:    312.416.6200
Facsimile:    312.416.6201
Email:    bdelgobbo@bakerlaw.com
Email:    jcgriswold@bakerlaw.com

*Attorneys for Defendants*
DIRECTTOU, LLC AND ALLIANCE ENTERTAINMENT, LLC

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JONATHAN HOANG TO, JEFFRY HEISE, and JOSEPH MULL, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> DIRECTTOU, LLC and ALLIANCE ENTERTAINMENT, LLC, <br><br> Defendants. | **CASE NO.: 3:24-CV-06447-WHO** <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO STAY AND COMPEL ARBITRATION** <br><br> *[Filed concurrently with Declarations; and Proposed Order]* <br><br> Hearing:    April 16, 2025 <br> Time:    2:00 PM |

- 1 -

**TO THE COURT, AND TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT at 2:00 p.m. on April 16, 2025 or as soon thereafter as the matter may be heard, via Zoom,[1] Honorable William H. Orrick presiding, Defendants DirectToU, LLC and Alliance Entertainment, LLC (collectively "Defendants") will and hereby do move for an order compelling individual arbitration and staying this action.

This action should be stayed pending individual arbitration because the Terms of Use on each of the websites on which Plaintiffs made purchases contained a provision requiring that the claims be heard in small claims court or arbitration. Further, Plaintiffs received reasonably conspicuous notice of the Terms of Use, and Plaintiffs affirmatively checked a box indicating that they read and agreed to the Terms of Use.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities; the Declarations of Tim Hinsley and Bonnie Keane DelGobbo; all other papers, documents, or exhibits that may be filed in support of this Motion; and the argument of counsel, if any, made at the hearing.

Dated: March 10, 2025               Respectfully submitted,

**BAKER & HOSTETLER LLP**
By:   /s/ Bonnie Keane DelGobbo
        Bonnie Keane DelGobbo

*Attorneys for Defendants*
DIRECTTOU, LLC and ALLIANCE ENTERTAINMENT, LLC

---

[1] If Plaintiffs wish to be heard in person in Courtroom 2 in the Courthouse for the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, pursuant to Judge Orrick's procedures, Plaintiffs should post a notice of intent to appear in person on ECF at least 48 hours before the hearing is scheduled.

- 2 -

DEFENDANTS' NOTICE OF MOTION AND MOTION TO STAY AND COMPEL ARBITRATION
CASE NO.: 3:24-CV-06447-WHO

**TABLE OF CONTENTS**

Page

I. STATEMENT OF ISSUES ...................................................................................................7

II. STATEMENT OF FACTS ....................................................................................................8

    A. Plaintiffs Agreed to Arbitrate Disputes........................................................................8

    B. Plaintiffs Sue Defendants Claiming Defendants Shared Information About Their Purchases Without Their Consent. .................................................................9

III. LEGAL STANDARD..........................................................................................................10

IV. ARGUMENT ......................................................................................................................11

    A. Each Plaintiff Agreed to the Terms of Use. ..............................................................11

    B. The Terms of Use Require Plaintiffs to Arbitrate. ....................................................13

    C. Arbitration Must Be On An Individual Basis. ..........................................................13

    D. To The Extent Plaintiffs Dispute Any Threshold Questions, The Terms of Use Delegate Those Questions to an Arbitrator. .....................................................14

    E. Defendants Have Not Waived Their Right to Compel Arbitration. .........................15

    F. This Case Should Be Stayed Pending Arbitration. ...................................................17

V. CONCLUSION....................................................................................................................17

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Armstrong v. Michaels Stores, Inc.*,
   59 F.4th 1011 (9th Cir. 2023) ...................................................................................................17

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ..................................................................................................................10

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) ..................................................................................................................10

*Berman v. Freedom Fin. Network, LLC*,
   30 F.4th 849 (9th Cir. 2022) .....................................................................................................11

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ..................................................................................................15

*Cavanaugh v. Fanatics, LLC*,
   738 F. Supp. 3d 1285 (E.D. Cal. 2024) ...............................................................................11, 12

*Chiron Corp. v. Ortho Diagnostic Systems, Inc.*,
   207 F.3d 1126 (9th Cir. 2000) .............................................................................................10, 13

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ..................................................................................................................10

