JULIAN HAMMOND (SBN 268489)
jhammond@hammondlawpc.com
POLINA BRANDLER (SBN 269086)
pblandler@hammondlawpc.com
ARI CHERNIAK (SBN 290071)
acherniak@hammondlawpc.com
HAMMONDLAW, P.C.
1201 Pacific Ave, 6th Floor
Tacoma, WA 98402
(310) 601-6766 (Office)
(310) 295-2385 (Fax)

FRANK S. HEDIN (SBN 291289)
fhedin@hedinllp.com
HEDIN LLP
1395 Brickell Ave, Suite 610
Miami, Florida 33131
(305) 357-2107 (Office)
(305) 200-8801 (Fax)

*Attorneys for Plaintiffs and the Putative Classes*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN HOANG TO, JEFFRY HEISE, and JOSEPH MULL, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> DIRECTTOU, LLC; and ALLIANCE ENTERTAINMENT, LLC, <br><br> Defendant. | Case No 3:24-CV-06447-WHO <br><br> Hon. William H. Orrick <br><br> **PLAINTIFFS' OPPOSITION TO MOTION TO STAY AND COMPEL ARBITRATION** <br><br> Judge:     Hon. William H. Orrick <br> Courtroom:  2 <br> Hearing Date: June 4, 2025 <br> Hearing Time: 2:00 p.m. |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 5

II.   BACKGROUND ................................................................................................... 6

    A.    Defendants' Purported Arbitration Agreement ............................................ 6

    B.    Procedural History in the Hoang To Action ................................................ 7

    C.    Procedural History in the Feller Action in Southern District of Florida ....................... 9

III.  ARGUMENT ...................................................................................................... 12

    A.    Defendants Waived Any Right To Demand Arbitration. ........................... 12

          1.    Defendants Knew of The Arbitration Clause In Their Terms of Use ............... 13

          2.    Defendants Acted Inconsistently with their Purported Right to Arbitrate ......... 13

    B.    Defendants Have No Enforceable Contract or Arbitration Agreement. ..................... 19

IV.  CONCLUSION ................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Alarcon v. Vital Recovery Servs., Inc.*, 706 F. App'x 394 (9th Cir. 2017) ............................ 21, 23

*Armstrong v. Michael Stores, Inc.,* 59 F.4th 1011 (9th Cir. 2023) .................................. 12, 13, 15

*Ashland Chem. Co. v. Provence*, 129 Cal. App. 3d 790 (1982) .................................................. 20

*Becerra v. Newpark Mall Dental Group,* 2012 WL 3010973 (N.D. Cal. July 23, 2012)............. 21

*Bennett v. Medtronic, Inc.*, 285 F.3d 801 (9th Cir. 2002)............................................................ 9

*Blau v. AT&T Mobility,* 2012 WL 5666565 (N.D. Cal. Feb. 21, 2012) ...................................... 15

*Bower v. Inter-Con Sec. Sys., Inc.*, 232 Cal. App. 4th 1035 (2014), *overruled on other grounds by Quach v. California Com. Club, Inc.*, 16 Cal. 5th 562 (2024)...................................... 14, 16

*Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832 (6th Cir. 2021)............................ 25

*Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.,* 50 F.3d 388 (7th Cir. 1995)........... 19

*Camara v. Mastro's Restaurants LLC*, 952 F.3d 372 (D.C. Cir. 2020) ...................................... 25

*Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208 (9th Cir. 2016) ................ 19

*FBC Mortg., LLC v. Skarg,* 2023 WL 6933359 (N.D. Cal. Oct. 19, 2023)................................ 17

*First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995)* .................................................. 20

*Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457 (9th Cir. 2023). .......................................... 13, 14, 17

*Hogan v. Unum Life Ins. Co. of Am.*, 81 F. Supp. 3d 1016 (W.D. Wash. 2015) ......................... 10

*In re Google Assistant Priv. Litig.,* 2024 WL 251407 (N.D. Cal. Jan. 23, 2024)........................ 13

*Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559 (9th Cir. 2014)................................................. 20

*Loomis v. Cornish*, 836 F.3d 991, 996-97 (9th Cir. 2016) .......................................................... 23

*Martin v. Yasuda*, 829 F.3d 1118 (9th Cir. 2016) ..................................................................... 12

*Metter v. Uber Technologies, Inc*., 2017 WL 1374579 (N.D. Cal. 2017) .................................... 25

*Morgan v. Sundance, Inc.,* 596 U.S. 411 (2022) ....................................................................... 13

*Newirth by & through Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935 (9th Cir. 2019) ................................................................................................................................. 14, 18

*Norcia v. Samsung Tel. America, LLC*, 845 F.3d 1279 (9th Cir. 2017) ...................................... 20

*Plows v. Rockwell Collins, Inc.*, 812 F. Supp. 2d 1063 (C.D. Cal. 2011) ................ 13, 15, 16, 18

*Quach v. California Commerce Club, Inc.*, 16 Cal. 5th 562 (2024).......................................... 14, 18

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 (9th Cir.2006)................................... 10

*Rollins v. Wink Labs, Inc.*, 2021 WL 4185878 (D. Or. June 21, 2021), *report and recommendation adopted,* 2021 WL 4189604 (D. Or. Sept. 14, 2021)................................. 21

*Roman v. Jan-Pro Franchising Int'l, Inc.*, 342 F.R.D. 274 (N.D. Cal. Aug. 2, 2022) ........... 16, 17

*Ruiz v. Moss Brothers Auto Group*, 232 Cal. App. 4th 836 (2014)............................................. 23

*S.S. by & through Stern v. Peloton Interactive, Inc.*, 566 F. Supp. 3d 1019 (S.D. Cal. 2021) ..... 19

*Slaten v. Experian Information Solutions, Inc.,* 2023 WL 6890757 (C.D. Cal. Sept. 6, 2023) .... 13

*Smith v. Rent-A-Center, Inc*., 2019 WL 1294443 (E.D. Cal. 2019) ............................................ 23

*Sotelo v. DirectRevenue, LLC*, 384 F. Supp. 2d 1219 (N.D. Ill. 2005) ...................................... 24

*Stover-Davis v. Aetna Life Ins. Co*., 2016 WL 2756848, t *3 (E.D. Cal. 2016) .................... 20, 22

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., In*c., 925 F.2d 1136 (9th Cir. 1991) ....... 19

*U.S. v. Bennett*, 363 F.3d 947, 953 (9th Cir. 2004) ..................................................................... 22

*Van Tassell v. United Marketing Group, LLC*, 795 F Supp. 2d 770 (N.D. Ill. 2011) ................. 24

*Viet v. Le*, 951 F.3d 818 (6th Cir. 2020) .................................................................................... 24

## STATUTES

18 U.S.C. § 2710 ........................................................................................................................... 7

9 U.S.C. § 3 ................................................................................................................................. 23

9 U.S.C. § 4 ................................................................................................................................. 25

Cal. Business & Professions Code §§ 17200 *et. seq* ..................................................................... 7

Cal. Civ. Code § 1550 ................................................................................................................. 19

