1  Teresa C. Chow (State Bar No. 237694)
   **BAKER & HOSTETLER LLP**
2  1900 Avenue of the Stars
   Suite 2700
3  Los Angeles, CA 90067-4301
   Telephone:  310.820.8800
4  Facsimile:  310.820.8859
   Email:      *tchow@bakerlaw.com*
5

6  Bonnie Keane DelGobbo (*pro hac vice*)
   Joel C. Griswold (*pro hac vice*)
7  **BAKER & HOSTETLER LLP**
   One North Wacker Drive
8  Suite 3700
   Chicago, IL 60606
9  Telephone:  312.416.6200
   Facsimile:  312.416.6201
10 Email:      *bdelgobbo@bakerlaw.com*
   Email:      *jcgriswold@bakerlaw.com*
11

12 *Attorneys for Defendants*
   DIRECTTOU, LLC and ALLIANCE
13 ENTERTAINMENT, LLC

# IN THE UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN HOANG TO, JEFFRY HEISE, and JOSEPH MULL, individually and on behalf of all others similarly situated, | **CASE NO.: 3:24-CV-06447-WHO** |
| Plaintiff, | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY AND COMPEL ARBITRATION** |
| v. | *[Filed concurrently with Declaration]* |
| DIRECTTOU, LLC and ALLIANCE ENTERTAINMENT, LLC, | Hearing:  June 4, 2025 |
| Defendants. | Time:     2:00 PM |

**TABLE OF CONTENTS**

Page

I. ARGUMENT ...........................................................................................................................1

    A. Plaintiffs' Arguments Concerning Tim Hinsley's Declaration Are Meritless. .................................................................................................................1

    B. Plaintiffs' Additional Arguments Concerning Plaintiff Heise And Plaintiff Mull Also Fail. ..................................................................................................3

        1. Plaintiff Heise ...........................................................................................3

        2. Plaintiff Mull .............................................................................................5

    C. Plaintiffs' Waiver Argument Is Misplaced. ...........................................................7

        1. Waiver Is An Issue For The Arbitrator. ...................................................7

        2. Alternatively, Plaintiffs' Waiver Arguments Fail. ....................................8

            a) Defendants Did Not Waive Arbitration. .......................................8

            b) Alternatively, Defendants' Right To Compel Arbitration Has Been Revived. ..............................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alarcon v. Vital Recovery Services, Inc.*,
    706 F. App'x 394 (9th Cir. 2017) ......................................................................................... 6

*Armstrong v. Michaels Stores, Inc.*,
    59 F.4th 1011 (9th Cir. 2023) ............................................................................................ 15

*Blau v. AT & T Mobility*,
    No. C 11-00541 CRB, 2012 WL 566565 (N.D. Cal. Feb. 21, 2012) .................................. 15

*Bower v. Inter-Con Sec. Sys., Inc.*,
    232 Cal. App. 4th 1035 (2014) ........................................................................................... 15

*Buchsbaum v. Digital Intelligence Systems, LLC*,
    2020 WL 7059515 (S.D. Cal. Dec. 2, 2020) ....................................................................... 12

*Constr. Council 175, Util. Workers of Am., AFL-CIO v. New York Paving, Inc.*,
    708 F. Supp. 3d 221 (E.D.N.Y. 2023) ................................................................................ 11

*Dardashty v. Hyundai Motor Am.*,
    745 F. Supp. 3d 986 (C.D. Cal. 2024) ................................................................................ 13

*Echavarria v. Adir International, LLC*,
    2016 WL 3397416 (C.D. Cal. June 13, 2016) .................................................................... 13

*Envirex, Inc. v. K.H. Schussler Fur Umwelttechnik GmbH*,
    832 F.Supp. 1293 (E.D.Wis.1993) ...................................................................................... 16

*Feller v. Alliance Entertainment, LLC*,
    No. 0:24-cv-61444 (S.D. Fla.), ECF No. 35 ....................................................................... 14

*Gilmore v. Shearson/American Express, Inc.*,
    811 F.2d 108 (2d Cir. 1987), *overruled on other grounds by McDonnell
    Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 849 F.2d 761 (2d Cir.
    1988) ................................................................................................................................... 15

