UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN HOANG TO, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>DIRECTTOU, LLC, et al.,<br><br>    Defendants. | Case No. 24-cv-06447-WHO<br><br>**ORDER ON THE MOTIONS TO COMPEL ARBITRATION AND APPOINT INTERIM CLASS COUNSEL**<br><br>Re: Dkt. Nos. 79, 80 |

There are two motions before me: the defendants' Motion to Stay and Compel Arbitration and the plaintiffs' Motion to Appoint Interim Co-Lead Class Counsel. In the underlying operative complaint, plaintiffs Jonathan Hoang To, Jeffry Heise, and Joseph Mull (together, "plaintiffs") allege that defendants DirectToU, LLC ("DirectToU") and Alliance Entertainment, LLC ("Alliance") (altogether, "the defendants") violated the Video Privacy Protection Act and California state laws. After plaintiffs filed their Third Amended Complaint (Dkt. No. 68, hereafter "TAC"), defendants moved to stay the case and compel arbitration. Because I conclude that defendants have not waived their right to compel arbitration, I GRANT the motion. The Motion to Appoint Interim Co-Lead Class Counsel is therefore DENIED as moot.

## BACKGROUND

### I. Arbitration Provision and Claims

The TAC alleges that the defendants own and operate three websites that sell DVDs, Blu-ray videos, and video games to customers in the United States.[1] TAC ¶ 2. The three websites, www.deepdiscount.com, ccvideo.com, and moviesunlimited.com, ("the websites"), offer

---

[1] Defendants clarify, and plaintiffs do not contest, that DirectToU owns and operates the three websites, and that defendants share the same parent company and are corporate affiliates. Hinsley Decl. [Dkt. No. 82] ¶ 3–4.

thousands of videos and video games for sale. TAC ¶ 17. Each of the websites uses an integrated tracking device called Meta Pixel, which collects data about an individual's use of the website. TAC ¶¶ 25, 32. Once collected, this data is given to non-party Meta (formerly Facebook, Inc.) where it can further sell the information to interested advertisers. TAC ¶¶ 30, 32.

Plaintiffs appear to ground their concerns in former FTC Commissioner Rohit Chopra's comments that Meta's "massive, private, and generally unsupervised network of advertisers has virtually free reign to microtarget its ads based on every aspect of a user's profile and activity . . . includ[ing] things like a user's location and personal connections, but it also includes the history of everything a user has ever done wherever [Meta] is embedded in the digital world." TAC ¶ 36. According to plaintiffs, defendants have intentionally embedded the Meta Pixel on the websites without the consent of any website visitors. TAC ¶¶ 37–50. And because of the way the Meta Pixel operates, defendants knowingly disclosed those visitors' personally identifiable information to Meta and to third party "data aggregators, data brokers, data appenders, and data cooperatives . . . as well as other third-party renters and exchangers of" that personally identifiable information—all without their customers' knowledge or consent. TAC ¶ 52. In 2023 and 2024, plaintiffs allege that they purchased videos on the defendants' websites and that defendants disclosed that purchase information and other personally identifying information to Meta and third parties. TAC ¶¶ 62–65.

These actions, plaintiffs assert, were in violation of the Video Privacy Protection Act ("VPPA") (TAC ¶¶ 86–96), California Civil Code § 1799.3 (TAC ¶¶ 97–102), and California's Unfair Competition Law pursuant to the California Business and Professional Code § 17200 (TAC ¶¶ 103–114). All plaintiffs allege the first cause of action against defendants, and Hoang To, a California resident, alleges the latter two causes of action against defendants on behalf of himself and members of the putative California sub-class. TAC ¶¶ 6, 86, 97, 103.

In their motion to compel arbitration and supporting documents, defendants explain that dating back to 2021, an individual using any of the websites to make a purchase must agree to the Terms of Use by checking a box next to the words: "I acknowledge that I have read and agree to the Terms of Use" before that person can purchase any DVD, Blu-ray, or videogame. Mot. 7.

