JULIAN HAMMOND (SBN 268489)
jhammond@hammondlawpc.com
ARI CHERNIAK (SBN 290071)
acherniak@hammondlawpc.com
POLINA BRANDLER (SBN 269086)
pbrandler@hammondlawpc.com
HAMMONDLAW, P.C.
1201 Pacific Ave, 6th Floor
Tacoma, WA 98402
(310) 601-6766 (Tel.)
(310) 295-2385 (Fax)

FRANK S. HEDIN (SBN 291289)
fhedin@hedinllp.com
HEDIN LLP
1395 Brickell Ave, Suite 610
Miami, Florida 33131
(305) 357-2107 (Office)
(305) 200-8801 (Fax)

*Counsel for Plaintiffs and the Putative Classes*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JONATHAN HOANG TO; JEFFRY HEISE**; and **JOSEPH MULL**, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>**DIRECTTOU, LLC**, a Delaware Limited Liability Company; and **ALLIANCE ENTERTAINMENT, LLC**, a Delaware Limited Liability Company,<br><br>Defendants. | Case No. 3:24-CV-06447-WHO<br><br>**PLAINTIFFS' NOTICE OF SECOND MOTION AND SECOND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge:        Hon. William H. Orrick<br>Courtroom:    2<br>Hearing Date: September 17, 2025<br>Hearing Time: 2:00 p.m. |

# TABLE OF CONTENTS

NOTICE OF MOTION ............................................................................................................ vi

STATEMENT OF THE ISSUES TO BE DECIDED ........................................................... viii

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 1

I.    INTRODUCTION ................................................................................. 1

II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ................................. 2

III.  SUMMARY OF THE PROPOSED SETTLEMENT ............................................... 4

      A. THE SETTLEMENT PROVIDES SUBSTANTIAL RELIEF TO THE CLASS MEMBERS ................ 4

      B. THE ALLOCATION OF RELIEF AMONG SETTLEMENT CLASS MEMBERS ........................... 4

      C. THE SETTLEMENT CLASS DEFINITION DIFFERS ONLY SLIGHTLY FROM THE CLASS AND
      SUBCLASS DEFINED IN THE OPERATIVE COMPLAINT ............................................... 5

      D. THE SETTLEMENT'S RELEASE ................................................................ 6

      E. THE SETTLEMENT AGREEMENT ALLOWS COUNSEL TO SEEK FEES AND COSTS AND THE
      SETTLEMENT CLASS REPRESENTATIVE TO SEEK AN INCENTIVE AWARD ........................ 7

IV.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASSES ............................. 8

      A. THE SETTLEMENT CLASSES SATISFY THE RULE 23(A) PREREQUISITES ........................ 8

      B. THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED ................................... 11

V.    SETTLEMENT APPROVAL IS WARRANTED ................................................. 13

      A. THE STRENGTHS AND RISKS OF PLAINTIFFS' CASE ........................................ 13

      B. FURTHER LITIGATION WOULD BE RISKY, EXPENSIVE, COMPLEX, AND LENGTHY .......... 19

      C. THE RISKS ASSOCIATED WITH CERTIFYING THE CLASS AND MAINTAINING THE CASE AS A
      CLASS ACTION THROUGH TRIAL .......................................................... 19

      D. THE RELIEF OFFERED IN THE SETTLEMENT IS MORE THAN ADEQUATE ....................... 20

      E. THE SETTLEMENT IS INFORMED BY SUFFICIENT DISCOVERY TO PERMIT AN INFORMED
      DECISION ................................................................................ 22

      F. COUNSEL BELIEVES THE SETTLEMENT IS AN EXCELLENT RESULT ............................ 23

      G. GOVERNMENTAL PARTICIPATION IS NOT AT ISSUE HERE ................................... 23

      H. THE SETTLEMENT ALSO SATISFIES THE BLUETOOTH FACTORS ............................. 23

VI.   THE PROPOSED NOTICE PROGRAM, SETTLEMENT ADMINISTRATOR, AND
      PROCESS FOR CLAIMS, OPT-OUTS, AND OBJECTIONS SHOULD BE APPROVED
      .......................................................................................... 24

      A. THE PROPOSED NOTICE PLAN .............................................................. 24

      B. THE SETTLEMENT ADMINISTRATOR .......................................................... 25

      C. OPT-OUTS AND OBJECTIONS: TIMELINE AND INSTRUCTIONS ............................... 26

D.  THE CLAIMS PROCESS................................................................................ 26

VII.    OTHER CASES AFFECTED ........................................................................ 27

VIII.    THE PROPOSED FINAL APPROVAL HEARING SCHEDULE .................................... 27

IX.    CONCLUSION............................................................................................ 28

# TABLE OF AUTHORITIES

**CASES**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................................................ 8, 11

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015) ............................................................................................ 22

*Bertoia v. Randstad US, L.P.*,
  No. 15-cv-03646-EMC, 2017 WL 1278758 (N.D. Cal. Apr. 6, 2017) .................................... 23

*Briseno v. Henderson*,
  998 F.3d 1014 (9th Cir. 2021) ................................................................................................. 24

*Campbell v. Facebook, Inc.*,
  No. 13-cv-05996-PJH, 2017 WL 3581179 (N.D. Cal. Aug. 18, 2017), *aff'd*, 951 F. 3d 1106 (9th Cir.
  2020) ...................................................................................................................................... 20

*Churchill Vill., LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ................................................................................................... 13

*Class Pls. v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992)). ................................................................................................ 4

*Eichenberger v. ESPN, Inc.*,
  876 F.3d 979 (9th Cir. 2017) ................................................................................................... 14

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15 (N.D. Cal. 1980), aff'd, 661 F.2d 939 (9th Cir. 1981) ....................................... 23

*Fraley v. Facebook, Inc.*,
  966 F. Supp. 2d 939 (N.D. Cal. 2013), *aff'd sub nom. Fraley v. Batman*, 638 F. App'x 594 (9th Cir.
  2016) ................................................................................................................................. 16, 20

*Gen. Tel. Co. of the Sw. v. Falcon*,
  457 U.S. 147 (1982) ................................................................................................................ 13

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...................................................................................... 10, 11, 12

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ..................................................................................................... 9

*Hughes v. National Football League*,
  No. 24-cv-2656, 2025 WL 1720295 (2d Cir. 2025) ................................................................. 15

*In re Bluetooth Headset Prod. Liab. Litig.*,
  654 F. 3d 935 (9th Cir. 2011) ......................................................................................... 8, 23, 24

*In re Facebook, Inc. Internet Tracking Litigation*,
  No. 22-16903, 2024 WL 700985 (9th Cir. Feb. 21, 2024) ....................................................... 16

*In re Google LLC St. View Elec. Commc'ns Litig.*,
  No. 10-MD-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ................................. 20

*In re Google Plus Profile Litig.*,
  No. 18-cv-06164-EJD (VKD), Dkt. 96 (N.D. Cal. Oct. 15, 2020) ................................. 20

*In re Google Plus Profile, Litig.*,
  No. 18-CV-06164-EJD (VKD), 2021 WL 242887 (N.D. Cal. Jan. 25, 2021) ...................... 17

*In re Google Referrer Header Priv. Litig.*,
  No. 10-CV-04809-EJD, 2023 WL 6812545 (N.D. Cal. Oct. 16, 2023) ........................... 20

*In re HighTech Emp. Antitrust Litig.*,
  985 F.Supp.2d 1167 (N.D. Cal. 2013) ................................................. 12

*In re Hyundai & Kia Fuel Economy Litig.*,
  926 F.3d 539 (9th Cir. 2019) (en banc) ................................................ 20

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................ 5, 22

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) .......................................................... 13

*In re Oracle Sec. Litig.*,
  No. C-90-0931-VRW, 1994 WL 502054 (N.D. Cal. June 18, 1994) ......................... 4, 22

*In re Vizio, Inc., Consumer Privacy Litig.*,
  16-ml-02693-JLS-KES, 2019 WL 12966639 (C.D. Cal. July 31, 2019)........................ 16

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020), *aff'd*, No. 20-16633, 2022
  WL 2304236 (9th Cir. June 27, 2022) ................................................ 10

*Jabbari v. Farmer*,
  965 F.3d 1001 (2020) ................................................................. 20

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir.1998) ......................................................... 22

*Martin v. Sysco Corp.*,
  No. 16-cv-00990-DAD-SAB, 2019 WL 3253878 (E.D. Cal. July 19, 2019)..................... 23

*McDonald, et al. v. Kiloo A/S, et al.*,
  No. 3:17-cv-04344-JD, ECF. No. 406 (N.D. Cal. Apr. 12, 2021) ........................... 20

*McKenzie v. Fed. Exp. Corp.*,
  275 F.R.D. 290 (C.D. Cal. 2011) ...................................................... 12

*Newton v. Am. Debt Servs.*,
  854 F. Supp. 2d 712 (N.D. Cal. 2012) ................................................. 15

*Nixon et al v. Pond5, Inc.*,
  No. 1:24-cv-05823-JLR (July 21, 2025).................................................. 14

*Ontiveros v. Zamora*,
  303 F.R.D. 356 (E.D. Cal. 2014) ...................................................... 22

