**Refiled Copy of Dkt. 95-8**

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN HOANG TO, JEFFRY HEISE, and JOSEPH MULL, individually and on behalf of others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>DIRECTTOU, LLC, and ALLIANCE ENTERTAINMENT, LLC,<br><br>    Defendants. | Case No. 3:24-cv-06447-WHO<br><br><br>**DECLARATION OF STEVEN WEISBROT OF ANGEION GROUP RE: PROPOSED NOTICE PLAN** |

I, Steven Weisbrot, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.      I am the President and Chief Executive Officer at the class action notice and claims administration firm Angeion Group, LLC ("Angeion"). Angeion specializes in designing, developing, analyzing, and implementing large-scale, un-biased, legal notification plans.

2.      I have personal knowledge of the matters stated herein. In forming my opinions regarding notice in this action, I have drawn from my extensive class action experience, as described below.

3.      I have been responsible in whole or in part for the design and implementation of hundreds of court-approved notice and administration programs, including some of the largest and most complex notice plans in recent history. I have taught numerous accredited Continuing Legal Education courses on the Ethics of Legal Notification in Class Action Settlements, using Digital Media in Due Process Notice Programs, as well as Claims Administration, generally. I am the author of multiple articles on Class Action Notice, Claims Administration, and Notice Design in publications such as Bloomberg, BNA Class Action Litigation Report, Law360, the ABA Class Action and Derivative Section Newsletter, and I am a frequent speaker on notice issues at conferences throughout the United States and internationally.

4.      I was certified as a professional in digital media sales by the Interactive Advertising Bureau ("IAB") and I am co-author of the Digital Media section of Duke Law's *Guidelines and Best Practices—Implementing 2018 Amendments to Rule 23* and the soon to be published George Washington Law School *Best Practices Guide to Class Action Litigation*.

5.      I have given public comment and written guidance to the Judicial Conference Committee on Rules of Practice and Procedure on the role of direct mail, email, broadcast media, digital media, and print publication, in effecting Due Process notice, and I have met with representatives of the Federal Judicial Center to discuss the 2018 amendments to Rule 23 and offered an educational curriculum for the judiciary concerning notice procedures.

6.      Prior to joining Angeion's executive team, I was employed as Director of Class Action Services at Kurtzman Carson Consultants, an experienced notice and settlement administrator. Prior to my notice and claims administration experience, I was employed in private law practice.

7.      My notice work comprises a wide range of class actions that include privacy, data breach, product defect, false advertising, mass disasters, employment discrimination, antitrust, tobacco, banking, firearm, insurance, and bankruptcy cases.

8.      I have been at the forefront of infusing digital media, as well as big data and advanced targeting, into class action notice programs. Courts have repeatedly recognized my work in the design of class action notice programs. A comprehensive summary of judicial recognition Angeion has received is attached hereto as **Exhibit A**.

9.      By way of background, Angeion is an experienced class action notice and claims administration company formed by a team of executives that have had extensive tenures at five other nationally recognized claims administration companies. Collectively, the management team at Angeion has overseen more than 2,000 class action settlements and distributed over $15 billion to class members. The executive profiles as well as the company overview are available at www.angeiongroup.com.

10.      As a class action administrator, Angeion has regularly been approved by both federal and state courts throughout the United States and abroad to provide notice of class actions and claims processing services.

11.      Angeion has extensive experience administering landmark settlements involving some of the world's most prominent companies, including:

**In re: Facebook, Inc Consumer Privacy User Profile Litigation**
Case No. 3:18-md-02843-VC (N.D. Cal.)
Meta agreed to pay $725 million to settle allegations that the social media company allowed third parties, including Cambridge Analytica, to access personal information. Angeion undertook an integrated in-app notification and media campaign to a class in the hundreds of millions of individuals and processed 28.6 million claims, the most claims filed in the history of class action.  In fact, during the September 7, 2023 Final Approval Hearing, U.S. District Judge Chhabria

acknowledged the record number of claims filed, stating, "I was kind of blown away by how many people made claims."

**In re Apple Inc. Device Performance Litigation**
Case No. 5:18-cv-02827-EJD (N.D. Cal.)
Apple agreed to pay $310 million to settle allegations of diminished performance in iPhone 6's and 7's. Angeion's direct notification efforts were recognized as reaching 99%+ of the current and former owners of 129 million class devices. Millions of claims were processed.

**City of Long Beach, et al. v. Monsanto, et al.**
Case No. 2:16-cv-03493-FMO-AS (C.D. Cal.)
Bayer agreed to pay $650 million to settle allegations of waterbodies impaired by PCBs. Angeion's notice administration was extraordinarily successful. The claims administration includes multiple complex claims filing workflows for different funding allocations, including separate fund for "special needs" claimants.

