JULIAN HAMMOND (SBN 268489)
jhammond@hammondlawpc.com
ARI CHERNIAK (SBN 290071)
acherniak@hammondlawpc.com
POLINA BRANDLER (SBN 269086)
pbrandler@hammondlawpc.com
HAMMONDLAW, P.C.
1201 Pacific Ave, 6th Floor
Tacoma, WA 98402
(310) 807-1666 (Tel.)
(310) 295-2385 (Fax)

FRANK S. HEDIN (SBN 291289)
fhedin@hedinllp.com
HEDIN LLP
1395 Brickell Ave, Suite 610
Miami, Florida 33131
(305) 357-2107 (Office)
(305) 200-8801 (Fax)

*Counsel for Plaintiffs and the Putative Classes*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JONATHAN HOANG TO**; **JEFFRY HEISE**; and **JOSEPH MULL**, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>**DIRECTTOU, LLC**, a Delaware Limited Liability Company; and **ALLIANCE ENTERTAINMENT, LLC**, a Delaware Limited Liability Company,<br><br>Defendants. | ) Case No. 3:24-CV-06447-WHO<br>)<br>)<br>)<br>) **PLAINTIFFS' NOTICE OF MOTION**<br>) **AND MOTION FOR FEE AND SERVICE**<br>) **AWARDS**<br>)<br>) Judge:          Hon. William H. Orrick<br>) Courtroom:     2<br>) Hearing Date:  January 28, 2026<br>) Hearing Time: 2:00 p.m.<br>)<br>)<br>)<br>)<br>) |

# TABLE OF CONTENTS

NOTICE OF MOTION ..................................................................................................................i

STATEMENT OF THE ISSUES TO BE DECIDED .................................................................ii

I.    INTRODUCTION ..............................................................................................................1

II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND .................................2

III.  ARGUMENT .....................................................................................................................5

   A.   The Requested Service Awards are Fair and Reasonable and Should be Approved. ..................5

   B.   The Requested Fee Award is Fair and Reasonable and Should be Approved. ...........................6

      1.    The Results Achieved..................................................................................................7

      2.    Litigation Risk ............................................................................................................8

      3.    Skill Required and Adequacy of Work .....................................................................10

      4.    The Contingent Nature of the Fee ............................................................................11

      5.    Awards in Similar Cases ...........................................................................................11

      6.    Class Counsel's Lodestar Confirms the Reasonableness of the Fee Award. ...........12

IV.   CONCLUSION ................................................................................................................12

## TABLE OF AUTHORITIES

**Cases**

*Bloom v. City of San Diego,*
No. 17-CV-02324-AJB-DEB, 2024 WL 4495512 (S.D. Cal. Oct. 15, 2024) --------------------------6

*Eddings v. Health Net, Inc.,*
No. CV 10–1744–JST (RZX), 2013 WL 3013867 (C.D. Cal. 2013) -------------------------------------5

*Eichenberger v. ESPN, Inc.,*
876 F.3d 979 (9th Cir. 2017) -------------------------------------------------------------------------------------9

*Elgindy v. AGA Serv. Co.,*
No. 20-CV-06304-JST, 2024 WL 4634060 (N.D. Cal. Oct. 29, 2024)-------------------------------------6

*Feller, et al. v. Alliance Entertainment, LLC, et al.,*
No. 24-cv-61444-RAR (S.D. Fla.)------------------------------------------------------------------------------3, 4

*Glass v. UBS Fin. Servs., Inc.,*
331 F. App'x. 452 (9th Cir. 2009) ----------------------------------------------------------------------------- 11

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998)-----------------------------------------------------------------------------------6

*In re Bluetooth Headset Prod. Liab. Litig.,*
654 F.3d 935 (9th Cir. 2011) ------------------------------------------------------------------------------------6

*In re Immune Response Sec. Litig.,*
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ------------------------------------------------------------------------7

*In re Lenovo Adware Litig.,*
No. 15-MD-02624-HSG, 2019 WL 1791420 (N.D. Cal. Apr. 24, 2019) ------------------------------- 11

