JULIAN HAMMOND (SBN 268489)
jhammond@hammondlawpc.com
ARI CHERNIAK (SBN 290071)
acherniak@hammondlawpc.com
POLINA BRANDLER (SBN 269086)
pbrandler@hammondlawpc.com
HAMMONDLAW, P.C.
1201 Pacific Ave, 6th Floor
Tacoma, WA 98402
(310) 601-6766 (Tel.)
(310) 295-2385 (Fax)

FRANK S. HEDIN (SBN 291289)
fhedin@hedinllp.com
HEDIN LLP
1395 Brickell Ave, Suite 610
Miami, Florida 33131
(305) 357-2107 (Office)
(305) 200-8801 (Fax)

*Counsel for Plaintiffs and the Putative Classes*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JONATHAN HOANG TO**; **JEFFRY HEISE**; and **JOSEPH MULL**, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>**DIRECTTOU, LLC**, a Delaware Limited Liability Company; and **ALLIANCE ENTERTAINMENT, LLC**, a Delaware Limited Liability Company,<br><br>Defendants. | Case No. 3:24-CV-06447-WHO<br><br>**DECLARATION OF FRANK S. HEDIN IN SUPPORT OF PLAINTIFFS' MOTION FOR FEE AND SERVICE AWARDS**<br><br>Judge:        Hon. William H. Orrick<br>Courtroom:    2<br>Hearing Date:  January 28, 2026<br>Hearing Time: 2:00 p.m. |

I, Frank S. Hedin, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746 and based on my own personal knowledge, that the following statements are true:

1. I am a member in good standing of the State Bar of California and the Florida Bar, and the founding partner at the law firm Hedin LLP.

2. I am counsel of record for the Plaintiffs in the above-captioned matter and the putative Settlement Class.

3. I make this declaration in support of the Motion for Fee and Service Awards filed by Plaintiffs in the above-captioned action.

**I.    HISTORY OF THE LITIGATION & SETTLEMENT NEGOTIATIONS**

4. Prior to bringing suit on behalf of the plaintiffs and putative class in the related action *Feller et al. v. Alliance Entertainment, LLC, et al.,* No. 24-cv-61444-RAR (S.D. Fla.), my firm performed an extensive and time-consuming investigation into the conduct underlying these claims over a period of several years (dating back to 2019). Specifically, my firm (i) thoroughly investigated and reviewed current and historical versions of Defendants' data cards publicly accessible on Nextmark.com and other data-brokerage websites, over a period of several years dating back to 2019; (ii) researched numerous online trackers created by different technology companies, including learning how they operate, how to find them in website source code, and how to identify what information is being tracked and transmitted; (iii) engaged with a consulting expert and investigated Defendants' numerous websites and their use of tracking technologies on those website, including parsing through Defendants' websites' source code; (iv) researched whether Defendants' use of tracking pixels violated the VPPA; (v) communicated with and reviewed materials provided by numerous potential clients who interacted with and made purchases on Defendants' websites, in order to determine whether they were capable of adequately representing the interests of the proposed classes; (vi) investigated the adequacy of the named Plaintiffs to represent the putative classes and executed engagement agreements to represent them in this matter; and (vii) prepared the Class Action Complaint on behalf of the proposed classes.

5. After filing the *Feller* action, my firm vigorously litigated the action, including by serving comprehensive written discovery requests to Defendants, serving notices of deposition to

Defendants' corporate representatives, serving third-party subpoenas for documents and deposition testimony to relevant third parties, consulting with potential experts, and preparing motions and other filings on behalf of the proposed classes.  My firm also prepared and served first sets of requests for production of documents and interrogatories on Defendants, seeking razor-focused categories of information, documents, communications, and electronically-stored information concerning each of the factual and legal issues relevant to their claim for violation of the VPPA, Defendants' likely defenses thereto, and the certification of the proposed classes pursuant to Rule 23.  My firm also served notices of deposition of Defendants' corporate representatives.

6.    After the parties to the instant *Hoang To* action reached a proposed class-wide settlement, my firm drafted and filed a detailed motion to dismiss, stay, or transfer, as well as objections to the motion for preliminary approval filed by the plaintiff in the *Hoang To* action. After the Court denied those motions, my firm reached an agreement to jointly prosecute this action with HammondLaw, P.C. and filed a consolidated Third Amended Complaint.

