JULIAN HAMMOND (SBN 268489)
jhammond@hammondlawpc.com
ARI CHERNIAK (SBN 290071)
acherniak@hammondlawpc.com
POLINA BRANDLER (SBN 269086)
pbrandler@hammondlawpc.com
HAMMONDLAW, P.C.
1201 Pacific Ave, 6th Floor
Tacoma, WA 98402
(310) 601-6766 (Tel.)
(310) 295-2385 (Fax)

FRANK S. HEDIN (SBN 291289)
fhedin@hedinllp.com
HEDIN LLP
1395 Brickell Ave, Suite 610
Miami, Florida 33131
(305) 357-2107 (Office)
(305) 200-8801 (Fax)

*Counsel for Plaintiffs and the Putative Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JONATHAN HOANG TO**; **JEFFRY HEISE**; and **JOSEPH MULL**, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    vs.<br><br>**DIRECTTOU, LLC**, a Delaware Limited Liability Company; and **ALLIANCE ENTERTAINMENT, LLC**, a Delaware Limited Liability Company,<br><br>    Defendants. | Case No. 3:24-CV-06447-WHO<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:    Hon. William H. Orrick<br>Courtroom:    2<br>Hearing Date:  April 22, 2026<br>Hearing Time: 2:00 p.m. |

# TABLE OF CONTENTS

NOTICE OF MOTION.................................................................................................................I

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................... 1

    I.     INTRODUCTION ....................................................................................................... 1

    II.    FACTUAL AND PROCEDURAL BACKGROUND ............................................... 2

    III.   SUMMARY OF THE PROPOSED SETTLEMENT................................................. 3

    IV.   NOTICE AND ADMINISTRATION......................................................................... 5

         A.     THE CLASS NOTICE........................................................................................ 5

         B.     CLAIM FORM.................................................................................................... 6

         C.     CLAIMS, OBJECTIONS, AND REQUESTS FOR EXCLUSION ................................. 6

         D.     CAFA NOTICE ................................................................................................ 7

    V.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT............... 7

    VI.   THE SETTLEMENT ALSO SATISFIES THE BLUETOOTH FACTORS ........................ 12

    VII.  THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ..................................... 13

    VIII. CONCLUSION.......................................................................................................... 13

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Ade, et al. v. Viki, Inc.,*
   No. 23-cv-02161-RFL-LB (N.D. Cal. October 27, 2025) ............................................... 9, 11

*Bellinghausen v. Tractor Supply Co.,*
   306 F.R.D. 245 (N.D. Cal. 2015) ...................................................................................... 11

*Briseno v. Henderson,*
   998 F.3d 1014 (9th Cir. 2021) ......................................................................................... 12

*Chun-Hoon v. McKee Foods Corp.,*
   716 F. Supp. 2d 848 (N.D. Cal. 2010) ............................................................................. 12

*Churchill Vill., L.L.C. v. Gen. Elec.,*
   361 F.3d 566 (9th Cir. 2004) ....................................................................................... 7, 11

*Class Pls. v. City of Seattle,*
   955 F.2d 1268 (9th Cir. 1992) ......................................................................................... 10

*Cotter v. Lyft, Inc.,*
   193 F. Supp. 3d 1030 (N.D. Cal. 2016) ............................................................................. 7

*Fiorentino v. FloSports, Inc.,*
   No. 1:22-cv-11502 (D. Mass. Feb. 16, 2024), .............................................................. 9, 11

*Foster v. Adams & Assocs., Inc.,*
   2021 WL 4924849 (N.D. Cal. Oct. 21, 2021) ................................................................... 9

*In re Bluetooth Products Headset Liab. Litig.,*
   654 F.3d 935 (9th Cir. 2011) ........................................................................................... 12

*In re Online DVD-Rental Antitrust Litig.,*
   779 F.3d 934 (9th Cir. 2015) ............................................................................................. 7

*In re Oracle Sec. Litig.,*
   No. C-90-0931-VRW, 1994 WL 502054 (N.D. Cal. June 18, 1994) ................................ 10

*In re Vizio, Inc., Consumer Privacy Litig.,*
   No. 8:16-ml02693-JLS-KES, 2019 WL 12966638 (C.D. Cal. July 31, 2019) .............. 9, 11

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liab. Litig.,*
   MDL No. 2672 CRB (JSC), 2017 WL 2212780 (N.D. Cal. May 17, 2017) ................... 11

*Lane v. Facebook, Inc.,*
   696 F.3d 811 (9th Cir. 2012) ............................................................................................. 7

