JULIAN HAMMOND (SBN 268489)
jhammond@hammondlawpc.com
ARI CHERNIAK (SBN 290071)
acherniak@hammondlawpc.com
POLINA BRANDLER (SBN 269086)
pbrandler@hammondlawpc.com
HAMMONDLAW, P.C.
1201 Pacific Ave, 6th Floor
Tacoma, WA 98402
(310) 601-6766 (Tel.)
(310) 295-2385 (Fax)

FRANK S. HEDIN (SBN 291289)
fhedin@hedinllp.com
HEDIN LLP
1395 Brickell Ave, Suite 610
Miami, Florida 33131
(305) 357-2107 (Office)
(305) 200-8801 (Fax)

*Counsel for Plaintiffs and the Putative Classes*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JONATHAN HOANG TO**; **JEFFRY HEISE**; and **JOSEPH MULL**, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        vs.<br><br>**DIRECTTOU, LLC**, a Delaware Limited Liability Company; and **ALLIANCE ENTERTAINMENT, LLC**, a Delaware Limited Liability Company,<br><br>        Defendants. | ) Case No. 3:24-CV-06447-WHO<br>)<br>) **SUPPLEMENTAL DECLARATION OF**<br>) **FRANK S. HEDIN IN SUPPORT OF**<br>) **PLAINTIFFS' MOTION FOR FEE AND**<br>) **SERVICE AWARDS**<br>)<br>) Judge:        Hon. William H. Orrick<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

I, Frank S. Hedin, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746 and based on my own personal knowledge, that the following statements are true:

1. I am a member in good standing of the State Bar of California and the Florida Bar.

2. I am counsel of record for the Plaintiffs in the above-captioned matter and the putative Settlement Class.

3. I make this supplemental declaration in support of the Motion for Fee and Service Awards filed by Plaintiffs in the above-captioned action.

## I.    SUMMARY OF THE WORK PERFORMED

4. After undertaking this matter on a purely contingent basis, my firm devoted significant time, over the course of several years, investigating, preparing, prosecuting, and resolving this litigation. Due to the amount of time and capital invested by my firm on this action and the related *Feller* action, my firm had to forego taking on other similar consumer class-action work that we otherwise would have pursued.

5. The work performed by my firm developing, prosecuting, and resolving this litigation, and the resulting lodestar for each discrete category of work, is set forth below.

6. **Investigation Prior to Filing the *Feller* Action:** Prior to bringing suit on behalf of the plaintiffs and putative class in the related action *Feller et al. v. Alliance Entertainment, LLC, et al.*, No. 24-cv-61444-RAR (S.D. Fla.), my firm performed an extensive and time-consuming investigation into the conduct underlying these claims over a period of several years (dating back to 2019).

7. Specifically, my firm (i) thoroughly investigated and reviewed then-current and historical versions of Defendants' data cards publicly accessible on Nextmark.com and several other data-brokerage websites, including SRDS, over a period of several years dating back to 2019; (ii) performed extensive research concerning the data-brokerage marketplace, the manner in which customer lists are rented and exchanged through that marketplace, and the meanings of various fields of available information advertised on the publicly available data cards accessible on various data-brokerage websites; (iii) thoroughly researched, investigated, and reviewed, and analyzed technical literature

regarding, the various online trackers utilized on Defendants' websites since 2019, including how each operated, how to find each tracker in website source code, and how to identify the nature of the information tracked and transmitted; (iv) worked closely with a consulting expert to probe the use of these technologies on Defendants' websites specifically, including by parsing through Defendants' websites' source code; (v) researched and analyzed whether Defendants' use of tracking pixels and its practices of renting and exchanging customers' data in the data-brokerage marketplace violated the VPPA, as the law existed (and evolved) at various points in time from 2019 onward, and the best way to plead such claims on a class-wide basis; (vi) communicated, exchanged correspondence with and reviewed materials (including documents and electronically stored information) provided by numerous potential clients who interacted with and made purchases on Defendants' websites, in order to determine whether they had viable claims against Defendants and were capable of adequately representing the interests of others similarly situated; (vii) conducted further investigation concerning the named Plaintiffs and their adequacy to represent the putative classes, and executed engagement agreements to represent them in this matter; and (viii) prepared the Class Action Complaint on behalf of the Plaintiffs and a proposed class.