*Epic Sys. Corp. v. Lewis*,
   584 U.S. 497 (2018) ..................................................................................................................14

*Fli-Lo Falcon, LLC v. Amazon.com, Inc.*,
   97 F.4th 1190 (9th Cir. 2024) .............................................................................................10, 14

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   586 U.S. 63 (2019) ....................................................................................................................15

*Hill v. Xerox Bus. Servs., LLC*,
   59 F.4th 457 (9th Cir. 2023) .....................................................................................................15

*Houtchens v. Google LLC*,
   649 F. Supp. 3d 933 (N.D. Cal. 2023) ......................................................................................11

*Lee v. Panera Bread Co.*,
   No. 1:22-CV-11958, 2023 WL 2606611 (E.D. Mich. Mar. 6, 2023) .......................................12

*Martin v. Yasuda*,
    829 F.3d 1118 (9th Cir. 2016) ...........................................................................................16, 17

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ......................................................................................................................10

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ................................................................................................11

*Oberstein v. Live Nation Ent., Inc.*,
    60 F.4th 505 (9th Cir. 2023) ...................................................................................................11

*Page v. GameStop Corp.*,
    No. 24-3428, 2025 WL 637441 (6th Cir. Feb. 27, 2025) ........................................................12

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004) ....................................................................................................11

*Rent–A–Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010) ...................................................................................................................10

*Rogers v. Lyft, Inc.*,
    452 F. Supp. 3d 904 (N.D. Cal. 2020) ...................................................................................14

*Sellers v. JustAnswer LLC*,
    73 Cal. App. 5th 444 (2021) ...................................................................................................12

*Sgouros v. TransUnion Corp.*,
    817 F.3d 1029 (7th Cir. 2016) ................................................................................................12

*Shirley v. Rocket Mortg.*,
    No. 2:21-CV-13007, 2022 WL 2541123 (E.D. Mich. July 7, 2022) .......................................12

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) ..................................................................................................13

*Slaten v. Dick's Sporting Goods*,
    2024 WL 1136399 (C.D. Cal. Feb. 2, 2024) ...........................................................................15

*Smith v. Spizzirri*,
    601 U.S. 472 (2024) .................................................................................................................17

*Specht v. Netscape Commc'ns Corp.*,
    306 F.3d 17 (2d Cir. 2002) ......................................................................................................11

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
    363 U.S. 574 (1960) .................................................................................................................10

*Wynn Resorts, Ltd. v. Atl.-Pac. Cap., Inc.*,
  497 F. App'x 740 (9th Cir. 2012) ...................................................................................15

**Statutes**

9 U.S.C. § 2 ..........................................................................................................................10

9 U.S.C. § 3 ...................................................................................................................11, 17

18 U.S.C. § 2710 ...............................................................................................................7, 9

Cal. Bus. & Prof. Code § 17200 ..........................................................................................10

Cal. Civ. Code § 1799.3 .........................................................................................................9

**Rules**

JAMS Streamlined Arbitration Rule 8(b) ............................................................................14

**Other Authorities**

https://www.jamsadr.com/rules-streamlined-arbitration/#Rule-8 (last visited
  March 7, 2025) ................................................................................................................15

www.ccvideo.com ..................................................................................................................7

www.deepdiscount.com ..........................................................................................................7

www.moviesunlimited.com .....................................................................................................7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF ISSUES