Cal. Civil Code § 1799.3 ............................................................................................................... 7

## TREATISES

10A Mary Kay Kane, Federal Practice and Procedure § 2727.1, at 485 (4th ed. 2016) .............. 25

10A Mary Kay Kane, Federal Practice and Procedure § 2727.2, at 501 (4th ed. 2016) .............. 23

## OTHER AUTHORITIES

Fed. R. Civ. P. 56(c) .................................................................................................................... 22

Fed. R. Evid. 901(a) ..................................................................................................................... 21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    **INTRODUCTION**

This class action lawsuit is in response to Defendants' widescale violations of consumer privacy. Defendants sell DVD and Blu-ray videos and videogames to customers in the United States through their several websites and catalogs.  Third Amended Class Action Complaint ("TAC") ¶ 2, ECF No. 68; Decl. of Bonnie DelGobbo ("DelGobbo Decl."), Ex. B at p. 16.  On their websites, during the relevant period, Defendants used Meta Pixel, to track website visitors and the type of actions that those visitors took on the sites, everything from what pages and content a visitor viewed to what clicks the visitor made.  TAC ¶¶ 32-33, 37.  Defendants shared this information with Meta, without their visitors' consent, through the use of the Meta Pixel, which Meta or any ordinary person to trace visitors' real names. TAC ¶¶ 35, 38-50.  In addition, Defendants also maintain a vast database of their customers' personally identifiable information ("PII"), including the names and addresses of each customer and information reflecting the titles of video materials they purchased that they sold to data brokers and data appenders, without their customers' consent. TAC ¶¶ 51-52.

Defendants' conduct is unlawful and violates consumers' privacy rights.  It puts customers at risk of serious harm from, among other things, being taken advantage of by scammers.  TAC ¶ 60.  Plaintiffs want to put a stop to these violations of their privacy, and they also seek statutory damages, civil penalties, restitution, punitive damages, disgorgement of profits, and reasonable attorney's fees and costs.  TAC ¶ 1.

After proceeding in courts for over six months (both in this case and in Plaintiff Heise and Mull's *Feller* Action), Defendants move to compel arbitration of each of the three named Plaintiffs claims.  Defendants' motion must be denied because, even assuming Defendants had a right to arbitrate, Defendants waived it by delaying in bringing this motion and by engaging in acts that are plainly inconsistent with an intent to pursue arbitration.  Instead of moving to compel arbitration at the outset (in this case and in the *Feller* Action), Defendants engaged in a course of litigation.  Defendant DirectToU removed this case and sought an extension of its deadline to respond (while never mentioning arbitration), entered into a class settlement with Plaintiff and provided class discovery (despite the arbitration provision in the Terms prohibiting class relief), stipulated to an amended complaint expanding the case to include the data broker allegations, filed an initial case

management conference listing substantive legal questions at issue, telling the Court and Plaintiff that they intended to file a motion for summary judgement and 12(b)(6) motion, and filed a motion to dismiss based on first-to-file doctrine.  In the *Feller* Action, Defendants served and responded to discovery, participated in a scheduling conference to establish case management dates including trial, attempted to reach class settlement, and filed a 12(b)(6) motion to dismiss on the merits.  Defendants cannot do what they did here – wait and see how court proceedings go before deciding that they prefer arbitration.

Even if Defendants had not waived arbitration, the Court should nevertheless deny Defendants' motion because Defendants have failed to submit competent evidence to establish the existence of an agreement to arbitrate between the parties.  In the alternatively, Plaintiffs respectfully request leave to conduct limited discovery on the issue of contract formation, specifically, to investigate the check-out flows that were presented to Plaintiffs when they each interacted with the website and information that was presented when Plaintiff Heise placed an order through a catalog.

## II.     BACKGROUND

### A.     Defendants' Purported Arbitration Agreement

In moving to compel Plaintiffs' claims to arbitration, Defendants rely on Terms of Use found through a hyperlink at the end of the checkout process on their websites above a "Place Order" button.[1]  According to Defendant, visitors must check a box next to the hyperlink, which reads "I acknowledge that I have read and agree to the Terms of Use" before the "Place Order" button becomes click-able.  The Terms of Use provide that it is an agreement between those who purchase from Defendants' websites and the websites themselves.  For example, on DeepDiscount.com, the Terms of Use state that "These Terms of Use…govern your access to and use of this web site…operated by DeepDiscount its parent companies, subsidiaries, or affiliates (collectively "DeepDiscount" or "DeepDiscount Platform"). These Terms of Use are a legally binding agreement between you and DeepDiscount . . . ."  Decl. of Tim Hinsley ("Hinsley Decl.") ¶¶ 5-7, Exs. 1, 2, 3 (Terms of Use) at ¶ 7, ECF No. 82.  At the end of Terms is the arbitration clause that Defendants argue compels arbitration.

---

[1] The Terms of Use are the same between Defendants' websites, and thus Plaintiffs will refer to them herein collectively as "Terms or Use" or "Terms."

Terms of Use ¶ 9.  The language of that clause asserts that "[a]ny claim, dispute or controversy between" the purchaser and DeepDiscount "shall be decided exclusively in small claims court or by binding arbitration as set forth in this section, and not by courts of general jurisdiction."

### B.    Procedural History in the *Hoang To* Action

On August 12, 2024, Plaintiff Hoang To filed the instant lawsuit in Alameda County Superior Court, alleging a cause of action under the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA") and state law claims under Cal. Civil Code § 1799.3 and Cal. Business & Professions Code §§ 17200 *et. seq*. on behalf of a class of California consumers. Dkt. 1. On September 3, 2024, Defendant DirectToU ("Defendant") reached out to Plaintiff and, rather than asking Plaintiff to dismiss based on the arbitration agreement, asked if Plaintiff would voluntarily dismiss his action in light of the earlier-filed *Feller* Action.  Decl. of J. Hammond ("Hammond Decl.") ¶ 3.  After Plaintiff refused, Defendant removed this action on September 12, 2024. *Id.*

On September 18, Defendant moved to Extend its Time to Respond to Plaintiff's Complaint "so that [Defendant] may further investigate the claims and determine the appropriate responsive pleading, particularly in light of the earlier-filed action in the Southern District of Florida." Dkt. No. 8.  On October 1, Plaintiff filed a First Amended Complaint adding a VPPA claim on behalf of a nationwide class. Dkt. 10.  In October 2024, Defendant reached out to Plaintiff offering to engage in settlement negotiations and provided Plaintiff with informal class-wide discovery that "was similar to the information that would have been provided in formal discovery related to the issues of class certification and summary judgment…" Dkt. 26-2, at p. 3.  On October 23, 2024, Defendant and Plaintiff entered into a class-wide settlement to resolve the instant action. Dkt. 26-2.  October 29, 2024, the Parties' filed a Stipulation to Remand the case back to state court.  Dkt. 18.

On November 1, 2024, Defendant stipulated to the filing of the Second Amended Complaint adding allegations regarding the sale of data by Defendant to third-party brokers. Dkt. 23.