*Hansen v. LMB Mortg. Servs., Inc.*,
    1 F.4th 667 (9th Cir. 2021) ........................................................................................... 8, 10

*Henry Schein Inc. v. Archer & White Sales Inc.*,
    586 U.S. 63 (2019) ................................................................................................................ 8

*Kohler v. Whaleco, Inc.*,
    No. 24-CV-00935-AJB-DEB, 2024 WL 4887538 (S.D. Cal. Nov. 25, 2024) ............... 8, 10

*Krinsk v. SunTrust Banks, Inc.*,
   654 F.3d 1194 (11th Cir.2011) ................................................................................................16

*Martin v. Yasuda*,
   829 F.3d 1118 (9th Cir. 2016) ...........................................................................................11, 12

*Mohamed v. Uber Techs., Inc.*,
   848 F.3d 1201 (9th Cir. 2016) .............................................................................................8, 10

*Newirth by & through Newirth v. Aegis Senior Comtys.*,
   LLC, 931 F.3d 935 (9th Cir. 2019) ..........................................................................................12

*Oliver v. Sw. Homes of Arkansas, Inc.*,
   732 F. Supp. 3d 982 (W.D. Ark. 2024) ....................................................................................12

*Rollins v. Wink Labs, Inc.*,
   No. 3:20-CV-01220-YY, 2021 WL 4185878 (D. Or. June 21, 2021), *report
   and recommendation adopted,* No. 3:20-CV-01220-YY, 2021 WL 4189604
   (D. Or. Sept. 14, 2021) ..............................................................................................................6

*Solis v. Experian Info. Sols., Inc.*,
   629 F. Supp. 3d 1016 (C.D. Cal. 2022) .................................................................................8, 10

**Statutes**

9 U.S.C. § 4 ....................................................................................................................................9, 10

## I. ARGUMENT

### A. Plaintiffs' Arguments Concerning Tim Hinsley's Declaration Are Meritless.

Defendants have met their burden and established that an arbitration agreement exists. (ECF No. 80 at 11-14.) Plaintiffs' attempts to avoid a binding agreement by attacking the existence of that agreement and the Declaration of Tim Hinsley border on frivolous and must be rejected. (Opp. at 19-25.)

Plaintiffs first complain that the Declaration of Tim Hinsley in Support of Motion to Stay and Compel Arbitration ("First Hinsley Declaration") (Doc. 82) did not attach screenshots of the various steps in the order placement process that precede the final checkout screen. (Opp. at 20.) However, the final checkout screen is the screen which contains the link to the Terms of Use containing the arbitration agreement at issue in this motion, and the First Hinsley Declaration made clear that it is impossible to place an order on the Websites without viewing that final screen and taking affirmative action to agree to the Terms of Use. (Doc. 82 at ¶¶ 9-11.) Earlier screens are entirely irrelevant.

Plaintiffs next suggest that the First Hinsley Declaration fails to satisfy Federal Rule of Evidence 901 because Mr. Hinsley purportedly did not explain how he had personal knowledge of the checkout screens. (Opp. at 20.) However, Mr. Hinsley testified he is the General Manager of DirectToU, LLC, where he has worked since January 2011. Because Mr. Hinsley has held this leadership position at DirectToU throughout the entire statute of limitations period, and in particular, during the time when Plaintiffs made purchases on the websites, he certainly has sufficient personal knowledge to testify concerning all of the facts in his declaration. (ECF No. 82, ¶¶ 1, 12-15.)

Plaintiffs also argue that Mr. Hinsley did not offer testimony concerning what the final checkout screen looked like at the time Plaintiffs made their purchases (Opp. at 21-22.) However, in the First Hinsley Declaration, Mr. Hinsley authenticated the final checkout screen in paragraph 9 and attached it as Exhibit 4; explained in paragraph 10 that it is impossible to place an order on the Websites without affirmatively checking the box on the final checkout screen next to the words

"I acknowledge that I have read and agree to the Terms of Use"; and testified that the "process and information described in Paragraphs 8-11 [of the First Hinsley Declaration] has been the same on each of the Websites from May 4, 2021 through the present." (ECF No. 82 ¶¶ 9-10, 12.) In other words, contrary to Plaintiffs' assertions, Mr. Hinsley *did* testify that the final checkout screen has been the same from May 4, 2021 through the present. He further authenticated and attached DirectToU's business records reflecting that Plaintiffs Hoang To, Heise, and Mull all made purchases on the Websites during that timeframe. (ECF No. 82 ¶ 14 & Ex. 5.[1]) This information is sufficient to establish that Plaintiffs all affirmatively agreed to the Terms of Use because they placed orders on the Websites during a timeframe when it would have been impossible to do so without checking the box manifesting their consent to the Terms of Use.