1  The full text of the Terms of Use is visibly hyperlinked with a blue underline.  *Id.*; *see also*

2  Hinsley Decl., Exh. 4 at 33.  Once a user clicks the hyperlink, the Terms of Use is available to

3  view.  *Id.*  The Terms of Use includes an arbitration agreement.  *Id.*  With the exception of each

4  website's name, the arbitration agreement is the same, and provides in relevant part:

> **Arbitration Agreement and Class Action/Arbitration Waiver**
>
> Any claim, dispute or controversy between you and [website name] that arises in whole or in part from all or any portion of your access or use of the [website name] Platform or otherwise in connection with this Agreement, or the breach, termination, enforcement, interpretation of validity thereof, including the determination of the scope of applicability of this agreement to arbitrate (a "Dispute") shall be decided exclusively in small claims court or by binding arbitration as set forth in this section, and not by courts of general jurisdiction.
> …
> You agree that, by agreeing to this Agreement, the U.S. Federal Arbitration Act governs the interpretation and enforcement of this provision and that you and [website name] are each waiving the right to a trial by jury.  YOU AND [website name] AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.  YOU AGREE THAT THIS CLASS ARBITRATION WAIVER APPLIES TO YOU AND TO ANY CHILD OR OTHER PERSON ON WHOSE BEHALF YOU REGISTER WITH THE [website name] PLATFORM.
> …

Hinsley Decl. Exh. 1 at 12–13, Exh. 2 at 20–21, and Exh. 3 at 329–30.

Defendants contend that because each of the plaintiffs agreed to the legally binding arbitration agreement contained within the Terms of Use, this case must be stayed while the parties pursue arbitration to resolve plaintiffs' concerns.

**II.    Procedural History**

On August 12, 2024, plaintiff Hoang To filed a putative class action lawsuit against DirectToU in Alameda County Superior Court.  Notice of Removal [Dkt. No. 1] 9.  DirectToU removed the case to federal court on September 12, 2024.  *Id.* at 1–7.  Meanwhile, on August 8, 2024, plaintiffs Heise and Mull filed a putative class action lawsuit against DirectToU and Alliance in the Southern District of Florida.   Hedin Decl. [Dkt. No. 89-2] ¶ 3.  In that case, *Feller v. Alliance Entertainment, LLC* ("the *Feller* action"), those plaintiffs made allegations against the defendants similar to those made in this case.  No. 24-CV-61444 (S.D. Fla.) [*Feller* Dkt. No. 1].

3

In the *Feller* action, defendants participated in scheduling matters before the court, served written discovery on the plaintiffs, attended mediation, filed a motion to dismiss the case on 12(b)(6) grounds as well as on grounds that the VPPA violates the first amendment, and served objections and responses to plaintiffs' written discovery. Hedin Decl. ¶¶ 3–19, Exhs. A–I.

On October 28, 2024, plaintiffs in the *Feller* action moved to intervene and to dismiss this case, or alternatively to transfer this action to the Southern District of Florida or stay the case based on the first-to-file rule. Dkt. Nos. 14–15. That same day, the parties in this case (at that time, Hoang To and DirectToU) filed a joint notice of settlement. Dkt. No. 16. On November 4, 2024, Hoang To moved for preliminary approval of the proposed settlement. Dkt. No. 26. The *Feller* court stayed that case awaiting an update on the *Hoang To* matter. I held a hearing on all the motions on December 4, 2024, and denied each. Dkt. Nos. 55, 57. I denied the motion for preliminary approval without prejudice. Dkt. No. 57.