*Poertner v. The Gillette Co.*,
  No. 12-v-00803-GAP-DAB, Dkt. 168 (M.D. Fla. Aug. 21, 2014).............................. 20

*Slaven v. BP Am., Inc.*,
190 F.R.D. 649 (C.D. Cal. 2000) ................................................................................ 8

*Smith v. Cardinal Logistics Mgmt. Corp.*,
No. 07-cv-02104-SC, 2008 WL 4156364 (N.D. Cal. Sept. 5, 2008) ............................... 12

*Solomon v. Flipps Media, Inc.*,
136 F.4th 41 (2d Cir. 2025) ................................................................................ passim

*St. Louis, I.M. & S. Ry. Co. v. Williams*,
251 U.S. 63 (1919) ........................................................................................... 16

*Staton v. Boeing Co.*,
327 F.3d 938 (2003) .......................................................................................... 10

*Valliere v. Tesoro Refin. & Mktg. Co. LLC*,
No. 17-cv-00123-JST, 2020 WL 13505042 (N.D. Cal. June 26, 2020) ........................... 9

*Wakefield v. ViSalus, Inc.*,
51 F. 4th 1109 (9th Cir. 2022) ............................................................................. 16

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ............................................................................................ 9

*Wolf v. Permanente Medical Group, Inc.*, No. 17-cv-05345-VC, 2018 WL 5619801 (N.D. Cal. Sept 14, 2018) ........................................................................................................ 8

**STATUTES**

18 U.S.C. § 2710 *et seq.* ....................................................................... 1, 15, 16, 17

Cal. Civ. Proc. § 1799.3 ................................................................................. passim

Fed. R. Civ. P. 23(a)(3) ....................................................................................... 9

Fed. R. Civ. P. 23(b)(3) ................................................................................. 11, 12

Fed. R. Civ. P. 23(e)(2) ...................................................................................... 13

**TREATISES**

7AA Charles Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure, § 1779 (3d ed. 2005) ......................................................................................................... 12

Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97 (2009) ................................................................................................................. 9

*Wolin v. Jaguar Land Rover N. Am., LLC*,
617 F.3d 1168 (9th Cir. 2010) ............................................................................. 12

## NOTICE OF MOTION

### TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE THAT** on September 17, 2025, at 2:00 p.m., or as soon thereafter as this matter may be heard, before the Honorable William H. Orrick in Courtroom 2, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs Jonathan Hoang To, Jeffry Heise, and Joseph Mull ("Plaintiffs"), on behalf of themselves and the putative Class, by and through their Counsel, shall and hereby do, respectfully move the Court for entry of an Order, pursuant to Federal Rule of Civil Procedure 23(e), in the above-captioned action (the "Action"):

1. Certifying the proposed Class for purposes of settlement;

2. Provisionally appointing Plaintiffs as Class Representatives of the Settlement Class, and HammondLaw, P.C. and Hedin LLP as Class Counsel for purposes of settlement;

3. Granting preliminary approval of the proposed class action settlement between Plaintiffs and Defendants as fair, adequate, and reasonable, based upon the terms set forth in the Parties' Class Action Settlement Agreement ("Settlement Agreement"),[1] including payment by Defendant of a non-reversionary cash settlement of **$1,577,000** for the benefit of the Settlement Class;

4. Approving the allocation of the Settlement Fund as contemplated in the Settlement Agreement;

5. Approving the form and substance of the proposed email Notice of Proposed Settlement of Class Action ("E-Mail Class Notice"), Notice to be provided on the Settlement Website ("Website Notice"), and Claim Form ("Claim Form"); the manner and timing of disseminating notice to the Class (the "Notice Plan"); and the selection of Angeion Group as the Settlement Administrator;

6. Setting deadlines for Class Members to exercise their rights in connection with the proposed Settlement; and

---

[1] Capitalized terms shall have the same meaning as set forth in the Class Action Settlement Agreement attached as **Exhibit 1** to the Declaration of Julian Hammond in Support of Plaintiffs' Second Motion for Preliminary Approval of Class Action Settlement, filed herewith.

1    7.    Scheduling a hearing date for final approval of the Settlement and application for

2    attorneys' fees and expenses, and service award.

3    This Motion is based on: the Memorandum of Points and Authorities below and the exhibits

4    thereto; the Declaration of Julian Hammond ("Hammond Decl.") and the exhibits thereto, including the

5    Settlement Agreement and exhibits thereto; the Declaration of Frank Hedin ("Hedin Decl."), filed

6    herewith; the Declaration of Steven Weisbrot of Angeion Group Re: Proposed Notice Plan ("Angeion

7    Decl."); the Court's record in this matter; and such oral and documentary evidence as may be presented

8    at or before the hearing on this matter.

## STATEMENT OF THE ISSUES TO BE DECIDED

The issues to be decided on this Motion are:

1.      Whether the proposed Settlement on the terms and conditions set forth in the Settlement Agreement warrants preliminary approval;

2.      Whether to certify this Action as a class action for purposes of settlement;

3.      Whether the Court should approve the form and substance of the proposed E-Mail Class Notice, Website Notice, and Claim Form;

4.      Whether the Court should approve the deadlines proposed for Class Members to exercise their rights under the proposed Settlement; and

5.      Whether the Court should schedule a Final Approval Hearing to determine whether the Settlement, and the forthcoming application for attorneys' fees and expenses to Class Counsel and service awards to the Class Representatives should be finally approved.

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3

4

5

6

In this putative class action, Plaintiffs allege that Defendants disclosed their personally identifying video-viewing information to third parties in violation of the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq*. (the "VPPA") and California law, and seek statutory damages and injunctive relief on behalf of themselves and a nationwide class (as well as a subclass in California).

7

8

9

10

11

12

13

14

15

16

17

As this Court is aware, Plaintiff Hoang To previously reached a $1.75 million settlement with Defendant DirectToU, LLC.  However, the Court denied preliminary approval without prejudice, finding that Plaintiff had not provided adequate justification for valuing the claim based on the alleged disclosure of data to non-Meta data brokers ("non-Meta pixel claim"). The Court encouraged all parties' (including intervenors) counsel to explore a revised global settlement or, alternatively, submit a renewed motion with a reasoned valuation of the non-Meta claim. No global resolution was reached, and subsequent negotiations collapsed. Defendant then moved to compel individual arbitration. After the June 4, 2025 hearing on that motion, Plaintiffs' counsel reasonably believed the Court would compel arbitration, effectively ending class claims and precluding injunctive relief.  Plaintiffs' counsel acted quickly to negotiate a revised settlement that provides meaningful relief to the Class, finalizing the terms one day before the Court issued its order compelling individual arbitration.

18

19

20

21

22

23

The revised Settlement provides a non-reversionary Settlement Fund of **$1,577,000** and important prospective relief.  Defendants have agreed to modify the Meta pixel settings and have committed to not disclose customers' information, except as permitted under the VPPA and Cal. Civ. Code § 1799.3, and *to remain bound by these obligations*, unless these laws are amended, repealed, or invalidated.  Settlement Agreement ("SA") § 2.2.  After the parties reached settlement, the Court granted Defendants' motion to compel arbitration.

24

25

26

27

28

This settlement provides an excellent result for the Class, given that individual arbitration was ultimately ordered. Plaintiffs also faced other risks, including the risk of having their claim dismissed on the merits based on what informal discovery revealed with respect to non-Meta pixel claims and the Second Circuit's decision in *Solomon v. Flipps Media, Inc.*, 136 F.4th 41 (2d Cir. 2025), issued while the motion to compel was pending, which, if followed, would likely doom the claims here.

The settlement provides a gross per-capita recovery of approximately **$5.42** for the 291,128-member class, which is within range of similar VPPA cases involving Meta Pixel disclosures. Assuming a 5% claims rate, gross recovery per claimant will be approximately **$108.34**, with a net recovery of about **$70.60**. *See* Hammond Decl. ¶ 46. The prospective relief benefits all class members by prohibiting the challenged disclosures going forward. *See* SA ¶ 2.2.

Accordingly, the proposed Settlement is fair, adequate, and reasonable, such that notice of the Settlement's terms should be disseminated to the proposed Settlement Class Members and a final approval hearing scheduled.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On August 12, 2024, Plaintiff Hoang To filed this putative class action lawsuit in Alameda County Superior Court, alleging that Defendant DirectToU violated the VPPA and California's UCL by disclosing its California customers' personally identifying information ("PII") via the Meta pixel. Defendant removed the case on September 12, 2024 (Dkt. 1), and Plaintiff subsequently amended the complaint to include a nationwide class with a California subclass (Dkt. 10). On October 23, 2024, Plaintiff Hoang To and Defendant DirectToU executed a Class Action Settlement Agreement and subsequently moved for preliminary approval. (*See* Dkt. 29-1). On October 28, 2024, Counsel for Plaintiffs in *Feller, et al. v. Alliance Entertainment, LLC, et al.*, No. 24-cv-61444-RAR (S.D. Fla.), filed a Motion to Intervene and to Dismiss/Transfer or Stay the instant case pursuant to the first-to-file doctrine. (Dkt. 14).