**Beckett v. Aetna Inc.**
Case No. 2:17-cv-03864-JS (E.D. Pa.)
A consolidated data breach class action that arose from the alleged improper disclosure of Protected Health Information by a health insurer and previous claims administrator, including confidential HIV-related information. Angeion provided specialized training to our support team concerning the sensitive nature of the case and underlying health information. Angeion implemented robust privacy protocols to communicate with and verify the claims of the affected class members, including anonymized notice packets and allowing claimants to lodge objections under pseudonyms.

12.    Angeion will further draw on its extensive experience from administering prior high-profile litigations involving privacy concerns:

| Significant Privacy Cases | Case No. | Court |
|---|---|---|
| Vela, et al. v. AMC Networks Inc. ("AMC+ VPPA") | 1:23-cv-02524 | S.D.N.Y. |
| Braun, et al. v. The Philadelphia Inquirer, LLC ("Inquirer VPPA") | 2:22-cv-04185 | E.D. Pa. |
| Schmitt, et al. v. SN Servicing Corporation | 3:21-cv-03355 | N.D. Cal. |
| In re: Facebook, Inc., Consumer Privacy User Profile Litigation | 3:18-md-02843 | N.D. Cal. |
| In re: TikTok Inc., Consumer Privacy Litigation | 1:20-cv-04699 | N.D. Ill. |
| Lundy v. Meta Platforms Inc. | 3:18-cv-06793 | N.D. Cal. |
| In re: Facebook Internet Tracking Litigation | 5:12-md-02314 | N.D. Cal. |
| Boone, et al. v. Snap Inc. | 2022LA000708 | Ill. Cir. Ct. |
| In re: Plaid Inc. Privacy Litigation | 4:20-cv-03056 | N.D. Cal. |
| T.K. et al. v. Bytedance Technology Co. Ltd. Et al. | 1:19-cv-07915 | N.D. Ill. |
| In re: Google Plus Profile Litigation | 5:18-cv-06164 | N.D. Cal. |
| Parris, et al. v. Meta Platforms Inc. | 2023LA000672 | Ill. Cir. Ct. |
| McDonald, et al. v. Kiloo A/S, et al.<br>Rushing, et al. v. The Walt Disney Co., et al.<br>Rushing, et al. v. ViacomCBS Inc., et al. | 2:20-cv-09534<br>3:17-cv-04419<br>3:17-cv-04492 | N.D. Cal. |

3

**DATA SECURITY & INSURANCE**

13.     Angeion recognizes the critical need to secure our physical and network environments and protect data in our custody. It is our commitment to these matters that has made us the go-to administrator for many important matters. We are ever improving upon our robust policies, procedures, and infrastructure by periodically updating data security policies as well as our approach to managing data security in response to changes to physical environment, new threats and risks, business circumstances, legal and policy implications, and evolving technical environments.

14.     Angeion's privacy practices are compliant with the California Consumer Privacy Act, as currently drafted. Consumer data obtained for the delivery of each project is used only for the purposes intended and agreed in advance by all contracted parties, including compliance with orders issued by State or Federal courts as appropriate. Angeion imposes additional data security measures for the protection of Personally Identifiable Information (PII) and Personal Health Information (PHI), including redaction, restricted network and physical access on a need-to-know basis, and network access tracking. Angeion requires background checks of all employees, requires background checks and ongoing compliance audits of its contractors, and enforces standard protocols for the rapid removal of physical and network access in the event of an employee or contractor termination.

15.     Data is transmitted using Transport Layer Security (TLS) 1.3 protocols. Network data is encrypted at rest with the government and financial institution standard of AES 256-bit encryption. We maintain an offline, air-gapped backup copy of all data, ensuring that projects can be administered without interruption.

16.     Further, our team conscientiously monitors the latest compliance requirements, such as GDPR, HIPAA, PCI DSS, and others, to ensure that our organization is meeting all necessary regulatory obligations as well as aligning to industry best practices and standards set forth by frameworks like CIS and NIST. Angeion is cognizant of the ever-evolving digital landscape and continually improves its security infrastructure and processes, including partnering with best-in-class security service providers. Angeion's robust policies and processes cover all aspects of

4

information security to form part of an industry leading security and compliance program, which is regularly assessed by independent third parties. Angeion is also committed to a culture of security mindfulness. All employees routinely undergo cybersecurity training to ensure that safeguarding information and cybersecurity vigilance is a core practice in all aspects of the work our teams complete.

17.     Angeion currently maintains a comprehensive insurance program, including sufficient Errors & Omissions coverage.

## SUMMARY OF THE NOTICE PLAN

18.     This declaration will describe the proposed Notice Plan for the Settlement Class that, if approved by the Court, Angeion will implement in this matter, including the considerations that informed the development of the plan and why we believe it will provide due process to Settlement Class Members.  In my professional opinion, the proposed Notice Plan described herein is the best notice practicable under the circumstances, fulfilling all due process requirements, and is fully compliant with Fed. R. Civ. P. 23, and the Northern District's Procedural Guidance for Class Action Settlements.