*In re Media Vision Tech. Sec. Litig.,*
913 F. Supp. 1362 (N.D. Cal. 1996)----------------------------------------------------------------------------7

*In re Online DVD-Rental Antitrust Litig.,*
No. 12-15705, 779 F.3d 934 (9th Cir. 2015)-------------------------------------------------------------------6

*In re Pacific Enterprises Sec. Litig.,*
47 F. 3d 373 (9th Cir. 1995)------------------------------------------------------------------------------------ 11

*In re Vizio, Inc., Consumer Priv. Litig.,*
No. 816ML02693JLSKES, 2019 WL 12966638 (C.D. Cal. July 31, 2019) --------------------------- 11

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
19 F.3d 1291 (9th Cir. 1994) ----------------------------------------------------------------------------------- 12

*Lowery v. Rhapsody Int'l, Inc.,*
75 F.4th 985 (9th Cir. 2023)------------------------------------------------------------------------------------6

*Mergens v. Sloan Valve Co.,*
No. CV1605255SJOSKX, 2017 WL 9486153 (C.D. Cal. Sept. 18, 2017) -------------------------------5

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970) --------------------------------------------------------------------------------------------7

*Newton v. Am. Debt Servs.*,
  854 F. Supp. 2d 712 (N.D. Cal. 2012) -------------------------------------------------------------------- 10

*Palmer v. Nigaglioni*,
  508 F. App'x. 658 (9th Cir. 2013) --------------------------------------------------------------------------- 11

*Pincay Investments Co. v. Covad Commc'ns Grp.*,
  90 F. App'x. 510 (9th Cir. 2004) ---------------------------------------------------------------------------- 12

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) --------------------------------------------------------------------------------5

*Six Mexican Workers v. Arizona Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990)------------------------------------------------------------------------------6

*Solomon v. Flipps Media, Inc*,
  136 F.4th 41 (2d Cir. 2025)----------------------------------------------------------------------------------9

*Stark v. Patreon, Inc.*,
  No. 22-CV-03131-JCS, 2025 WL 1592736 (N.D. Cal. June 5, 2025)----------------------------------- 11

*Torrisi v. Tucson Elec. Power Co.*,
  8 F. 3d 1370 (9th Cir. 1993) ---------------------------------------------------------------------------------- 12

*Vizcaino v. Microsoft Cor*p.,
  290 F.3d 1043 (9th Cir. 2002)----------------------------------------------------------------------------7, 8, 10, 11

*Weiner v. Ocwen Fin. Corp.*,
  No. 2:14-CV-02597-DJC-SCR, 2024 WL 4458383 (E.D. Cal. Oct. 10, 2024) -------------------------6

*Zilhaver v. UnitedHealth Group, Inc.*
  646 F. Supp.2d 1075 (D. MN. 2009)--------------------------------------------------------------------------7

**Statutes**

18 U.S.C. § 2710------------------------------------------------------------------------------------------------1

**Rules**

Federal Rule of Civil Procedure 23---------------------------------------------------------------------------7

## NOTICE OF MOTION

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on January 28, 2026, at 2:00 p.m., or as soon thereafter as this matter may be heard, before the Honorable William H. Orrick in Courtroom 2, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs Jonathan Hoang To, Jeffry Heise, and Joseph Mull ("Plaintiffs"), on behalf of themselves and the putative Class, by and through their Counsel, shall and hereby do, respectfully move the Court for entry of an Order in the above-captioned action (the "Action"):

1. Approving an award of attorneys' fees to Class Counsel in the amount of $394,250, which represents 25% of the Settlement Fund ($394,250), and only 31% of Class Counsel's lodestar;

2. Approving a costs award of $20,000 in out-of-pocket expenses incurred by Class Counsel, which is $8,679.92 less than the costs incurred by Class Counsel to date; and

3. Approving Service Awards of $5,000 to each of the three Class Representatives (for a total of $15,000).

This Motion is based on: the Memorandum of Points and Authorities below and the exhibits thereto; the Declaration of Julian Hammond; the Declaration of Frank S. Hedin; the Court's record in this matter; and such oral and documentary evidence as may be presented at or before the hearing on this matter.