7.    On June 4, 2025, the Court held a hearing on Defendants' motion to compel arbitration. (ECF No. 92.)  Based on what transpired during that hearing, I believed that the Court would almost certainly grant the motion to compel arbitration in the near future.  I also recognized that that an order from this Court compelling Plaintiffs to individual arbitration would leave class members not only unable to recover relief in this litigation, but also completely unaware of the existence of their viable (and arbitrable) VPPA claims against Defendants.

8.    Thus, following the June 4, 2025 hearing on the motion to compel arbitration, my co-counsel and I acted quickly to negotiate a deal on behalf of Plaintiffs and the proposed Class that provides meaningful relief to the Class before the Court entered its order compelling Plaintiffs to arbitration. On June 5, 2025, a day after the hearing held by the Court on Defendant's motion to compel arbitration, I called Joel Griswold, Defendants' counsel, to discuss potential settlement of this matter.

9.    On June 12, 2025, following additional back and forth over the course of a week between Mr. Griswold and me by telephone and e-mail, the parties were able to reach an agreement on all material terms of the Settlement presently before the Court for approval.

10.    The following day, the Court issued its order granting Defendants' motion to compel arbitration, as my co-counsel and I were working with Defendants' counsel to finalize a notice of settlement to file with the Court.

11.    All of the negotiations that produced the proposed Settlement were at arm's-length. The decision to enter into the proposed Settlement on behalf of the proposed Class was made on an informed basis, after careful consideration of the risks posed by the pending motion to compel arbitration and the fact that, if granted, putative class members would be unable to recover any relief in this litigation.

12.    Prior to entering into the proposed Settlement, I also recognized that, even apart from the pending motion to compel arbitration, several other significant risks associated with class certification and the merits would have threatened the ability of the putative class to recover relief if the litigation continued.

13.    In particular, when the proposed Settlement was negotiated, I believed that Defendants' primary defenses would center on the potential difficulties Plaintiffs would encounter in establishing whether any specific Class Member's Personally Identifiable Information ("PII") was disclosed via tracking tools, including the Meta Pixel, or was sold or otherwise disclosed to data brokers and other third parties. Based on my experience, I also recognized the difficulties associated with obtaining discovery from Meta and other third parties implicated in this litigation, and that those difficulties posed a substantive risk to recovery for the putative class.

14.    Additionally, given the aggregate sum of statutory damages at stake – approximately $727,820,000 – I believed that Defendants would challenge any adverse judgment entered against them on substantive due process grounds.

15.    Although the operative pleading also alleges that Defendants disclosed Plaintiffs' and Class members' PII to other third parties on the data-brokerage marketplace – which would ordinarily justify a per-class member recovery in excess of the per-head market rate for settlements in cases solely involving Meta Pixel disclosures – the circumstances of this case at the time of Settlement were far from ordinary.  Indeed, as discussed above, at the time the Settlement was negotiated, my firm and my co-counsel firmly believed (correctly, as it turned out) that the Court was likely to compel Plaintiffs to

arbitrate their claims individually, leaving them unable to continue prosecuting this litigation on behalf of the proposed Class. My co-counsel and I thus concluded that the only reasonably chance Settlement Class members had of recovering any relief for their claims, in this litigation or elsewhere, was through the proposed Settlement, and that the need to enter into it before the Court issued its order compelling arbitration outweighed whatever settlement value the data-brokerage disclosures may otherwise have added under different circumstances.

16.    Given the circumstances in which the proposed Settlement was negotiated, I consider it to be an outstanding result for the Settlement Class.