*Linney v. Cellular Alaska P'ship*,

　151 F.3d 1234 (9th Cir.1998) .................................................................................................. 11

*Mendoza v. Hyundai Motor Co.*,

　No. 5:15-cv-01685-BLF, 2017 WL 342059 (N.D. Cal. Jan. 23, 2017)........................................... 12

*Natl. Rural Telecomm. Coop. v. DIRECTV, Inc.*,

　221 F.R.D. 523 (C.D. Cal. 2004).............................................................................................. 10

*Ontiveros v. Zamora*,

　303 F.R.D. 356 (E.D. Cal. 2014).............................................................................................. 11

*Ramirez v. Merrill Gardens, LLC*,

　2024 WL 3011142 (June 11, 2024) ............................................................................................. 7

*Stark v. Patreon, Inc.*,

　No. 3:22-cv-03131 (N.D. Cal. Jan. 30, 2025) ...................................................................... 9, 11

*Vela v. AMC Networks, Inc.*,

　No. 1:23-cv-02524 (S.D.N.Y. May 2, 2024)............................................................................... 9

## Statutes

Cal. Civ. Code § 1799.3 ....................................................................................................... 1, 10

## Rules

Fed. R. Civ. P. 23(e)(2)............................................................................................................. 7

Fed. R. Civ. P.  23(a) ............................................................................................................... 13

Fed. R. Civ. P. 23(b)(3)............................................................................................................ 13

Fed. R. Civ. P. 23(e) ............................................................................................................... 12

ii

**NOTICE OF MOTION**

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 22, 2026 at 2:00 p.m., or as soon thereafter as this matter may be heard, before the Honorable William H. Orrick in Courtroom 2, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs Jonathan Hoang To, Jeffry Heise, and Joseph Mull ("Plaintiffs"), on behalf of themselves and the putative Class, by and through their Counsel, shall, and hereby do, respectfully move the Court for entry of the proposed Final Approval Order and Judgment granting final approval of the proposed settlement of this action.

Plaintiffs' Motion is based on this Notice of Motion, the Memorandum of Points and Authorities; Declaration of Julian Hammond ("Hammond Final Decl."), filed herewith; Declaration of Rebecca L. Taylor of Angeion Group Re: Updated Implementation of Notice Plan & Settlement Administration ("Angeion Supp. Decl."), filed herewith; the Declaration of Rebecca L. Taylor of Angeion Group Re: Implementation of Notice Plan, Dkt. 107-2 ("Angeion Decl."); the Second Motion for Preliminary Approval of Class Action Settlement, Dkt. 95 and the Declaration of Julian Hammond, Dkt. 95-1 ("Hammond Prelim. Decl.") and the Declaration of Frank Hedin, Dkt. 95-2 ("Hedin Prelim. Decl.") filed in support; and all other papers and records on file in this matter, and such oral and documentary evidence as may be presented in connection herewith.

**STATEMENT OF THE ISSUES TO BE DECIDED**

1. Whether the Court should grant final certification of the Settlement Class under Rules 23(a) and 23(b)(3);

2. Whether the Court should grant final approval of the Settlement as fair, reasonable, and adequate based on the requirements of Rule 23 and of due process; and

3. Whether the Court should enter judgment of dismissal of Plaintiffs' and Settlement Class Members' claims against Defendant.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiffs Jonathan Hoang To, Jeffry Heise, and Joseph Mull ("Plaintiffs") respectfully seek final approval of their $1,577,000 settlement with Defendants DirectToU, LLC and Alliance Entertainment, LLC ("Defendants"), preliminarily approved by this Court on September 22, 2025, as fair, reasonable, and adequate.

The notice campaign was successful.  The Settlement Administrator has distributed direct email and/or mail notices to approximately 289,711 Class Members[1] and has sent two reminder emails to those Class Members for whom a valid email address was available.  Angeion Decl. ¶¶ 6-7; Angeion Supp. Decl. ¶ 4.  The notice ultimately reached approximately 97.3% of the Class. Angeion Supp. Decl. ¶ 9. Throughout the notice process, the Settlement Administrator also maintained a case-specific website and toll-free telephone number that Class Members could use to obtain information about the Settlement and ask questions.

Approximately 9,385 Class Members submitted claims, subject to final audit. Angeion Supp. Decl. ¶ 16.  There are no objections and only 24 valid opt outs, representing just 0.008% of the Class. *Id.,* ¶¶ 19, 22. Each Class Member who submitted a claim form will receive approximately $105.78. Hammond Final Decl. ¶ 7.