8.      The total time spent on this pre-filing work, broken down by timekeeper, is as follows:

| Timekeeper | Year Admitted | Hourly $ | Hours | Lodestar |
|---|---|---|---|---|
| Frank S. Hedin | 2012 | $850.00 | 155.2 | $131,920 |
| Arun G. Ravindran | 2007 | $700.00 | 85.3 | $59,710 |
| Paula S. Buzzi | 2013 | $600.00 | 91.3 | $54,780 |
| **Total** | | | **331.8** | **$246,410** |

9.      **Litigation and Discovery in the *Feller* Action:** After preparing and filing the complaint to initiate the *Feller* action on August 8, 2024, my firm vigorously litigated the action, including by preparing and serving comprehensive written discovery requests to Defendants and third-party subpoenas for documents and deposition testimony to relevant third parties. These discovery requests and subpoenas sought categories of information, documents, communications, and electronically stored information concerning each of the factual and legal issues relevant to Plaintiffs' claims for violation of

the VPPA, Defendants' likely defenses thereto, and the certifiability of a proposed class pursuant to Rule 23.

10.    Over the course of several weeks, my firm and I met and conferred extensively with Defendants concerning their responses and objections to Plaintiffs' requests.

11.    My firm served notices of deposition of Defendants' corporate representatives and thoroughly prepared to take those depositions prior to the parties' agreement to attend mediation.

12.    We prepared and served initial disclosures and worked with Defendants' counsel to prepare and file a joint scheduling report and discovery plan.

13.    Additionally, during and after my firm engaged in the settlement communications with Defendants described below, my firm also continued to push the *Feller* action forward on multiple fronts. Immediately following the conclusion of the mediation on October 10, 2024 (discussed below), my firm confirmed with Defendant that the agreed-upon discovery stay (which had been in effect since the date the parties agreed to mediate) had ended, and promptly served an additional third-party subpoena for documents and deposition testimony to Meta, and soon after engaged in a lengthy meet and confer process with Meta's counsel to discuss Meta's responses and objections to the subpoena's requests for documents and the timing of the deposition of Meta noticed in the subpoena. We also served an additional third-party subpoena for documents to Data-Axle Inc. (a data company that, as our ongoing investigation had revealed, served as one of Defendants' list managers and/or brokers during the relevant statutory period) on Defendants' counsel by e-mail, and then conferred extensively with Data Axle's counsel regarding Data Axle's responses and objections to the subpoena and its production of documents.

14.    My firm also worked closely with our clients to prepare written responses and objections to requests for production and interrogatories served on them by Defendants.

15.    Following the mediation described below, my firm drafted and filed a response in opposition to an expedited motion to stay the *Feller* action (ECF No. 26) filed by Defendants, along with a supporting declaration and numerous exhibits.

16. My firm also drafted a response in opposition to the motion to dismiss (ECF No. 45) pursuant to Rule 12(b)(6) filed by the Defendants in the *Feller* action (after conducting extensive research and analysis concerning the issues raised in the motion).

17. The total time spent on these tasks, broken down by timekeeper, is as follows:

| Timekeeper | Year Admitted | Hourly $ | Hours | Lodestar |
|---|---|---|---|---|
| Frank S. Hedin | 2012 | $850.00 | 120.9 | $102,765 |
| Arun G. Ravindran | 2007 | $700.00 | 38.4 | $26,880 |
| Paula S. Buzzi | 2013 | $600.00 | 98.3 | $58,980 |
| **Total** | | | **257.6** | **$188,625** |

18. **Initial Settlement Negotiations and Mediation in the *Feller* Action:** On September 6, 2024, Plaintiffs and Defendants agreed to attend a mediation to explore early class-wide resolution of the *Feller* action before the Honorable James F. Holderman (Ret.) (JAMS, Chicago), formerly a district judge in the Northern District of Illinois, on the condition (negotiated by my firm) that Defendants would agree to provide certain materials to them in advance of the mediation that were necessary for us to intelligently negotiate on behalf of members of the putative class. This information and material included the precise sizes of the two classes, the form and contents of the personally identifying and video purchase- related information pertaining to Plaintiffs and class members that Defendants allegedly transmitted to the various third-party recipients of the information during the applicable statutory period, and all applicable or potentially applicable policies of insurance.