Plaintiffs Jonathan Hoang To, Jeffrey Heise, and Joseph Mull ("Plaintiffs") filed a putative class action complaint, alleging that Defendants DirectToU, LLC ("DirectToU") and Alliance Entertainment, LLC ("Alliance") (collectively, "Defendants") shared information about videos they purchased on www.deepdiscount.com, www.ccvideo.com, and www.moviesunlimited.com (individually the "Website" or collectively the "Websites") with Meta and data brokers without their consent, allegedly in violation of the Video Privacy Protection Act, ("VPPA") 18 U.S.C. § 2710, and California law. This Court is not the right forum for these disputes. Plaintiffs admit – and DirectToU's records show – that Plaintiffs purchased items on the Websites.[2] As the Declaration of Tim Hinsley explains, to do so, they had to go through a checkout process that has been in place on each of the Websites since May 2021. At the end of the process, customers must agree to the Terms of Use by affirmatively checking a box next to the words: "I acknowledge that I have read and agree to the Terms of Use." Those words hyperlink to the full text of the Terms of Use, which contain an arbitration clause that broadly provides: "Any claim, dispute or controversy between you and [the Company] that arises in whole or in part from all or any portion of your access or use of the [Company] Platform or otherwise in connection with this Agreement, or the breach, termination, enforcement, interpretation of validity thereof, including the determination of the scope of applicability of this agreement to arbitrate (a "Dispute") shall be decided exclusively in small claims court or by binding arbitration as set forth in this section, and not by courts of general jurisdiction." Plaintiffs would not have been able to purchase anything on the Websites without affirmatively checking the box, thereby consenting to the Terms of Use containing this arbitration agreement. (Decl. of Tim Hinsley ("Hinsley Decl."), ¶¶ 9-11; *id.* at Ex. 4; *id.* at Ex. 1, § 9, Ex. 2 § 9, Ex. 3, § 9.) Multiple courts have held that signup processes like the one DirectToU

---

[2] To the extent Plaintiffs dispute whether the purchase records on Exhibit 5 of Tim Hinsley's declaration belong to them, Defendants are happy to provide Plaintiffs and the Court with an unredacted version of the exhibit for inspection.

deployed here create binding agreements to arbitrate that cover the claims like those asserted in this case.

In light of Plaintiffs' promise to arbitrate, they must be compelled to arbitrate, and their litigation must be stayed pending the outcome of those proceedings.

## II.     STATEMENT OF FACTS

### A.     Plaintiffs Agreed to Arbitrate Disputes.

This litigation concerns whether Defendants allegedly disclosed personally identifiable information and video viewing preferences about Plaintiffs' purchases on the Websites to third parties without Plaintiffs' consent. (TAC ¶ 3.) Each Plaintiff alleges that they used one of the Websites to purchase video material (TAC ¶¶ 6-8.), and DirectToU's business records confirm that Plaintiffs all made purchases on one or more of the Websites. (Hinsley Decl. ¶ 14). DirectToU owns and operates these Websites. (*Id.*, ¶ 4.) Alliance is a corporate affiliate of DirectToU. (*Id.*, ¶ 3.)

To make these purchases, Plaintiffs had to go through DirectToU's checkout process, which has been in place on all of DirectToU's websites since May 2021 and has remained the same since that date. (Hinsley Decl. ¶ 8.) At the conclusion of the checkout process, before the button to "PLACE ORDER" becomes clickable, there is blue, hyperlinked text next to a checkbox which reads: "I acknowledge that I have read and agree to the Terms of Use." (*Id.*, ¶ 10; *id.* at Ex. 4.) The blue underlined text indicates the presence of a hyperlink to the Terms of Use. This process required Plaintiffs to affirmatively check a box before they could complete their purchase, making clear the contractual consequences of that action. (*Id.* ¶¶ 10-11; *id.* at Ex. 4.) It is not possible to complete a purchase without taking affirmative action to check the box. (*Id.* ¶ 10.)

The hyperlinked Terms of Use on each Website specify: "These Terms of Use ('TOU' or 'Terms of Use') govern your access to and use of this web site ('web site' or 'site') operated by [DeepDiscount/Critics' Choice Video/Movies Unlimited], its parent companies, subsidiaries, or affiliates (collectively '[DeepDiscount/Critics' Choice Video/Movies Unlimited]' or '[DeepDiscount/Critics' Choice Video/Movies Unlimited] Platform'). These Terms of Use are a