On October 28, 2024, plaintiffs in the *Feller* Action moved to intervene and to dismiss, or alternatively to transfer or stay this action to the Southern District of Florida based on the first-to-file rule.  Dkt. 14.  On November 4, 2024, Plaintiff filed an unopposed motion for Preliminary Approval. Dkt. 26.  At the hearing on the motion for Preliminary Approval Defendant's counsel expressed

support for the motion and desire to have the settlement approved: "Your Honor, we would support, obviously, approval of a settlement that we entered into and we would love to try to, you know, complete that process."  DelGobbo Decl., Ex. B at p. 81:5-8. On November 12, 2024, Defendant opposed the Motion to Intervene and to Dismiss or Alternative to Transfer or Stay. Dkt. 34.

On December 16, 2024, the Court denied Plaintiffs' Motion for Preliminary Approval without prejudice and denied the Motion to Intervene.  Dkt. 57.  In late December 2024 and January 2025, the parties engaged in further discovery to assist Plaintiff to value the data brokers claim for settlement. Hammond Decl. ¶ 7. On January 17, 2024, Plaintiff filed a motion for limited discovery, seeking further discovery related to the data brokers claim. Defendant opposed this motion arguing that the "threshold issues" that need to be resolved before opening formal discovery is whether this action should be dismissed or transferred to the *Feller* court pursuant to the first-filed doctrine and further stated that "it makes sense to move forward with the earlier-filed action where discovery had already begun . . . third party discovery (presumably the same third-party discovery that Plaintiff is asking the Court for leave to serve in this case) had already been served in the *Feller* action, so it is imminently more reasonable [to] … allow the Feller court to address issues related to that discovery, including any objections." Dkt. 60 at p. 5.

On January 27, 2025, Defendant filed its Motion to Dismiss, Transfer or Stay Under the First-to-File Rule. Dkt. 62.  In its Motion, Defendant again pointed out how far along the *Feller* action was: "[T]he Feller Action is procedurally more advanced than this case. Defendants in the Feller Action have already responded to written discovery requests, the Feller Plaintiffs' discovery responses are due immediately once the case reopens, the Feller Plaintiffs have already served third-party discovery requests on Meta and the data brokers, and there is already a motion to dismiss pending." Dkt. 62.

On January 28, 2025, after meeting and conferring, Defendant and Plaintiff filed a Joint Initial Case Management Statement ("Joint CMC").  In the Joint CMC, the parties presented common questions, with Defendant, in particular, putting forward the following common questions: "whether the VPPA is constitutional;" "whether Plaintiff or putative Class Members have suffered any injury;" "whether Plaintiffs or putative Class Members are entitled to any damages or other relief provided

by law, and if so, the amount of damages;" and "whether the class may be certified and if so, the scope of any such class." Dkt. 64; Hammond Decl. ¶ 8. In the anticipated motions section, Defendant stated that it anticipated filing a motion to dismiss, transfer, or stay based on first-filed doctrine, a 12(b)(6) motion to dismiss, and a motion for summary judgment. *Id.* In that report, Defendant also reiterated its position that "[n]ow that preliminary approval has been denied, Defendant believes that this action should be dismissed, transferred, or stayed based on the first-filed doctrine and consequently opposed any amendment of the pleadings." *Id.* Finally, Defendant stated that its position was that "[t]his case is not suitable for treatment as a class action. Additionally, neither Plaintiff nor putative class members are entitled to any relief. *Id.* There was no mention of arbitration.

On February 7, 2025, Plaintiffs filed a Third Amended Complaint adding Plaintiffs Heise and Mull from the *Feller* Action as the named plaintiffs,[2] and adding Defendant Alliance Entertainment, Inc. Dkt. 68. Defendant withdrew its Motion to Dismiss after the *Feller* Action was voluntarily dismissed by Heise, Mull, and Feller. Dkt. 72.

On March 10, 2025, Defendants filed their Motion to Compel Arbitration. Dkt. 80.

### C.  Procedural History in the *Feller* Action in Southern District of Florida

As the Court is aware, the litigation that has already occurred between Plaintiffs and Defendants has not been limited to the matter in this District. In the Southern District of Florida, *Feller* was filed on August 8, 2024. Decl. of Frank Hedin ("Hedin Decl."), ¶ 3.[3] Heise and Mull, Plaintiffs in this matter, were among the plaintiffs in that case as well, and Alliance Entertainment and DirectToU were the defendants. Defendants waived service on August 13, 2024. Hedin Decl. ¶ 3. Litigation was then active in that case. On September 9, 2024, the parties in *Feller* filed a Joint

---

[2] Douglas Feller did not wish to proceed with his claims.

[3] True and correct copies of relevant key documents filed in the Feller Action are attached as Exhibits to the Hedin Decl., filed herewith. These documents are also subject to judicial notice. "As the Ninth Circuit has noted, [the] Court may take judicial notice of court filings and other matters of public record, as such documents 'are not subject to reasonable dispute.'" *Hogan v. Unum Life Ins. Co. of Am.*, 81 F. Supp. 3d 1016, 1020 (W.D. Wash. 2015) (quoting *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 fn. 6 (9th Cir. 2006)); *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n. 2 (9th Cir. 2002) (a district court "may take notice of proceeding in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

Scheduling Report, wherein Plaintiffs and Defendants, each, proposed their own case management schedule that included a timeline for deadlines to join other parties or amend pleadings, fact discovery, class certification motion, expert discovery, dispositive motions, mediation, pretrial conference.  Plaintiffs and Defendants, each, also proposed a trial date, and Defendant estimated that trial would take "10 days (depending on whether the case proceeds on an individual or class basis)." *Id.* at ¶ 4 and Ex. A at p. 2.  In the Report, Defendants also told the court that they believed the matter was "likely to involve significant e-discovery, significant third-party discovery, and multiple expert witnesses."  Hedin Decl., Ex. A.  The Report did not mention arbitration.  *See Id.*

On September 11, 2024, following the Scheduling Conference, the Court issued an Order setting a two-week jury trial beginning on October 6, 2025 and setting case deadlines.  Hedin Decl. ¶ 5 and Ex. B.

On September 12 and 13, 2024, the *Feller* plaintiffs served their first set of discovery requests to Defendants and notices of deposition. Hedin Decl. ¶¶ 7-8.  On October 4, Defendants served written discovery on the Plaintiffs in the *Feller* Action. *Id.* at ¶ 10 and Ex. F.

On September 30, 2025, Defendants and Plaintiffs filed a motion seeking appointment of a mediator (Hon. James F. Holderman (Ret.).) Hedin Decl. ¶ 9.  Following appointment of the mediator, the parties engaged in additional class-wide discovery on an informal basis, attended an all-day mediation on October 10, 2024 and continued trying to reach a class settlement in the days that followed, with the assistance of a mediator.  *See* Hedin Decl. ¶ 11.