The case law that Plaintiffs cite in support of their challenge to Mr. Hinsley's testimony, two unpublished opinions, is easily distinguishable. In *Alarcon v. Vital Recovery Services, Inc.*, the Ninth Circuit reversed and remanded a district court's order compelling arbitration, finding that the defendants had not "met their burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence" where the defendants "provided no facts" and offered a declaration from an "authorized representative." 706 F. App'x 394, 394-95 (9th Cir. 2017). Similarly, in *Rollins v. Wink Labs, Inc.*, the declarant worked in finance, did not begin working for the defendant until after the conduct at issue had occurred, and it was unclear if the declarant reviewed business records. No. 3:20-CV-01220-YY, 2021 WL 4185878 (D. Or. June 21, 2021), *report and recommendation adopted*, No. 3:20-CV-01220-YY, 2021 WL 4189604 (D. Or. Sept. 14, 2021). In contrast, Mr. Hinsley has worked at DirectToU since 2011, reviewed and attached authenticated business records, and is the General Manager of DirectToU. Defendants have submitted sufficient evidence to demonstrate an agreement to arbitrate.

---

[1] For the avoidance of doubt, Mr. Hinsley has reaffirmed in his supplemental declaration filed in conjunction with this reply brief that the final checkout screen has been the same for the entire relevant time period. Declaration of Tim Hinsley in Support of Defendants' Reply ¶¶ 6-7.

### B. Plaintiffs' Additional Arguments Concerning Plaintiff Heise And Plaintiff Mull Also Fail.

Plaintiffs do not make any further arguments with respect to Plaintiff Hoang To but do make some arguments specific to Plaintiff Heise and Plaintiff Mull. Those arguments likewise fail.

#### 1. Plaintiff Heise

Plaintiff Heise asserts that he purchased products through a mail-order catalog and argues that he therefore did not agree to arbitrate his disputes (ECF No. 89-13, ¶¶ 3-5.) This argument fails for multiple reasons. As an initial matter, the Third Amended Complaint relates to purchases each Plaintiff made on the websites, so Plaintiff Heise's declaration concerning purchases he purportedly made through a mail-order catalog is plainly irrelevant. (*See* TAC ¶ 7 ("On or about April 4, 2023, Plaintiff Heise purchased one or more videos from Defendants at www.ccvideo.com. ***Throughout the time that Plaintiff Heise purchased prerecorded video material on Defendants' website***, he has had a Facebook account.") (emphasis added); *see id*. ¶¶ 62-65 (detailing "Plaintiffs' Experiences with ***Defendants' Websites***") (emphasis added).). The Third Amended Complaint contains no allegations related to mail-in orders, and Plaintiff Heise should not be permitted to expand the scope of his claims to avoid arbitration.

In any event, Heise does *not* dispute that he made the multiple purchases on the Websites which Defendants identified in their opening brief, that he agreed to the Terms of Use containing the arbitration agreement when he made those purchases, or that the arbitration agreement covers his online purchases. Thus, even if the Court were to consider Heise's assertions that he also made some mail-order catalog purchases, he is *not* challenging the *existence* of the arbitration agreement to which he agreed when making his online purchases, but rather is attempting to challenge whether the *scope* of the arbitration agreement covers his claims in this case if he made both online and mail-order purchases. However, his arbitration agreement expressly delegates "[a]ll issues…including issues relating to the scope and enforceability of this arbitration provision" to the arbitrator. (ECF No. 82 at Ex. 3 § 9 (p. 31); *see also id.* at p. 29.) Plaintiffs' dispute concerning