DirectToU moved to dismiss this action pursuant to the first-to-file rule on January 27, 2025, but withdrew the motion on February 11, 2025. Dkt. Nos. 62, 72. Meanwhile, at a case management conference on February 4, 2025, I granted Hoang To's request to file a third amended complaint, and DirectToU explained its intent to move to dismiss the case or to compel arbitration following a review of the newly amended complaint. Dkt. No. 67; DelGobbo Decl. Exh. B (Transcript of February 4, 2025 Case Management Conference) 4. On February 7, 2025, plaintiffs in the *Feller* action dismissed that case without prejudice. Hedin Decl. ¶ 22. That same day, Hoang To filed the TAC, adding Heise and Mull as plaintiffs and Alliance as a defendant, along with a number of allegations related to those parties' involvement in the case. On March 3, 2025, plaintiffs moved to appoint interim class counsel, *see* Dkt. No. 79, and on March 10, 2025, defendants filed the Motion to Stay and Compel Arbitration ("Mot.") [Dkt. No. 80]. I held a hearing on both motions on June 4, 2025.

**LEGAL STANDARD**

**I.    MOTION TO COMPEL ARBITRATION**

The Federal Arbitration Act ("FAA") governs the motion to compel arbitration. 9 U.S.C. §§ 1 et seq. Under the FAA, a district court determines: (i) whether a valid agreement to arbitrate

1  exists and, if it does, (ii) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v.*
2  *Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). "To evaluate the validity of an
3  arbitration agreement, federal courts should apply ordinary state-law principles that govern the
4  formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003)
5  (internal quotation marks and citation omitted).

6  If the court is "satisfied that the making of the arbitration agreement or the failure to
7  comply therewith is not in issue, the court shall make an order directing the parties to proceed to
8  arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "Any doubts concerning
9  the scope of arbitrable issues should be resolved in favor of arbitration." *Simula, Inc. v. Autoliv,*
10 *Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (internal quotation marks and citation omitted).

11 The court may conclude that a party has waived its right to compel arbitration. A party
12 arguing waiver of the right to arbitrate must demonstrate: "(1) knowledge of an existing right to
13 compel arbitration and (2) intentional acts inconsistent with that existing right." *Armstrong v.*
14 *Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023). *See also Morgan v. Sundance, Inc.*,
15 596 U.S. 411, 419 (2022) (overruling the previously held Ninth Circuit understanding to clarify
16 that there is no "strong federal policy favoring enforcement of arbitration agreements" or any
17 requirement for the party opposing arbitration to demonstrate prejudice).

18 **DISCUSSION**

19 **I.    Arbitration Is Required**
20     **A.  Waiver**

21 Plaintiffs argue, and defendants do not contest, that the first prong of the waiver test
22 explained in *Armstrong* has been met here. Opposition to the Motion to Compel Arbitration
23 ("Oppo.") [Dkt. No. 89] 13. For that reason, I focus only on the parties' arguments concerning the
24 second prong: whether defendants acted inconsistently with any existing right to arbitrate.

25 "There is no concrete test to determine whether a party has engaged in acts inconsistent
26 with its right to arbitrate; rather, [courts] consider the totality of the parties' actions." *Newirth by*
27 *& through Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935, 939 (9th Cir. 2019). The
28 Ninth Circuit has held that courts must "ask whether those actions holistically 'indicate a

conscious decision . . . to seek judicial judgment on the merits of the arbitrable claims, which would be inconsistent with a right to arbitrate.'" *Armstrong*, 59 F.4th at 1015 (*citing Hill v. Xerox Business Servs., LLC*, 59 F.4th 457, 473 n. 19). Collecting cases, the court in *Hill* observed that a party generally

> acts inconsistent[ly] with its right to arbitrate . . . when a party chooses to delay [its] right to compel arbitration by actively litigating [its] case to take advantage of being in federal court. *See Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.3d 754, 756, 759 (9th Cir. 1988) (finding waiver when party answered complaints, moved to dismiss the action, and did not claim a right to arbitration in any of the pleadings); *Kelly v. Pub. Util. Dist. No. 2*, 552 Fed. Appx. 663, 664 (9th Cir. 2014) (finding this element satisfied when the parties "conducted discovery and litigated motions, including a preliminary injunction and a motion to dismiss").