The Court denied both the *Feller* Plaintiffs' Motion to Intervene and Plaintiff Hoang To's motion for preliminary approval, following hearing. (Dkt. 57). In denying the motion for preliminary approval, without prejudice, the Court "encourage[d] all counsel – for the parties and for *Feller* – to meet and confer to determine if a revised global settlement can be reached that appropriately accounts for the non-Meta pixel claims," or alternatively to submit "a renewed motion for preliminary approval that provides a reasoned valuation for the non-Meta pixel claims and additional support demonstrating that the existing settlement was reached after sufficient discovery, all showing why the settlement is fair, reasonable, and adequate." (Dkt. 57 at 1).

Counsel for Plaintiff Hoang to and the *Feller* Plaintiffs subsequently agreed to jointly prosecute

this litigation on behalf of the proposed Classes. Hammond Decl. ¶ 11. In an attempt to present a renewed motion for preliminary approval with a valuation of the non-Meta pixel claim, Plaintiff Hoang To obtained informal discovery from Defendant DirectToU related to the non-Meta pixel claim. *Id.,* ¶ 12. The discovery revealed that Defendants maintained four or five spreadsheets with consumer data that data brokers could access, but no single spreadsheet contained information that could be used to match a particular consumer to the video title he/she purchased. *Id.* And, a link could be made only if data was combined and reverse engineered. *Id.* While Plaintiffs sought additional discovery in order to create a more robust record for settlement, settlement negotiations broke down. *Id.*

Plaintiffs then filed the operative Third Amended Complaint (Dkt. 68), adding two of three *Feller* plaintiffs as named plaintiffs, adding Alliance Entertainment, LLC (a defendant in the *Feller* Action) as a named Defendant, and including additional factual allegations supporting the existing claims. Defendants responded by filing a motion to compel individual arbitration. (Dkt. 80-82). Following full briefing, the Court held a hearing on June 4, 2025.  Based on the Court's questions and statements at the hearing, Plaintiffs' counsel believed the Court was likely to grant the motion. Hammond Decl. ¶ 15; Hedin Decl. ¶ 7.

Recognizing the risks Plaintiffs and putative Class members faced if the Court granted Defendants' motion, Plaintiffs' counsel contacted Defendant's counsel on June 5, 2025 to explore potential settlement. Hedin Decl. ¶ 8. After further discussions over the following week, the parties, through their respective counsel, reached an agreement on all material terms by e-mail on June 12, 2025, resulting in the Settlement now before the Court. Hammond Decl. ¶ 16; Hedin Decl. ¶ 9.

On June 13, 2025, as the parties were working to finalize a notice of settlement to file with the Court, the Court issued an Order granting Defendants' motion to compel arbitration and stayed the case. (Dkt. 93). Following the Court's Order compelling arbitration, the parties executed the formal Settlement Agreement. As set out in detail in the Hammond and Hedin Declarations, the Settlement is a product of informed, arm's-length negotiations, supported by extensive investigation, analysis, and data and information obtained from Defendants. *See* Hammond Decl. ¶¶ 16, 19-24; Hedin Decl. ¶ 4-6.

Together with this Motion, Plaintiffs are filing an unopposed motion to lift the stay entered on June 13, 2025, exclusively to allow the Court to consider and preliminarily approve the Settlement. The

1  Settlement Agreement expressly preserves Defendants' right to enforce individual arbitration should the

2  Settlement not receive Final Approval.

3  **III.    SUMMARY OF THE PROPOSED SETTLEMENT**

4      **A.    The Settlement Provides Substantial Relief to the Class Members**

5          The Settlement Agreement creates a **$1,577,000** non-reversionary Settlement Fund for the

6  benefit of the Settlement Class. SA ¶ 1.31(a). The Settlement Fund, less a court-approved Attorneys'

7  Fees and Expenses Award, Incentive Awards, and Notice and Administration Expenses, will be

8  allocated among Settlement Class Members who submit a valid claim form in accordance with the plan

9  of allocation set out in the Settlement Agreement, and discussed immediately below. *Id*. ¶ 2.1(b). The

10  gross per-Class Member share of the Settlement Fund will be approximately $5.42. Hammond Decl. ¶

11  46. Assuming a claims rate of 5%, Plaintiffs estimate that the average Authorized Claimant's gross share

12  of the Settlement Fund will be approximately $108.34, and the average Authorized Claimant's net share

13  of the Settlement Fund will be $70.60. *Id*. This represents significant monetary relief for Settlement

14  Class Members, in line with the amounts recovered in settlements of similar VPPA matters. Hammond

15  Decl. ¶ 46 and Ex. 3 thereto.

16          In addition to the cash payment, the Settlement Agreement requires Defendants to refrain from

17  knowingly sharing information that identifies a person as having requested or obtained specific video

18  materials or services with third parties, except as permitted by the VPPA. SA ¶ 2.2. Defendants will

19  remain bound by this obligation unless and until the law is amended, repealed, or otherwise invalidated.

20  *Id.*

21      **B.    The Allocation of Relief Among Settlement Class Members**

22          The Settlement Fund, less a court-approved Attorneys' Fees and Expenses Award, Incentive

23  Award to the Class Representative, and Notice and Administration Expenses, will be allocated *pro rata*

24  to those Settlement Class Members who complete and submit a simple claim form. SA ¶ 2.1.

25          "Approval of a plan of allocation of settlement proceeds in a class action ... is governed by the

26  same standards of review applicable to approval of the settlement as a whole: the plan must be fair,

27  reasonable and adequate." *In re Oracle Sec. Litig.,* No. C-90-0931-VRW, 1994 WL 502054, at *1-2

28  (N.D. Cal. June 18, 1994) (citing *Class Pls. v. City of Seattle,* 955 F.2d 1268, 1284-85 (9th Cir. 1992)).

Here, Plaintiffs' proposed Plan of Allocation is fair, reasonable, and adequate because it attempts to "allocate the settlement funds to class members based on . . . the strength of their claims on the merits." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) (citing *In re Oracle Sec. Litig.*, 1994 WL 502054, *1-2 (other internal citation omitted)).

Given the strengths of the VPPA claim in this case, Plaintiffs believe it is fair and appropriate to allocate an equal *pro rata* share of the Settlement Fund available for distribution to each Settlement Class Members who submits an Approved Claim. SA ¶ 2.1(b). Plaintiffs assert one claim on behalf of a nationwide class, with two additional claims on behalf of a California sub-class. Because the nationwide claim addresses the same underlying conduct as the California Civil Code § 1799.3 and UCL claims, Plaintiffs do not believe it would be appropriate for California subclass members to receive a greater recovery than other members of the nationwide Settlement Class.

If any checks remain uncashed after 180 days, or if residual funds remain from failed electronic payments, the Settlement Agreement provides that those funds will be redistributed on a *pro rata* basis to Settlement Class Members who successfully cashed or received their initial payments. SA ¶ 2.1(d). However, if the secondary distribution would result in payment of less than $10.00, or the secondary distribution is otherwise infeasible, the remaining funds will, subject to Court approval, revert to the Electronic Privacy Information Center as a *cy pres* recipient. Hammond Decl. ¶ 70.

### C. The Settlement Class Definition Differs Only Slightly from the Class and Subclass Defined in the Operative Complaint

Plaintiffs' operative Third Amended Complaint contains a putative nationwide class with a putative California subclass. The putative nationwide class is defined as:

> All natural persons residing in the United States who purchased a video or videogame from Defendants or signed up to receive notices about videos or videogames from Defendants, and about whom information which identified such persons as having requested or obtained specific video materials or services from Defendants was disclosed to a third party, including, but not limited to, Meta, Epsilon, Wiland, Data Axle, or Path2Response.

The putative California subclass is defined as:

> All natural persons residing in California who purchased a video or videogame from Defendants or signed up to receive notices about videos or videogames from Defendants, and about whom information which identified such persons as having requested or obtained specific video materials or services from Defendants may have been disclosed to a third party, including, but not limited to, Meta, Epsilon, Wiland, Data Axle, or Path2Response.

The Settlement Agreement defines a single Settlement Class as follows:

> "Settlement Class" means all persons who reside in the United States, purchased a video or videogame from DirectToU or signed up to receive notices about videos or videogames from DirectToU, and about whom information which identified such persons as having requested or obtained specific video materials or services from Defendants may have been disclosed to a third party between August 8, 2022 and the date of Preliminary Approval. Also included in the "Settlement Class" are all persons who reside in California, purchased a video or videogame from DirectToU or signed up to receive notices about videos or videogames from DirectToU, and about whom information which identified such persons as having requested or obtained specific video materials or services from Defendants may have been disclosed to a third party between August 8, 2020 and the date of Preliminary Approval.

SA ¶ 1.30.

The differences between the definition of the Settlement Class and the definitions of the Class and Subclass in the Third Amended Complaint are minimal. Aside from the fact that the Settlement Class combines the definitions of the Class and Subclass in the Third Amended Complaint, the Settlement Class is limited to persons residing in California about whom information "may have been disclosed to a third party between August 8, 2020 and the date of Preliminary Approval," and persons residing elsewhere in the United States about whom information "may have been disclosed to a third party between August 8, 2022 and the date of Preliminary Approval." In reaching the Settlement Agreement, the Parties agreed to limit the relevant time period to begin on August 8, 2022, for non-California Class Members. The Settlement Class definition extends back a further two years for California Class Members because of the UCL's four-year statute of limitations.