19.     The proposed Notice Plan provides for direct notice via email or mail to all reasonably identifiable Settlement Class Members combined with the implementation of a dedicated website and toll-free telephone line where Settlement Class Members can learn more about their rights and options pursuant to the terms of the Settlement.

## DIRECT NOTICE

**Class Member Data**

20.     Angeion will receive, review, and analyze the Settlement Class Member data provided by the Defendants. Angeion performs a thorough analysis to identify duplicative records, as well as missing/incomplete data fields. Angeion will then assign identification numbers to each unique record, which will comprise the final Settlement Class Member list ("Settlement Class List").

**Email Notice**

5

21.     As part of the Notice Plan, Angeion will send the Email Notice to Settlement Class Members who have valid email addresses included on the Class List.

22.     Angeion follows best practices to both validate emails and increase deliverability. Specifically, prior to distributing the Email Notice, Angeion subjects the email addresses on the Class List to a cleansing and validation process. The email cleansing process will remove extra spaces, fix common typographical errors in domain names, and correct insufficient domain suffixes (*e.g.*, gmal.com to gmail.com, gmail.co to gmail.com, yaho.com to yahoo.com, etc.). The email addresses will then be subjected to an email validation process whereby each email address will be compared to known bad email addresses.[1] Email addresses that are not designated as a known bad address will then be further verified by contacting the Internet Service Provider ("ISP") to determine if the email address exists.

23.     Further, Angeion designs the email notice to avoid many common "red flags" that might otherwise cause an email recipient's spam filter to block or identify the email notice as spam. For example, Angeion does not include attachments like the Long-Form Notice or Claim Form to the Email Notice, because attachments are often interpreted by various Internet Service Providers ("ISP") as spam.

24.     Angeion also accounts for the real-world reality that some emails will inevitably fail to be delivered during the initial delivery attempt. Therefore, after the initial noticing campaign is complete, Angeion, after an approximate 24- to 72-hour rest period (which allows any temporary block at the ISP level to expire), causes a second round of email noticing to continue to any email addresses that were previously identified as soft bounces and not delivered. In our experience, this minimizes emails that may have erroneously failed to deliver due to sensitive servers and optimizes delivery.

25.     Angeion will cause any email address for which the Email Notice could not be delivered to be subjected to an email change of address search in an attempt to locate an updated

---

[1] Angeion maintains a database of email addresses that were returned as permanently undeliverable, commonly referred to as a hard bounce, from prior campaigns. Where an address has been returned as a hard bounce within the last year, that email is designated as a known bad email address.

email address. Angeion will then send the Email Notice to any updated email addresses obtained via this process.

26.    At the completion of the email campaign, Angeion will report to the Court concerning the rate of delivered emails accounting for any emails that are blocked at the ISP level. In short, the Court will possess a detailed, verified account of the success rate of the entire direct Email Notice campaign.

**Mailed Notice**

27.    As part of the Notice Plan, Angeion will send notice of the Settlement ("Notice") via first class U.S. Mail, postage pre-paid, to all Settlement Class Members whose Email Notice could not be delivered and for whom mailing addresses are included on the Settlement Class List.

28.    Angeion will employ the following best practices to increase the deliverability rate of the mailed Notices: (i) Angeion will cause the mailing address information for Settlement Class Members to be updated utilizing the United States Postal Service's ("USPS") National Change of Address database, which provides updated address information for individuals or entities who have moved during the previous four years and filed a change of address with the USPS; (ii) Notices returned to Angeion by the USPS with a forwarding address will be re-mailed to the new address provided by the USPS; (iii) Notices returned to Angeion by the USPS without forwarding addresses will be subjected to an address verification search (commonly referred to as "skip tracing") utilizing a wide variety of data sources, including public records, real estate records, electronic directory assistance listings, etc., to locate updated addresses; (iv) Notices will be re-mailed to Settlement Class Members for whom updated addresses were identified via the skip tracing process.

**Reminder Notice**

29.    Angeion will cause reminder notices to be sent via email in accordance with § 4.1(c) of the Class Action Settlement Agreement.

## SETTLEMENT WEBSITE

30.    The Notice Plan provides for the creation of a case-specific Settlement Website, where Settlement Class Members can easily submit a Claim Form via a customized secure online

7

portal. The Settlement Website will also provide Settlement Class Members with general information about this Settlement, including important dates and deadlines, and answers to frequently asked questions. Settlement Class Members can also review or download relevant Court documents, including the Long Form Notice, the Claim Form, the Court's Order Preliminarily Approving the Settlement, the Settlement Agreement, the operative Complaint filed in this Action, and any other materials agreed upon by the Parties and/or required by the Court. The Settlement Website will also have a "Contact Us" page whereby Settlement Class Members can send additional questions to a dedicated email address.