## **STATEMENT OF THE ISSUES TO BE DECIDED**

The issues to be decided on this Motion are:

1.      Whether the Service Awards requested by Class Representatives are fair and reasonable and should be approved; and

2.      Whether the Fee and Costs Awards requested by Class Counsel is fair and reasonable and should be approved.

Plaintiffs and Class Representatives Jonathan Hoang To, Jeffry Heise, and Joseph Mull, on behalf of themselves and the putative Class, hereby move on an unopposed basis for an award of attorneys' fees and expenses and service awards (the "Motion") in connection with the preliminarily approved class-wide Settlement Agreement entered into between Plaintiffs and Defendants DirectToU, LLC and Alliance Entertainment, LLC (collectively, the "Parties").[1]

## I.   INTRODUCTION

In this putative class action, Plaintiffs allege that Defendants disclosed their personally identifying video-viewing information to third parties in violation of the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq*. (the "VPPA") and California law, and seek statutory damages and injunctive relief on behalf of themselves and a nationwide class (as well as a subclass in California).

After over a year of litigation involving multiple cases proceeding in state and federal court, and on the eve of the Court granting Defendants' motion to compel arbitration, the Parties reached a comprehensive class-wide resolution to this Action, which the Court preliminarily approved in its order dated November 3, 2025. Dkt. 100. The preliminarily approved Settlement requires Defendants to establish an all-cash, non-reversionary settlement fund of $1,577,000, which will be used to pay all cash-awards to Settlement Class Members, Settlement Administration Costs, Service Awards to the Class Representatives, and a Fee Award to Class Counsel. The Settlement also requires Defendants to implement meaningful changes to their data-sharing practices going forward.

Following preliminary approval, the Settlement Administrator disseminated the Class Notice to the approximately 291,128 Settlement Class Members. To date, thousands of Settlement Class Members have already submitted claims (and more continue to submit claims each day), none have objected to the Settlement, and only 12 have requested exclusion from the Settlement.

---

[1]   Unless otherwise defined herein, all capitalized terms have the same force, meaning and effect as ascribed in Section II ("Definitions") of the Settlement Agreement.

Class Counsel invested an enormous amount of time and significant resources, monetary and otherwise, investigating and litigating these claims and negotiating the Settlement on behalf of the Settlement Class – a high-risk undertaking that no other attorneys were willing to take on and which ultimately produced an extraordinary result for consumers nationwide. The Class Representatives likewise played an invaluable role in this action by assisting their counsel at every stage of the proceedings, including by providing counsel with key documents and information regarding their claims, reviewing pleadings and other filings in the case, staying in regular contact with counsel and abreast of the proceedings, and taking an active role in the settlement process.  Class Counsel continue to devote substantial time and resources to this action on a daily basis – including by overseeing of the notice and administration process, fielding Settlement Class Members' inquiries concerning the Settlement, and assisting Settlement Class Members file claims – and they will continue to do so until the Settlement administration process concludes and funds have been disbursed to class members.

Class Representatives and Class Counsel respectfully request the Court's approval of Service Awards of $5,000 to each of the three Class Representatives (for a total of $15,000 in Service Awards) and an attorneys' fee award of $394,250, which represents 25% of the $1,577,000 Settlement Fund, in addition to $20,000 in litigation expenses incurred by Class Counsel. As detailed below, the requested awards are firmly supported by governing Ninth Circuit precedent and constitute fair compensation for the work performed by Class Counsel and Class Representatives in this high-risk litigation.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On August 12, 2024, Plaintiff Hoang To filed this putative class action lawsuit in Alameda County Superior Court, alleging that Defendant DirectToU violated the VPPA and California's UCL by disclosing its California customers' personally identifying information ("PII") via the Meta pixel. Defendant removed the case on September 12, 2024 (Dkt. 1), and Plaintiff subsequently amended the complaint to include a nationwide class with a California subclass (Dkt. 10). On October 23, 2024,

Plaintiff Hoang To and Defendant DirectToU executed a Class Action Settlement Agreement and subsequently moved for preliminary approval. *See* Dkt. 29-1.