17.    From the commencement of our pre-filing investigation into this matter through the present, the attorneys at my firm and I have collectively expended 1,130.7 hours of attorney time, valued at $834,415 at our current hourly rates, performing the above-described categories of work investigating, developing, litigating, and ultimately resolving this litigation, all on a purely contingent basis, broken down by timekeeper as follows:

| Timekeeper | Year Admitted | 2026 Rates | Hours | Lodestar |
|---|---|---|---|---|
| Frank S. Hedin | 2012 | $850.00 | 515.3 | $438,005 |
| Arun G. Ravindran | 2007 | $700.00 | 189.1 | $132,370 |
| Julie Holt | 2011 | $600.00 | 89.3 | $53,580 |
| Paula S. Buzzi | 2013 | $600.00 | 254.4 | $152,640 |
| Tyler K. Somes | 2018 | $700.00 | 82.6 | $57,820 |
| Total | | | 1,130.7 | $834,415 |

18.    My firm has also expended $14,698.75 in out-of-pocket expenses developing, prosecuting, and resolving this litigation. These expenses fell into the following categories:

| Category | Total Amount |
|---|---|
| Mediation fees | $11,577.65 |
| Filing fees | $405.00 |
| Service of process fees (complaint and subpoenas) | $750.00 |
| Research (Pacer, Westlaw) | $1,966.10 |
| Grand Total | $14,698.75 |

19. The proposed Class Representatives, Mr. Hoang To, Mr. Heise, and Mr. Mull, have also actively participated in this action and in reaching this Settlement. Each of the Class Representatives participated throughout counsel's investigation, including by: providing facts and follow-up related to their purchases of video materials from Defendants' websites, requesting, obtaining, and providing documentary support therefor, reviewing the operative pleadings, reviewing the motions and other court filings in the litigation, participating in scheduling and case management for this matter, and reviewing and ultimately executing the Settlement.

20. None of the Plaintiffs nor any attorney or employee at Hedin LLP has any relationship with the proposed cy pres – EPIC. There is no connection between any of the Plaintiffs or anyone at Hedin LLP, on the one hand, and EPIC, on the other, that could create the impression of any impropriety of any sort in the selection of EPIC as the *cy pres* recipient in this case.

## II.    HEDIN LLP'S EXPERIENCE

21. I co-founded Hedin LLP, then known as Hedin Hall LLP, in 2018. I previously served as law clerk to the Honorable William Q. Hayes, U.S. District Judge for the Southern District of California, and as an attorney at a Miami-based litigation boutique, where I started the firm's class-action practice.

22. Hedin LLP is based in Miami, Florida, with offices in San Francisco, California, and Washington D.C. The firm focuses on consumer and data privacy class actions and has successfully prosecuted dozens of such matters in state and federal courts as court-appointed class counsel. *See e.g., Rivera et al. v. Google, LLC*, No. 2019-CH-00990 (Cir. Ct. Cook Cnty. Ill., Apr. 5, 2022) (class counsel in action alleging violations of Illinois's Biometric Information Privacy Act ("BIPA"), obtained $100 million non-reversionary class settlement); *Schreiber et al. v. Mayo Foundation for Medical Education & Research*, No. 22-cv-00188 (W.D. Mich.) (counsel for class of consumers alleging defendant's sale, rental, and disclosure of mailing containing its subscribers' personal information in violation of Michigan's Preservation of Personal Privacy Action ("PPPA"), obtained $52.5 million non-reversionary class settlement with automatic payments (without the need to submit claim forms) to each of the approximately 67,000 class members); *Edwards v. Hearst Communications, Inc.*, 1:15-cv-09279-AT-JLC (S.D.N.Y.) (same, $50 million non-reversionary class settlement); *Kokoszki v. Playboy Enters.,*