In addition to the cash settlement, Defendants have agreed to cease the conduct challenged by Plaintiffs as unlawful.  Specifically, Defendants agreed to modify their Meta Pixel settings and have committed not to disclose customers' information except as permitted under the VPPA and Cal. Civ. Code § 1799.3.  Defendants further agreed *to remain bound by these obligations* unless these laws are amended, repealed, or invalidated.  Settlement Agreement ("SA") § 2.2.

The settlement provides an excellent result. Despite the strength of Plaintiffs' claims, the Court issued an order compelling Plaintiffs to individual arbitration one day after the Parties settled, finding that Defendants' arbitration agreement was valid and enforceable. In addition, Plaintiffs faced the risk

---

[1] No contact information was available for 658 class member records. Angeion Supp. Decl. ¶ 7.

of losing on class certification and of having their claims dismissed on the merits. Accordingly, Plaintiffs respectfully request that the Court enter the proposed Final Approval Order and Judgment.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On August 12, 2024, Plaintiff Hoang To filed this putative class action lawsuit in Alameda County Superior Court, alleging that Defendant DirectToU violated the VPPA and California's UCL by disclosing its California customers' personally identifying information ("PII") via the Meta pixel. Defendant removed the case on September 12, 2024 (Dkt. 1), and Plaintiff subsequently amended the complaint to include a nationwide class with a California subclass (Dkt. 10). On October 23, 2024, Plaintiff Hoang To and Defendant DirectToU executed a Class Action Settlement Agreement and subsequently moved for preliminary approval. *See* Dkt. 29-1.

On October 28, 2024, Counsel for Plaintiffs in *Feller, et al. v. Alliance Entertainment, LLC, et al.*, No. 24-cv-61444-RAR (S.D. Fla.), filed a Motion to Intervene and to dismiss, stay, or transfer the instant case to the Southern District of Florida pursuant to the first-to-file doctrine. Dkt. 14.

Following a hearing on the *Feller* Plaintiffs' motion to intervene and dismiss and Plaintiff Hoang To's motion for preliminary approval, the Court denied both motions. Dkt. 57. In denying the motion for preliminary approval, without prejudice, the Court "encourage[d] all counsel – for the parties and for *Feller* – to meet and confer to determine if a revised global settlement can be reached that appropriately accounts for the non-Meta pixel claims," or alternatively to submit "a renewed motion for preliminary approval that provides a reasoned valuation for the non-Meta pixel claims and additional support demonstrating that the existing settlement was reached after sufficient discovery, all showing why the settlement is fair, reasonable, and adequate." Dkt. 57 at 1.

Counsel for Plaintiff Hoang To and the *Feller* Plaintiffs subsequently agreed to jointly prosecute this litigation on behalf of the proposed Classes. In an attempt to present a renewed motion for preliminary approval with a valuation of the non-Meta pixel claim, Plaintiff Hoang To obtained informal discovery from Defendant DirectToU related to the non-Meta pixel claim. The discovery revealed that Defendants maintained four or five spreadsheets with consumer data that data brokers could access, but no single spreadsheet contained information that could be used to match a particular consumer to the video title he/she purchased. And, a link could be made only if the data was combined and reverse

2

engineered. While Plaintiffs sought additional discovery in order to create a more robust record for settlement, settlement negotiations broke down.

Plaintiffs then filed the operative Third Amended Complaint (Dkt. 68), adding two of three *Feller* plaintiffs as named plaintiffs, adding Alliance Entertainment, LLC (a defendant in the *Feller* Action) as a named Defendant, and including additional factual allegations supporting the existing claims. Defendants responded by filing a motion to compel individual arbitration. Dkt. 80-82. Following full briefing, the Court held a hearing on June 4, 2025. Based on the Court's questions and statements at the hearing, Plaintiffs' counsel believed the Court was likely to grant the motion.

Recognizing the risks Plaintiffs and putative Class members faced if the Court granted Defendants' motion, Plaintiffs' counsel contacted Defendant's counsel on June 5, 2025 to explore potential settlement. Hedin Prelim. Decl. ¶ 8. After further discussions over the following week, the parties, through their respective counsel, reached an agreement on all material terms by e-mail on June 12, 2025, resulting in the Settlement now before the Court. Hammond Prelim. Decl. ¶ 16; Hedin Prelim. Decl. ¶ 9.

On June 13, 2025, as the parties were working to finalize a notice of settlement to file with the Court, the Court issued an Order granting Defendants' motion to compel arbitration and stayed the case. (Dkt. 93). Following the Court's Order compelling arbitration, the parties executed the formal Settlement Agreement. As set out in detail in the Hammond and Hedin Declarations, the Settlement is a product of informed, arm's-length negotiations, supported by extensive investigation, analysis, and data and information obtained from Defendants. *See* Hammond Prelim Decl. ¶¶ 16, 19-24; Hedin Prelim. Decl. ¶¶ 4-6.