19. Ahead of the parties' mediation before Judge Holderman, my firm prepared and exchanged with Defendants' counsel and Judge Holderman a comprehensive mediation statement outlining Plaintiffs' positions on various legal and factual issues relevant to the merits of the claims and defenses and to issues of class certification. My firm also participated in lengthy pre-mediation conferences with Judge Holderman.

20. On October 10, 2024, my firm participated in a mediation before Judge Holderman. Although we mediated for nearly a full day, we were unable to reach a proposed class-wide settlement at the mediation.

SUPPLEMENTAL DECLARATION OF FRANK S. HEDIN IN SUPPORT OF PLAINTIFFS' MOTION FOR FEE AND SERVICE AWARDS
CASE NO. 3:24-CV-06447-WHO

21.    For more than a week following the mediation, my firm continued to engage in extensive settlement negotiations with Defendants' counsel, with the continued assistance of Judge Holderman. Judge Holderman ultimately declared an impasse in the negotiations.

22.    Throughout these negotiations, my firm communicated several times by telephone with our clients to keep them apprised of developments in the negotiations.

23.    The total time spent on these tasks, broken down by timekeeper, is as follows:

| Timekeeper | Year Admitted | Hourly $ | Hours | Lodestar |
|---|---|---|---|---|
| Frank S. Hedin | 2012 | $850.00 | 47.1 | $40,035 |
| Arun G. Ravindran | 2007 | $700.00 | 27.2 | $19,040 |
| Julie Holt | 2011 | $600.00 | 6.2 | $3,720 |
| Paula S. Buzzi | 2013 | $600.00 | 9.8 | $5,880 |
| Tyler K. Somes | 2018 | $700.00 | 9.1 | $6,370 |
| Total | | | 99.4 | $75,045 |

24.    **Motion for Appointment of Interim Counsel in the *Feller* Action:** Following the parties' mediation with Judge Holderman, my firm prepared and filed a motion for appointment of interim counsel (and accompanying declarations and exhibits) in the *Feller* action. Prior to filing that motion, my firm and I engaged in extensive meet and conferral efforts with Defendants' counsel concerning, *inter alia*: (1) Defendants' position on a motion for appointment of interim counsel that we had advised Defendants' counsel Plaintiffs intended to file; (2) Defendants' intentions with respect to the *Hoang To* matter, including the nature of the responsive pleading it intended to file in that case and whether it would seek to dismiss, stay, or transfer the case on the grounds that it was duplicative of the earlier-filed *Feller* case; and, relatedly, (3) Defendants' position on a motion to intervene and to stay or dismiss the *Hoang To* matter that we had indicated Plaintiffs would file.

25.    On November 12, 2024, my colleague Ms. Holt and I attended an in-person hearing before the court presiding over the *Feller* action, at which the court addressed both the *Feller* Plaintiffs' motion for appointment of interim counsel and Defendants' motion to stay the action. Although the court granted Defendants' motion to stay, the court instructed Defendants and the relevant third parties, at my

firm's request, to preserve all materials of potential relevance to the case, for the duration of the *Feller* and *Hoang To* actions (ECF No. 53).

26.     For several months following the November 12, 2024 hearing, my firm drafted and filed, after conferring with Defendants' counsel, joint status reports to the court presiding over the *Feller* action, apprising the court of the status of the proceedings in the *Hoang To* action before this Court.

27.     I engaged in multiple telephone calls with my clients throughout this process to keep them apprised of the litigation in both Florida and California.