legal binding agreement between you and [DeepDiscount/Critics' Choice Video/Movies Unlimited], and contain important information about our site and your use of our site. If you do not agree to these Terms of Use, please do not use the site." (*Id.* at Ex. 1, § 9, Ex. 2, § 9, Ex. 3, § 9.) The Terms of Use contain an arbitration agreement which specifies: "Any claim, dispute or controversy between you and [DeepDiscount/Critics' Choice Video/Movies Unlimited] that arises in whole or in part from all or any portion of your access or use of the [DeepDiscount/Critics' Choice Video/Movies Unlimited] Platform or otherwise in connection with this Agreement, or the breach, termination, enforcement, interpretation of validity thereof, including the determination of the scope of applicability of this agreement to arbitrate (a "Dispute') shall be decided exclusively in small claims court or by binding arbitration as set forth in this section, and not by courts of general jurisdiction." (*Id.* at Ex. 1, § 9, Ex. 2, § 9, Ex. 3, § 9.) The Terms of Use also require that any dispute may only be brought in a person's individual capacity (not as a plaintiff or class member in any purported class): "YOU AND [DEEPDISCOUNT/CRITICS' CHOICE VIDEO/MOVIES UNLIMITED] AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING." (*Id.* at Ex. 1, § 9, Ex. 2, § 9, Ex. 3, § 9.) The Terms of Use further explain that the arbitration will be governed "by the JAMS Streamlined Arbitration Rules & Procedures ('JAMS Rules') in effect at the time of the Dispute, as modified by this Agreement, and will be administered by JAMS, Inc." (*Id.* at Ex. 1, § 9, Ex. 2, § 9, Ex. 3, § 9.)

**B.     Plaintiffs Sue Defendants Claiming Defendants Shared Information About Their Purchases Without Their Consent.**

On August 12, 2024, Plaintiff Hoang To filed this lawsuit, which was later amended to add Plaintiffs Heise and Mull. (ECF No. 1; TAC ¶¶ 6-8.) They allege that through the use of Meta Pixel and the sharing of information with data brokers, Defendants disclosed information about Plaintiffs' video purchases on the Websites to third parties without Plaintiffs' consent. (TAC ¶ 3.) They claim on behalf of themselves and a nationwide putative class that Defendants violated the

federal Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). (*Id.* ¶ 76.) Plaintiff Hoang To also claims on behalf of himself and a California putative subclass that Defendants violated Cal. Civ. Code § 1799.3 and Cal. Bus. & Prof. Code § 17200. (*Id.* ¶ 1.) Defendants now move to compel arbitration and stay this litigation pending those proceedings.

## III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that an arbitration agreement contained within a contract "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. This provision "reflect[s] both a 'liberal federal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract,'" such that "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) and *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).

Under the FAA, arbitration must be compelled where (1) "a valid agreement to arbitrate exists and, if it does," (2) "the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). An arbitration agreement governed by the FAA is presumed valid and enforceable, and the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). With respect to the second prong, courts may address whether the agreement encompasses the dispute if the parties have not "clearly and unmistakably" delegated questions regarding arbitrability it to the arbitrator for resolution in the first instance. *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1194, 1199 (9th Cir. 2024). In answering that question, "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the

asserted dispute. Doubts should be resolved in favor of coverage.'" *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960)). Finally, if the court compels arbitration, this Court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

## IV. ARGUMENT

### A. Each Plaintiff Agreed to the Terms of Use.

"While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004). "One such principle" is assent: to be bound by a contract, both parties must manifest their assent to that contract, "'whether by written or spoken word or by conduct.'" *Id.* (quoting *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29 (2d Cir. 2002) (applying California law)); *see also Cavanaugh v. Fanatics, LLC*, 738 F. Supp. 3d 1285, 1294 (E.D. Cal. 2024) ("An online contract is formed under California law where (1) 'the website provides reasonably conspicuous notice of the terms to which the consumer will be bound,' and (2) 'the consumer takes some action, such as clicking a button . . . that unambiguously manifests his or her assent to those terms.'") (quoting *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023)).

Courts routinely find assent where a company provides reasonably conspicuous notice of the terms, particularly in clickwrap agreements that "require a user to check a box explicitly stating that they agree to the terms before proceeding." *Id.; see Houtchens v. Google LLC*, 649 F. Supp. 3d 933, 941-42 (N.D. Cal. 2023) ("The Court finds that the hyperlinks to Fitbit's Terms of Service in each of the above screens provided Plaintiffs 'reasonably conspicuous notice' of the terms . . . [T]hey are next to the box a user must select to accept the terms; and the screens on which they appear are uncluttered."); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855–56 (9th Cir. 2022) (noting a user has received notice of terms where they explicitly check a box "explicitly stating 'I agree' in order to proceed.").