In the meantime, as discussed above, Defendants reached agreement to settle with the *Hoang To* plaintiff, and on October 24, filed an "Expedited Motion to Stay" *Feller* for 120 days pending preliminary approval in the *Hoang To* action.  Hedin Decl. ¶ 12 and Ex. G.  In that Motion, Defendants argued that they would suffer hardships if "forced to litigate a case on behalf of the same putative class, including expending resources briefing a motion to dismiss, preparing and reviewing discovery responses, and taking and defending depositions."  *Id.,* Ex. G. at p. 3.  They also argued that a stay would preserve "unnecessarily expending resources" on things like "adjudicating any discovery disputes that may arise between the parties."  *Id.* at 4.  That motion did not mention arbitration.

On November 1, Defendants filed a substantive "Motion to Dismiss Plaintiff's Class Action Complaint." Feller Dkt. No. 45 seeking dismissal on the merits. In their motion to dismiss, Defendants asserted that the VPPA violates the First Amendment and also sought dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The motion did not mention arbitration at all.

On November 1, 2024, Defendant also served its objections and responses to Plaintiffs written discovery. *Id.* at ¶ 7 and Ex. D. Defendant objected on the grounds that the Feller Action should not proceed further until the settlement approval process is completed in *Hoang To* Action, as well as on numerous other grounds, including work-product and privilege, that Defendant should not have to produce documents until entry of a Protective Order and ESI Protocol, that the requests were vague and ambiguous, that documents sought were publicly available or equally available to Plaintiffs, and that the request are overbroad, unduly burdensome, and not proportionate to the needs of the case. *See* Hedin Decl., Ex. D.

On November 11, 2024, Defendants also served objections to Plaintiffs' 30(b)(6) deposition notice. Hedin Decl. ¶ 8 and Ex. E. As with respect to Plaintiffs' requests for production, Defendant objected on the grounds that the Feller Action should not proceed further until the settlement approval process is completed in *Hoang To* Action, as well as on numerous other grounds, including that deposition should not proceed prior to entry of a Protective Order and ESI Protocol, that deponent is not available on the date selected, that the deposition should not proceed until Defendant responds to Plaintiff's first set of requests for production of documents, that the topics sought information that was overboard, unduly burdensome, and irrelevant. *See* Hedin Decl., Ex. E.

The court in *Feller* stayed the matter on November 12 and ordered the parties to provide a joint status report within 14 days of that order, advising the court on the progress in this matter. Hedin Decl. ¶ 15. On November 26, the court ordered an additional joint status report on this "related action" within 60 days. *Id.* at ¶ 17. The parties filed that report on January 27. *Id.* at ¶ 19 and Ex. I. In it, Defendants told the *Feller* court that "DirectToU intends to oppose amendment and move forward with its motion to dismiss, or alternatively to transfer or stay, the *Hoang To* action under the first-filed doctrine." Hedin Decl., Ex. I at p. 6. Defendants did not mention arbitration. *See Id.* On

January 28, the *Feller* court indefinitely stayed that matter, reasoning that "[b]ecause litigation remains active in the *Hoang To* action on a number of fronts, including on matters that may be case-dispositive in this action…." Hedin Decl. ¶ 20.

On February 7, 2025, the Feller plaintiffs moved to dismiss their case in Florida without prejudice and the court dismissed without prejudice the same day. *Id.* at ¶ 22.

### III.   ARGUMENT

Defendants' motion to compel arbitration should be denied for two reasons. First, Defendants waived any right they may have had to compel arbitration by delaying, without any plausible explanation, the assertion of that right and by acting inconsistently with that right. Second, even if Defendants had not waived their right to compel, they have nonetheless failed to demonstrate the existence of a duly-formed agreement to arbitrate with any of the Plaintiffs.

#### A.   Defendants Waived Any Right To Demand Arbitration.

"The right to arbitration, like any other contractual rights, can be waived." *Martin v. Yasuda,* 829 F.3d 1118, 1134 (9th Cir. 2016). The party opposing arbitration "bears the burden of showing waiver," and, contrary to the wrong standard espoused by Defendants, the burden is "no longer 'heavy.'" *Armstrong v. Michael Stores, Inc.,* 59 F.4th 1011, 1014 (9th Cir. 2023). The test for waiver of the right to compel arbitration requires a showing of two elements: "(1) knowledge of an existing right to compel arbitration; and (2) intentional acts inconsistent with that existing right." *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023).

The Ninth Circuit previously required a third element (prejudice), however, the Supreme Court in *Morgan v. Sundance, Inc.,* 596 U.S. 411 (2022) eliminated that requirement as an inappropriate "'special' rule favoring arbitration.'" *Armstrong,* 59 F.4th at 1014. "If an ordinary procedure rule— whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it. The federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan,* 596 U.S. at 418. Thus, "the burden for establishing waiver of an arbitration agreement is the same as the burden for establishing waiver in any other contractual context." *Id.* at 1015.

### 1.    Defendants Knew of The Arbitration Clause In Their Terms of Use

As to the first element, it is indisputable that Defendants, as the drafters of the Terms of Use, had knowledge of their purported right to arbitrate.  Hinsley Decl., Dkt. 82, ¶¶ 5-7; *In re Google Assistant Priv. Litig.,* 2024 WL 251407, at *4 (N.D. Cal. Jan. 23, 2024) ("knowledge of a contractual right to arbitrate is imputed to [defendant] as the contract's drafter."), quoting *Plows v. Rockwell Collins, Inc.*, 812 F. Supp. 2d 1063, 1066 (C.D. Cal. 2011).  Defendants preemptively deny waiving their right to compel arbitration in the Motion but make no attempt to argue that they were not aware of the arbitration provision in their websites' Terms of Use since the outset of litigation.  *See* Mot. 15-16.  Instead, in an apparent attempt to take attention away from the actual issue – which is Defendants' knowledge of its purported right to arbitration, Defendants focus their discussion on Plaintiffs' awareness of the arbitration issue.  Mot. at 16.  Thus, the first element of waiver is satisfied. *See Hill*, 59 F.4th at 471 ("[The movant] similarly possessed knowledge of the right to compel arbitration . . . sufficient to satisfy the first prong of the waiver test."); *see also Slaten v. Experian Information Solutions, Inc.,* 2023 WL 6890757, at * 4 (C.D. Cal. Sept. 6, 2023) (same).

### 2.    Defendants Acted Inconsistently with their Purported Right to Arbitrate

Turning to the second element, because "there is no concrete test to determine whether a party has engaged in acts inconsistent with its right to arbitrate; rather [courts] consider the totality of the party's actions." *Hill,* 59 F.4th at 419 (citation and internal quotation marks omitted); *see also Newirth by & through Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935, 941 (9th Cir. 2019). The Ninth Circuit has held that a party acts inconsistently with a right to arbitrate "by actively litigating [the] case to take advantage of being in federal court." *Hill,* 59 F.4th at 471. And that is exactly what Defendants did, both here and in *Feller*.