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

the scope of the arbitration agreement has been delegated to the arbitrator and is not properly before this Court. *See, e.g.*, *See Henry Schein Inc. v. Archer & White Sales Inc.*, 586 U.S. 63, 68 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract."); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208–09 (9th Cir. 2016) (where arbitration agreement specified that arbitrator would decide challenges to enforceability, revocability or validity, only arbitrator—and not court—had authority to consider such challenges); *Solis v. Experian Info. Sols., Inc.*, 629 F. Supp. 3d 1016, 1019 (C.D. Cal. 2022) ("The Terms of Use are similarly clear that the arbitrator decides 'scope' issues—i.e., which claims are subject to the agreement . . . Cantong may raise his arguments before the arbitrator, but it would be improper for this Court to entertain them."); *Kohler v. Whaleco, Inc.*, No. 24-CV-00935-AJB-DEB, 2024 WL 4887538, at *6 (S.D. Cal. Nov. 25, 2024) ("As was the case in *Mohamed* and *Pearl*, the language in Temu's Delegation Clause demonstrates the parties' clear and unmistakable intent for the issue of arbitrability to be delegated to the arbitrator.").

Alternatively, even if the Court were to conclude that Heise's mail-order assertions can be considered here and that the delegation clause does not apply, then a factual hearing on this issue would be necessary because Defendants maintain business records for all mail-order purchases and have no business records indicating that Plaintiff Heise ever made any mail-order purchases as he falsely claims. (Hinsley Decl., ¶¶ 9-11.) Although Defendants' position is that Heise's false factual assertions are not appropriately considered for the reasons identified above, to the extent the Court disagrees, the Federal Arbitration Act requires a factual hearing when the Court's decision turns on a disputed issue of fact. *See* 9 U.S.C. § 4; *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) ("Under § 4, in response to a motion to compel arbitration, the district court must 'hear the parties.' If the court is 'satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.' But '[i]f the

making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.'").[2]

### 2. Plaintiff Mull

Plaintiff Mull's declaration asserts that he made purchases on one of DirectToU's websites "between August 8, 2021 and August 8, 2024," paid for those purchases using PayPal, and was not presented with the final checkout screen discussed in DirectToU's declaration. (ECF No. 89-12 ¶¶ 3-5.) DirectToU's declaration which attached Plaintiff Mull's full purchase history on the Websites reflects that Plaintiff Mull made a total of three purchases within the timeframe discussed in Plaintiff Mull's declaration (on August 14, 2023, September 5, 2023, and May 15, 2024), and a fourth purchase that is not discussed in his declaration, on September 3, 2024. (ECF No. 82 at Ex. 5.) Consequently, it is undisputed that Plaintiff Mull made a purchase on September 3, 2024 during which he followed all the steps described in DirectToU's declaration—including affirmatively checking the box next to the language "I acknowledge that I have read and agree to the Terms of Use" before placing his order. (ECF No. 82 at ¶¶ 7-15.) It is also undisputed that that language hyperlinked to the full text of the Terms of Use which contains the arbitration agreement that broadly covers "[a]ny claim, dispute or controversy…that arises in whole or in part from all or any portion of your access or use of the MoviesUnlimitedPlatform…" and that delegates "[a]ll issues…including issues relating to the scope and enforceability of this arbitration provision" to the arbitrator. (ECF No. 82 at Ex. 3 § 9 (p. 29 & 31).) Thus, Plaintiff Mull's declaration does *not* raise a factual dispute concerning the *existence* of an arbitration agreement because he has not submitted any evidence refuting that he agreed to arbitration in connection with his September 3, 2024 purchase. Rather, he is attempting to dispute whether the *scope* of the arbitration agreement

---

[2] Plaintiffs generally appear to agree that the Federal Arbitration Act ("FAA") requires a factual hearing if there is a factual dispute about the existence of an arbitration agreement. (Doc. 89 at 23 & 25.) However, Plaintiffs misstate the law on this issue in other portions of their brief, suggesting that "arbitration must be denied" if there is a factual dispute. (ECF No. 89 at 19; *see also id.* at 21.) The FAA is clear that where "the making of the arbitration agreement" turns on a factual dispute, "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. Although Plaintiffs request discovery prior to the hearing, the FAA on its face does not permit discovery but rather requires the parties to "proceed summarily to…trial" when there is a material factual dispute about contract formation.

that he agreed to on September 3, 2024 covers his claims in this case because he contends that he did not click the same checkbox during three of his earlier purchases. This dispute over the scope of the arbitration agreement has expressly been delegated to the arbitrator. (ECF No. 82 at Ex. 3 § 9 (p. 29 & 31).) *See, e.g.*, *Mohamed*, 848 F.3d at 1208–09; *Solis*, 629 F. Supp. 3d at 1019; *Kohler*, 2024 WL 4887538, at *6.