*Hill*, 59 F.4th at 471 (*citing Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016).

This case presents a close call. Defendants filed their Motion to Compel Arbitration seven months after Hoang To filed his putative class action case in California state court. So, a "prolonged period of time" has not passed since the start of the action. *Armstrong*, 59 F.4th at 1015 (holding that moving to compel arbitration "within a year" after a plaintiff filed his complaint not to be a "prolonged period of time"). But, after defendant DirectToU removed the case to the Northern District of California, it negotiated settlement agreements and filed a joint notice of settlement that would have resolved classwide claims. I denied the parties' Motion for Preliminary Approval, without prejudice. Dkt. No. 57. Defendant (now defendants) moved to dismiss the case on procedural grounds pursuant to the first-to-file rule but did not seek a determination on the merits, and then withdrew the motion. Although plaintiffs had discussed the shadow of arbitration as a reason that I should grant the Motion for Preliminary Approval, defendants' first explicit mention of their intent to file a Motion to Compel Arbitration arose at the February 4, 2025, Case Management Conference when I granted plaintiff's request to file a Third Amended Complaint—almost five months after the removing the case, and six months after Hoang To first filed the case in state court.

Plaintiffs point to defendants' actions in the Florida-filed *Feller* case, where defendants engaged in discovery, to support their contention that defendants have waived their right to

arbitrate. *See* Oppo. 15–19. But they have provided no caselaw to support a conclusion that a defendant's action in a separate case, in a distant court, against different plaintiffs, bears on whether that defendant has waived its right to arbitration in another, albeit similar, case.

That defendant DirectToU engaged in settlement negotiations, and reached a settlement subject to my approval following plaintiff's Second Amended Complaint, gives me the most pause as I consider waiver. Plaintiffs point to *Bower v. Inter-Con Security Systems, Inc.*, a California Court of Appeal case that concluded that the defendant waived its right to arbitrate because its "attempt to settle the case on a classwide basis was inconsistent with its right under the arbitration agreement to insist that any claims had to be arbitrated on an individual basis only." 232 Cal. App. 4th 1035, 1045 (2014). But there, defendants had answered the complaint and sought formal classwide discovery. *Id.* at 1043–44. The same is not true here. Plaintiffs cited no case where a defendant had waived its right to arbitrate when it had not begun litigating the merits of its position. No case states that because a party has engaged in and even reached a settlement (subject to the court's approval), it has therefore waived its right to arbitrate. Looking at the "totality" of DirectToU's actions, I cannot conclude that it has sought "judicial judgment on the merits of the arbitrable claims" signaling an inconsistency with its right to arbitrate. *Aegis Senior Communities, LLC*, 931 F.3d at 939; *Armstrong*, 59 F.4th at 1015.

To the extent that it matters that the parties sought a settlement in this case, it matters that settlement was with regard to the allegations included in the Second Amended Complaint. Plaintiffs have filed the TAC, in which they added two additional named plaintiffs, one defendant (Alliance), and significant new allegations concerning the data brokers' and other third parties' role in this case. *Compare* Dkt. No. 68 *with* Dkt. No. 23. It is misaligned with the caselaw to allow the party arguing for waiver of arbitration to make significant amendments to its complaint and not allow the party seeking arbitration the possibility of reviving its right to compel arbitration. This is especially true where, as here, that party has not engaged in any steps to determine the merits of the case. *See, e.g.*, *Gilmore v. Shearson/American Exp. Inc.*, 811 F.2d 108, 113 (2nd Cir. 1987) ("[T]o change course and revive its right to move to compel arbitration, [defendant] must show that the amended complaint contains charges that, in fairness, should

7

1    nullify its earlier waiver and allow it to reassess its strategy, for example, that the amended
2    complaint changed the scope or theory of [plaintiff's] claims in a manner that is relevant to the
3    issues presented by [defendant] in the district court."); *Krinks v. SunTrust Banks, Inc.*, 654 F.3d
4    1194, 1203–04 (11th Cir. 2011) (holding that defendant's right to compel arbitration was revived
5    because of the significant changes made in the plaintiff's amended Complaint).