### D.    The Settlement's Release

In exchange for the benefits to be provided to the Settlement Class, the Settlement Agreement proposes to release specific the following parties:

> DirectToU, LLC, Alliance Entertainment, LLC, Project Panther Acquisition Corporation, and Alliance Entertainment Holding Corporation, as well as any and all of each of their respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, direct or indirect parent companies, subsidiaries, licensors, licensees, associates, affiliates, employers, employees, agents, consultants, independent contractors, insurers, directors, managers, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, underwriters, owners, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, and corporations, and each of their respective aforementioned persons and entities.

SA ¶ 1.26.

The Settlement Agreement proposes to release the foregoing parties from the following claims:

[A]ny and all actual, existing, filed, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extra contractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees, and/or obligations, whether in law or in equity, accrued, direct, individual or representative, of every nature and description whatsoever, arising out of any facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions, or failures based on the collection of information and/or the sharing of information by DirectToU, LLC, Alliance Entertainment, LLC, Project Panther Acquisition Corporation, Alliance Entertainment Holding Corporation, and/or any direct or indirect subsidiary of Alliance Entertainment Holding Corporation with third parties, including all claims that were alleged or brought or could have been alleged or brought in the Action. Nothing herein is intended to release any claims any governmental agency or governmental actor has against Defendants.

*Id.*, ¶ 1.25.

Thus, the claims released by the Settlement Agreement are those based on the same alleged conduct regarding the sharing of personally identifiable information relating to video materials or services that underlies the claims pled in the Third Amended Complaint, although not limited to the claims pled. Plaintiffs believe this difference is appropriate given the Parties desire to resolve all issues relating to Defendants' alleged disclosure within the meaning of the VPPA.

### E.    The Settlement Agreement Allows Counsel to Seek Fees and Costs and the Settlement Class Representative to Seek an Incentive Award

Plaintiffs will seek fees for Plaintiffs' Counsel in an amount not exceeding a total of 25% of the Settlement Fund (i.e., up to $394,250). SA ¶ 8.1. Should the Court award less than the amount sought, the difference between the amount sought and the amount ultimately awarded by the Court shall remain in the Settlement Fund for distribution to eligible Settlement Class Members. *Id.*

Plaintiffs' Counsel engaged in substantial work investigating Plaintiffs' claims, both prior to and after the filing of the complaint, and have continued to spend significant time investigating and pursuing the instant action and the related *Feller* Action, including drafting multiple Complaints, briefing motions, conducting third-party discovery, performing extensive research and investigation, obtaining information and documents from Defendants informally in the context of settlement negotiations, and negotiating the proposed Settlement. *See* Hammond Decl. ¶¶ 8-18, 19-24; Hedin Decl. ¶ 4-6.

Plaintiffs' counsel have collectively expended over 1,680 hours of attorney time, equating to a lodestar of approximately $1,275,460, in developing, prosecuting, and resolving this litigation. Hammond Decl. ¶ 61; Hedin Decl. ¶ 17.  The fee award sought by Plaintiffs' counsel reflects a negative multiplier of their lodestar, which supports its fairness and reasonableness. *Cf., e.g., Wolf v. Permanente Medical Group, Inc.*, No. 17-cv-05345-VC, 2018 WL 5619801, at *2 (N.D. Cal. Sept 14, 2018) (approving multiplier of 2.75-3.0 and citing cases). Moreover, an award of 25% of the settlement amount aligns with the benchmark for a reasonable fee in this Circuit. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F. 3d 935, 942 (9th Cir. 2011). The enforceability and effectiveness of the Settlement Agreement is not contingent upon approval of Plaintiffs' fee request. SA ¶¶ 6.4, 8.1.

The Settlement Agreement also provides that Plaintiffs' Counsel may apply to the Court for up to $20,000 for reimbursement of litigation costs. SA ¶ 8.1. The $20,000 sought in costs is <u>less than</u> the costs Plaintiffs' counsel actually incurred, rendering this request fair and reasonable as well. *See* Hammond Decl. ¶ 62; Hedin Decl. ¶ 18.

Finally, as set forth in the Settlement Agreement, Plaintiffs will each ask for appointment as Settlement Class Representative and seek approval of a service award of up to $5,000. SA ¶ 8.3. As with Plaintiffs' fee request, the enforceability and effectiveness of the Settlement Agreement does not depend upon the amount of the Service/Incentive Awards paid to Plaintiffs. *Id.,* ¶¶ 6.4, 8.3.

## IV.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASSES

### A.    The Settlement Classes Satisfy the Rule 23(a) Requirements

Although the Parties have settled, the Court must nevertheless certify that the proposed Settlement Class satisfies Rule 23. Rule 23(a) requires: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). In addition, the Class must satisfy one of the three subsections of Rule 23(b). However, when "[c]onfronted with a request for a settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there [will] be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

**Numerosity.**  Numerosity is generally satisfied when a class exceeds forty members. *See, e.g., Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000).  With an estimated 291,128 Settlement

Class Members (SA ¶ 1.31(a)), which includes a California Subclass that consists of approximately 35,247 individuals, numerosity is met.

**Commonality.** The commonality requirement is satisfied where a plaintiff asserts claims that "depend upon a common contention" that is "of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 389-90 (2011).

Here, the class claims derive from Plaintiffs' allegations that Defendants disclosed their and other Class Members' PII through the Meta pixel and by making this information available to data brokers (i.e., personal identifiers and details of the video and videogame purchasing activities) to third parties, without consent. Plaintiffs believe this common conduct raises common questions, resolution of which will generate common answers "apt to drive the resolution of the litigation" for the Class as a whole. *Wal-Mart Stores, Inc.,* 564 U.S. at 350 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). Thus, commonality is also met.

**Typicality.** Typicality is also met. Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted).

Plaintiffs believe that their experiences match those of the Settlement Class Members they seek to represent.  Plaintiffs allege they have suffered the same alleged privacy violations, and allegedly had their personal identifiers and video-viewing habits and information shared in the same manner as the Settlement Class and the California Subclass. Moreover, Plaintiffs and the putative Settlement Class Members they seek to represent all seek the same remedies.  Because Plaintiffs' allegations involve the "same course of conduct," which is "not unique to the named plaintiffs," Plaintiffs believe that typicality is satisfied here. *Valliere v. Tesoro Refin. & Mktg. Co. LLC*, No. 17-cv-00123-JST, 2020 WL 13505042, at *5 (N.D. Cal. June 26, 2020) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d at 508).

**Adequacy.** Finally, Plaintiffs believe that adequacy too, is met. The fourth and final Rule 23(a) requirement is "adequacy of representation," Fed. R. Civ. P. 23(a)(4), which has two components: "(1)

Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (2003) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Plaintiffs' interests in this case are aligned with, and not antagonistic to, the Settlement Class. *See, e.g., In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *4-5 (N.D. Cal. July 22, 2020), *aff'd*, No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022). Moreover, Plaintiffs and Settlement Class Members share the same interest in seeking relief based on Defendants' alleged sharing and disclosure of information regarding their private video-viewing activities and in protecting their privacy. Plaintiffs have also actively participated in this Action and in the Parties' efforts in reaching this Settlement, having provided their counsel with necessary factual information, reviewed and approved the Settlement Agreements, and have communicated with counsel regarding various issues pertaining to this case. Hammond Decl. ¶¶ 67-68; Hedin Decl. ¶ 19.

With respect to Class Counsel, Plaintiffs are represented by qualified and competent counsel who are highly experienced in class actions generally and in consumer privacy litigation, in particular. Plaintiff's Counsel have successfully investigated, commenced, and prosecuted many complex class actions, including the instant action. *See* Hammond Decl. ¶ 50-60 & Ex. 4 thereto; Hedin Decl. ¶ 21-25. Plaintiffs' Counsel are also currently pursuing several VPPA cases and are intimately familiar with both the issues involved in prosecuting VPPA claims and the range and nature of settlements reached in such cases. Hammond Decl. ¶ 50; Hedin Decl. ¶ 23. Despite the substantial risk of no recovery, stemming from the specific risks that materialized in this case and from the inherently unpredictable nature of litigation, Plaintiffs' Counsel have devoted significant time and resources to prosecuting this action. *See* Hammond Decl. ¶ 61; Hedin Decl. ¶ 17-18. And, their capable representation has been instrumental in driving this litigation towards settlement, even in light of Defendant's Motion to Compel Arbitration and the tone set during the June 4 hearing on Defendants' motion.

Accordingly, the adequacy of representation requirement of Rule 23(a) is satisfied.

///

///

### B.    The requirements of Rule 23(b)(3) are satisfied

Plaintiffs seek certification of the Settlement Class under Rule 23(b)(3), authorizing a class action where: (1) common questions of law or fact predominate over questions affecting only individual class members; and (2) class action is superior to other methods of resolving the controversy. Fed. R. Civ. P. 23(b)(3). Plaintiffs believe that both requirements are easily satisfied by the proposed Class.

#### 1.    *Common issues of law and fact predominate*

The predominance requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. at 623. This requirement is satisfied in the instant case because the numerous common questions "present a significant aspect of the case and . . . can be resolved for all members of the class in a single adjudication," and, thus, "there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F. 3d at 1022 (citations and quotations omitted).