31.     The Settlement Website will be designed to be ADA-compliant and optimized for mobile visitors so that information loads quickly on mobile devices. Additionally, the Settlement Website will be designed to maximize search engine optimization through Google and other search engines. Keywords and natural language search terms will be included in the Settlement Website's metadata to maximize search engine rankings.

### TOLL-FREE TELEPHONE SUPPORT

32.     A toll-free hotline devoted to this case will be implemented to further apprise Settlement Class Members of their rights and options pursuant to the terms of the Settlement.  The toll-free hotline will utilize an interactive voice response ("IVR") system to provide potential Settlement Class Members with responses to frequently asked questions and provide essential information regarding the Settlement. This hotline will be accessible 24 hours a day, 7 days a week.

33.     Additionally, potential Settlement Class Members will be able to leave a voicemail with their name and address if they want the Long Form Notice and/or Claim Form mailed to them and will have the option to speak with a live operator during normal business hours.

### NOTICE PURSUANT TO THE CLASS ACTION FAIRNESS ACT OF 2005

34.     Within ten (10) days of the filing of the Class Action Settlement Agreement and Release with this Court, Angeion will cause notice to be disseminated to the appropriate state and federal officials pursuant to the requirements of the Class Action Fairness Act, 28 U.S.C. §1715.

## FRAUD DETECTION

35.    Angeion has developed and deployed a real-time fraud detection system, AngeionAffirm, which is the only comprehensive solution to identify fraud in real time based on both state-of-the-art technology and analysis of over a decade of historical claims data. AngeionAffirm was developed to combat the rising tide of fraudulent claims in class action settlements and the increasingly sophisticated technologies and techniques used by fraudulent actors in their attempt to perpetuate fraud and will be implemented to detect fraudulent claim submissions in this Settlement.

36.    Courts have recognized the success of AngeionAffirm. By way of example, in the Court's July 26, 2024, Report and Recommendation, United States Magistrate Judge Stewart D. Aaron stated, "The Court finds that the claims process administered by Angeion has integrity and has been carried out in a diligent and thorough manner…Based upon the Court's review of the record, the Court finds that Angeion has taken prudent and necessary steps to address the fraudulent claims submitted in this case…Angeion's fraud detection system is robust and appropriately designed to weed out fraudulent claims." (See In re: Novartis and Par Antitrust Litigation, No. 1:18-cv-04361-AKH-SDA, S.D.N.Y, Report and Recommendation, ECF No. 667).

## CLAIMS RATE ANALYSIS

37.    Angeion analyzed past privacy settlements it has administered to assist with estimating the claims rate for the instant settlement. In total, Angeion reviewed approximately 50 settlements, which resulted in an average claims rate of 7.01% and a median claims rate of 3.10%. To minimize the effect of anomalous claim rates, Angeion removed the five lowest and five highest claim rates from the analysis, which resulted in an average claims rate of 5.10% across the remaining 36 settlements reviewed (the median claims rate of 3.10% remained the same).[2]

---

[2] Upon request, Angeion can provide case citations for settlements analyzed in the Claims Rate Analysis section of this declaration.

38.     In light of the historical data reviewed, Angeion estimates that the claims rate in this Settlement will be around the 5% average Angeion has seen in past privacy settlements it has administered.

### ESTIMATED NOTICE AND ADMINISTRATION COSTS

39.     Angeion estimates the cost to provide notice and administration services in this Settlement will be less than $125,000.00.[3]   The pricing details comprising the cost estimate are competitively sensitive. Upon request, Angeion will provide its itemized estimate to the Court.

### CONCLUSION

40.     The Notice Plan outlined above includes direct notice via email or mail to all reasonably identifiable Settlement Class Members, and the implementation of a dedicated Settlement Website and toll-free hotline to further inform Class Members of their rights and options in the Settlement.

41.     In my professional opinion, the Notice Plan described herein will provide full and proper notice to Settlement Class Members and is the best practicable notice under the circumstances, fulfilling all due process requirements, fully comporting with Fed. R. Civ. P. 23 and the Northern District's Procedural Guidance for Class Action Settlements.

42.     After the Notice Plan has concluded, Angeion will provide a final report verifying its effective implementation to this Court.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated:  August 7, 2025

STEVEN WEISBROT

---

[3] The estimate was premised on certain specifications provided to Angeion, such as the approximate Class size and methods for providing notice. Deviations from these underlying specifications may result in additional costs, as the costs of administration are based on the underlying assumptions. Out-of-scope services not included in Angeion's pricing proposal are subject to additional costs.