On October 28, 2024, Counsel for Plaintiffs in *Feller, et al. v. Alliance Entertainment, LLC, et al.*, No. 24-cv-61444-RAR (S.D. Fla.), filed a Motion to Intervene and to dismiss, stay, or transfer the instant case to the Southern District of Florida pursuant to the first-to-file doctrine. Dkt. 14.

Following a hearing on the *Feller* Plaintiffs' motion to intervene and dismiss and Plaintiff Hoang To's motion for preliminary approval, the Court denied both motions. Dkt. 57. In denying the motion for preliminary approval, without prejudice, the Court "encourage[d] all counsel – for the parties and for *Feller* – to meet and confer to determine if a revised global settlement can be reached that appropriately accounts for the non-Meta pixel claims," or alternatively to submit "a renewed motion for preliminary approval that provides a reasoned valuation for the non-Meta pixel claims and additional support demonstrating that the existing settlement was reached after sufficient discovery, all showing why the settlement is fair, reasonable, and adequate." Dkt. 57 at 1.

Counsel for Plaintiff Hoang to and the *Feller* Plaintiffs subsequently agreed to jointly prosecute this litigation on behalf of the proposed Classes. In an attempt to present a renewed motion for preliminary approval with a valuation of the non-Meta pixel claim, Plaintiff Hoang To obtained informal discovery from Defendant DirectToU related to the non-Meta pixel claim.  The discovery revealed that Defendants maintained four or five spreadsheets with consumer data that data brokers could access, but no single spreadsheet contained information that could be used to match a particular consumer to the video title he/she purchased. And, a link could be made only if data was combined and reverse engineered. While Plaintiffs sought additional discovery in order to create a more robust record for settlement, settlement negotiations broke down.

Plaintiffs then filed the operative Third Amended Complaint (Dkt. 68), adding two of three *Feller* plaintiffs as named plaintiffs, adding Alliance Entertainment, LLC (a defendant in the *Feller*

Action) as a named Defendant, and including additional factual allegations supporting the existing claims. Defendants responded by filing a motion to compel individual arbitration. (Dkt. 80-82.) Following full briefing, the Court held a hearing on June 4, 2025. Based on the Court's questions and statements at the hearing, Plaintiffs' counsel believed the Court was likely to grant the motion.

Recognizing the risks Plaintiffs and putative Class members faced if the Court granted Defendants' motion, Plaintiffs' counsel contacted Defendant's counsel on June 5, 2025 to explore potential settlement. Declaration of Frank S. Hedin ("Hedin Decl.") ¶ 8. After further discussions over the following week, the parties, through their respective counsel, reached an agreement on all material terms by e-mail on June 12, 2025, resulting in the Settlement now before the Court. *See id.* ¶ 9.

On June 13, 2025, as the parties were working to finalize a notice of settlement to file with the Court, the Court issued an Order granting Defendants' motion to compel arbitration and stayed the case. Dkt. 93.

Following the Court's Order compelling arbitration, the parties executed the formal Settlement Agreement. As set out in detail in the Hammond and Hedin Declarations, the Settlement is a product of informed, arm's-length negotiations. *See* Declaration of Julian Hammond ("Hammond Decl.") ¶ 37-38; Hedin Decl. ¶ 11. Plaintiffs' counsel also conducted an extensive pre-filing investigation into the factual and legal issues relevant to the claims alleged in this action and the related *Feller* Action, and obtained additional data and information from Defendants as part of informal discovery. Hammond Decl. ¶ 25, 32; Hedin Decl. ¶¶ 4-5.

On August 8, 2025, Plaintiffs filed a motion for preliminary approval of the Settlement (Dkt. 95), which the Court granted in a written Order dated September 22, 2025. Dkt. 100.