*Inc.*, No. 19-cv-10302 (E.D. Mich.) (same, $3.8 million non-reversionary class settlement with automatic payments to all class members); *Pratt et al. v. KSE Sportsman Media, Inc.*, No. 21-cv-11404 (E.D. Mich.) (same, $9.5 non-reversionary class settlement with automatic payments to all class members); *Kain v. The Economist Newspaper NA, Inc.*, No. 21-cv-11807 (E.D. Mich.) (same, $9.5 million non-reversionary class settlement with automatic payments to all class members); *Strano v. Kiplinger Washington Editors, Inc.*, No. 21-cv-12987 (E.D. Mich.) (same, $6.8 million non-reversionary class settlement with automatic payments to all class members); *Moeller v. The Week Publications, Inc.*, No. 22-cv-10666 (E.D. Mich.) (same, $5 million non-reversionary class settlement with automatic payments to all class members); *Olsen, et al. v. ContextLogic Inc.*, No. 19CH06737 (Cir. Ct. Cook Cnty. Ill., Jan 7, 2020) (class counsel in action alleging violations of the of the federal Telephone Consumer Protection Act ("TCPA"), obtained $16 million non-reversionary class settlement); *Chimeno-Buzzi v. Hollister Co.*, No. 14-cv-23120 (S.D. Fla.) (same, $10 million non-reversionary class settlement); *Farnham v. Caribou Coffee Co., Inc.*, No. 16-cv-295 (W.D. Wisc.) (same, $8.5 million non-reversionary class settlement); *Benbow v. SmileDirectClub, Inc.*, No. 2020-CH-07269 (Cir. Ct. Cook Cnty.) (same, $11.5 million class settlement); *Donahue v. Everi Payments, Inc., et al.*, No. 2018-CH-15419 (Cook Cnty., Ill. Cir. Ct.) (class counsel in action alleging disclosure of consumers' credit and debit card information on printed transaction receipts in violation of the federal Fair and Accurate Credit Transactions Act, obtained $14 million non-reversionary class settlement); *Owens, et al. v. Bank of America, N.A., et al.*, No. 19-cv-20614 (S.D. Fla.) (class counsel in action alleging improper overdraft fees in violation of state law, obtained $4.95 million non-reversionary class settlement with automatic payments to all class members); *Liggio v. Apple Federal Credit Union*, No. 18-cv-1059 (E.D. Va.) (same, $2.7 million non-reversionary class settlement); *In re Maxar Technologies Inc. Shareholder Litigation*, No. 19CV357070 (Cal. Sup. Ct., Santa Clara Cnty.) (class counsel in action alleging false and misleading statements to investors in violation of federal securities laws, obtained $36.5 million non-reversionary settlement for class); *Plymouth County Retirement System v. Impinj, Inc., et al.*, No. 650629/2019 (N.Y. Sup. Ct., N.Y. Cnty.) (same, obtained $20 million non-reversionary class

6

settlement). Over the past five years alone, the firm has recovered over $400 million in all-cash relief for the classes it has represented.

23.    Notably, my firm has substantial experience litigating cases under state statutes analogous to the VPPA, based on conduct nearly identical to the conduct alleged in this case, including the monetization of customers' protected private information through consumer data markets. *See e.g.*, *Horton v. GameStop Corp.*, 380 F. Supp. 3d 679 (W.D. Mich. 2018); *Lin v. Crain Commc'ns Inc.*, No. 19-11889, 2020 WL 248445, at *4 (E.D. Mich. Jan. 16, 2020); *Schreiber*, No. 22-cv-00188; *Pratt et al. v. KSE Sportsman Media, Inc.*, No. 21-cv-11404 (E.D. Mich.) (class counsel in action alleging unauthorized disclosure of consumers' purchase information in violation of Michigan's Preservation of Personal Privacy Act ("PPPA"), Mich. Comp. Laws § 445.771 *et. seq.*, where firm negotiated $9.5 million all-cash non-reversionary settlement for class); *Kain v. The Economist Newspaper NA, Inc.,* No. 21-cv-11807 (E.D. Mich.) (class counsel in action alleging unauthorized disclosure of consumers' purchase information in violation of PPPA, where firm negotiated $9.5 million all-cash non-reversionary settlement for class*); Strano v. Kiplinger Washington Editors, Inc.,* No. 21-cv-12987 (E.D. Mich.) (class counsel in action alleging unauthorized disclosure of consumers' purchase information in violation of PPPA, where firm negotiated $6.8 million all-cash non-reversionary settlement for class).

24.    We also frequently represent indigent litigants on a *pro bono* basis. *E.g.*, *Groover v. U.S. Corrections, LLC, et al.*, No. 15-cv-61902-BB (S.D. Fla.) (representing plaintiff and putative class against country's largest private prisoner extradition companies in Section 1983 civil rights action alleging violations of the Eighth Amendment).

25.    Hedin LLP draws from a team of highly experienced attorneys dedicated to representing plaintiffs in complex class action litigation with extensive experience in the Northern District of California and nationally, as well as a full team of non-lawyer professionals and support staff.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 6, 2026.

/s/
Frank S. Hedin