III.    SUMMARY OF THE PROPOSED SETTLEMENT

1. **Class Definition**

The Settlement Class consists of "all persons who reside in the United States, purchased a video or videogame from DirectToU or signed up to receive notices about videos or videogames from DirectToU, and about whom information which identified such persons as having requested or obtained specific video materials or services from Defendants may have been disclosed to a third party between August 8, 2022 and the date of Preliminary Approval. Also included in the "Settlement Class" are all

3

persons who reside in California, purchased a video or videogame from DirectToU or signed up to receive notices about videos or videogames from DirectToU, and about whom information which identified such persons as having requested or obtained specific video materials or services from Defendants may have been disclosed to a third party between August 8, 2020 and the date of Preliminary Approval." SA, ¶ 1.30.

## 2. Settlement Benefits

Defendants will pay **$1,577,000** to create a non-reversionary Settlement Fund for the benefit of the Settlement Class. SA ¶ 1.31(a). Attorneys' Fees and Expenses Award, Incentive Awards, and Notice and Administration Expenses awarded by the Court will be deducted from the $1,577,000 Settlement Fund and the remainder ("Net Settlement Fund") will be allocated pro rata among Settlement Class Members who submit a valid claim form.[2] *Id*. ¶ 2.1(b).

In addition to the cash payment to be made by Defendants, Defendants have agreed to not knowingly share information which identifies a person as having requested or obtained specific video materials or services with third parties, except as permitted by the VPPA. SA ¶ 2.2. Defendants will remain bound by this obligation until and unless the law is amended, repealed, or otherwise invalidated. *Id.*[3]

## 3. Released Claims

---

[2] The Settlement Agreement provides for a potential secondary distribution as follows. If any checks remain uncashed after 180 days, or if residual funds remain from failed electronic payments, the Settlement Agreement provides that those funds will be redistributed on a *pro rata* basis to Settlement Class Members who successfully cashed or received their initial payments. SA, ¶ 2.1(d). If the secondary distribution would result in payment of less than $10.00 or is otherwise infeasible, the remaining funds will, subject to Court approval, revert to the Electronic Privacy Information Center as a *cy pres* recipient. Hammond Prelim. Decl. ¶ 70.

[3] After receiving class data from Defendants following preliminary approval, the Settlement Administrator advised the parties that due to the data provided, particularly the lack of email addresses for a significantly larger portion of the class and additional postage costs this would result in, the Administrator could not carry the notice and administration within the $125,000 cap for administration costs in the Settlement Agreement. The Parties then sought Court approval to amend the Settlement Agreement to provide a higher cap of $155,000 for administration expenses, which the Court granted. ECF Nos. 102, 103.

4

The Settlement releases specified parties, including DirectToU, LLC, Alliance Entertainment, LLC, Project Panther Acquisition Corporation, Alliance Entertainment Holding Corporation and their current and former parents, subsidiaries, affiliates, and related entities from all claims based on the same alleged conduct alleged in the operative Third Amended Complaint. SA ¶¶ 1.25-1.26.

### 4. Fees, Costs, and Service Awards

In a separate motion, Class Counsel have requested an award of 25% of the Settlement as attorney's fees, which represents a negative lodestar multiplier of 0.31%, reimbursement of ou-of-pocket reasonable litigation expenses incurred in this litigation, and service awards of $5,000 for each of the three Plaintiffs and Class Representatives. Dkt. 106.

## IV. NOTICE AND ADMINISTRATION

### A. The Class Notice

In accordance with the Court's order granting preliminary approval, the Settlement Administrator, Angeion Group ("Angeion"), commenced notice to the Settlement Class on November 17, 2025, by sending direct notice via postcard to Class Members for whom only a physical mailing address was available, and on November 19, 2025, by sending direct notice via email to Class Members for whom email addresses were available. Angeion Decl. ¶¶ 6, 12.[4] Angeion also sent two email reminder notices. *Id.* ¶ 7. On December 24, 2025 and January 30, 2026, Angeion mailed Postcard Notices to Settlement Class Members whose email notices could not be delivered due to a hard bounce and for whom complete mailing address information was available. Angeion Supp. Decl. ¶ 7.

Based on these efforts, Angeion estimates that the Notice program successfully delivered email or postcard notice to approximately 97.3% of the Settlement Class. Angeion Supp. Decl. ¶ 9.