28.     The total time spent on these tasks, broken down by timekeeper, is as follows:

| Timekeeper | Year Admitted | Hourly $ | Hours | Lodestar |
|---|---|---|---|---|
| Frank S. Hedin | 2012 | $850.00 | 13.8 | $11,730 |
| Arun G. Ravindran | 2007 | $700.00 | 6.9 | $4,830 |
| Julie Holt | 2011 | $600.00 | 12.5 | $7,500 |
| Paula S. Buzzi | 2013 | $600.00 | 3.8 | $2,280 |
| Tyler K. Somes | 2018 | $700.00 | 11.1 | $7,770 |
| **Total** | | | **48.1** | **$34,110** |

29.     **Motion to Intervene and to Dismiss, Stay, or Transfer in the *Hoang To* Action, and Objections to the Proposed *Hoang To* Settlement:** In response to the proposed class-wide settlement reached by the parties to the instant *Hoang To* action, and after conferring with my clients, Defendants' counsel, and counsel for plaintiff *Hoang To*, my firm drafted and filed on behalf of the *Feller* Plaintiffs a detailed motion to intervene and to dismiss, stay, or transfer the *Hoang To* action and accompanying declarations (which necessitated extensive research and analysis concerning the issues raised in the motion). Upon reviewing the responses to the motion to dismiss, stay, or transfer filed by both Defendants and plaintiff *Hoang To*, my firm drafted and filed a detailed reply in further support of the motion (after performing extensive research and analysis concerning the issues raised in the opposition).

30.     My firm then worked with Defendants' counsel and counsel for plaintiff Hoang To to prepare a joint case management statement advising the Court of the parties' respective positions on the manner in which the pending motions should be decided. I then prepared for and attended a case management conference before the Court.

SUPPLEMENTAL DECLARATION OF FRANK S. HEDIN IN SUPPORT OF PLAINTIFFS' MOTION FOR FEE AND SERVICE AWARDS
CASE NO. 3:24-CV-06447-WHO

31.    After conferring with my clients, counsel for Defendants, and counsel for plaintiff *Hoang To*, my firm also drafted and filed on behalf of the *Feller* Plaintiffs comprehensive written objections to the motion for preliminary approval of the initial class-wide settlement reached by the parties to the *Hoang To* action.

32.    Upon completion of the briefing on the motion for preliminary approval, the *Feller* Plaintiffs' objections, and the motion to dismiss, stay, or transfer, I prepared for and attended a hearing before this Court regarding these motions and objections.

33.    The Court ultimately denied the *Feller* Plaintiffs' motion to dismiss, stay, or transfer the *Hoang To* action, but sustained many of their objections to the *Hoang To* settlement. Shortly thereafter, my firm reached an agreement to jointly prosecute this action with HammondLaw, P.C. and drafted and executed a formal joint prosecution agreement with HammondLaw, P.C.

34.    I had multiple telephone calls with my clients throughout this process, to keep them apprised of the litigation and to obtain their consent to the joint prosecution agreement with the HammondLaw, P.C. firm.

35.    The total time spent on these tasks, broken down by timekeeper, is as follows:

| Timekeeper | Year Admitted | Hourly $ | Hours | Lodestar |
|---|---|---|---|---|
| Frank S. Hedin | 2012 | $850.00 | 79.5 | $67,575 |
| Arun G. Ravindran | 2007 | $700.00 | 31.3 | $21,910 |
| Julie Holt | 2011 | $600.00 | 52.0 | $31,200 |
| Paula S. Buzzi | 2013 | $600.00 | 14.2 | $8,520 |
| Tyler K. Somes | 2018 | $700.00 | 21.3 | $14,910 |
| **Total** | | | **198.3** | **$144,115** |

36.    **Further Discovery in the *Hoang To* Action:** In the Court's Order denying (without prejudice) preliminary approval of the initial proposed settlement reached by the parties to the *Hoang To* action, the Court advised the parties to submit "a renewed motion for preliminary approval that provides a reasoned valuation for the non-Meta pixel claims." Accordingly, my firm, together with co-counsel, met and conferred with Defendants' counsel regarding the discovery necessary to value the class-wide claims arising from Defendants' alleged disclosure of their customers' personally identifiable

information to data brokers other than Meta. Defendant produced confidential informal discovery relevant to these claims, which my firm, together with co-counsel, carefully analyzed. This discovery revealed that Defendants maintained spreadsheets with consumer data that data brokers could access, but no single spreadsheet contained information that could be used to match a particular consumer to the video title he/she purchased. My firm, together with co-counsel, then drafted and filed an administrative motion to open formal discovery in the case, to allow us to explore these issues further.