In determining whether terms are reasonably conspicuous, courts within this Circuit[3] "consider criteria including '(1) the size of the text; (2) the color of the text as compared to the background it appears against; (3) the location of the text and, specifically, its proximity to any box or button the user must click to continue use of the website; (4) the obviousness of any associated hyperlink; and (5) whether other elements on the screen clutter or otherwise obscure the textual notice.'" *Cavanaugh*, 738 F. Supp. 3d at 1295 (quoting *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 473 (2021)).

Here, all five criteria are met. The text (1) is substantially the same size as other text on the checkout page and therefore easily visible; (2) is blue against a white background, thus clearly visible; (3) appears next to a checkbox and immediately above the "PLACE ORDER" button, where the customer cannot complete the purchase without consenting; (4) appears in blue underlining, which is commonly indicative of the presence of a hyperlink (and no other text on the screen is formatted in the same way); and (5) appears on an uncluttered screen. (*See* Hinsley Decl. at Ex. 4.)

Because all five criteria are satisfied, Plaintiffs received reasonably conspicuous notice of the Terms of Use. Further, because the "PLACE ORDER" button only activates once the user affirmatively checks the box next to the clearly visible text (*id.* ¶ 10), each Plaintiff assented

---

[3] The cases above apply California law governing the formation of contracts online, as this Court applies the substantive law of the state in which it sits when there is no choice of law challenge. With respect to the specific issue of whether online terms were reasonably conspicuous, California law is not materially different than Michigan and Illinois law, so no choice-of-law analysis is necessary on this issue. *See, e.g.*, *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034–36 (7th Cir. 2016) (analyzing whether website provided "reasonable notice that a click will manifest assent to an agreement" and finding that it did not because the specific text on the website at issue did not indicate that by clicking the button, the plaintiff had agreed to the service agreement on the page); *Lee v. Panera Bread Co.*, No. 1:22-CV-11958, 2023 WL 2606611, at *4 (E.D. Mich. Mar. 6, 2023), *report and recommendation adopted,* No. 1:22-CV-11958, 2023 WL 2603934 (E.D. Mich. Mar. 22, 2023) (to determine consent to an arbitration provision, outlining that the court will consider whether "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.") (quoting *Shirley v. Rocket Mortg.*, No. 2:21-CV-13007, 2022 WL 2541123, at *4-5 (E.D. Mich. July 7, 2022); *see also Page v. GameStop Corp.*, No. 24-3428, 2025 WL 637441 (6th Cir. Feb. 27, 2025) (applying Ohio and Texas law but using the same analysis). Defendants reserve the right to fully brief and challenge the application of California law with respect to all other issues in this case.

through conduct by checking the box acknowledging that he read and agreed to the Terms of Use before completing his order. (*Id.* ¶¶ 14-15.)

### B. The Terms of Use Require Plaintiffs to Arbitrate.

Plaintiffs' claims fall within the scope of the arbitration agreement, which broadly covers "[a]ny claim, dispute or controversy between you and [DeepDiscount/Critics' Choice Video/Movies Unlimited] that arises in whole or in part from all or any portion of your access or use of the [DeepDiscount/Critics' Choice Video/Movies Unlimited] Platform or otherwise in connection with this Agreement, or the breach, termination, enforcement, interpretation of validity thereof, including the determination of the scope of applicability of this agreement to arbitrate (a 'Dispute') ..." (Hinsley Decl., Ex. 1, § 9, Ex. 2, § 9, Ex. 3, § 9.) The opening paragraph of the Terms of Use define DeepDiscount, Critics' Choice Video, and Movies Unlimited to include "parent companies, subsidiaries, or affiliates." (*Id.*) DirectToU owns and operates the DeepDiscount, Critics' Choice Video, and Movies Unlimited Websites, and Alliance is an affiliate of DirectToU. (*Id.* ¶ 4.) As the Ninth Circuit has explained, language that submits all disputes arising out of or relating to the parties' agreement to the arbitrator is "broad and far reaching." *Chiron Corp*, 207 F.3d at 1131. *See also Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) ("We likewise conclude that the language 'arising in connection with' reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract,"). Here, Plaintiffs' claims center on their allegations that they purchased movies on the Websites and Defendants disclosed information about those movie purchases to Meta and data brokers. Those claims consequently "arise[] in whole or in part from all or any portion of your access or use of the [DeepDiscount/Critics' Choice Video/Movies Unlimited] Platform" and must be arbitrated. (Hinsley Decl., Ex. 1, § 9, Ex. 2, § 9, Ex. 3, § 9.)