### (a) Defendant Acted Inconsistently with Intent to Arbitrate in the *Hoang To* Action

Defendant DirectToU did not move to compel Plaintiff Hoang To's case to arbitration at the outset, either in state court or after removing it.  Instead, Defendant waited six months before filing the instant Motion, all the while repeatedly communicating its intent to proceed in court rather than arbitration.  When settlement efforts failed in the *Feller* Action, Defendant offered Plaintiff to engage in settlement discussions and provided class data on an informal basis (Hammond Decl. ¶¶ 4-5), that

was "similar to the information that would have been provided in formal discovery related to the issues of class certification and summary judgment…" (Dkt. 26-2, at p. 3), entered into a class-wide settlement, stipulated to the filing of the Second Amended Complaint adding extensive allegations regarding unlawful disclosures to data brokers, stipulated to remand the case back to state court, and supported Plaintiffs' motion for preliminary approval.  *See Bower v. Inter-Con Sec. Sys., Inc.*, 232 Cal. App. 4th 1035, 1045 (2014), *overruled on other grounds by Quach v. California Com. Club, Inc.*, 16 Cal. 5th 562 (2024) (holding that the defendant's "attempt to settle the case on a classwide basis was inconsistent with its right under the arbitration agreement to insist that any claims had to be arbitrated on an individual basis only," resulting in waiver of the right).

Defendant opposed Proposed Intervenors' motion to transfer the case to Florida or dismiss based on first-filed grounds.  Dkt. 34.  After the Court denied preliminary approval, Defendant engaged in further discovery on an informal basis and pressed for a settlement conference with a magistrate judge.  Dkt. 64 at p. 3.  When Plaintiff stated that he would participate in a settlement conference with a magistrate judge as soon as he obtained third-party discovery related to the data brokers and appenders claim, Defendant moved to dismiss, transfer, or stay this case under the first-to-file rule. Dkt. 62. Defendant's motion to dismiss did not mention arbitration.

From the beginning of the case and up until the February 2025, Defendant made no attempt to move to compel arbitration or raise it as a potential. Hammond Decl. ¶¶ 3, 8; see also Dkt. 62. In the initial CMC statement submitted on January 28, Defendant still indicated a conscious decision to pursue resolution in court, raising common questions having to do with the merits and class certification (e.g. "whether the VPPA is constitutional;" "whether Plaintiff or putative Class Members have suffered any injury;" and "whether the class may be certified and if so, the scope of any such class"), stating it anticipated filing a motion to dismiss, transfer, or stay based on first-filed doctrine, a 12(b)(6) motion to dismiss, and a motion for summary judgment, and reiterating its position that given denial of preliminary approval, the case should be transferred to Florida and/or dismissed based on first-filed doctrine. Dkt. 64. For the first time at the February 4 initial CMC, Defendant brought up the potential of moving to compel arbitration.  *See* DelGobbo Decl., Dkt. 82, Exhibit B at p. 4. Yet, even at that time, Defendant was still talking about whether it wanted to continue litigating in

court or to try to force this matter into arbitration. Mot. at 16-17 (quoting from that hearing: "[W]e would like an opportunity obviously to see what [the amended complaint] looks like and file an appropriate response. Whether that is a motion to compel arbitration or whether that's, you know, *some kind of other (b)(6) or (b)(1) type of motion*, we will have to see."). *Compare Armstrong*, 59 F.4h at 1015 (giving weight to the fact that the movant, unlike Defendants here, "repeatedly stated its intent to move to compel arbitration in both case management statements and in the initial case management conference before the district court"), *with Blau v. AT&T Mobility,* 2012 WL 5666565, at \*2 (N.D. Cal. Feb. 21, 2012) (finding that defendants did not act inconsistently after moving to compel a year since the beginning of the litigation because defendants "were clear from the outset that they might move to compel arbitration").

### (b) Defendants Acted Inconsistently with Right to Arbitrate in the *Feller* Action

Similarly, in the *Feller* Action, Defendants engaged in acts and made statements inconsistent with their right to arbitrate Plaintiffs' claims. In a Joint Scheduling Report, filed soon after Plaintiffs filed their case, Defendants indicated their clear intent to proceed in court, by proposing a case management schedule, with deadlines for amendment of pleadings, discovery, class certification and dispositive motions, pretrial conference, and anticipated trial length, as well as repeatedly describing that it anticipated the case would involve complex voluminous discovery.[4] Hedin Decl. ¶ 4 and Ex. A. Defendant made no mention of arbitration in the Report or in the initial disclosures pursuant to Rule 26(a). Hedin Decl., Ex. A. Following the Scheduling Conference, the Court set a trial date of October 6, 2025. Hedin Decl. ¶ 5 and Ex. B. *Plows,* 812 F. Supp. 2d at 1067 (finding that the defendant availed itself to the court, in part, by "negotiating and entering into a protective order" and "participating in meetings and scheduling conferences to establish case

---

[4] Defendants told the court that they believed the matter was "likely to involve significant e-discovery, significant third-party discovery, and multiple expert witnesses" and that Plaintiff Mulle and Heise's case was complex "in light of the fact that it is a putative class actions; implicates highly technical issues; and is likely to involve significant e-discovery, significant third-party discovery, and multiple expert witnesses." Hedin Decl., Ex. A. Defendant further stated that "Defendant submits that discovery in this case will involve highly technical information and the involvement of multiple experts, including but not limited to forensic experts and experts concerning website functionality." *Id.*

management dates").

Defendants also attempted to resolve the *Feller* Action by way of a class-wide settlement. They filed a joint motion to conduct mediation and appoint a mediator, provided class data on an informal basis, attended mediation at which they attempted to reach class settlement, and continued settlement discussions in the following days. Hedin Decl. at ¶¶ 9, 11.  *See Bower,* 232 Cal. App. 4th at 1045 (defendant's attempt to settle on a classwide basis held inconsistent with right to arbitrate). When mediation did not work out, Defendants reached out to Plaintiff Hoang To to explore settlement with him, and moved to stay the Feller Action for 120 days to allow Defendants to finalize the settlement in Hoang To.  Hedin Decl. at ¶ 12.

Defendants both served and responded to formal discovery, and while they raised objections in their responses none of them were on the grounds that the claims were subject to arbitration.  *Id.* ¶ 8 and Ex. B.  *See, e.g., Bower*, 232 Cal. App. 4th at 1043–44 (holding that the defendant, "by propounding classwide discovery," "acted inconsistently with the right to compel arbitration," because "[s]eeking classwide discovery in litigation is fundamentally inconsistent with the claim that any arbitration under the arbitration agreement would be limited to [the plaintiff's] individual claims"); *Plows v. Rockwell Collins, Inc.*, 812 F. Supp. 2d 1063, 1067 (C.D. Cal. 2011) (concluding that "Defendant has behaved in a matter that is inconsistent with a demand for arbitration" by "pursu[ing] discovery that would have been impermissible in arbitration" pursuant to the "arbitration procedures described in [the pertinent] contract").