Alternatively, if the Court were to conclude that any dispute over the scope of the arbitration agreement is not delegated to the arbitrator, then the arbitration language Plaintiff Mull agreed to on September 3, 2024 is broad enough as a matter of law to cover his claims in this case. The agreement specifies that Plaintiff must arbitrate "[a]ny claim, dispute or controversy…that arises in whole or in part from all or any portion of your access or use of the MoviesUnlimitedPlatform…" (ECF No. 82 at Ex. 3 § 9 (p. 29).) Plaintiff Mull's claims in this case all concern the alleged sharing of information about purchases that he made on the Website and consequently fall squarely within this language as a matter of law. However, to the extent the Court disagrees, then a factual hearing is necessary with respect to Plaintiff's assertion that he did not agree to arbitration during his three earlier purchases. *See* 9 U.S.C. § 4; *Hansen*, 1 F.4th at 670. Plaintiff's assertion that he did not view the final checkout screen discussed in DirectToU's declaration when he made those first three purchases is false. Throughout the entire time period that Plaintiff Mull made his four total purchases, it has been impossible to place an order on the Websites, regardless of payment method, without first taking affirmative action to click the checkbox next to the words "I acknowledge that I have read and agree to the Terms of Use," which contain a hyperlink to the full text of the Terms of Use containing the arbitration agreement. (ECF No.82 at ¶¶ 7-15; Declaration of Tim Hinsley in Support of Defendants' Reply ¶¶ 3-8 .) Contrary to Plaintiff Mull's false statements in his declaration, at the time he placed each of his online orders, it was impossible to place an order directly through PayPal and without completing the final checkout screen described in DirectToU's declarations. (Declaration of Tim Hinsley in Support of Defendants' Reply ¶¶ 4-6.) The websites have contained a PayPal integration that prompts the user to log into PayPal when the customer enters billing and payment information

since May 2021. (*Id.* ¶¶ 4-8). After this step is complete, customers using PayPal as their payment method must continue on to the same final checkout screen as customers using other payment methods in order to actually place their order. (*Id.*) (*See* ECF No. 82 ¶¶ 10-12, Ex. 4; Declaration of Tim Hinsley in Support of Defendants' Reply ¶¶ 4-8).

### C. Plaintiffs' Waiver Argument Is Misplaced.

#### 1. <u>Waiver Is An Issue For The Arbitrator.</u>

Only the arbitrator has the authority to address Plaintiffs' arguments concerning waiver. The Ninth Circuit has held that whether a party has waived its right to arbitrate "is presumptively for a court and not an arbitrator to decide." *Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016). The operative word is "presumptively." Disputes involving waiver, like other "gateway issues," are "for judicial determination unless the parties clearly and unmistakably provide otherwise." *Id.* (emphasis added). And, here, the parties have clearly and unmistakably done so. As explained above, the parties' arbitration agreement contains delegation provisions which provide: "Any claim, dispute or controversy…*that arises in whole or in part from* all or any portion of your access or use of the [Website] *or otherwise in connection with this Agreement, or the breach, termination, enforcement, interpretation of validity thereof*, including the determination of the scope of applicability of this agreement to arbitrate…shall be decided exclusively in small claims court or by binding arbitration as set forth in this section, and not by courts of general jurisdiction"; and "All issues are for the arbitrator to decide, including issues relating to the scope and enforceability of this arbitration provision." (ECF No. 82 at Ex. 3 § 9 (p. 31); *see also id.* at p. 29).)[3] Plaintiffs' dispute concerning waiver is a dispute that "arises in whole or in part" from their use of the Websites "or otherwise in connection with [the arbitration agreement], or the breach, termination, enforcement, [or] interpretation of validity thereof." Thus, this dispute is one for the arbitrator to decide. *See, e.g.*, *Constr. Council 175, Util. Workers of Am., AFL-CIO v. New York Paving, Inc.*, 708 F. Supp. 3d 221, 231 (E.D.N.Y. 2023) ("To the extent New York Paving is

---

[3] These same provisions are also included in Section 9 of Exhibits 1 and 2 to the First Hinsley Declaration. (ECF No. 82 at Ex. 1 & 2.)