6    I conclude that defendants have not waived their right to arbitration because they have not
7    litigated the merits of their arbitrable claims. Alternatively, I would find that because plaintiffs'
8    TAC includes more than minor changes, defendants' right to arbitrate the claims brought by
9    plaintiffs has been revived.

### B. The Arbitration Agreement

Plaintiffs also contend that even if defendants did not waive their right to arbitrate, there is an issue of whether there was a valid arbitration agreement in the first instance. Plaintiffs' arguments lack merit.

Plaintiffs first assert that the declaration of Tim Hinsley, provided by defendants in support of their motion, does not include enough "screenshots" and does not "explain how [Hinsley] has personal knowledge sufficient to come to the conclusion that these checkout screens on all of the websites have remained the same since May 4, 20[2]1." Oppo. 20. I disagree. The declaration in question includes a screenshot that shows that any customer using any of the websites must acknowledge they have read the Terms of Use. Hinsley Decl. Exh. 4. Hinsley's declaration confirms that he is the General Manager of DirectToU, where he has worked since 2011—ten years before the inclusion of the Terms of Use on the website in this fashion. That is an adequate explanation to confirm Hinsley's personal knowledge.

Plaintiffs assert that there is an "issue of fact as to whether an agreement to arbitrate was ever formed between the parties" because: (1) plaintiff Heise placed orders using a mail-order catalog, not using the online portal; and (2) plaintiff Mull used PayPal to make purchases on the website on three occasions wherein there was no disclosure statement concerning the Terms of Use online. Oppo. 23–24. The TAC states that "[o]n or about April 4, 2023, Plaintiff Heise purchased one or more videos from Defendants at www.ccvideo.com. Throughout the time that

8

1  Plaintiff Heise purchased prerecorded video material on Defendants' website, he has had a
2  Facebook account." TAC ¶ 7. At no point within the TAC do plaintiffs raise Heise's "mail-order
3  catalog" that would have evaded use of the website. Oppo. 24. As to plaintiff Mull, defendants
4  provided an exhibit in support of their Motion that includes the purchase history of the named
5  plaintiffs. It shows that Mull made purchases on the website on four occasions. *See* Hinsley Decl.
6  Exh. 5. Plaintiffs do not dispute that the fourth purchase was subject to the Terms of Use included
7  on the website.

Finally, to the extent that plaintiffs argue that arbitrability itself is in question, the Ninth Circuit has consistently held that broad arbitration agreements like the one at issue "constitute[] clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1073 (9th Cir. 2013). There is no doubt that the arbitration agreement in this case contemplated such a broad interpretation. *See* Hinsley Decl. Exh. 1 at 12–13, Exh. 2 at 20–21, and Exh. 3 at 329–30 ("Any . . . dispute or controversy . . . that arises . . . in connection with this Agreement, or the . . . interpretation of validity thereof, including the determination of the scope of the applicability of this agreement to arbitrate . . . shall be decided . . . by binding arbitration . . . .").

The arbitration agreement is legal and binding.

## CONCLUSION

For the foregoing reasons, the Motion to Stay and Compel Arbitration is GRANTED. Because I grant the motion to compel, plaintiffs' motion to appoint interim class counsel is DENIED as moot. Plaintiffs are ORDERED to submit to individual arbitration pursuant to the Terms of Use included on defendants' websites. The matter is STAYED pending binding arbitration. 9 U.S.C. § 3.

**IT IS SO ORDERED.**

Dated: June 13, 2025

William H. Orrick
United States District Judge

9