Here, Plaintiffs believe that common issues unquestionably predominate. Because each claim arises from a core set of uniform factual allegations applicable to all Class Members, the key issues in this case are amenable to resolution on a classwide basis. In addition, the Court need not concern itself with questions of the manageability of a trial because the settlement disposes of the need for a trial. The Supreme Court has explained that the "predominance" inquiry is relaxed in the settlement context: "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods., Inc.*, 521 U.S. at 620 (discussing manageability, which is a subpart of Rule 23(b)(3) predominance).

#### 2.    *Class treatment of Plaintiffs' claims is superior*

 "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon,* 150 F.3d at 1023. Rule 23(b)(3) provides four factors that a court must consider in determining whether a class action is superior to other methods of adjudication. These factors are:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "'[T]he purpose of the superiority requirement is to assure that the class is the most efficient and effective means of resolving the controversy.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting 7AA Charles Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure, § 1779 at p. 174 (3d ed. 2005)).

Here, class treatment is superior to the litigation of close to three hundred thousand individual claims. First, "[f]rom either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon,* 150 F.3d at 1023. Plaintiffs believe the damages sought by each Settlement Class Member, when weighed against their risks, are not so large as to counsel against certification. *See Smith v. Cardinal Logistics Mgmt. Corp.,* No. 07-cv-02104-SC, 2008 WL 4156364, at *11 (N.D. Cal. Sept. 5, 2008).

Second, as described below, the only other pending action against Defendants related to the claims at issue in the instant case, *Feller, et al. v. Alliance Entertainment, LLC, et al.*, No. 24-cv-61444-RAR (S.D. Fla.), has been dismissed and those claims consolidated into the instant matter, with counsel for Plaintiffs in both cases now jointly prosecuting the litigation.

Third, concentrating litigation in this district is desirable because two of the three claims are brought under California law on behalf of a subclass composed of California residents. *See McKenzie v. Fed. Exp. Corp.*, 275 F.R.D. 290, 302 (C.D. Cal. 2011) ("Here, there is no reason to believe that concentrating this action in this Court is undesirable, especially considering that the challenge is under California law, and the proposed class is composed of only hourly employees in California.").

Finally, the fourth factor, which concerns the difficulty of managing a class action, depends largely on whether Plaintiffs' case "rises and falls [on] common evidence." *In re HighTech Emp. Antitrust Litig.*, 985 F.Supp.2d 1167, 1228 (N.D. Cal. 2013). This factor overlaps with the requirements of commonality, typicality, and predominance, discussed above. Because Plaintiffs easily satisfy those

three requirements, Plaintiffs believe the fourth superiority factor weighs in favor of certification.

The resolution of all claims of all Settlement Class Members in a single proceeding also promotes judicial efficiency and avoids inconsistent decisions. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (noting "the class-action device saves the resources of both the courts and the parties be permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23."). Accordingly, Plaintiffs believe the superiority requirement is satisfied, and the Court should provisionally certify the Settlement Class for purposes of settlement.

## V.    SETTLEMENT APPROVAL IS WARRANTED

Rule 23 requires the Court to determine whether the Settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To assess the fairness of a class settlement, Ninth Circuit courts consider factors including:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of future litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.[2]

*In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 944 (9th Cir. 2015) (quoting *Churchill Vill., LLC v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004)).

As a threshold matter, each of the deficiencies identified by the Court (Dkt. 57) in the parties' prior settlement agreement, presented to the court for approval on November 4, 2024 (Dkt. 26), have been addressed by the parties in the instant Settlement Agreement.  Moreover, as explained below, several other factors strongly favor preliminary approval.

### A.    The Strengths and Risks of Plaintiffs' Case

This Settlement was negotiated while Defendants' Motion to Compel Arbitration was pending and after the hearing on that motion that led Plaintiffs' counsel to reasonably believe that the Court would grant it.  The Settlement was finalized only one day before the Court in fact ordered individual arbitration of Plaintiffs' claims. Recognizing that such an order would require Class Members to pursue

---

[2] This final factor cannot be addressed now because Class Members have not yet had the chance to react.

individual arbitrations to obtain relief, exposing them to the significant risks and expense of individual arbitrations, including the possibility of adverse rulings with limited appeal and invasive discovery such as forensic imaging of their devices, Plaintiffs' counsel promptly initiated settlement discussions. Their skill and efforts led to the proposed Settlement, which secured substantial relief for the Class while avoiding the serious risks and burdens associated with individual arbitration.

The risk of Plaintiffs being compelled to arbitration at the time the Settlement was finalized – a risk that actualized the following day when the Court granted Defendant's motion to compel arbitration – is more than sufficient to satisfy this factor.

Additionally, there was a risk that the Court would dismiss Plaintiffs' pixel-based and non-Meta pixel based VPPA claims by adopting the reasoning of the Second Circuit's decision in *Solomon* issued on May 1, 2025. In *Solomon*, the Second Circuit held that a VPPA violation required that an ordinary person be able to identify a particular person as having viewed a particular video and that Plaintiffs failed to "plausibly allege that an ordinary person could identify [the plaintiff] through her FID," since an ordinary person would not see or figure out the meaning of the "c_user" cookie and the corresponding string of letters "and conclude that the phrase was a person's FID." *Solomon*, 136 F.4th at 54-55. Defendants here could have argued that Plaintiffs' Complaint, which also allege that the "Meta Pixel automatically caused the Plaintiffs' and Defendants' other customers' personal identifiers, including IP addresses and the c_user, _fr, _and datr cookies, to be transmitted to Meta", does not plausibly allege that an ordinary person could identify plaintiffs through the Facebook ID. Dkt. 68, ¶ 38. Defendants would have contended that the Ninth Circuit has also adopted the "ordinary person" standard and Plaintiffs' claims should be dismissed. *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (adopting ordinary person standard).

Courts have increasingly embraced Solomon's reasoning. In *Nixon et al v. Pond5, Inc.*, No. 1:24-cv-05823-JLR (July 21, 2025), the court granted a motion to dismiss VPPA claims, stating:

> "[T]he Second Circuit has now twice rejected this theory, finding it implausible "that an ordinary person, without [] annotation . . . , would see the 'c_user' phrase on [this transmission] and conclude that the phrase was a person's FID" or "use an FID to identify [plaintiff]."

1  *Solomon*, 136 F.4th at 54; *see also Hughes v. National Football League,* No. 24-cv-2656, 2025 WL

2  1720295, at *3 (2d Cir. 2025) (same).

3     Defendants could also argue that the same logic bars non-Meta pixel claims because an ordinary

4  person would not know how to attempt to combine the information from the spreadsheets and how to

5  attempt to reverse engineer it to figure out the video title purchased by a particular person.

6     Further risk stemmed from the damages-limitation clause in the Terms of Use on each of

7  Defendants' websites, which purports to limit recovery to the purchase price of the goods each Class

8  Member obtained. Hammond Decl. ¶ 29. Plaintiffs believe such a clause is substantively unconscionable

9  and unenforceable, particularly as it deprives consumers of statutory relief. *See Newton v. Am. Debt*

10  *Servs.*, 854 F. Supp. 2d 712, 725 (N.D. Cal. 2012). Nonetheless, Plaintiffs acknowledge that

11  enforcement of this clause would significantly restrict recovery, especially statutory damages, and

12  dramatically reduce Defendants' exposure. Hammond Decl. ¶ 29.

13     Moreover, Plaintiffs note that the Court has not certified the classes proposed in Plaintiffs' Third

14  Amended Complaint. Plaintiffs believe that the Class, and the California Subclass, should be certified,

15  nevertheless, as discussed in detail below, there are litigation risks associated with certifying this Class

16  and Subclass for litigation purposes. *See infra* Part V.C.

17          ***1.  Comparing the Strengths and Risks of Plaintiff's VPPA Claim***

18               a.  <u>Strength and Weaknesses</u>

19     Under the VPPA, entities "engaged in the business... of rental, sale, or delivery of prerecorded

20  video cassette tapes or similar audiovisual materials" may not disclose PII identifying a person as having

21  requested or obtained specific video content, absent informed, written consent. *See* 18 U.S.C. §§

22  2710(a)(3)–(4), (b)(2)(B).

23     Plaintiffs believe the evidence would show that Defendants disclosed such information without

24  the required consent or legal authorization. However, Defendants could argue that Class Members

25  consented to such disclosures through Defendants' Privacy Policies and Terms of Use. Further, they

26  might contend that Plaintiffs cannot establish that specific Class Members' PII was transmitted via the

27  Meta Pixel or sold/disclosed to third parties, including data brokers. Plaintiffs' counsel have experience

28  navigating discovery challenges from Meta and third parties, but they acknowledge the risks those

1    challenges posed. *See* Hammond Decl. ¶ 36; Hedin Decl. ¶ 13.

2                      b.  Realistic Exposure and Discounts Applied

3           Pursuant to 18 U.S.C. § 2710(c), Plaintiffs, on behalf of the putative nationwide Class, seek

4    actual damages but not less than liquidated damages in an amount of $2,500 per Class Member.