Following preliminary approval of the Settlement, the Settlement Administrator completed the Court-approved Notice Plan, disseminating the Class Notice directly to Settlement Class Members by e-mail and establishing the Settlement Website.

### III.    ARGUMENT

The requested Service Awards and Fee Award are fair and reasonable and warrant approval. The Motion should be granted.

#### A.  The Requested Service Awards are Fair and Reasonable and Should be Approved.

First, the Court should approve Service Awards to each of the three Class Representatives in the amount of $5,000 (for a total of $15,000), as provided for in the preliminarily approved Settlement Agreement. *See* Dkt. 95-2 at 26; Settlement Agreement ¶ 8.1.

It is customary and appropriate to provide a service award to a named plaintiff in recognition of his or her services to the class. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) ("Incentive awards are fairly typical in class action cases."); *Eddings v. Health Net, Inc.*, No. CV 10–1744–JST (RZX), 2013 WL 3013867, at *7 (C.D. Cal. 2013) ("Courts have the discretion to award incentive payments to named plaintiffs as compensation for their actions taken on behalf of the class."). "In the Ninth Circuit, a $5,000 incentive award is "presumptively reasonable."" *Mergens v. Sloan Valve Co.*, No. CV1605255SJOSKX, 2017 WL 9486153, at *13 (C.D. Cal. Sept. 18, 2017).

Here, the Class Representatives have adequately represented nearly three hundred thousand consumers whose personally identifiable information (pertaining to their purchases of video materials from Defendants) was allegedly transmitted to third parties without their consent. Each of the Class Representatives participated throughout counsel's investigation, including by:  providing facts and follow-up related to their purchases of video materials from Defendants' websites, requesting, obtaining, and providing documentary support therefor, reviewing the operative pleadings, reviewing the motions and other court filings in the litigation, participating in scheduling and case management for this matter, and reviewing and ultimately executing the Settlement.  *See* Hedin Decl. ¶ 19; Hammond Decl. ¶ 52. The modest $5,000 service award sought by each of the Class Representatives (which, in total, represent less than 1% of the total Settlement Fund) is presumptively reasonable and on par with service awards

recently approved by district courts of the Ninth Circuit in other consumer matters. *See e.g.*, *Elgindy v. AGA Serv. Co.*, No. 20-CV-06304-JST, 2024 WL 4634060, at *11 (N.D. Cal. Oct. 29, 2024) (approving service awards of $5,000 to each named plaintiff); *Bloom v. City of San Diego*, No. 17-CV-02324-AJB-DEB, 2024 WL 4495512, at *8 (S.D. Cal. Oct. 15, 2024) (approving service awards of $7,500 to each named plaintiff); *Weiner v. Ocwen Fin. Corp.*, No. 2:14-CV-02597-DJC-SCR, 2024 WL 4458383, at *6 (E.D. Cal. Oct. 10, 2024) (approving service award of $5,000 to named plaintiff).

Accordingly, Service Awards of 5,000 to each of the three Class Representatives (for a total of $15,000) are fair and reasonable and should be approved.

**B.  The Requested Fee Award is Fair and Reasonable and Should be Approved.**

Second, the Court should approve an award of attorneys' fees to Class Counsel in the amount of $394,250 – which represents 25% of the Settlement Fund – plus $20,000 in litigation expenses incurred by Class Counsel, as provided for in the preliminarily approved Settlement Agreement. *See* Dkt. 95-2 at 26; Settlement Agreement ¶ 8.3.

District courts of the Ninth Circuit have discretion to  award attorneys' fees to class counsel under either the percentage-of-the-fund method or the lodestar-times-multiplier method. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  However, when it comes to all-cash, non-reversionary class action settlements – like the Settlement here – a fee award of 25% of the settlement's gross recovery is the benchmark in the Ninth Circuit.  *See e.g., Lowery v. Rhapsody Int'l, Inc.,* 75 F.4th 985, 990 (9th Cir. 2023); *In re Online DVD-Rental Antitrust Litig.*, No. 12-15705, 779 F.3d 934, 949 (9th Cir. 2015); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).  This well-established "benchmark percentage should be adjusted, or replaced by a lodestar calculation," only "when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *See Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

In determining whether any such "special circumstances" exist, district courts consider the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).