On October 6, 2025, Angeion also established a settlement website (www.vppasettlement.com), which provides general information about the case and the Settlement, including important dates and deadlines, and key documents filed in the case, including the Settlement Agreement and the amendment thereto, the Claim Form, Long Form Notice, the Order Granting Preliminary Approval and Order

---

[4] Prior to mailing physical notices, Angeion updated addresses through the USPS' National Change of Address database and Angeion promptly remailed any notices returned with a forwarding address. Angeion Decl. ¶ 14. Angeion conducted a skip trace for all Notices returned by the USPS without a forwarding address. Angeion Decl. ¶ 15; Angeion Supp. Decl. ¶ 5.

approving amendment to the Settlement Agreement, the motion for attorneys' fees, costs, and service awards. Angeion Decl. ¶ 16; Angeion Supp. Decl. ¶ 10. The website also includes a secure portal through which Class Members could submit Claim Forms. Angeion Decl. ¶ 16. Alternatively, Class Members (and any other individual who believed they were a Class Member) could download the Claim Form and submit it by mail. *See* Angeion Decl., Ex. C and D.

In addition, the Settlement Administrator set up a toll-free number, accessible 24/7, for Settlement Class Members to call and obtain answers to frequently asked questions. Angeion Decl. ¶ 18. The settlement website also provides the Settlement Administrator's contact information, including address and email. Angeion Decl. ¶¶ 7, 16. As of April 14, 2026, Angeion has received approximately 3,000 calls. Angeion Supp. Decl. ¶ 13. As of April 14, 2026, Angeion has received and responded to 695 questions via email. Angeion Supp. Decl. ¶ 12. As of April 14, 2026, the settlement website has received over 35,000 visits, and over 67,000 pageviews. Angeion Supp. Decl. ¶ 11.

**B.   Claim Form**

The settlement website contained an online Claim portal, which Class Members could access by typing in their unique Notice ID and Confirmation Code. The simple Claim Form required only necessary contact information, selection of the preferred payment method (i.e. Venmo, Zelle, PayPal, prepaid credit card, or paper check), and signature and date. Angeion Decl., ¶ 16 and Ex. D.

In addition, Class Members were also informed, in the Long-Form notice, the Short-Form notice, and the FAQs on the settlement website, that, as an alternative to submitting the Claim Form electronically, they could download, print out and mail in the Claim Form. Angeion Decl., Exs. B, C.

**C.   Claims, Objections, and Requests for Exclusion**

The deadline to submit a claim, opt out, or object was January 20, 2026 for all Class Members, except those to whom notice was sent on January 30, 2026. Angeion Supp. Decl. ¶¶ 14, 17. For Class Members to whom notice was sent on January 30, 2026, the deadline to submit a claim, opt out, or object was April 3, 2026. *Id.* ¶¶ 15, 18. As of April 14, 2026, Angeion has received 9,385 total claims, which Angeion is in the process of reviewing and validating. *Id.* ¶ 16.

Of the over 290,000 Class Members, only 24 opted out (less than 0.008%) and no objections were filed. Angeion Supp. Decl. ¶¶ 19-22.

6

### D.    CAFA Notice

The Settlement Administrator has provided notice pursuant to the Class Action Fairness Act within ten days of the filing of the Motion for Preliminary Approval to the Attorney General of the United States and to the Attorneys General of all U.S. states and territories. Angeion Decl. ¶ 24, Ex. E.

## V.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

"The primary inquiry [at final approval] is whether the proposed settlement 'is fundamentally fair, adequate, and reasonable.'" *Ramirez v. Merrill Gardens, LLC,* 2024 WL 3011142, at *6 (June 11, 2024) (quoting *Lane v. Facebook, Inc.,* 696 F.3d 811, 818 (9th Cir. 2012)); *see also* Fed. R. Civ. P. 23(e)(2); *Cotter v. Lyft, Inc.,* 193 F. Supp. 3d 1030, 1035 (N.D. Cal. 2016). To assess the fairness of a class settlement, Ninth Circuit courts consider several factors including:

> the strength of the plaintiffs' case, (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of governmental participants; and (8) the reaction of the class members to the proposed settlement.

*In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 944 (9th Cir. 2015) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004)).

### A.    <u>Factors Considered at the Preliminary Approval Stage Still Support Final Approval</u>

In granting Plaintiffs' Motion for Preliminary Approval, this Court has already reviewed all but the last of the above factors and has reached the conclusion that the settlement is "fair, reasonable, and adequate." Dkt. 100.  Evaluation of these factors continues to support the Court's earlier finding that the Settlement is fair, reasonable, and adequate, and the remaining factor to be considered – the reaction of the Classes – also supports final approval.