37.    Additionally, my firm, together with co-counsel, drafted and served additional subpoenas and preservation letters to multiple third-party data brokers.

38.    While the parties were engaged in this discovery process, my firm, together with co-counsel, continued to discuss potential paths towards resolution, both internally and with Defendants' counsel.

39.    I engaged in multiple telephone calls with my clients throughout this process, to keep them apprised of the litigation and to obtain any additional relevant materials they may possess concerning the case.

40.    The total time spent on these tasks, broken down by timekeeper, is as follows:

| Timekeeper | Year Admitted | Hourly $ | Hours | Lodestar |
|---|---|---|---|---|
| Frank S. Hedin | 2012 | $850.00 | 30.3 | $25,755 |
| Paula S. Buzzi | 2013 | $600.00 | 0.6 | $360 |
| Tyler K. Somes | 2018 | $700.00 | 21.2 | $14,840 |
| **Total** | | | **52.1** | **$40,955** |

41.    **Further Litigation in the _Hoang To_ Action, Including the Filing of the Third Amended Complaint and Briefing of the Motions to Dismiss and to Compel Arbitration:** After settlement negotiations broke down, my firm, together with co-counsel, drafted and filed the operative Third Amended Complaint, adding two of the three _Feller_ plaintiffs as named plaintiffs in this case, adding Alliance Entertainment, LLC (a defendant in the _Feller_ Action along with DirectToU) as a named Defendant, and adding additional factual allegations in support of the existing causes of action.

42.    Promptly following the filing of the Third Amended Complaint, my firm, together with co-counsel, drafted and filed a notice of dismissal in the *Feller* Action. The filing of the Third Amended Complaint and the dismissal the *Feller* Action rendered the then-pending motion to dismiss moot and, on February 11, 2025, Defendants withdrew that motion.

43.    In response to Plaintiffs' Third Amended Complaint, Defendants filed a motion to compel Plaintiffs to individual arbitration. My firm, together with co-counsel, conducted extensive research and analysis concerning the issues raised in the motion, and drafted and filed a 25-page opposition to the motion on Plaintiffs' behalf, along with supporting declarations and exhibits (comprised of hundreds of pages of evidence). Following full briefing on the motion, the Court held a hearing on the motion on June 4, 2025, which I attended along with co-counsel.

44.    I engaged in multiple telephone calls with my clients concerning the motion to compel arbitration and the filing of the Third Amended Complaint and obtained from them additional materials in their possession potentially bearing on issues raised in the motion to compel arbitration, which we carefully reviewed and analyzed.

45.    My firm, together with co-counsel, then drafted and filed a motion for appointment of interim co-lead counsel (along with accompanying declarations). After Defendants filed a response in opposition to that motion, we drafted and filed a reply in further support of the motion.

46.    The total time spent on these tasks, broken down by timekeeper, is as follows:

| Timekeeper | Year Admitted | Hourly $ | Hours | Lodestar |
|---|---|---|---|---|
| Frank S. Hedin | 2012 | $850.00 | 33.5 | $28,475 |
| Julie Holt | 2011 | $600.00 | 18.6 | $11,160 |
| Paula S. Buzzi | 2013 | $600.00 | 20.3 | $12,180 |
| Tyler K. Somes | 2018 | $700.00 | 4.3 | $3,010 |
| Total | | | 76.7 | $54,825 |

47.    **The Proposed Class Action Settlement Presently Before the Court for Approval:** Following the June 4, 2025 hearing on the motion to compel arbitration, and after conferring with my clients and co-counsel and engaging in further research and analysis concerning the relevant legal issues implicated in Defendants' motion to compel arbitration, my firm acted quickly to negotiate a deal on

9

behalf of Plaintiffs and the proposed classes before the Court entered an order compelling Plaintiffs to individual arbitration.