### C. Arbitration Must Be On An Individual Basis.

The Terms of Use make clear that any dispute may be brought exclusively in a person's individual capacity (not as a plaintiff or class member in any purported class): "YOU AND [DEEPDISCOUNT/CRITICS' CHOICE VIDEO/MOVIES UNLIMITED] AGREE THAT

EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING." (*Id.*) The FAA "requires courts 'rigorously' to enforce arbitration agreements according to their terms, including terms that specify . . . the rules under which that arbitration will be concluded." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018). Courts routinely enforce class action waiver provisions like the one at issue here. *See, e.g.*, *Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 918 (N.D. Cal. 2020), *aff'd,* No. 20-15689, 2022 WL 474166 (9th Cir. Feb. 16, 2022). Because the Terms of Use contains an express waiver of Plaintiffs' ability to bring class claims, the Court must compel Plaintiffs to arbitrate their claims on an individual basis.

### D. To The Extent Plaintiffs Dispute Any Threshold Questions, The Terms of Use Delegate Those Questions to an Arbitrator.

To the extent Plaintiffs dispute any threshold issues such as whether the arbitration agreement covers their claims or is enforceable, those issues have been delegated to the arbitrator. "Arbitration clauses may delegate to the arbitrator . . . certain threshold issues about the agreement"—including "whether [the arbitration] agreement covers a particular controversy"—so long as they do so "clear[ly] and unmistakabl[y]." *Fli-Lo Falcon*, 97 F.4th at 1199 (internal quotation marks and citations omitted). Here, the arbitration agreement clearly and unmistakably delegates threshold issues to the arbitrator, expressly stating that "All issues are for the arbitrator to decide, including issues relating to the scope and enforceability of this arbitration provision." (Hinsley Decl., Ex. 1, § 9, Ex. 2, § 9, Ex. 3, § 9.)

Additionally, the Terms of Use specify that "The arbitration will be governed by the JAMS Streamlined Arbitration Rules & Procedures ('JAMS Rules') in effect at the time of the Dispute, as modified by this Agreement, and will be administered by JAMS, Inc. ('JAMS')." (Hinsley Decl., Ex. 1, § 9, Ex. 2, § 9, Ex. 3, § 9.) Rule 8(b) of the JAMS Streamlined Arbitration Rules specifies that "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and

who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." *See* https://www.jamsadr.com/rules-streamlined-arbitration/#Rule-8 (last visited March 7, 2025). The Ninth Circuit has held that incorporating such provisions by reference "constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (addressing incorporation by reference of similar American Arbitration Association ("AAA") rule); *see also, e.g., Slaten v. Dick's Sporting Goods*, 2024 WL 1136399, at *5 (C.D. Cal. Feb. 2, 2024) ("[The JAMS] language is similar to cases such as *Momot*, in which the Court found the delegation clause's language clearly and unmistakably granted the power to decide arbitrability to the arbitrator."); *Wynn Resorts, Ltd. v. Atl.-Pac. Cap., Inc.*, 497 F. App'x 740, 742 (9th Cir. 2012) ("By incorporating the JAMS rules, the parties demonstrated their clear and unmistakable intent to have an arbitrator resolve the issue of arbitrability.").

The arbitrator must therefore decide any disputes over any threshold issues such as whether the arbitration agreement covers Plaintiffs' claims or is enforceable. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019) ("When a dispute arises, the parties sometimes may disagree not only about the merits of the dispute but also about the threshold arbitrability question—that is, whether their arbitration agreement applies to the particular dispute. Who decides that threshold arbitrability question? Under the Act and this Court's cases***, the question of who decides arbitrability is itself a question of contract. The Act allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes***.") (emphasis added).

### E. Defendants Have Not Waived Their Right to Compel Arbitration.

To the extent Plaintiffs try to argue that Defendants have waived their right to compel arbitration, a party seeking to prove waiver of a right to arbitration must demonstrate: "(1) knowledge of an existing right to compel arbitration; and (2) intentional acts inconsistent with that existing right." *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023). Because waiver

of the right to arbitration is disfavored, a party that argues the right has been waived bears a heavy burden of proof. *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016). Here, Defendants have not waived their right to compel arbitration.