Finally, Defendants filed a motion to dismiss Heise and Mull's claims, challenging the constitutionality of the VPPA and asserting as an alternative ground for dismissal a failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (and in the parties' January 28 Joint CMC Statement, they asked this Court to let that motion play out).  In that motion also, Defendants said nothing about a right to compel arbitration.  *See FBC Mortg., LLC v. Skarg,* 2023 WL 6933359, * 3 (N.D. Cal. Oct. 19, 2023) (finding eight month delay sufficient to find waiver where defendant filed a motion to dismiss and engaged in other litigation procedure); *Roman v. Jan-Pro Franchising Int'l, Inc.*, 342 F.R.D. 274, 292 (N.D. Cal. Aug. 2, 2022) ("Ninth Circuit precedent provides us with the . . . general rule[]" that "[i]f, before moving to compel arbitration, a party moves to dismiss on a key

merits issue, then the party's action is inconsistent with the right to arbitrate.").

Significantly, because Plaintiff Hoang To was a member of the putative class in *Feller*, Defendants' litigation conduct in *Feller* resulted in the waiver of their right to compel to arbitration the VPPA claims of not just Plaintiffs Heise and Mull, but Plaintiff Hoang To and all other class members as well. *See Hill*, 59 F.4th at 469 (explaining that a defendant can waive the right to arbitrate against putative class members by affirmatively renouncing that right or by impliedly waiving the right through litigation conduct). Likewise, because Plaintiff Heise and Mull are (and always have been) members of the putative class in *Hoang To,* Defendants' litigation conduct in *Hoang To* resulted in the waiver of their right to compel to arbitration the VPPA claims of not just Plaintiff Hoang To, but Plaintiffs Heise and Mull and all other putative class members as well. *See id.*

For example, in *Roman v. Jan-Pro Franchising Int'l, Inc.,* on facts analogous to the instant matter, Judge Alsup found the defendant had waived its right to arbitrate as to all members of a putative class by bringing a motion to dismiss aimed at "vindicating its system-wide practices," reasoning as follows:

> When all a defendant does is bring a motion aimed at the individual circumstances of a single, named plaintiff, it would perhaps be unfair to say that that motion amounts to a class-wide motion or that a class-wide waiver of arbitration has occurred. But when, as here, a defendant brings a motion aimed at vindicating its system-wide practices, then it is effectively seeking class-wide relief, even if a class has not yet been certified. Bringing such a system-wide motion on the merits in a court is inconsistent with arbitration on the merits. Once a defendant seeks system-wide vindication of its practices in a court and on the merits, therefore, it has waived any right to compel an arbitration on the merits. And, this is true regardless of whether a class has yet been certified. To hold otherwise would allow a defendant to litigate the system-wide merits of an individual case, see which way the judicial winds are blowing, and then, if the winds seem unfavorable, reverse field and demand arbitration against all absent class members once a class is certified.

*Roman,* 342 F.R.D. at 293.  The same reasoning applies with even greater force here.  Defendants not only filed a motion to dismiss in *Feller* that sought a judicial determination on issues concerning the merits of the VPPA claims of Plaintiffs Heise, Mull, Hoang To, and all putative class members – they

also attempted to resolve the claims of Plaintiffs Hoang To, Heise, and Mull by entering into a proposed class-wide settlement in this action that required this Court's approval to become effective. *See, e.g., Roman*, 342 F.R.D. at 292 & n.2 (finding that "defendant has acted inconsistently with the right to arbitrate" where, "[i]n two motions to dismiss for failure to state a claim in [related proceedings in] the District of Massachusetts, defendant sought a victory in court on . . . key merits issues," and noting that "[t]o ignore defendant's conduct in the District of Massachusetts would not account for 'the totality of [defendant's] actions' to seek decisions on the merits") (citing *Newirth*, 931 F.3d at 941).

Only now, following this Court's refusal to approve that settlement and the subsequent consolidation of this action with *Feller* before this Court (with Heise and Mull now serving as Plaintiffs alongside Hoang To, as Defendants had previously advocated for), have Defendants decided to throw in the towel on litigation and ask for permission to give arbitration a shot instead. This Court need not go along.  The Court should hold that Defendants waived their right to compel arbitration by actively litigating here and in the *Feller* action and deny the Motion accordingly. *See, e.g., Plows,* 812 F. Supp. 2d at 1067–68 (holding defendant waived its right to compel arbitration by "actively participat[ing] in the court litigation," including "by (1) removing the case from state to federal court, (2) seeking and receiving a transfer of venue from the Southern District of California to the Central District of California, (3) participating in meetings and scheduling conferences to establish case management dates, and (4) negotiating and entering into a protective order signed by the Court," which the court found was "availment of the court system[,] inconsistent with a demand for arbitration"); *Quach v. California Commerce Club, Inc.*, 16 Cal. 5th 562, 586-587 (2024) (finding that the record demonstrated waiver where "[r]ather than moving to compel arbitration at the outset of the case, [defendant] answered the complaint and propounded discovery requests, suggesting it did not intend to seek arbitration" and "[a]lthough [defendant] assert in its answer that [plaintiff] should be compelled to arbitrate, its counsel did not otherwise raise the issue with [plaintiff's counsel] or with the court" and in an initial case management conference statement "requested a jury trial, left check box for indicating 'willing to participate' in arbitration blank and represented that the only motion it intended to file was a 'dispositive motion'"); *Cabinetree of Wisconsin, Inc. v. Kraftmaid*

*Cabinetry, Inc.,* 50 F.3d 388, 389 (7th Cir. 1995) (affirming a finding of waiver where defendant delayed seeking arbitration for approximately ten months after the case was filed, removed the case to federal court, produced documents in response to plaintiff's discovery request, and trial date had been set).

### B.    Defendants Have No Enforceable Contract or Arbitration Agreement.

Even if Defendants had not waived any potential right to compel arbitration, Defendants have failed to establish the existence of an agreement to arbitrate between the parties.  The Motion should be denied on this basis alone.

It is axiomatic that "arbitration is strictly a matter of consent," and thus a "party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1211 (9th Cir. 2016).  Thus, "[b]efore a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court," the party moving to compel arbitration must first prove the existence of "an express, unequivocal agreement to that effect."[5]  *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., In*c., 925 F.2d 1136, 1140-41 (9th Cir. 1991).  In determining whether Defendants have established that Plaintiffs assented to an agreement to arbitrate, the Court "should give [Plaintiffs] the benefit of all reasonable doubts and inferences that may arise."  *Id.* at 1140-41.  "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Id.* "If there is doubt," arbitration must be denied.  *Id.*

When deciding whether an agreement to arbitrate exists in the context of a motion to compel arbitration, district courts apply a "standard similar to the summary judgment standard of Federal Rule of Civil Procedure 56." *S.S. by & through Stern v. Peloton Interactive, Inc.*, 566 F. Supp. 3d 1019, 1044 (S.D. Cal. 2021) (cleaned up). Thus, as the parties seeking to compel arbitration, Defendants "bear[] the burden of proving the existence of an agreement to arbitrate by a

---

[5] Even in the context of arbitration, determining the existence of an agreement is governed by "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995).  California contract law governs the question in this case.  *See Ashland Chem. Co. v. Provence*, 129 Cal. App. 3d 790, 794 (1982). Under applicable California law, the "essential elements for a contract" include each party's mutual assent to the contract.  *Norcia v. Samsung Tel. America, LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting Cal. Civ. Code § 1550).

preponderance of the evidence." *Norcia*, 845 F.3d at 1283 (internal quotation marks omitted) (quoting *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)). Just as it is not proper to consider inadmissible evidence when resolving a motion for summary judgment, it is not proper to consider inadmissible evidence when resolving a motion to compel arbitration. *See Stover-Davis v. Aetna Life Ins. Co.*, 2016 WL 2756848, at *3 (E.D. Cal. 2016) (because a motion to compel arbitration is governed by "a standard similar to summary judgment," "the material cited to support to dispute a fact [must] be presented in a form that would be admissible in evidence").