- 7 -

contending that Local 175 waived its right to arbitrate, that issue lies outside the Court's jurisdiction. When parties 'clearly and unmistakably commit[ ] to arbitrate' a threshold question of arbitrability, the district court must defer to the arbitrator's answer to that question. In that circumstance, whether a party waived its right to arbitrate – a "gateway procedural dispute" – is "presumptively one for the arbitrator.'") (internal citations omitted); *Oliver v. Sw. Homes of Arkansas, Inc.*, 732 F. Supp. 3d 982, 987 (W.D. Ark. 2024) ("Waiver is an issue of procedural arbitrability. Therefore, unless the parties have clearly and unmistakably provided otherwise, waiver is for the arbitrator to decide.").

### 2. Alternatively, Plaintiffs' Waiver Arguments Fail.

#### a) Defendants Did Not Waive Arbitration.

Alternatively, if the Court concludes that the issue of waiver has not been delegated to the arbitrator, then Defendants have not waived their right to compel arbitration. As Plaintiff concedes, a party claiming waiver must show acts inconsistent with the right to compel arbitration. *Newirth by & through Newirth v. Aegis Senior Comtys.*, LLC, 931 F.3d 935, 940 (9th Cir. 2019). "There is no concrete test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate." *Martin*, 829 F.3d at 1125. Instead, "courts consider whether the totality of the defendant's actions 'indicate a conscious decision ... to seek judicial judgment on the merits of [the] arbitrable claims, which would be inconsistent with a right to arbitrate.'" *Buchsbaum v. Digital Intelligence Systems, LLC*, 2020 WL 7059515, at *3 (S.D. Cal. Dec. 2, 2020) (quoting *Martin*, 829 F.3d at 1125). "In other words, 'a party acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court.'" *Id.* (quoting *Newirth*, 931 F.3d 935 at 941). Plaintiffs fail to demonstrate that Defendants made an intentional decision not to move to compel arbitration and actively litigated the merits for a prolonged period of time in this case. In total, Plaintiffs contend the following actions give rise to waiver:

1. Defendants removed the action to federal court and moved for an extension of time (Opp. at 7);
2. The Parties participated in settlement negotiations, which included informal exchange of information to facilitate those discussions, and Plaintiff Hoang To moved for preliminary approval of a settlement, which was denied (*Id.*; ECF No. 57);
3. Defendants opposed Plaintiff Hoang To's motion for limited discovery (Opp. at 8);
4. Defendants filed a motion to transfer. Plaintiffs failed to note that Defendants withdrew the motion (*id.*; *see also* ECF No. 72 (withdrawing motion));
5. The Parties filed a Case Management Statement (Opp. at 8); and
6. Plaintiffs filed a Second and Third Amended Complaint (*id.* at 7-9).

None of these actions demonstrate "active litigation" of the "merits" by Defendants, much less active merits litigation "for a prolonged period of time in order to take advantage of being in court." *See, e.g.*, *Echavarria v. Adir International, LLC*, 2016 WL 3397416 (C.D. Cal. June 13, 2016) ("Although defendant (a) has filed both a motion to dismiss the initial complaint and an Answer to the operative First Amended Complaint, (b) has held a Rule 26(f) conference, and (c) has attended a case management conference, the 'mere[ ] participati[on] in litigation, by itself, does not result in a waiver....'") (citation omitted); *Dardashty v. Hyundai Motor Am.*, 745 F. Supp. 3d 986, 999 (C.D. Cal. 2024) ("The actions taken by HMA—namely removing the action to the district court, agreeing to exchange initial disclosures, entering into a protective order, responding to certain discovery requests, and participating in mediation—are not "tactical choice[s] to resolve the claims judicially" that would be sufficient to find waiver."). Defendants have never filed an answer or a Rule 12 motion in response to any complaint, engaged in formal discovery, or asked the court to decide the merits of Plaintiffs' claims. Moreover, it is undisputed that the original parties to this case were working on pursuing a settlement through mid-January 2025, Plaintiff Hoang To repeatedly told the Court during settlement-related proceedings that arbitration would be a major issue in this case if the settlement was not approved, and the settlement agreement made