5           Based on the approximately 291,128 Settlement Class Members, the total maximum exposure

6    on this claim is close to $727,820,000. Hammond Decl. ¶ 37. Plaintiffs expect that such a figure would

7    be subject to a due process challenge. *See Id.,* ¶ 38; Hedin Decl. ¶ 14. *See Wakefield v. ViSalus, Inc.,* 51

8    F. 4th 1109, 1123 (9th Cir. 2022) (holding that an "aggregated statutory damages . . . are subject to

9    constitutional limitation in extreme situations – that is, when they are 'wholly disproportioned' and

10   'obviously unreasonable' in relation to the goals of the statute and the conduct the statute prohibits."

11   (quoting *St. Louis, I.M. & S. Ry. Co. v. Williams,* 251 U.S. 63, 67 (1919); *see also In re Facebook, Inc.*

12   *Internet Tracking Litigation,* No. 22-16903, 2024 WL 700985, *1 (9th Cir. Feb. 21, 2024) ("With 124

13   million potentially affected Facebook users in the United States, the district court properly rejected the

14   $1.24 trillion in statutory damages proposed by Objectors as an unreasonable baseline that would violate

15   due process. *See Wakefield v. ViSalus, Inc.*, 51 F.4th at 1121–22. As a court in this district concluded in

16   another class settlement involving statutory damages, "[g]iven the class size, it is not plausible that class

17   members could recover the full amount of the statutory penalties in any event." *Fraley v. Facebook,*

18   *Inc.*, 966 F. Supp. 2d 939, 944 (N.D. Cal. 2013), *aff'd sub nom. Fraley v. Batman*, 638 F. App'x 594

19   (9th Cir. 2016)).

20          In addition, Defendants could also argue that damages under the VPPA are discretionary. *See* 18

21   U.S.C. § 2710(c)(2)(A) (A "court *may* award actual damages but not less than liquidated damages in an

22   amount of $2,500." (emphasis added)).

23          For settlement purposes only, Plaintiffs suggest that a fair estimate of the damages recoverable

24   by each Class Member can be derived from the value of the data allegedly disclosed. In *In re Vizio, Inc.,*

25   *Consumer Privacy Litig.*, the court cited to expert opinion valuating personally identifiable video

26   viewing data as worth approximately $4.76 per individual. No. 8:16-ml-02693-JLS-KES, 2019 WL

27   12966639, at *9 (C.D. Cal. July 31, 2019). This figure is consistent with other estimates for the value

28   of personally identifiable confidential information in other cases. *See, e.g., In re Google Plus Profile,*

*Litig.,* No. 18-CV-06164-EJD (VKD), 2021 WL 242887, at *5 (N.D. Cal. Jan. 25, 2021) (citing to expert opinion valuing exposed personal information of Google+ users, including users' profile information, including users' names, genders, and email addresses, as well as additional profile fields, such as occupation and places lived, at between $0.20 to $29.60, depending on the information type disclosed, with an average of $2.50 per individual). Similarly, in a paper presented to PrivacyCon 2020, hosted by the Federal Trade Commission, the authors reported that U.S. consumers they surveyed would require, on average, $5 per month in order for a financial institution to have the right to share information on their respective account balances with any company or individual willing to pay for it. Hammond Decl. ¶ 39 and Ex. 2 thereto.

Plaintiffs used $20 per Class Member as an appropriate measure of damages (i.e., four times the estimated value of the data disclosed). Hammond Decl. ¶ 40. Plaintiffs suggest that this is a far more reasonable figure for Defendants' exposure than $727 million. *Id.* Applying a 50% discount for all of the following risks: the risks of being compelled to arbitration that existed when this Settlement was finalized, the risk of the Court dismissing Plaintiffs' pixel-based and non-pixel based VPPA claim under the "ordinary person" standard adopted in *Solomon*, the risk of recovery being limited to amounts paid by Class Members, the risk of no class being certified on this claims, and finally the merits-risks discussed immediately above, reduces Defendants' exposure to $2,911,280. *Id.*

### 2. Comparing the Strengths and Risks of Plaintiff Hoang To's Claim Under California Civil Code § 1799.3

#### a. Strengths and Weaknesses

The analysis of the strengths and weaknesses of Plaintiff Hoang To's § 1799.3 claim is similar to that of the VPPA, except that Defendant's liability under § 1799.3 is for "willful violation[s]" of the section, whereas the VPPA prohibits a video tape service provider from "knowingly disclos[ing]" personally identifiable information. Compare § 1799.3(c) with 18 U.S.C. § 2710(b). Accordingly, Defendants have an additional potential defense against Plaintiff Hoang To's § 1799.3 claim, in addition to those discussed above with respect to Plaintiffs' VPPA claims.

#### b. Realistic Exposure and Discounts Applied

Similarly to Plaintiff Hoang To's claim under the VPPA, the potentially recoverable amount, prior to any discounts, and without considering due process, is massive. Pursuant to Cal. Civ. Code § 1799.3(c), for each willful violation, a Class Member can recover a civil penalty of $500. Even assuming that each Class Member can recover only $500 (rather than $500 for each purchase from Defendant or for each time his or her PII was disclosed), Defendants' theoretical exposure is $17,623,500. Hammond Decl. ¶ 42.[3] Defendants would likely argue that this figure too raises significant due process concerns. Thus, Plaintiff Hoang To, again, suggests that a reasonable estimate can be generated by applying the figure of $20 for each California sub-class Member. This results in an estimated maximum recovery of $704,940. *Id.*

And, the potentially recoverable amount on this claim is subject to discounts for the risk of being compelled to arbitration that existed when this Settlement was finalized, the risk of the Court dismissing Plaintiffs' pixel-based VPPA claim under the "ordinary person" standard adopted in *Solomon* and other circuits, the risk of recovery being limited to the amounts paid by Class Members, the risk of no class being certified on this claim, and further discounts based on the merits-risks discussed immediately above. Assigning a 50% discount on the basis of these risks, combined, Plaintiff Hoang To estimates Defendant's realistic exposure on this claim at $352,470. Hammond Decl. ¶ 43. In addition, a discount is warranted because the Court might not permit a substantial recovery under both the VPPA and § 1799.3. *Id.* ¶ 44.

### 3. Comparing the Strengths and Risks of Plaintiff Hoang To's UCL Claim

Plaintiff Hoang To's UCL claim is derivative of his other claims. Moreover, given the strengths of the VPPA claim, and the § 1799.3 claim for members of the California Subclass, Plaintiff Hoang To thinks that his UCL claim would likely only entitle him to the same or similar monetary relief that he would obtain pursuant to those claims. Accordingly, Plaintiff Hoang To ascribes *de minimis* value to this claim. Hammond Decl. ¶ 44, n. 2. Plaintiff Hoang To notes, however, that, while the Settlement Class extends back to include non-Californian Class Members whose PII may have been disclosed on or after August 8, 2022, on the basis of the VPPA's two-year statute of limitations, the Settlement Class

---

[3] $500 x. 35,247 Californian Class Members.

extends back to include Californian Class Members whose PII may have been disclosed on or after August 8, 2020, on the basis of the UCL's four-year statute of limitations. *Id.*

### 4. Summary of Plaintiffs' Realistic Exposure Analysis

Plaintiffs calculate the realistic value of their VPPA claims as $2,911,280 and Plaintiff Hoang To's Civil Code § 1799.3 claim as $352,470 (assuming the Court would permit recovery under both statutes). Hammond Decl. ¶ 43. As discussed above, Plaintiff Hoang To assigns *de minimis* value to his UCL claim. The $1,577,000 Gross Settlement represents 48% of Defendants' total realistic exposure of $3,263,750 – a very good result. *See Id.* ¶¶ 40, 43.

### B. Further Litigation Would be Risky, Expensive, Complex, and Lengthy

As detailed above, absent this Settlement, the Class would recover nothing because the Court compelled Plaintiffs' claims to individual arbitration on June 13, 2025. Hammond Decl. ¶ 26. Moreover, as discussed above, numerous litigation risks, taken together, create significant uncertainty as to whether Plaintiffs and the Settlement Class would recover anything even if the case had proceeded through litigation. And even if Plaintiffs were to prevail at trial with a certified class, Defendants would likely appeal, further delaying any potential relief. Accordingly, without this Settlement, final resolution of this Action could have taken many years.

### C. The Risks Associated with Certifying the Class and Maintaining the Case as a Class Action Through Trial

In assessing the likelihood that the Class and Subclass proposed in Plaintiffs' Third Amended Complaint would be certified by this Court and then upheld on appeal (had the Court not granted Defendants' Motion to Compel), Plaintiffs understand that Defendants are prepared to present arguments that individualized inquiries abound. For example, some customers may have used browsers and other tools which prohibited or limited the disclosure of their PII to Meta and other third parties. Information of some customers may have been access by data brokers, and information of others may never have been accessed. While Plaintiffs believe that they would have been able to certify the Settlement Class (absent the Court's Order granting Defendants' Motion to Compel), such issues, which could vary from Class Member to Class Member, would have resulted in a contested motion for class certification.