In this case, Class Counsel seek an attorneys' fee award of 25% of the Settlement Fund (the benchmark in the Ninth Circuit) plus reimbursement of $20,000 in out-of-pocket litigation expenses reasonably incurred prosecuting and resolving the action – a request that is firmly supported by each of the *Vizcaino* factors.[2]

### 1.    The Results Achieved

First, as set forth in Plaintiffs' Unopposed Motion for Preliminary Approval, which the Court granted on September 22, 2025, the Settlement recovers substantial monetary and non-monetary relief to the Settlement Class. *See Vizcaino*, 290 F.3d at 148.

Specifically, the Settlement requires Defendants to pay $1,577,000, on a non-reversionary basis, for the benefit of the approximately 291,128 members of the Settlement Class.  Each Settlement Class Member who submits a Valid Claim is expected to receive a check or electronic payment (as elected by

---

[2]    As a threshold matter, and as provided in the Settlement Agreement (SA ¶ 8.1), Class Counsel seeks reimbursement from the Settlement Fund of $20,000 in out-of-pocket expenses – less than the $28,679.92 in total expenses incurred in the prosecution of this action – in addition to the attorneys' fee award discussed below.  Hedin Decl. ¶ 18; Hammond Decl. ¶ 51. Class Counsel's expenses to date include the following: (1) filing and service of process fees; (2) Plaintiffs' share of mediation fees; (3) expert consultation fees; and (4) legal research-related costs. *See* Hedin Decl. ¶ 18; Hammond Decl. ¶ 49.  These expenses, which were paid by Class Counsel without any assurance of reimbursement, were necessary to effectively litigate and successfully resolve the case and should thus be approved.  *See* Fed. R. Civ. P. 23(h); *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970) ("Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement."); *Zilhaver v. UnitedHealth Group, Inc.* 646 F. Supp.2d 1075, 1084-85 (D. MN. 2009) ("The common fund doctrine provides that a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation[.]"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (finding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation expenses are relevant and necessary expenses in a class action litigation).

the Settlement Class Member on the Claim Form) for approximately $70.60 (assuming a 5% claims rate). Class Counsel negotiated the Settlement on the eve of the Court's order granting Defendants' motion to compel arbitration. Absent Class Counsel's pursuit of this action, and prudent decision to enter into the Settlement prior to the Court's issuance of its order compelling arbitration, Settlement Class Members would almost certainly have recovered no relief for their claims.

Accordingly, the first factor confirms the reasonableness of the requested Fee Award.

### 2.    Litigation Risk

Second, as set forth in further detail in Plaintiffs' motion for preliminary approval, this case involved several complex issues of fact and law and presented significant risks for Class Counsel at the outset. *See Vizcaino*, 290 F.3d at 148-49.

Most notably, the Settlement was negotiated while Defendants' Motion to Compel Arbitration was pending and after the hearing on that motion that led Plaintiffs' counsel to reasonably believe that the Court would grant it. The Settlement was finalized only one day before the Court in fact ordered individual arbitration of Plaintiffs' claims. Recognizing that such an order  would require Class Members to pursue individual arbitrations to obtain relief, exposing them to the significant risks and expense of individual arbitrations, including the possibility of adverse rulings with limited appeal and invasive discovery such as forensic imaging of their devices, Plaintiffs' counsel promptly initiated settlement discussions and was able to negotiate the proposed Settlement prior to the Court's issuance of its order compelling arbitration. Thus, the risk of Plaintiffs being compelled to arbitration at the time the Settlement was finalized – a risk that actualized the following day when the Court granted Defendant's motion to compel arbitration – firmly supports both the reasonableness of the Settlement and the requested Fee Award.