### 1.    The Strength and Risks of Plaintiffs' Case

The strengths and risks of Plaintiffs' case are the same as they were at preliminary approval. Second Mot. for Prelim. App., Dkt. 95 at 13-20.  As discussed in Plaintiffs' Motion for Preliminary Approval, the Settlement was negotiated while Defendants' Motion to Compel Arbitration was pending and after the hearing on that motion, which led Plaintiffs' counsel to reasonably believe that the Court would grant it. The Settlement was finalized only one day before the Court issued its order compelling

7

Plaintiffs to individual arbitration. Had the Court compelled arbitration before the parties reached settlement, Class Members would have been required to pursue relief through individual arbitrations, exposing them to the significant costs and risks associated with that process, including limited appellate review and intrusive discovery such as forensic imaging of their devices. The proposed Settlement secures substantial relief for the Class while avoiding the serious burdens and uncertainties associated with individual arbitration.

Plaintiffs also faced additional litigation risks, including the possibility of denial of class certification (had their claims proceeded in court), adverse rulings on the merits, and limitations on recoverable damages based on the damages-limitation provisions in Defendants' Terms of Use. Hammond Prelim. Decl. ¶ 29.

**2. Further Litigation Would be Risky, Expensive, Complex, and Lengthy**

Absent Settlement, the Class would recover nothing because the Court compelled Plaintiffs' claims to individual arbitration. Hammond Prelim. Decl. ¶ 26. Even apart from that ruling, litigation risks, taken together, create significant uncertainty as to whether Plaintiffs and the Settlement Class would recover anything even if the case had proceeded through litigation. And even if Plaintiffs were to prevail at trial with a certified class, Defendants would likely appeal, further delaying any potential relief. Accordingly, without this Settlement, final resolution of this Action could have taken many years.

**3. Relief Offered in Settlement is More Than Reasonable**

a. **Monetary Amount**

The amount offered in settlement is reasonable. Plaintiffs calculated the realistic value of their VPPA and California Civil Code § 1799.3 claims as approximately $3,263,750, which means that the $1,577,000 Gross Settlement represents 48% of Defendants' realistic exposure – a very good result. Hammond Prelim Decl. ¶¶ 40, 43. Given that the risk of individual arbitration, which materialized the day after the parties agreed to the proposed settlement, the amount offered in settlement is more than reasonable and is, in fact, an excellent result for the Class. It provides the Class certain and immediate relief, while avoiding the cost and inherent risk of individual arbitrations. The Settlement will provide approximately 9,385 Claimants with cash payments of approximately $105.78. Angeion Supp. Decl. ¶ 16; Hammond Final Decl. ¶¶ 5, 7.

These figures compare very favorably to the total relief available to claimants in VPPA class actions. *See, e.g., Stark v. Patreon, Inc.,* No. 3:22-cv-03131 (N.D. Cal. Jan. 30, 2025), ECF Nos. 204, 204-2 ($0.89 gross per-Class Member, and approximately $40.35 per claimant based on a 1.29% claims rate); *Ade, et al. v. Viki, Inc.,* No. 23-cv-02161-RFL-LB (N.D. Cal. October 27, 2025) ($3.05 gross per-Class Member, and approximately $127.70 per claimant based on claim rate of approximately 1.59%); *Vela v. AMC Networks, Inc.,* No. 1:23-cv-02524 (S.D.N.Y. May 2, 2024), ECF No. 59 ($1.12 gross per-Class Member, and approximately $9 per claimant based on a claim rate of approximately 7.15%); *Fiorentino v. FloSports, Inc.,* No. 1:22-cv-11502 (D. Mass. Feb. 16, 2024), ECF No. 72 ($3.34 gross per-Class Member, and approximately $87 per claimant, based on a 2.34% claims rate); *In re Vizio, Inc., Consumer Privacy Litig.,* No. 8:16-ml02693-JLS-KES, 2019 WL 12966638, at *4 (C.D. Cal. July 31, 2019) (estimated $16.50 at a claims rate of 4.1%). *See also Foster v. Adams & Assocs., Inc.,* 2021 WL 4924849, at *7 (N.D. Cal. Oct. 21, 2021) (the fact that the settlement was "consistent" with settlements in other similar cases favored approval).

Although there are no VPPA settlements involving non-Meta pixel or similar tracking tool claims, the fact that the Court compelled arbitration and other case-specific risks, such as the limitations on recovery in Defendant's Terms of Use, makes this case analogous to other VPPA settlements in terms of litigation complexity and risk exposure. *See* Hammond Prelim. Decl. ¶ 47.