48. Following extensive back and forth over the course of a week between Defendants' counsel and me by telephone and e-mail, the parties were able to reach an agreement on all material terms of the Settlement presently before the Court for approval.

49. My firm worked with co-counsel and Defendants' counsel to finalize the formal settlement agreement, with the assistance of our clients, and to formally execute the agreement and facilitate our clients' review and execution of the agreement.

50. My firm worked with co-counsel to prepare a motion for preliminary approval of the proposed settlement and accompanying settlement-related materials, while also coordinating with the proposed settlement administrator.

51. The total time spent on these tasks, up through the filing of the petition for attorneys' fees and motion for final approval, broken down by timekeeper, is as follows:

| Timekeeper | Year Admitted | Hourly $ | Hours | Lodestar |
|---|---|---|---|---|
| Frank S. Hedin | 2012 | $850.00 | 35.0 | $29,750 |
| Paula S. Buzzi | 2013 | $600.00 | 16.1 | $9,660 |
| Tyler K. Somes | 2018 | $700.00 | 15.6 | $10,920 |
| Total | | | 66.7 | $50,330 |

52. Thus, from the commencement of our pre-filing investigation into this matter through the filing of the petition for attorneys' fees and motion for final approval, the attorneys at my firm have collectively expended 1,130.7 hours of attorney time, valued at $834,415, performing the above-described categories of work investigating, developing, litigating, and ultimately resolving this litigation, all on a purely contingent basis, broken down by timekeeper as follows:

| Timekeeper | Year Admitted | Hourly $ | Hours | Lodestar |
|---|---|---|---|---|
| Frank S. Hedin | 2012 | $850.00 | 515.3 | $438,005 |
| Arun G. Ravindran | 2007 | $700.00 | 189.1 | $132,370 |
| Julie Holt | 2011 | $600.00 | 89.3 | $53,580 |
| Paula S. Buzzi | 2013 | $600.00 | 254.4 | $152,640 |
| Tyler K. Somes | 2018 | $700.00 | 82.6 | $57,820 |
| Total | | | 1,130.7 | $834,415 |

53.     Even after final approval of the Settlement, my firm will continue to expend time on this matter coordinating with the settlement administrator, monitoring the settlement administration, and fielding and responding to Settlement Class Member inquires.

**II.     HOURLY RATE INFORMATION FOR ATTORNEYS OF MY FIRM**

54.     The hourly rates for the lawyers of my firm who worked on this matter are outlined in the tables shown above. Based on my knowledge and experience, these hourly rates are within the range of market rates charged by attorneys of equivalent experience, skill, and expertise in California and in similar markets throughout the country. As my firm has litigated several prior matters in California, including in this District, I have personal knowledge of the range of hourly rates typically charged by counsel in our field in California and in this District, both on a current basis and in the past. In determining my firm's hourly rates from year to year, my firm has consciously taken market rates into account and has aligned its rates with the market.

55.     Numerous courts have found the hourly rates of the attorneys at my firm reasonable, including, for example, the courts presiding over the following matters:

i.   *Donahue v. Everi Payments, Inc.*, et al., No. 2018-CH-15419 (Cook Cnty., Ill. Cir. Ct.)

ii.  *In re Maxar Technologies Inc. Shareholder Litigation*, No. 19CV357070 (Cal. Sup. Ct., Santa Clara Cnty.)

iii. *In re Menlo Therapeutics Inc. Sec. Litig.*, No. 18CIV06049 (Cal. Sup. Ct., San Mateo Cnty.)

iv.  *Hufford et al. v Maxim Inc.,* No. 19-cv-04452-ALC-RWL (S.D.N.Y.)

v.   *Liggio v. Apple Federal Credit Union*, No. 18-cv-1059-LO (E.D. Va.)

vi.  *Kokoszki v. Playboy Enterpises, Inc.*, No. 19-cv-10302-BAF (E.D. Mich.)

vii. *Farnham v. Caribou Coffee Co., Inc.*, No. 16-cv-295-WMC (W.D. Wisc.).