First, Plaintiffs have been aware of Defendants' right to compel arbitration from the inception of this case. (*See* Pltf's Mot. for Preliminary Approval of Class Action Settlement, ECF No. 26 ("The amount of the recovery is particularly impressive given the material risk that Defendant would have been able to successfully move to compel individual arbitration of each of Plaintiff's claims on the basis of arbitration provisions in the Terms of Use associated with Defendant's service."); *see also id.* ("The Terms of Use for each of Defendant's websites contain an arbitration provision which purports to require individual arbitration of any claim Plaintiff might bring against Defendant. To be clear, the arbitration provisions in each Terms of Use contain a class action waiver which would preclude even a class arbitration."); Decl. of Julian Hammond., ECF No. 26-1 ("Plaintiff has achieved an impressive result in this case less than three months after filing his lawsuit, despite facing risks of having his claims be compelled to individual arbitration . . ."); Decl. of Bonnie Keane DelGobbo ("Keane DelGobbo Decl."), Ex. A at 6:9-12 ("[Y]ou have an arbitration agreement where – where if the arbitration agreement was enforced, it would – it would imperil – imperil any class action.").)

Second, Defendants have not acted inconsistently with their right to compel arbitration. After Defendants removed this matter to federal court, Defendant DirectToU, LLC agreed to settle with Plaintiff Hoang To's counsel, subject to Court approval. This occurred before Defendant DirectToU, LLC answered or filed a responsive pleading. Although Plaintiff Hoang To's Motion for Preliminary Approval of Class Action Settlement was denied, (ECF No. 57), Plaintiff Hoang To's Motion for Preliminary Approval recognized that Defendant intended to assert that the Terms of Use required arbitration, (ECF No. 26 at 23). Moreover, Defendants reminded Plaintiffs and the Court at the February 4, 2025 hearing that they might seek to compel arbitration, and Plaintiffs subsequently chose to file the Third Amended Complaint and to dismiss the *Feller* action. *See* Keane DelGobbo Decl., Exhibit B at 4:17-24 ("And Your Honor seems inclined to grant a leave

to file, I think, a third amended complaint adding, I guess, additional parties -- both Plaintiffs and Defendants -- and who knows what allegations will -- we would like an opportunity obviously to see what that looks like and file an appropriate response. Whether that is a motion to compel arbitration or whether that's, you know, some kind of other (b)(6) or (b)(1) type of motion, we will have to see.").

Further, Defendants have never filed a responsive pleading in this action, and discovery has not commenced. The Ninth Circuit has found that moving to compel arbitration within a year of the filing of plaintiff's complaint, in combination with never seeking or obtaining a ruling on the merits, indicate no waiver of the right to arbitrate. *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015-16 (9th Cir. 2023) ("Unlike either *Van Ness* or *Martin*, Michaels never wavered from the view that it had a right to arbitration, as evidenced by Michaels moving to compel arbitration within a year after Armstrong filed the complaint, never seeking or obtaining a ruling on the merits, and never waffling about whether to arbitrate or stay in district court.").

### F.   This Case Should Be Stayed Pending Arbitration.

Because Plaintiffs agreed to arbitrate their disputes, this Court must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. While courts within this Circuit once believed they had discretion to dismiss rather than stay litigation pending arbitration (in order to allow the party opposing arbitration to appeal), the Supreme Court recently made clear that Section 3 of the FAA "does not" "permit[]" that course of action. *Smith v. Spizzirri*, 601 U.S. 472, 474 (2024). This case must therefore be stayed pending conclusion of any individual arbitration that Plaintiffs choose to file.

### V.   CONCLUSION

For these reasons, this Court should stay this action and compel individual arbitration.

Dated: March 10, 2025                    Respectfully submitted,

**BAKER & HOSTETLER LLP**


By:   /s/ Bonnie Keane DelGobbo
      Bonnie Keane DelGobbo

*Attorneys for Defendants*
DIRECTTOU, LLC and ALLIANCE ENTERTAINMENT, LLC