In this case, Hinsley states in his declaration that, as it relates to each of the three websites in question (ccvideo.com, moviesunlimited.com, and deepdiscount.com), "[t]he text of the Terms of Use has been the same" as the text depicted in Exhibits 1-3 to his declaration "from before May 4, 2021 through the present." Hinsley Decl. ¶¶ 5-7. And according to Hinsley, "[t]o purchase a product online, the Websites each require a customer to complete the same series of steps, which have been in place on each Website from May 4, 2021 through the present" – but notably, Hinsley fails to submit screenshots of any of the various "steps" in this process other than the "final checkout screen exemplified in Exhibit 4." Hinsley Decl. ¶¶ 8, 10.

Indeed, although Hinsley states that making a purchase on any of the Websites entails "initiat[ing] the checkout process," "then input[ting] shipping, billing, and payment information," and finally arriving at and submitting "a final checkout screen" that "summariz[es] the customer's shipping address, billing method, items in cart, and order summary (including pricing)," Hinsley Decl. ¶ 9, he fails to submit images of any of the screens that precede the "final checkout screen," including the screens on which the person is asked to "initiate the checkout process" and "input shipping, billing, and payment information," much less images of such screens generated on or around the dates on which the Plaintiffs purportedly navigated through them to place orders on the websites. Nor does Hinsley explain how he has personal knowledge sufficient to come to the conclusion that these checkout screens on all of the websites have remained the same since May 4, 2001, as required to properly authenticate and identify the sole screenshot he does submit as what he claims it to be. *See* Fed. R. Evid. 901(a) ("[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item

is what the proponent claims it is"); *see also Becerra v. Newpark Mall Dental Group*, 2012 WL 3010973, at *3 (N.D. Cal. July 23, 2012) (recognizing "it is not enough for [a witness] to state that he has personal knowledge of the facts stated"; "testimony must contain facts showing the witness's connection to the matters stated").

On this basis alone, the Motion should be denied for failure to satisfy Defendants' threshold burden to submit competent evidence sufficient to demonstrate the existence of an agreement to arbitrate. *See, e.g., Alarcon v. Vital Recovery Servs., Inc.*, 706 F. App'x 394 (9th Cir. 2017) (reversing district court's decision granting motion to compel arbitration where moving party had submitted "insufficient and inadmissible" evidence); *Rollins v. Wink Labs, Inc.*, 2021 WL 4185878, at *4 (D. Or. June 21, 2021), *report and recommendation adopted,* 2021 WL 4189604 (D. Or. Sept. 14, 2021) (denying motion to compel arbitration where "the Terms proffered by Lopez are not authenticated and defendants have failed to establish that Lopez's testimony on these determinative issues is based on personal knowledge," explaining that Lopez provides no explanation for how he, as someone who works in finance and did not begin working for Wink until 2017, has knowledge of the process that plaintiff went through in 2015 and what plaintiff would have seen. It is not even clear that Lopez reviewed any business records to reach this conclusion") (citations omitted, cleaned up).

In fact, even the image of the "final checkout screen" Hinsley submits is described by him as "a true and correct copy of this final checkout screen **which appears** on each of the Websites . . ., with personal information redacted." Hinsley ¶ Decl. 9 (emphasis added).  In other words, the image of the "final checkout screen" attached as Exhibit 4 to the Hinsley Declaration depicts the way in which this screen appears on the websites **today** – not necessarily how it appeared on the websites on the dates on which the Plaintiffs placed orders.

Although Hinsley states that "[t]his process and information described in Paragraphs 8-11," concerning the checkout screens on the websites, "has been the same on each of the Websites from May 4, 2021 through the present," Hinsley Decl. ¶ 12, he does not say that the image of the "final checkout screen" attached to his declaration as Exhibit 4 depicts the screen as it existed when each of the Plaintiffs arrived on it on the dates on which they placed orders on the websites. And again, he fails to attach images of any of the "screens" that comprised the checkout system (including the "final

checkout screen") on any of the websites as they existed on, or even around, the dates on which Plaintiffs placed orders on the websites.

This naturally begs the question: if Hinsley was able to gather, review, and submit "information in DirectToU's business records regarding [Plaintiffs'] respective purchase history on the Websites," dating back to October 25, 2021 (*see* Hinsley Decl., Ex. 5), why was he not also able to gather and submit images of the screens that Plaintiffs would have navigated through to place their orders, as they existed on those dates?  Additionally, if Hinsley was able to conclude that, "from May 4, 2021 through the present," "the Websites [have] each require[d] a customer to complete the same series of steps," Hinsley Decl. ¶ 8, including the step of checking the same checkbox alongside the same disclosure statement as depicted in Exhibit 4 to his declaration, why was he not also able to gather and submit images of the checkout screens as they existed on the dates Plaintiffs placed orders on the websites (all of which were placed after May 4, 2021).

Hinsley does not provide answers to these questions, but his failure to submit images of the websites' checkout screens as they would have appeared for each of the Plaintiffs on the dates in question is significant and cannot be overlooked.  Having failed to submit images of these screens from the dates in question, depicting the checkout pages that were actually displayed to Plaintiffs on the websites on the dates they placed orders – records that Defendants purport to possess but have failed to submit to the Court – Hinsley's statements concerning the appearance of those screens are inadmissible hearsay and violate the best evidence rule, and should therefore not be considered by the Court.  *See, e.g., Stover-Davis*, 2016 WL 2756848, at *3 ("On motion to compel arbitration, the court applies a standard similar to summary judgment . . . [thus] the material cited to support to dispute a fact [must] be presented in a form that would be admissible in evidence.") (citing Fed. R. Civ. P. 56(c)); *U.S. v. Bennett*, 363 F.3d 947, 953 (9th Cir. 2004) ("proponents of computer-produced evidence [] founder on the best evidence rule by presenting [] testimony based on  . . . review of computer printouts without actually introducing the printouts themselves . . ."); *Alarcon*, 706 F. App'x at 395; *Loomis v. Cornish*, 836 F.3d 991, 996-97 (9th Cir. 2016).