clear that nothing in the settlement agreement or actions taken in furtherance of settlement could be used against Defendants if the settlement did not receive Court approval. (ECF No. 81, Ex. A at 6:4-20). Less than *one month* after settlement discussions fell apart, Defendants promptly notified Plaintiffs and the Court at the February 4, 2025 hearing, that Defendants might move to compel arbitration. (*Id.*, Ex. B at 4:17-24). Plaintiffs subsequently proceeded to file the Third Amended Complaint in this case and to voluntarily dismiss the *Feller* action, and Defendants promptly moved to compel arbitration within the time set by the Court to respond to the Third Amended Complaint. (ECF No. 80 at 15-16; ECF No. 81 at Ex. B, 4:17-24.) There is no waiver under these circumstances, and Plaintiffs have not identified any cases which even come close to supporting their argument for waiver.

Plaintiffs' arguments are also fundamentally flawed because they rely, in large part, on the fact that Defendants were involved in another litigation pending in federal district court in Florida filed by Plaintiff Heise, Plaintiff Mull, and another individual. (Opp. at 9-12.) But Plaintiff Heise and Plaintiff Mull voluntarily dismissed that case on February 7, 2025 and that separate case has no bearing on the litigation now before this Court. Plaintiffs do not identify, nor can they, any case law that suggests a ***dismissed*** action filed in a separate court may serve as the basis to demonstrate that Defendants acted inconsistently with their right to arbitrate ***in the current action***.[4] That litigation involved another plaintiff who did not join this action, and Alliance Entertainment, LLC was not named as a defendant in this action until February 7, 2025. Moreover, Defendants' counsel expressly told Plaintiffs' counsel in open court on February 4, 2025 that Defendants might

---

[4] Additionally, even if the Court were to consider the Florida action, the parties were focused on pursuing settlement of that action from the time it was filed through October 10, 2024, when they completed a full-day mediation. (*See Feller v. Alliance Entertainment, LLC*, No. 0:24-cv-61444 (S.D. Fla.) (hereinafter "*Feller* Docket"), ECF No. 35.) The parties had agreed to stay any obligation to respond to discovery and had also agreed to defer Defendants' obligation to respond to the Complaint until after the conclusion of settlement discussions. (ECF No. 15, ¶ 14; *Feller* Docket at ECF No. 29, 30). Just 14 days after the mediation, Defendants sought a further stay pending settlement proceedings in this case. (*Feller* Docket, ECF No. 36.) The Florida court granted the further stay, which remained in place until Plaintiffs voluntarily dismissed the case. (*Id.* at ECF Nos. 36, 53.) No answer was filed, no dispositive motions were fully briefed, and the Court did not rule on any merits issues. Thus, even if proceedings in that separate action were considered, there still would be no waiver.

move to compel arbitration in this case—and Plaintiffs subsequently chose to dismiss the Florida action and file the Third Amended Complaint in this case several days later. (ECF No. 81 at Ex. B, 4:17-24; ECF No. 68; ECF No. 70 (citing dismissal of Florida action).

At most, Plaintiffs can point to the passage of time. But nothing of substance related to the actual merits of the litigation has occurred in the past 7.5 months. Defendants are not aware of any court in this Circuit finding waiver by litigation conduct on the same or similar facts, and Plaintiffs cite to none.[5] Defendants have not waived their right to arbitrate.