Notably, however, while these individualized issues may have weighed against certifying the proposed Class and/or some of Plaintiffs' claims for litigation purposes, they do not weigh against certification of the Class and claims for settlement purposes. "A class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable." *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 558 (9th Cir. 2019) (en banc); *see also Jabbari v. Farmer*, 965 F.3d 1001, 1005–06 (2020).

### D.    The Relief Offered in the Settlement is More Than Adequate

#### 1.    The Relief is Fair, Adequate, and Reasonable

The Settlement Agreement creates a cash settlement of $1,577,000. The monetary relief offered to Settlement Class Members is more than fair, adequate, and reasonable. The gross per-Class Member share of the Settlement Fund will be approximately $5.42. Hammond Decl. ¶ 46. Assuming a claims rate of 5%, Plaintiffs estimate that the average Authorized Claimant's gross share of the Settlement Fund will be $108.34, and the average Authorized Claimant's net share of the Settlement Fund will be $70.60. *Id*. These figures compare very favorably to the total relief available to claimants in consumer class actions, in general.[4]  *See, e.g., In re Google Referrer Header Priv. Litig.*, No. 10-CV-04809-EJD, 2023 WL 6812545, at *2 (N.D. Cal. Oct. 16, 2023) (Showing estimated "average recovery of approximately $7.16," actual amount of payment made to each settlement class member was $7.70); *In re Google Plus Profile Litig.*, No. 18-cv-06164-EJD (VKD), Dkt. 96, at 5-6 (N.D. Cal. Oct. 15, 2020) ($12 or $6 payments per class member); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d at 943, *aff'd sub nom*; *Fraley v. Batman*, 638 F. App'x 594 ($15 payment per class member); *Poertner v. The Gillette Co.*, No. 6:12-v-00803-GAP-DAB, Dkt. 168 at 3 (M.D. Fla. Aug. 21, 2014) ($6-$12 payments per class

---

[4] Plaintiffs further note that privacy damages are particularly uncertain and numerous privacy class actions have been settled for non-monetary relief only. *See, e.g., Campbell v. Facebook, Inc.*, No. 13-cv-05996-PJH, 2017 WL 3581179, at *8 (N.D. Cal. Aug. 18, 2017) (granting final approval of declaratory and injunctive relief settlement in litigation alleging Facebook engaged in user privacy violations), *aff'd*, 951 F. 3d 1106 (9th Cir. 2020); *In re Google LLC St. View Elec. Commc'ns Litig.,* No. 10-MD-02184-CRB, 2020 WL 1288377, at *16 (N.D. Cal. Mar. 18, 2020) (granting final approval of settlement providing class with injunctive relief and creating a non-distributable *cy pres* settlement fund in litigation alleging Google violated privacy by illegally gathering Wi-Fi network data); *McDonald, et al. v. Kiloo A/S, et al.,* No. 3:17-cv-04344-JD, ECF No. 406 (N.D. Cal. Apr. 12, 2021)  (granting final approval of 16 injunctive relief-only settlements in related privacy class actions accusing defendants of violating child privacy protection laws by collecting and selling PII of children).

member); *In re: Vizio, Inc., Consumer Privacy Litig.*, No. 8:16-ml02693-JLS-KES, 2019 WL 12966638, at *4 (C.D. Cal. July 31, 2019) (approving settlement in VPPA case that provided each claimant with an estimated $16.50 at a claims rate of 4.1%).

In the context of VPPA settlements, the monetary relief provided by this Settlement ranks at the higher end of the spectrum when compared to other court-approved agreements. *See* Hammond Decl. ¶ 46. A table summarizing comparable VPPA settlements is attached as Exhibit 3 to the Hammond Declaration.  In the eight VPPA settlements included in Plaintiffs' Counsel's comparison table, the per Class Member monetary settlement value ranges from $0.82 to $8.40, with an average of $4.08. Even excluding the *Sony Pictures* settlement (which has the largest class size and the lowest per Class Member value), the average is $4.63. The Parties' Settlement Agreement, in the instant case, provides for an average of $5.42 per Class Member, placing it towards the high end of the range.

Although there are no VPPA settlements involving non-Meta pixel or similar tracking tool claims, the fact that the Court compelled arbitration, the Second Circuit's decision in *Solomon* and subsequent cases adopting its reasoning, and other case-specific risks, such as the limitations on recovery in Defendant's Terms of Use, make this case analogous to other VPPA settlements in terms of litigation complexity and risk exposure.  *See* Hammond Decl. ¶ 47.

In addition to monetary relief, the Settlement requires Defendants to comply with the VPPA and § 1799.3 moving forward. Specifically, the Settlement Agreement provides that Defendants have "modified the Facebook Pixel settings on Defendants' Websites so that specific product information is not shared with Facebook. Additionally, Defendants will not knowingly share information which identifies a person as having requested or obtained specific video materials or services with third parties, except as permitted by the VPPA." SA ¶ 2.2. This is similar to the non-monetary relief achieved in other VPPA settlements. *See* Hammond Decl. ¶ 48 and Ex. 3 thereto.

### 2.    The Plan of Allocation is Reasonable

The proposed Plan of Allocation, set out in the Settlement Agreement, as described above in Part III.B, provides for each Settlement Class Member who submits an Approved Claim to receive a "*pro rata* portion of the Settlement Fund . . . after deducting the Settlement Administration Expenses, any Fee Award and any Incentive Award." SA ¶ 2.1.  This Plan of Allocation is fair, reasonable, and

adequate because it attempts to achieve the appropriate ratio of distribution between members of the Settlement Class and members of the California Subclass. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1045 (Plan of Allocation fair, reasonable, and adequate where it attempted to "allocate the settlement funds to class members based on . . . the strength of their claims on the merits." (citing *In re Oracle Sec. Litig.*, 1994 WL 502054, *1-2 (other citation omitted)).

As described above, *see supra* Part III.B, Plaintiffs do not believe it would be appropriate for members of the California subclass to receive more than other members of the nationwide Settlement Class. Plaintiffs also considered the fact that Settlement Class Members from several states other than California may have been able to pursue state law claims analogous or similar to the § 1799.3 and UCL claims – another reason it would not be fair to offer greater relief to California Subclass members.

### E.     The Settlement is Informed by Sufficient Discovery to Permit an Informed Decision

"In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, 'formal discovery is not a necessary ticket to the bargaining table.'" *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) (quoting *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1239 (9th Cir.1998)). "Rather, the court's focus is on whether 'the parties carefully investigated the claims before reaching a resolution.'" *Id.* (quoting *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) (citation omitted)).

In the instant case, as described in detail in the Hammond and Hedin Declarations, proposed Class Counsel engaged in extensive factual and legal research, investigation, and analysis of the Settlement Class's claims before initiating this litigation. After initiating the instant case, proposed Class Counsel continued to investigate in order to form a complete picture of the merits of the Settlement Class's claims, and obtained information from Defendants for settlement purposes including information about the size of the Settlement Class, information about the nature of Defendants' alleged disclosure of customers' information to data brokers and other unauthorized third parties, and information about the configuration of the Meta Pixel on Defendants' websites during the relevant period. Hammond Decl. ¶¶ 19-24; Hedin Decl. ¶ 4-6.  Following the Court's denial of Plaintiff Hoang To's first preliminary approval motion, Defendant produced confidential informal discovery exclusively for settlement discussions relevant to the data brokerage claims, which confirmed that there was no way

to directly connect the information provided to the data broker with the identity of the consumer.

In sum, the information obtained by Plaintiffs was more than sufficient for Plaintiffs and their counsel to make informed decisions about the fairness, reasonableness, and adequacy of the proposed Settlement. Additionally, Plaintiffs and their counsel engaged in confirmatory discovery, including directing their expert to test Defendants' websites to ensure that the tracking tools have been removed, and confirming that customers' information was no longer available on Next Mark or available to data brokers or data aggregators. Hammond Decl. ¶ 23.

### F.    Counsel Believes the Settlement is an Excellent Result

Courts recognize that the opinion of experienced counsel supporting settlement after arm's length negotiations is entitled to considerable weight. *Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18 (N.D. Cal. 1980), aff'd, 661 F.2d 939 (9th Cir. 1981) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.").

Here, as described above, counsel for Plaintiffs conducted an extensive investigation into the Settlement Class's claims, developed a comprehensive understanding of their merits, and effectively tested the validity and enforceability of Defendants' arbitration agreement, prior to entering into the proposed Settlement Agreement. Based on their extensive knowledge litigation complex cases and their extensive investigation in this case, Counsel for Plaintiffs consider the Settlement, which provides significant monetary and key non-monetary prospective relief, to be an outstanding result given the circumstances in which it was negotiated. Hammond Decl. ¶ 49; Hedin Decl. ¶ 16.

### G.    Governmental Participation is Not at Issue Here

This factor is not at issue because there is no government participation here. *Bertoia v. Randstad US, L.P.*, No. 15-cv-03646-EMC, 2017 WL 1278758, at *9 (N.D. Cal. Apr. 6, 2017); *see also Martin v. Sysco Corp.*, No. 16-cv-00990-DAD-SAB, 2019 WL 3253878, at *6 (E.D. Cal. July 19, 2019).