Additionally, there was a risk that the Court would dismiss Plaintiffs' pixel-based and non-Meta pixel based VPPA claims by adopting the reasoning of the Second Circuit's decision in *Solomon v.*

8

*Flipps Media, Inc,* 136 F.4th 41 (2d Cir. 2025), issued on May 1, 2025. In *Solomon*, the Second Circuit held that a VPPA violation required that an ordinary person be able to identify a particular person as having viewed a particular video and that Plaintiffs failed to "plausibly allege that an ordinary person could identify [the plaintiff] through her FID," since an ordinary person would not see or figure out the meaning of the "c_user" cookie and the corresponding string of letters "and conclude that the phrase was a person's FID." *Solomon*, 136 F.4th at 54-55. This risk also supports both the reasonableness of the Settlement and the requested Fee Award.

Moreover, Defendants here could have argued that Plaintiffs' Complaint, which also allege that the "Meta Pixel automatically caused the Plaintiffs' and Defendants' other customers' personal identifiers, including IP addresses and the c_user, _fr, _and datr cookies, to be transmitted to Meta", does not plausibly allege that an ordinary person could identify plaintiffs through the Facebook ID. Dkt. 68, ¶ 38. Defendants would have contended that the Ninth Circuit has also adopted the "ordinary person" standard and Plaintiffs' claims should be dismissed. *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (adopting ordinary person standard).

Courts have increasingly embraced Solomon's reasoning. In *Nixon et al v. Pond5, Inc.,* Case No. 1:24-cv-05823-JLR (July 21, 2025), the court granted a motion to dismiss VPPA claims, stating:

> [T]he Second Circuit has now twice rejected this theory, finding it implausible "that an ordinary person, without [] annotation . . . , would see the 'c_user' phrase on [this transmission] and conclude that the phrase was a person's FID" or "use an FID to identify [plaintiff].

*Solomon*, 136 F.4th at 54.

Defendant could also argue that the same logic bars non-Meta pixel claims because an ordinary person would know how to combine the information from the spreadsheets and how to reverse engineer it to figure out the video title purchased by a particular person.

Further risk stemmed from the damages limitation clause in the Terms of Use on each of Defendants' websites, which purports to limit recovery at the purchase price of the goods each Class Member obtained. Plaintiffs believe such a clause is substantively unconscionable and unenforceable, particularly as it deprives consumers of statutory relief. *See Newton v. Am. Debt Servs.*, 854 F. Supp. 2d 712, 725 (N.D. Cal. 2012). Nonetheless, Plaintiffs acknowledge that enforcement of this clause would significantly restrict recovery—especially statutory damages—and dramatically reduce Defendants' exposure. This too made the litigation more risky for Class Counsel, further confirming the reasonableness of the requested Fee Award.

Accordingly, the second factor confirms the reasonableness of the requested Fee Award.

### 3. Skill Required and Adequacy of Work

Third, the law firms serving as Class Counsel in this matter have the requisite skill and have adequately performed the necessary work to effectively represent the Settlement Class. *See Vizcaino*, 290 F.3d at 149.

The attorneys working on this matter have been appointed class counsel and lead counsel through both certification and settlement of numerous class actions. Hedin Decl. ¶¶ 22-24; Hammond Decl. ¶ 11-20. Class Counsel's experience in consumer class actions was integral in evaluating the strengths and weaknesses of the case against Defendant, as well as the reasonableness of the Settlement. These evaluations included an analysis of the relief ultimately obtained, the probable hurdles to class certification, and merits and damages defenses. Class Counsel spent significant effort and exhibited considerable skill in developing the factual and legal claims in the case, refining these claims through multiple amendments of the complaint informed by counsel's ongoing investigation, and in ultimately negotiating the Settlement. Through these efforts and in the face of difficult issues of fact and law, Class Counsel obtained meaningful monetary and non-monetary relief for Settlement Class Members.

Accordingly, the third factor confirms the reasonableness of the requested Fee Award.