### b.  <u>Non-Monetary Relief</u>

In addition to the monetary relief, the Settlement requires Defendants to comply with the VPPA and § 1799.3 moving forward. Specifically, the Settlement Agreement provides that Defendants have "modified the Facebook Pixel settings on Defendants' Websites so that specific product information is not shared with Facebook. Additionally, Defendants will not knowingly share information which identifies a person as having requested or obtained specific video materials or services with third parties, except as permitted by the VPPA." SA ¶ 2.2. This is similar to the non-monetary relief achieved in other VPPA settlements. *See* Hammond Prelim. Decl. ¶ 48 and Ex. 3 thereto.

### c.  <u>The Plan of Allocation is Fair and Reasonable</u>

The proposed Plan of Allocation is fair and reasonable. It provides for each Settlement Class Member who submits an Approved Claim to receive a pro rata share of the Net Settlement Amount. SA

9

¶ 2.1.  Given the strengths of the VPPA claim in this case and the materialized risk of individual arbitration, Plaintiffs believe it is fair and appropriate to allocate an equal pro rata share of the Settlement Fund available for distribution to each Settlement Class Member who submits an Approved Claim. SA ¶ 2.1(b). *See In re Oracle Sec. Litig.,* No. C-90-0931-VRW, 1994 WL 502054, at *1-2 (N.D. Cal. June 18, 1994) (citing *Class Pls. v. City of Seattle,* 955 F.2d 1268, 1284-85 (9th Cir. 1992) ("Approval of a plan of allocation of settlement proceeds in a class action ... is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate.").

While in their operative Complaint Plaintiffs assert one claim on behalf of a nationwide class and with two additional claims on behalf of a California sub-class, because the nationwide claim addresses the same underlying conduct as the California Civil Code § 1799.3 and UCL claims, Plaintiffs do not believe it would be appropriate for California subclass members to receive a greater recovery than other members of the nationwide Settlement Class.  *See* Dkt. 95 at 5.

If any checks remain uncashed after 180 days, or if residual funds remain from failed electronic payments, the Settlement Agreement provides that those funds will be redistributed on a pro rata basis to Settlement Class Members who successfully cashed or received their initial payments. SA ¶ 2.1(d). However, if the secondary distribution would result in payment of less than $10.00, or the secondary distribution is otherwise infeasible, the remaining funds will, subject to Court approval, revert to the Electronic Privacy Information Center as a cy pres recipient. Hammond Prelim. Decl. ¶ 70.

**4.  The Settlement is Informed by Extensive Investigation and Sufficient Discovery and Supported by Experienced and Skilled Counsel**

Class settlements are presumed fair when they are reached "following sufficient discovery and genuine arms-length negotiation." *Natl. Rural Telecomm. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004).  As set out in Plaintiffs' Motion for Preliminary Approval and as found by the Court in its Preliminary Approval Order, the Settlement is a result of arm-s length negotiations between experienced counsel.  Dkt. 100 (Preliminary Approval Order) at 2.

The Settlement was also reached after extensive factual and legal research, investigation, analysis, and data and information obtained from Defendants necessary to value Plaintiffs' claims for settlement. This data and information included information about the size of the Settlement Class,

10

information about the nature of Defendants' alleged disclosure of customers' information to data brokers and other unauthorized third parties, and information about the configuration of the Meta Pixel on Defendants' websites during the relevant period. *See* Hammond Prelim. Decl. ¶¶ 16, 19-24; Hedin Prelim. Decl. ¶¶ 4-6; Preliminary Approval Order at 2. "In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, 'formal discovery is not a necessary ticket to the bargaining table.'" *Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245, 257 (N.D. Cal. 2015) (quoting *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1239 (9th Cir.1998)). "Rather, the court's focus is on whether 'the parties carefully investigated the claims before reaching a resolution.'" *Id.* (quoting *Ontiveros v. Zamora,* 303 F.R.D. 356, 371 (E.D. Cal. 2014) (citation omitted)).

### 5. There are No Governmental Participants

There are no government participants in this action or in the settlement.

### 6. Class Members' Reaction to the Settlement Has Been Overwhelmingly Positive

This was the only factor the Court did not consider at the preliminary approval stage, since the Class had not yet been noticed at that time. The reaction of the Class Members has been overwhelmingly positive.