56.     Information concerning the background of each of the attorneys of my firm who performed work on this matter is provided below.

SUPPLEMENTAL DECLARATION OF FRANK S. HEDIN IN SUPPORT OF PLAINTIFFS' MOTION FOR FEE AND SERVICE AWARDS
CASE NO. 3:24-CV-06447-WHO

57.     I am a member in good standing of the Florida Bar and the State Bar of California. I received my Bachelor of Arts from University of Michigan and Juris Doctor, *magna cum laude*, from Syracuse University College of Law. After graduating from law school, I served for fifteen months as law clerk to the Honorable William Q. Hayes, United States District Judge for the Southern District of California. I then worked at litigation boutique in Miami, Florida, where I represented both plaintiffs and defendants in consumer and data-privacy class actions, employment-related collective actions, and patent and trademark litigation, and served as head of the firm's class action practice. I co-founded Hedin LLP, then known as Hedin Hall LLP, in 2018. Over the past eight years, I have served as class counsel or co-lead class counsel in numerous consumer, data-privacy, securities, and antitrust class actions in state and federal courts nationwide.

58.     Tyler K. Somes, a member in good standing of the State Bar of Texas and the District of Columbia Bar, received his Bachelor of Arts from The George Washington University and Juris Doctor, *with honors*, from The University of Texas School of Law. After graduating from law school, Mr. Somes worked at a prominent national law firm for several years, where he litigated complex antitrust, whistleblower, securities, and trade secrets matters. During a one-year hiatus from his prior firm, Mr. Somes served as law clerk to the Honorable Richard Wesley of the United States Court of Appeals for the Second Circuit. Mr. Somes joined Hedin LLP in July 2024.

59.     Julie E. Holt, a member in good standing of the Florida Bar, received her Bachelor of Arts in Economics, *summa cum laude*, from Columbia University and her Juris Doctor from Yale Law School. Ms. Holt previously served as an Assistant Federal Public Defender in the Southern District of Florida for eight years.  She is an experienced trial lawyer, having tried approximately 30 jury trials and numerous bench trials. In addition to her trial practice, she also represented clients on direct appeal, filing numerous petitions for writ of certiorari to the Supreme Court and arguing in the Eleventh Circuit Court of Appeals.

60.     Arun G. Ravindran, a member in good standing of the Florida Bar and the New York State Bar, is an accomplished trial lawyer who has tried more than twenty federal cases to jury

verdict.   Mr. Ravindran received his Bachelor of Arts from Emory University, an Msc. from the London School of Economics, and his Juris Doctor from Emory University School of Law.  After graduating from law school, he served as Captain and Judge Advocate in the United States Marine Corps, after which he served for one year as law clerk to the Honorable Patricia A. Seitz, United States District Judge for the Southern District of Florida. Following his clerkship, Mr. Ravindran served for nearly five years as an Assistant Federal Public Defender in the Southern District of Florida.  Mr. Ravindran also previously litigated commercial matters at a prominent Florida law firm.

61.    Paula S. Buzzi, a member in good standing of the Florida Bar, received her Bachelor of Arts from The University of North Carolina and her Juris Doctor from Syracuse University College of Law. Prior to joining Hedin LLP, Ms. Buzzi was an attorney at a prominent national law firm where she represented commercial clients in transactional matters. At Hedin LLP, Ms. Buzzi's extensive transactional experience offers clients valuable, unique perspectives on case analysis, negotiation and strategy. Ms. Buzzi is a co-founder of the Argentinian American Bar Association, and she has received a number of honors and distinctions throughout her career as an attorney, including numerous recognitions in leading legal publications.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 28, 2026.

Frank S. Hedin

SUPPLEMENTAL DECLARATION OF FRANK S. HEDIN IN SUPPORT OF PLAINTIFFS' MOTION FOR FEE AND SERVICE AWARDS
CASE NO. 3:24-CV-06447-WHO