On this record, Defendants have failed to satisfy their initial burden of demonstrating that any of the Plaintiffs manifested their assent to be bound by the Terms of Use (or its incorporated

arbitration provision) by submitting orders on the dates in question (as specified in the "business records" that Hinsley does attach as Exhibit 5 to his declaration). *Smith v. Rent-A-Center, Inc*., 2019 WL 1294443, at *6-*7 (E.D. Cal. 2019) (denying arbitration where declarant "summarily asserted that plaintiff electronically signed the agreement" on a web-based screen but failed to substantiate with admissible evidence the basis for that conclusion); *Ruiz v. Moss Brothers Auto Group*, 232 Cal. App. 4th 836 (2014) (same).  Because Defendants have failed to carry their initial burden of proving the existence of an enforceable agreement to arbitrate, this proceeding is not "referable to arbitration," no stay or dismissal pending arbitration is warranted, and the Motion should be denied.  *See* 9 U.S.C. § 3.

But even if Hinsley's declaration and accompanying exhibits were sufficient to satisfy Defendants' initial burden of producing some evidence demonstrating the existence of an agreement to arbitrate – and they are not – there is nonetheless an issue of fact as to whether an agreement to arbitrate was ever formed between the parties. To establish a genuine dispute over a purported arbitration agreement's formation, a party must present "specific facts, as opposed to general allegations," that would allow a rational trier of fact to find that the party did not manifest assent to be bound by the agreement. *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020) (quoting 10A Mary Kay Kane, Federal Practice and Procedure § 2727.2, at 501 (4th ed. 2016)). Here, Plaintiffs have done just that.

Although Hinsley says the "final checkout screen" attached as Exhibit 4 to his declaration depicts the "final checkout page" (again, without specifying the date on which it was generated) as it would have appeared for all persons who placed orders "online" since May 4, 2021, even a cursory review of this image reveals that a visitor would only even potentially have been presented with this screen (again, at some unspecified date) if they had selected the "credit card" method of payment. *See* Hinsley Decl., Ex. 4 (showing "VISA" selected under "Payment & Billing" section of screen). But not everyone selected credit card on the "payment" screen that preceded the "final checkout screen," and a visitor who selected a different payment method on the "payment" screen would have arrived at a different "final checkout screen." Plaintiff Mull, for example, placed his orders on moviesunlimited.com using the PayPal method, which he states (in a sworn declaration) then directed

1   him to the PayPal website where he was required to login to his PayPal account and then remitted

2   payment without ever arriving at, much less being required to submit the "final checkout screen"

3   depicted in Exhibit 4 to the Hinsley Declaration, let alone having to first check a box next to a

4   disclosure statement pertaining to the "Terms of Use" on such a screen. Mull Decl. ¶¶ 4-5. Defendants

5   submit no evidence concerning Plaintiff Mull's purchases made with PayPal, which is fatal to their

6   bid to compel him to arbitrate.

7         Moreover, not everyone placed their orders for prerecorded video materials from Defendants

8   "online" – the only type of orders that Hinsley's declaration even addresses. *See, e.g.,* Hinsley Decl.

9   ¶ 8 (limiting his statement concerning the purported provision of assent to the Terms of Use by

10  Defendants' customers to those who "purchase[d] a product **online**").  Plaintiff Heise, for example,

11  placed orders with Critics Choice through a mail-order catalog he received in the mail, by completing

12  and mailing in via snail-mail a hard-copy order form, without ever having been informed of the

13  existence of, let alone required to sign or otherwise manifest his assent to be bound by, the Terms of

14  Use or any other agreement (much less one containing an agreement to arbitrate).  *See* Heise Decl.

15  ¶¶ 3-5. Defendants submit no evidence concerning Plaintiff Heise's purchases made through catalogs,

16  which is likewise fatal to their bid to compel him to arbitrate.

17        The declarations of Heise and Mull thus totally refute Hinsley's statement that "[w]ithout

18  checking the box [on the final checkout screen depicted in Exhibit 4 to his declaration], Plaintiffs

19  [Heise and Mull] would not have been able to complete their purchases," Hinsley Decl. ¶ 15 – giving

20  rise of a genuine issue of material fact on the question of whether either of them ever formed an

21  agreement to arbitrate their claims with Defendants (even assuming Defendants have satisfied their

22  initial burden, which they have not for the reasons discussed above). *See, e.g., Sotelo v.*

23  *DirectRevenue, LLC*, 384 F. Supp. 2d 1219, 1228 (N.D. Ill. 2005) (denying arbitration based on

24  website's hyperlinked terms because plaintiff submitted sworn "affidavits that he . . . never visited

25  [Defendant's] website" and thus "raised a triable issue of fact"); *Metter v. Uber Technologies, Inc.*,

26  2017 WL 1374579, at *4 (N.D. Cal. 2017) (denying motion to compel arbitration given plaintiff's

27  "declaration that he never saw the terms of service" on "the Uber app."); *Van Tassell v. United*

28  *Marketing Group, LLC*, 795 F Supp. 2d 770, 788 (N.D. Ill. 2011) (denying motion to compel

1   arbitration because plaintiffs claimed in "sworn affidavits [that they] never even viewed the

2   enrollment [webpages] or the relevant Terms and Conditions, let alone agreed to them . . .").

3          Thus, to the extent the Court finds an issue of fact as to whether Defendants have met their

4   burden to demonstrate the existence of an agreement to arbitrate, Plaintiffs are entitled to and hereby

5   demand discovery and a trial by jury on the issue of formation. *See* 9 U.S.C. § 4. "In the meantime,

6   the court should hold [the] [M]otion in abeyance" to afford Plaintiffs an opportunity to conduct

7   discovery on the question of formation. *See Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th

8   832, 839 (6th Cir. 2021) (although "[t]he [FAA] requires the district court to 'proceed summarily to

9   the trial' of the disputed fact questions," the party opposing arbitration may first be permitted to take

10  discovery).

11         Specifically, in the event an issue of fact is found to exist on the formation question, Plaintiffs

12  request the Court's authorization to seek targeted discovery on that issue from Defendants (and any

13  other appropriate parties), including documents, communications, and ESI, as well as testimony,

14  pertaining to Plaintiffs and their purchases of prerecorded video materials from Defendants, as well

15  as copies of all contracts in effect during the relevant time periods and the mechanisms that

16  Defendants (or any predecessor entities) had in place for obtaining and recording customers' assent

17  to such contracts (including all images of all checkout screens generated on or around the dates in

18  question). Both the FAA and Rule 56(d) (applicable here because the Motion is governed by the

19  summary judgment standard) entitle Plaintiffs to discovery on these issues before proceeding to trial

20  on the formation question. *See Camara v. Mastro's Restaurants LLC*, 952 F.3d 372, 373 (D.C. Cir.

21  2020); 10A Mary Kay Kane, Federal Practice and Procedure § 2727.1, at 485 (4th ed. 2016)).

22                          IV.    **CONCLUSION**

23         Because Defendants waived any right they may have had to arbitrate and, in any event,

24  failed to establish that there exists an enforceable right to arbitrate, their motion to stay and compel

25  arbitration should be denied.   Alternatively, Plaintiffs respectfully request that this Court hold

26  Defendants' motion in abeyance and allow Plaintiffs time to conduct targeted discovery on the issue

27  of contract formation.

28

1   Dated: April 7, 2025                                    Respectfully submitted,

2                                                            _/s/Julian Hammond_____
                                                            Julian Hammond
3
                                                            Attorneys for Plaintiffs
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28