### b) Alternatively, Defendants' Right To Compel Arbitration Has Been Revived.

Even if Defendants' lack of litigation conduct on the merits somehow amounts to a waiver of its arbitration rights (and to be clear, it does not), Plaintiffs' Third Amended Complaint revived Defendants' right to compel arbitration. In *Gilmore v. Shearson/American Express, Inc.*, 811 F.2d 108, 113 (2d Cir. 1987), *overruled on other grounds by McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 849 F.2d 761, 765 (2d Cir. 1988), the Second Circuit explained that to "revive" a right to move to compel arbitration, a defendant "must show that the amended complaint contains charges that, in fairness, should nullify its earlier waiver and allow it to reassess its strategy[.]" As an example of such a situation, the court noted that an "amended complaint [that] changed the scope or theory of [a plaintiff's] claims" would revive the right to compel arbitration. *Id.* Although there are circumstances where a defendant's prior waiver is not revived by an amended complaint, the crucial question is whether the amendment expands the scope of the case or asserts new claims. For example, in *Gilmore*, the court refused to revive the right to compel arbitration where the amended complaint made only minor factual changes. *Id.* at 113–14.

---

[5] Plaintiffs' own authorities do not support a finding of waiver based on the facts in this case. In *Bower v. Inter-Con Sec. Sys., Inc.*, 232 Cal. App. 4th 1035 (2014), the defendant answered, responded to class discovery, and issued written class discovery. Even though the court briefly addressed settlement efforts, there was significantly more merits litigation than the present case, and the court factored in the procedural history in finding waiver. *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1016 (9th Cir. 2023) dealt with a defendant who never sought a ruling on the merits, as is the case here. And the defendant in *Blau v. AT & T Mobility*, No. C 11-00541 CRB, 2012 WL 566565 (N.D. Cal. Feb. 21, 2012) filed a motion to dismiss, yet the Court still did not find waiver.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

On the other hand, where the scope of litigation has been changed, arbitration rights are revived. In *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1203-04 (11th Cir.2011), the Eleventh Circuit distinguished *Gilmore*, explaining that "the Amended Complaint [here] is clearly not like the amended complaints in [*Gilmore*]." In *Krinsk*, the amended complaint added a new class definition and broadened the scope of the litigation. *Id.*; *see also Envirex, Inc. v. K.H. Schussler Fur Umwelttechnik GmbH*, 832 F.Supp. 1293, 1296 (E.D.Wis.1993) (finding that an amended complaint that "made major ... changes to [the plaintiff's] original complaint, altering and adding to the issues to be determined at trial," revived the defendants' right to demand arbitration). If this Court were to find that Defendants waived their right, that right was revived through the Third Amended Complaint because Plaintiffs named two additional plaintiffs, named an additional defendant, added multiple paragraphs of new allegations about the data broker aspect of the case, added new allegations related to Alliance Entertainment, LLC, and amended the class definitions to identify specific data brokers. Furthermore, all of Defendants' actions that Plaintiffs claim amounted to waiver occurred prior to the filing of the Third Amended Complaint.

Additionally, to the extent the Court considers the Florida action in assessing the waiver issue, Plaintiffs filed the Third Amended Complaint in this case in conjunction with unilaterally voluntarily dismissing the Florida action in which nearly all of the proceedings that Plaintiffs now rely on in arguing for waiver occurred. Plaintiffs made a strategic decision to voluntarily dismiss that action and instead file a Third Amended Complaint in which they became plaintiffs in this case—and they did so after being expressly informed by Defendants' counsel in open court at the February 4, 2025 hearing that Defendants might move to compel arbitration in response to the anticipated Third Amended Complaint in this case. Thus, to the extent the Court considers the Florida action in assessing waiver and believes that Defendants' conduct in the Florida action gave rise to waiver, certainly Plaintiffs' strategic decision to voluntarily dismiss that action and voluntarily abandon all the conduct which they contend support waiver further supports revival. If Plaintiffs wanted to use Defendants' actions in the Florida case to argue for waiver, they could have stayed in the Florida case and raised those arguments to the Florida judge in response to any

motion to compel arbitration there. But instead they chose to dismiss the Florida case and join this case. In the event that the Court determines that Defendants waived their right, it has been revived.

Dated: April 28, 2025                    Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:   */s/ Bonnie Keane DelGobbo*
         Bonnie Keane DelGobbo

*Attorneys for Defendants*
DIRECTTOU, LLC and ALLIANCE ENTERTAINMENT, LLC