### H.    The Settlement Also Satisfies the *Bluetooth* Factors

Prior to class certification, class settlements must withstand a "higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *re Bluetooth,* 654 F.3d at 946. The Court must be satisfied that "the settlement is not the product of collusion among the negotiating parties." *Id.* at 946-47. The Ninth

Circuit has identified three "signs" of possible collusion:

> (1) "when counsel receive[s] a disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing arrangement,'" under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class.

*Briseno v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (quoting *In re Bluetooth*, 654 F.3d at 947). Evaluation of the *Bluetooth* factors assists the Court in determining whether Plaintiffs' counsel have "allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth*, 654 F. 3d at 947. Here, this evaluation militates strongly in favor of granting preliminary approval.

First, the settlement does not provide that Plaintiffs' counsel should "receive a disproportionate distribution of the settlement." *Bluetooth*, 654 F. 3d at 947. Rather, as set forth in the Settlement Agreement, proposed Class Counsel may request no more than 25% of the Settlement Fund. SA ¶ 8.1. Second, the Agreement merely provides that: "Defendants agree that Class Counsel shall be entitled to an award of reasonable attorneys' fees of up to 25% of the Settlement Fund, and costs of up to $20,000, subject to Court approval." SA ¶ 8.1. Thus, Defendants have agreed that Plaintiffs' counsel is entitled to *some* attorneys' fees, but have not agreed to not challenge any amount of attorneys' fees sought by Plaintiffs. *Id.* Moreover, the actual attorneys' fees award will be determined by the Court. *Id.* And, third, there is no reversion of any amount of unawarded fees to the Defendants. *See Bluetooth*, 654 F. 3d at 947. The Settlement Agreement establishes that the Settlement Fund is a non-reversionary settlement fund whereby none of that amount, including none of any attorneys' fees and costs sought by Settlement Class Counsel but not awarded by the Court, will revert to Defendants. SA ¶¶ 1.31(a), 8.1.

## VI.    THE PROPOSED NOTICE PROGRAM, SETTLEMENT ADMINISTRATOR, AND PROCESS FOR CLAIMS, OPT-OUTS, AND OBJECTIONS SHOULD BE APPROVED

### A.    The Proposed Notice Plan

The proposed notice plan is described in detail in the Weisbrot Declaration filed herewith. It will include direct email notice (followed, where necessary, by mail notice), a settlement website, and a toll-free telephone number. *Id.* This is consistent with other court-approved, best-practicable notice programs. As this District's guidance recommends, the draft notices include contact information for

class counsel; the address for the settlement website (which will contain a summary of the Settlement; enable online Claim Form filing; allow Settlement Class Members to contact the Settlement Administrator with any questions or changes of address; provide notice of important dates (such as the Final Approval Hearing, Claims Submission Deadline, Objection Deadline, Opt-Out Deadline); provide Settlement Class Members who file Claim Forms online the opportunity to select an electronic payment method (including Venmo, Zelle, PayPal, e-Mastercard), or payment by check; and, contain relevant case documents including the Operative Complaint, the Settlement Agreement, the Long-Form Notice, Plaintiffs' motion for preliminary approval, and the Preliminary Approval Order); the date and time of the final approval hearing, clearly stating that the date may change without further notices to the Classes; and a note to Class Members to check the settlement website or the court docket to confirm the date. SA, Ex. B (Email Notice), Ex. C (Notice Posted on Settlement Website).

The Settlement Administrator will provide notice pursuant to the Class Action Fairness Act within ten days of the filing of the Settlement Agreement. Weisbrot Decl. ¶ 34.

### B.    The Settlement Administrator

Plaintiffs propose Angeion Group ("Angeion") as the settlement administrator. Hammond Decl. ¶ 64; Proposed Order (filed concurrently herewith). Plaintiffs obtained competing bids from two prospective settlement administrators. *Id.* ¶ 65. They each concerned generally similar notice and claims processes to the one Plaintiffs ultimately selected. *Id.* Counsel for Plaintiffs independently evaluated each proposal and conferred with counsel for Defendants regarding the selection of the settlement administrator. *Id.* ¶ 66. Then Plaintiffs chose Angeion. *Id.*

Angeion has experience as an appointed settlement administrator in large class-action settlements, including those involving privacy concerns. Weisbrot Decl. ¶ 12. Angeion's proposal also highlighted its robust data security standards, which comply with industry-recognized standards and include redundancies to ensure data integrity and business continuity, and procedures for handling claimant data, which are of critical importance to the Parties. *Id.* ¶¶ 13-17. Angeion also maintains a comprehensive insurance program, including sufficient Errors & Omissions coverage. *Id.* ¶ 17. The Parties would not have selected Angeion if they were not comfortable with its data handling practices.

Angeion has estimated the costs of issuing notice and administering the Settlement as less than

the $125,000 provided for under the Settlement Agreement. Weisbrot Decl. ¶ 39. These costs will be paid out of the Settlement Fund. SA ¶ 1.28. The estimated costs of notice and administration are reasonable when compared to the value of the Settlement and in light of the size of the Settlement Classes. The estimated costs are less than 8% of the Settlement Fund.

### C.    Opt-outs and Objections: Timeline and Instructions

Settlement Class Members have 60 days from the date the Notice is mailed to opt out of or object to the Settlement. Plaintiffs' Counsel will also file the motion for fees and costs at least 14 days prior to the deadline to objection. SA ¶¶ 1.19-1.20; Proposed Order, filed concurrently herewith. Instructions for opting-out and objecting are in plain language and clearly prompt those who wish to opt-out or to object to provide the specific information each action requires. SA, Exs. B & C. The notice clearly informs class members of the opt-out deadline and how to opt out, and requires that they supply only the information needed to opt out of the settlement. *Id.* Exs. B & C. Similarly, the notice informs class members of the objection deadline and instructs them to send their written objections to the Court, and clearly identifies the objection deadline. *Id.*

### D.    The Claims Process

It is necessary to require submission of a claim form for several reasons. First, by allowing Settlement Class Members to choose a payment option, rather than simply mailing checks, the use of a claim form makes it more likely that a greater proportion of the settlement funds distributed will actually be received and redeemed by Class Members. Hammond Decl. ¶ 5, n. 1. Second, the use of a claims form, and the corresponding expected use of electronic means of receiving payment by the majority of Authorized Claimants will help reduce the likelihood of fraud in the receipt of settlement funds. *Id.* Third, the use of a claim form allows monetary payments to be provided by means that are significantly less expensive than printing and mailing checks. *Id.*

The Settlement Administrator estimates that the claims rate will be approximately 5%. Weisbrot Decl. ¶¶ 37-38. As Angeion explains, this is "around the 5% average Angeion has seen in past privacy settlements it has administered." *Id.* Plaintiffs' Counsel also considers this to be a reasonable estimate. One broad analysis of 149 consumer class actions conducted by the Federal Trade Commission concluded that "[a]cross all cases in our sample requiring a claims process, the median calculated claims

rate was 9%, and the weighted mean (i.e., cases weighted by the number of notice recipients) was 4%." *See* Fed. Trade Comm'n, Consumers & Class Actions: A Retrospective & Analysis of Settlement Campaigns, p. 11 (Sept. 2019) ("FTC Report").[5] And, in the instant case, the Settlement Administrator will send a reminder notice 30 days prior to the Claims Deadline and a second reminder notice 7 days prior to the Claims Deadline, to all Settlement Class Members for whom a valid email address is available in the Class List. SA ¶ 4.1(c). Because Defendants have email addresses for the substantial majority of Settlement Class Members, these reminder notices will be sent to the substantial majority of Settlement Class Members.

## VII.  OTHER CASES AFFECTED

There are presently no other cases affected by the proposed Settlement.

## VIII.  THE PROPOSED FINAL APPROVAL HEARING SCHEDULE

Plaintiffs' [Proposed] Order Granting Preliminary Approval of Class Action Settlement filed herewith, includes the following proposed schedule for the approval process:

| EVENT | PROPOSED DEADLINE |
|---|---|
| **Preliminary Approval Order** | TBD |
| **Class List due to Administrator** | 14 days after entry of the Preliminary Approval Order |
| **Notice Date** | Not later than 60 days after entry of the Preliminary Approval Order |
| **Motion for Attorneys' Fees** | 14 days before the Objection/Opt Out Deadline |
| **Opposition to Motion for Attorneys' Fees** | No more than 30 days after the Motion for Attorneys' Fees |
| **Objection Deadline** | 60 days after Notice Date |
| **Reply in Support of Motion for Attorneys' Fees** | 14 days after Opposition due date |
| **Opt-Out Deadline** | 60 days after Notice Date |
| **Claim Deadline** | 60 days after Notice Date |
| **Motion for Final Approval** | 90 days after Notice Date |

---

[5]  This report is available at https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf (last accessed October 29, 2024).

| Reply in Support of Final Approval Motion and Update Regarding Notice Administration | 14 days after Motion for Final Approval due date |
|---|---|
| **Final Approval Hearing** | TBD |

## IX.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court certify a Settlement Class for settlement purposes, preliminarily approve the proposed Settlement, approve Class Notice and appoint Angeion as Settlement Administrator, and set a Final Approval Hearing.

DATED:   August 8, 2025                                          Respectfully submitted,


/s/ Julian Hammond
Julian Hammond
*Attorneys for Plaintiffs and Proposed Class Counsel*