### 4.    The Contingent Nature of the Fee

Fourth, Class Counsel undertook and funded this litigation on a purely contingent basis, with no assurance of recovering any out-of-pocket expenses or attorneys' fees. *See Vizcaino*, 290 F.3d at 149-50; *see also* Hedin Decl. ¶ 17; Hammond Decl. ¶¶ 6-7. Class Counsel expended considerable time and resources investigating and prosecuting the case successfully on behalf of the Class, *see* Hedin Decl. ¶¶ 17-18; Hammond Decl. ¶ 21, and the requested Fee Award here will, if approved, fairly reward Class Counsel for doing so without any guarantee of recovery or payment for their services.

Accordingly, the fourth factor confirms the reasonableness of the requested Fee Award.

### 5.    Awards in Similar Cases

Fifth, the Fee Award sought by Class Counsel aligns well with the attorneys' fees awarded by district courts of the Ninth Circuit in similar cases. *Vizcaino*, 290 F.3d at 150.

As explained above, Class Counsel seeks an attorneys' fee award that matches the benchmark in the Ninth Circuit of 25% of the Settlement Fund, which numerous courts have either met or exceeded in awarding fees in similar matters. *See, e.g., Stark v. Patreon, Inc.*, No. 22-CV-03131-JCS, 2025 WL 1592736, at *10 (N.D. Cal. June 5, 2025) (awarding 30% of settlement fund in attorneys' fees in VPPA class action settlement); *In re Vizio, Inc., Consumer Priv. Litig.*, No. 816ML02693JLSKES, 2019 WL 12966638, at *6 (C.D. Cal. July 31, 2019) (awarding 33% of settlement fund in attorneys' fees in VPPA class action settlement); *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2019 WL 1791420, at *9 (N.D. Cal. Apr. 24, 2019) (awarding 30% in consumer privacy litigation); *In re Pacific Enterprises Sec. Litig.*, 47 F. 3d 373, 379 (9th Cir. 1995) (affirming 33.3% of the fund as fee award); *Palmer v. Nigaglioni*, 508 F. App'x. 658, 658 (9th Cir. 2013) (28%); *Vizcaino*, 290 F. 3d at 1048-50 (28%); *Glass v. UBS Fin. Servs., Inc*., 331 F. App'x. 452, 457 (9th Cir. 2009) (25%); *Pincay Investments Co. v. Covad Commc'ns Grp*., 90 F. App'x. 510, 511-12 (9th Cir. 2004) (25%); *Torrisi v. Tucson Elec. Power Co*., 8 F. 3d 1370 (9th Cir. 1993) (25%).

11

Accordingly, the fifth and final factor confirms the reasonableness of the requested Fee Award.

### 6.    Class Counsel's Lodestar Confirms the Reasonableness of the Fee Award.

Finally, Class Counsel's lodestar – the number of hours reasonably expended on this matter by counsel multiplied by counsel's hourly rates, *see In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994) – totals approximately $1,273,973, *see* Hammond Decl. ¶ 22; Hedin Decl. ¶ 17, which far exceeds the 25% of the Settlement Fund ($394,250) sought as a fee.  Accordingly, Class Counsel's lodestar, to the extent the Court finds it relevant, further confirms the reasonableness of the requested Fee Award.

In short, Class Counsel invested substantial time and money for the benefit of the Settlement Class, at significant risk of nonpayment. In light of those risks and the result that Class Counsel ultimately achieved for the Settlement Class, the requested Fee Award is eminently fair and reasonable and should be approved.

## IV.    CONCLUSION

For the foregoing reasons, the Motion should be granted and the Court should approve the following payments from the Settlement Fund, to be made in the time and manner set forth in the Settlement Agreement: (1) Service Awards to each of the three Class Representatives in the amount of $5,000 (for a total of $15,000); and (2) a Fee Award of $414,250 to Class Counsel (comprised of 25% of the Settlement Fund and $20,000 in litigation expenses).

Dated:  January 6, 2026                              Respectfully submitted,

                                                     /s/ Frank S. Hedin
                                                     Frank S. Hedin
                                                     *Class Counsel*