Not a single Class Member filed an objection. Angeion Supp. Decl. ¶ 22. More than 9,385 claims have been submitted, subject to verification. *Id.* ¶ 16. This represents approximately 3.2% of the Class Members, a claim rate that is slightly lower than the anticipated 5% claims rate but one that is in line with claims rates found sufficient to support final approval in similar data-privacy cases, including VPPA. See e.g., *Stark v. Patreon, Inc.,* No. 3:22-cv-03131, ECF Nos. 204, 204-2 (1.29% claims rate); *Ade, et al. v. Viki, Inc.,* No. 23-cv-02161-RFL-LB (approximately 1.59% claims rate); *Fiorentino v. FloSports, Inc.,* No. 1:22-cv-11502, ECF No. 72 ($2.34% claims rate); *In re Vizio, Inc., Consumer Privacy Litig.,* 2019 WL 12966638, at *4 (4.1% claims rate).

Only 24 Class Members have opted out of the settlement, representing just 0.008% of the Class. Angeion Decl. ¶ 19. Such a low opt-out rate supports final approval. *See, e.g., Churchill Vill., L.L.C.,* 361 F.3d at 577 (affirming final approval when 0.56% of the class opted out); *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liab. Litig.,* MDL No. 2672 CRB (JSC), 2017 WL

11

2212780, at *10 (N.D. Cal. May 17, 2017) (approving a settlement with a 0.11% opt out rate); *Mendoza v. Hyundai Motor Co.,* No. 5:15-cv-01685-BLF, 2017 WL 342059, at *8 (N.D. Cal. Jan. 23, 2017) (approving a settlement with a 0.017% opt out rate); *Chun-Hoon v. McKee Foods Corp.,* 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (approving a settlement where 4.86% of the class requested exclusion).

## VI.   THE SETTLEMENT ALSO SATISFIES THE BLUETOOTH FACTORS

Because this Settlement was reached prior to class certification, it must also withstand "higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Products Headset Liab. Litig.,* 654 F.3d 935, 946 (9th Cir. 2011). The Court must be satisfied that "the settlement is not the product of collusion among the negotiating parties*." Id.* at 946-47. The Ninth Circuit has identified three "signs" of possible collusion:

> (1) "when counsel receive[s] a disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing arrangement,'" under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class.

*Briseno v. Henderson,* 998 F.3d 1014, 1023 (9th Cir. 2021) (quoting *In re Bluetooth,* 654 F.3d at 947). Evaluation of the Bluetooth factors assists the Court in determining whether Plaintiffs' counsel have "allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth,* 654 F. 3d at 947. Here, this evaluation militates strongly in favor of granting final approval.

None of the "signs" of possible collusion appear in this case. Class Counsel will not "receive a disproportionate distribution of the settlement"; Class Counsel seeks only 25% of the Settlement Fund. SA (Dkt. 95-2), ¶ 8.1; Mot. for Fees, (Dkt. 106). The 25% fee request is fair and reasonable both because it is the fee benchmark in the Ninth Circuit and because it is supported by a cross-check multiplier. *See* Mot. for Fees (Dkt. 106) at 6, 12. The request is further supported and made reasonable by the fact that Class Counsel took the case on a contingent basis and displayed considerable skill and strategic judgment in negotiating a $1.577 million settlement one day before the Court granted Defendants' motion to compel Plaintiffs' claims to individual arbitration. There is no "clear sailing" agreement. Class Counsel is required to move separately for fees and costs (and service awards) and Defendants have

12

agreed that Plaintiffs' counsel is entitled to some attorneys' fees, but have not agreed to not challenge any amount of attorneys' fees sought by the Plaintiffs. *See* SA ¶ 8.1 ("Defendants agree that Class Counsel shall be entitled to an award of reasonable attorneys' fees of up to 25% of the Settlement Fund, and costs of up to $20,000, subject to Court approval."). Finally, the settlement is non-reversionary. *See* SA ¶¶ 1.31(a), 8.1.

## VII.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

In its preliminary approval order, the Court found that the Settlement Class met all the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation and the Rule 23(b)(3) requirements of predominance and superiority to support preliminary certification. Dkt. 100. The Court also found that the Settlement is fair, reasonable, and adequate. *Id.*

There have been no changes between the time of preliminary approval and now that would call into question the Court's earlier finding that the Settlement is fair, reasonable, and adequate. Not a single Class Member has objected to the settlement. Accordingly, Plaintiffs now request the Court affirm its preliminary findings and grant final approval.

## VIII.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement as fair, reasonable, and adequate, and certify the Settlement Class.

DATED:  April 15, 2026

Respectfully submitted,

*/s/ Julian Hammond*
Julian Hammond
Polina Brandler

*Class Counsel*

13